# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 1:23-mj-00274-MN |
| ) | |
| ROBERT HUNTER BIDEN, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorney, David C. Weiss, United States Attorney for the District of Delaware, and the defendant, Robert Hunter Biden, by and through his attorney, Christopher Clark, Esquire, the following agreement is hereby entered into by the respective parties:

1. The defendant waives any challenge to the Information based on venue and agrees to plead guilty in the United States District Court for the District of Delaware to: Counts One and Two of the Information, which charge the defendant with willful failure to pay tax, in violation of Title 26, United States Code, Section 7203.

2. The defendant understands that the maximum penalties for each of Counts One and Two are: 12 months of imprisonment; a $100,000 fine or twice the gross gain or loss from the offense, whichever is greater; 1 year of supervised release; restitution; a $25 special assessment; and the costs of prosecution, which the parties stipulate to be zero.

3. The defendant understands that if there were a trial with regard to Counts One and Two the government would have to prove the following elements beyond a reasonable doubt: (1) the defendant had a duty to pay a tax; (2) the tax

was not paid at the time required by law; and (3) the failure to pay was willful. The defendant knowingly, voluntarily, and intelligently admits his guilt to each of the above-described elements of Counts One and Two. The defendant further admits to the information contained in the Statement of Facts, attached to this Memorandum as Exhibit 1.

4. The defendant is pleading guilty to Counts One and Two because he is, in fact, guilty.

5. Pursuant to Section 6B1.4 of the November 1, 2021, edition of the United States Sentencing Guidelines Manual ("U.S.S.G."), the parties enter into the following stipulations:

    a. Pursuant to U.S.S.G. § 2T1.1, the amount of loss as to Counts One and Two, including relevant conduct as defined in U.S.S.G. § 1B1.3, is no less than $1,199,524 and no greater than $1,593,329;

    b. The conduct set forth in the Statement of Facts (Attachment A) to the Diversion Agreement filed this same day does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3; and

    c. Provided that the United States does not subsequently learn of conduct by the defendant inconsistent with the acceptance of responsibility, the United States agrees that in consideration of the defendant's timely guilty plea, it will not oppose a two-level reduction in the Offense Level pursuant to U.S.S.G. § 3E1.1(a). Further, should it be determined that the defendant's Offense Level is 16 or greater prior to the application of the

2

aforementioned two-level reduction, the United States agrees that the defendant's Offense Level should be reduced by one additional level, pursuant to U.S.S.G. § 3E1.1(b), for a total reduction of three levels.

It is understood and agreed that: (1) these stipulations are not binding upon either the Probation Office or the Court; and (2) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

6. For reasons to be articulated at or near the time of sentencing, the United States will recommend a sentence of probation.

7. The United States retains the right to defend the rulings of the District Court at any subsequent proceeding.

8. The defendant understands that the District Court must consider the United States Sentencing Guidelines, the applicable statutory maximum penalties, and the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence. The defendant understands that the ultimate determination of an appropriate sentence will be up to the sentencing judge. The Court may impose a sentence that exceeds, falls below, or is contained within the sentencing range prescribed by the Sentencing Guidelines. The defendant expressly acknowledges that if the Court imposes a sentence outside the range set forth in the Sentencing Guidelines, is otherwise different than the defendant expected, or is contrary to the recommendation of his attorney or the United States, the defendant will not be allowed to withdraw his guilty plea on that basis.

9. In exchange for the promises made by the government in entering this plea agreement, the defendant knows that he has, and voluntarily and expressly waives, the right to appeal or collaterally attack his conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. Notwithstanding the foregoing, the defendant reserves the right to (1) file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel, and (2) appeal his sentence if: (a) the government appeals from the sentence; (b) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code; or (c) the District Court imposes an "upward variance" above the final Sentencing Guideline range that it determines at sentencing.

10. The defendant agrees to pay the $50 special assessment the day of sentencing.

11. This Memorandum expressly incorporates Attachment A, which is attached hereto and filed under seal. In accordance with the June 30, 2016, Standing Order of the Court (https://www.ded.uscourts.gov/sites/ded/files/general-orders/Standing%20Order%20Criminal%20Cases.pdf), the government routinely files such an attachment, even though it may or may not contain additional terms. To the extent, however, that Attachment A contains additional terms, the parties acknowledge and agree to be bound by those terms.

12. Pursuant to 18 U.S.C. §§ 3663 and 3663A, the defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses attributable to the defendant's activities as ordered by the Court, which is expected to be zero

because the self-assessed tax due at the time of filing and associated interest and penalties have been paid to the Internal Revenue Service by a third-party on behalf of the defendant. The defendant understands that an unanticipated amount of a Restitution Order will not serve as grounds to withdraw his guilty plea. The parties further understand that should the Internal Revenue Service determine there are additional taxes due and owing for tax years 2014–2019, they are not subject to the terms of this agreement. For purposes of this Memorandum, the sole victim of Count One and Count Two is the United States Treasury.

////

13. It is further agreed by the undersigned parties that this Memorandum and Exhibit 1 – together with sealed Attachment A – supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in writing signed by all the parties; and that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever, unless they comport with the subsequent written modification provisions of this paragraph.

DAVID C. WEISS
UNITED STATES ATTORNEY

_____  By: _____
Christopher Clark, Esquire          Leo J. Wise
Attorney for Defendant              Derek E. Hines
                                    Special Assistant United States Attorneys

                                    Benjamin L. Wallace
                                    Assistant United States Attorney

_____
Robert Hunter Biden, Defendant

Dated: 7/26/23

**AND NOW**, this _____ day of _____, 2023, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.

_____
THE HONORABLE MARYELLEN NOREIKA
UNITED STATES DISTRICT JUDGE

### EXHIBIT 1

At all times relevant to the instant Information, the defendant, Robert Hunter Biden ("Biden") was an attorney and businessman with lucrative domestic and international business interests. From 2017 to 2019, he served on the board of a Ukrainian energy company and a Chinese private equity fund. He further negotiated and executed contracts for business and legal services that paid millions of dollars of compensation to him and/or his domestic corporations, Owasco, PC and Owasco, LLC. Through at least early 2017, he also was employed by a prestigious multi-national law firm in an "of counsel" capacity. For this work, he earned substantial income, totaling more than $2.3 million in 2017 and $2.1 million in 2018.

Biden also has a well-documented and long-standing struggle with substance abuse. Following the death of his brother in 2015, Biden relapsed and over time progressed from alcohol to abusing illegal drugs, including crack cocaine in 2016. This contributed to the collapse of his marriage, with his divorce finalized in March 2017, as well as the collapse of his most significant professional relationship in Fall 2017. Nonetheless, in 2017, despite his addiction, Biden successfully entered into business ventures and landed legal clients, earning millions of dollars. By his own telling in a memoir published in 2021, Biden's substance abuse worsened in 2018, a year that included a move to Los Angeles and what he has described as a "spring and summer of nonstop debauchery." Even during this period, however, Biden continued to earn money and exercise control over his personal and corporate finances.

Federal income tax returns and payments are due on or about April 15 of each year for the prior calendar year. Biden, like many other taxpayers, routinely requested an automatic extension to file his returns, pushing the due date for a tax return to on or about October 15. An extension of time to file a return, however, does not extend the deadline for payment of taxes, which remain due on the April filing date.

During calendar year 2017, Biden earned substantial income, including: just under $1 million from a company he formed with the CEO of a Chinese business conglomerate; $666,666 from his domestic business interests; approximately $664,000 from a Chinese infrastructure investment company; $500,000 in director's fees from a Ukrainian energy company; $70,000 relating to a Romanian business; and $48,000 from the multi-national law firm.

Throughout tax year 2017, Biden worked with a DC/Maryland-based accountant to prepare his individual and corporate tax returns. In 2018, this accountant (who died in 2019) prepared Biden's 2017 corporate and individual income tax returns and throughout the fall repeatedly attempted to provide them to Biden for review and signature. These efforts included directly contacting Biden,

reaching out to his administrative assistant, and sending copies to his former business partner. The former business partner reviewed the returns and sent several emails to Biden in which he commented on their substance and reminded Biden of his filing obligations. The former business partner left the final returns for Biden at Biden's office. Despite these actions, Biden neither signed nor submitted the individual or corporate income tax returns to the Internal Revenue Service.

Not only did the accountant timely prepare Biden's individual and corporate tax returns, the accountant repeatedly encouraged Biden to timely pay the taxes associated with the 2017 tax returns. Beginning in April 2018 and continuing into October 2018, the accountant advised Biden to make his tax payments, noting approximately $600,000 owed by Biden personally and an additional $204,000 owed by Owasco, PC. Biden told the accountant he could pay $25,000 in April 2018 towards his taxes, but no such payment was made to the Internal Revenue Service. His large tax liability stemmed in part from the fact that over the course of 2017, Biden began withdrawing substantial funds outside of Owasco, PC's established payroll system, which had been created, in part, to ensure that Biden had sufficient withholdings to timely pay any outstanding tax liability. The end of year liability should not have come as a surprise. At the time of those withdrawals, Biden's business partner advised him that these transfers, made without withholding, would result in a significant tax liability at year end.

Despite his large outstanding tax liability and profligate spending, on or about April 17, 2018, the due date for 2017 tax payments, Biden did, in fact, have the funds available to pay his outstanding 2017 tax liability for both his personal and corporate returns. On or about March 22, 2018, Biden received a $1,000,000 payment into his Owasco, LLC bank account as payment for legal fees for Patrick Ho and $939,000 remained available as of tax day. Over the next six months Biden would spend almost the entirety of this balance on personal expenses, including large cash withdrawals, transfers to his personal account, travel, and entertainment.

Biden continued to earn handsomely and spend wildly in 2018. He received a little over $2.6 million in business and consulting fees from the company he formed with the CEO of a Chinese business conglomerate and the Ukrainian energy company. However, without the structure of a stable business partner and still in the throes of addiction, Biden essentially ignored his tax obligations, withholding only approximately $38,465, less than 6% of the taxes owed. Tax returns and filings for tax year 2018 were due on April 15, 2019. On that date, Biden traded emails with his DC accountant and his attorney about seeking an extension. The accountant advised Biden of his obligation to make a tax payment on that date, irrespective of the extension to file a return. Ultimately, the extension was filed, making the return due on October 15, 2019. Biden, however, paid nothing. As with

tax year 2017, at the time his 2018 tax payment was due, Biden continued to have substantial income and the ability to pay his tax liability, having received payments totaling approximately $758,000 during March and April 2019. By late May, Biden had spent almost the entire sum on personal expenses, including large cash withdrawals, payments to or on behalf of his children, credit card balances, and car payments for his Porsche.

After numerous programs and trips to rehab, Biden got sober in May 2019, the same month he married his current wife. He has remained sober since. Biden remained in California and spent much of Summer 2019 painting and developing plans for his memoir, which he began working on through the fall and into the winter. During Summer 2019, he was sued in two different domestic-relations lawsuits, both seeking payment of support obligations. He still did not, however, make preparations to file or actually file either his 2018 individual or corporate income tax returns on or about October 15, 2019, the extension due date.

In or around November 2019, Biden engaged a California accountant to prepare his individual and corporate income tax returns for 2017 and 2018. The California accountant began gathering materials and started preparing Biden's 2017 and 2018 returns in early 2020. By that time, the domestic-relations lawsuits had progressed, and having failed to do so previously, Biden was under court order to provide his tax returns or face potential sanctions, including imprisonment. On or about January 27, 2020, Biden signed a representation letter for the California accountants, averring that he was providing the accountants with truthful and accurate information and acknowledging his responsibility for the accuracy of those tax returns. Over the days that followed, Biden participated in a series of meetings with the California accountants and identified business and personal expenses in connection with his tax returns. During this process, Biden miscategorized certain personal expenses as legitimate business expenses, resulting in a reduction in his tax liability. At the same time, the California accountants overreported Biden's income, which partially offset this reduction.

On or about February 18, 2020, Biden filed his individual and corporate income tax returns with the Internal Revenue Service for tax years 2017 and 2018. On his 2017 Form 1040, Biden reported $2,376,436 in total income and a self-assessed tax due of $710,598, of which $125,909 was timely paid, leaving a balance due and owing of $581,713. On his 2017 Form 1120 for Owasco, PC, Biden reported gross receipts $2,698,041 and a self-assessed tax due and owing of $13,630. On his 2018 Form 1040, Biden reported $2,187,286 in total income and a self-assessed tax of $659,366, of which $38,465 was timely paid, leaving a balance due and owing of $620,901. No additional payments were included at the time of filing. On his 2018 Form 1120 for Owasco, PC, Biden reported gross receipts $2,659,014 and a self-assessed tax due and owing of $4,247.

Approximately a year and a half later, on or about October 18, 2021, a third party paid the Internal Revenue Service $955,800 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2017 and $956,632 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2018.

Tax Years 2016 and 2019

In addition, in or around February 2020, Biden's California accountants discovered that Biden's 2016 Form 1040 had not been filed. The return was originally prepared in or around October 2017 and showed $15,520 in taxes due and owing. Though it was delivered to Biden at Biden's office, this return was not filed with the Internal Revenue Service. After learning in 2020 that the Form 1040 for 2016 remained unfiled, Biden filed a Form 1040 on June 12, 2020. For tax year 2016, Biden reported $1,580,283 in total income and a self-assessed tax due of $492,895, of which $447,234 was timely paid, leaving a balance due and owing of $45,661. Biden did not include a payment with this return. On or about October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by a third party.

After seeking an extension, Biden timely filed his 2019 Form 1040 on or about October 15, 2020. He did not, however, pay his estimated tax due when filing for an extension as required by law. For tax year 2019, Biden reported $1,045,850 in total income and a self-assessed tax due and owing of $197,372. On October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by the same third party.