# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:23-cr-00061-MN |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>DECLARATION OF CHRISTOPHER J. CLARK</u>

I, Christopher J. Clark, hereby declare the following under penalty of perjury:

1.      I am former counsel for Robert Hunter Biden ("Mr. Biden") and represented Mr. Biden in the above-captioned matter and preceding grand jury investigation, until my withdrawal on August 17, 2023.  (D.E. 31.)

2.      I am a partner at the law firm of Clark Smith Villazor LLP, located at 250 West 55th Street, 30th Floor, New York, New York 10019.  My telephone number, fax number, and email address are as follows: 212-377-0853 (tel.); 212-377-0868 (fax); clark@csvllp.com (email). I previously worked at the law firm of Latham & Watkins LLP until April 2023.

3.      I am a member in good standing of the bars of Connecticut and New York.

4.      My representation of Mr. Biden included the negotiation and preparation of the Diversion Agreement with the U.S. Attorney's Office for the District of Delaware (the "USAO") in this matter, executed by the Parties on July 26, 2023, in Delaware.

5.      On May 11, 2023, Associate Deputy Attorney General Bradley Weinsheimer emailed my co-counsel Matthew Salerno, copying me, co-counsel, and U.S. Attorney David Weiss, that "U.S. Attorney Weiss has full authority to bring charges in any jurisdiction as he deems appropriate," which confirmed that U.S. Attorney Weiss operated with the full weight and

authority of the U.S. Department of Justice (DOJ).   A true and correct copy of Bradley Weinsheimer's May 11, 2023, email to Matthew Salerno is attached hereto as Exhibit A.

6.      On May 15, 2023, at or around 4:00 PM EST, Delaware Criminal Chief Shawn Weede, DOJ-Tax Counsel Mark Daly, and Assistant U.S. Attorneys Lesley Wolf and Carly Hudson initiated a phone call with me, during which they indicated the USAO's willingness for a non-charge disposition to resolve any and all investigations by the DOJ of Mr. Biden and noting only two non-negotiable requirements for a non-charge disposition: (1) that any resolution be public, and (2) include an accompanying statement of facts.   Such a non-charge resolution would not include any plea (something I stated was a necessity), and I responded that I would speak with my client about a potential resolution.   A true and correct copy of AUSA Wolf's May 15, 2023, email to Chris Clark and Matthew Salerno, copying my co-counsel and Mr. Weede, Mr. Daly, and AUSA Hudson, is attached hereto as Exhibit B.

7.      Following further confirmation from AUSA Wolf on May 16, 2023, that the USAO was open to a non-charge, non-plea resolution, on May 17, 2023, I flew to California to meet with Mr. Biden to explain the USAO's proposal and the process for resolution.

8.      In the morning on May 18, 2023, while staying at my mother's house and prior to meeting with Mr. Biden at his home in California, I called AUSA Wolf on her cellphone to make certain and confirm that, before meeting with Mr. Biden, the USAO was amendable to a non-plea, non-prosecution disposition of this case.   AUSA Wolf confirmed again to me the USAO was open to this, and I then met with Mr. Biden that day to discuss the concept and terms of a non-charge, non-plea resolution.

9.      Later that day (May 18, 2023), my co-counsel Tim McCarten emailed AUSAs Wolf and Hudson a draft non-prosecution agreement (NPA) and an initial draft statement of facts for

the purpose of facilitating further discussions about the framework of a possible resolution of Mr. Biden's case.  The NPA and resolution would apply to Mr. Biden and Owasco P.C.  A true and correct copy of Timothy McCarten's May 18, 2023, email and attachment to AUSAs Wolf and Hudson is attached hereto as Exhibit C.

10.     On a phone call later that evening, while I was still in California and after I had already met with Mr. Biden to discuss a potential non-plea resolution, AUSA Wolf relayed to me that U.S. Attorney Weiss had changed his position and was unlikely to agree to a non-prosecution agreement in this instance, and instead had in mind a deferred prosecution agreement (DPA) on the charge related to Mr. Biden's possession of a firearm.  I expressed my dismay to AUSA Wolf that U.S. Attorney Weiss had changed his position after I had confirmed his position several times.  However, I felt it was important to understand the details of the new deal U.S. Attorney Weiss was now proposing.  I asked AUSA Wolf whether or not such a DPA would be one include a plea by Mr. Biden or the model without such a plea.  In answering that question, AUSA Wolf stated that the agreement proposed by U.S. Attorney Weiss was unclear on this issue, and that she would check with the U.S. Attorney regarding the terms of the DPA.

11.     During that same phone call with AUSA Wolf (in California), she assured me that a deal would get done, and that the Office had several people working on it, but that it would not be finalized before the weekend in light of the fact that U.S. Attorney Weiss now required a DPA rather than an NPA.  At this point, given what AUSA Wolf and I had discussed, this non-charge resolution was conveyed as an official offer and duly authorized by U.S. Attorney Weiss.  I reiterated that any deal must resolve and close any and all investigations of Mr. Biden, and I asked AUSA Wolf to send me new terms for a deal.  I flew back to Washington, D.C. from Los Angeles, California on May 18, 2023.

12.    In an email to me that same evening (May 18), AUSA Wolf stated that the USAO "would consider" a pre-trial diversion agreement in place of a non-prosecution agreement and listed certain "key terms of any potential diversion agreement"—some of which had been included in the draft non-prosecution agreement sent earlier that day.  AUSA Wolf listed 12 "key terms" for Mr. Biden's counsel, among them: "(1) Pre-trial Diversion Agreement; (2) Agreement to waive indictment (which requires an in-court proceeding); (3) Information filed charging 922(g)(3) and the tax misdemeanors; (4) Agree to dismiss after three years . . . (6) Diversion agreement will be public record . . . (9) A more comprehensive statement of facts than what was included in your initial draft[.]"  She asked defense counsel "to incorporate [the USAO's requested terms] into a draft agreement."  The terms set forth in the proposal sent by AUSA Wolf indicated a complete and total resolution of the case against Mr. Biden.  I reviewed these terms with Mr. Biden, and based on these terms then offered, Mr. Biden was willing to accept AUSA Wolf's proposal.  A true and correct copy of AUSA Wolf's May 18, 2023, email to Chris Clark is attached hereto as Exhibit D.

13.    In furtherance of the USAO's preference for a diversion agreement, rather than a non-prosecution agreement, on May 19, 2023, at or about 8:52 AM, AUSA Wolf sent me and my partners "the best exemplar" as a template for the agreement—and appended a copy of the Deferred Prosecution Agreement used in *United States of America v. Aegis Electronic Group, Inc.* in 2011.  AUSA Wolf also suggested including a provision in the parties' diversion agreement that would provide "notice from the government" regarding potential breach by the defendant, "and if contested, then presented to the Court for determination in the same way a supervised release violation might be handled."  A true and correct copy of AUSA Wolf's May 19, 2023, email and attachment to Chris Clark, copying AUSA Hudson and my co-counsel, is attached hereto as

Exhibit E.

14.      With AUSA Wolf's direction, co-counsel and I used the terms, conditions, and provisions in *Aegis* as the model for the diversion agreement with Mr. Biden, and worked to address AUSA Wolf's 12 enumerated requests.  On May 19, 2023, my co-counsel Tim McCarten sent AUSAs Wolf and Hudson a draft diversion agreement based on the *Aegis* agreement for the USAO to review.  A true and correct copy of Timothy McCarten's May 19, 2023, email to AUSAs Wolf and Hudson, copying my co-counsel, is attached hereto as Exhibit F.

15.      The following week, on May 23, 2023, AUSAs Wolf and Hudson called me to inform me that U.S. Attorney Weiss had changed his position on the Agreement again and would no longer agree to a deal without some type of plea by Mr. Biden.  According to AUSAs Wolf and Hudson, U.S. Attorney Weiss now required that a resolution include pleas to two failure to file misdemeanors but would still include a diversion agreement to address Mr. Biden's brief possession of a handgun.  Following that phone call, I immediately relayed the U.S. Attorney's about-face reversal to my co-counsel, and Mr. Biden, on a phone call on May 23, 2023, at or around 4:14 PM EST.

16.      That same evening (May 23) at or around 5:31 PM EST, AUSA Wolf reiterated in a follow-up email to me, copying AUSA Hudson, that U.S. Attorney Weiss "ultimately did not approve continued discussions for diversion relating to the tax charges."  This was a change in the framework we had discussed to resolve the tax-related charges and was a modification of the proposal AUSA Wolf had offered on May 15, 2023.  A true and correct copy of AUSA Wolf's May 23, 2023, email to Chris Clark, copying AUSA Hudson, is attached hereto as Exhibit G.

17.      I discussed this change with Mr. Biden, and on May 23 at or around 6:30 PM EST, I had another phone call with AUSA Wolf indicating our willingness to go forward with a new

deal, subject to the USAO not changing the basic terms again.  On that call, I communicated to AUSA Wolf a critical requirement: Mr. Biden not serve a term of incarceration.  To accomplish this, I proposed a Federal Rule of Criminal Procedure 11(c)(1)(C) plea for a probationary period with the same conditions that the Deferral Agreement would require, along with a statement of facts.  AUSA Wolf indicated she would check with U.S. Attorney Weiss.  A true and correct copy of Chris Clark's May 23, 2023, email to AUSAs Wolf and Hudson is attached hereto as Exhibit G.

18.     The next day, during a phone call on or about May 24, 2023, AUSA Wolf relayed to me that U.S. Attorney Weiss would not be inclined to accept an 11(c)(1)(C) plea in this matter. Instead, U.S. Attorney Weiss was willing to recommend a probationary sentence if Mr. Biden agreed to plead guilty to two misdemeanors for tax-related offenses, accompanied by a broad statement of facts.  I agreed to take this offer back to Mr. Biden and discuss it with him.

19.     In the days following that call, the USAO discarded prior NPA and DPA drafts that had been exchanged and substantially rewrote a draft Diversion Agreement, and separately drafted a Plea Agreement for the tax misdemeanors.

20.     On June 1, 2023, AUSA Wolf sent me an email inviting me to meet at the U.S. Attorney's Office in Wilmington on June 2 to work together on the agreements' specific language and provisions.  The idea was for the AUSAs and defense counsel to be in the same room with access to U.S. Attorney Weiss, so that the terms could be worked out.  A true and correct copy of AUSA Wolf's June 1, 2023, email to Chris Clark is attached hereto as Exhibit H.

21.     On June 2, 2023, co-counsel Matthew Salerno and I went to the U.S. Attorney's Office in Wilmington, where the USAO presented us with its draft of a new Diversion Agreement, along with a draft Plea Agreement.  This was the first time that we had seen the USAO's draft

Agreements. Each draft Agreement was accompanied by a broad and lengthy Statement of Facts, each of which had been drafted solely by the USAO in advance of the June 2 meeting. At this meeting, AUSA Wolf expressed the view that it was in Mr. Biden's interest to have broad Statements of Facts included because the scope of immunity (under Paragraph 15 of the Diversion Agreement) would be tied to the Statements of Facts. The Agreement included a more limited immunity provision than I had discussed with AUSA Wolf or that Mr. Biden would accept. Among the revisions, during or shortly after that June 2 meeting, references to tax liability for years 2016 and 2019 were specifically added to the Plea Agreement's Statement of Facts.

22.     The AUSAs and we took turns working on the specific language of each Agreement—with AUSA Wolf running the changes by Office leadership, including U.S. Attorney Weiss. No final agreement was reached that day, and the meeting concluded with the AUSAs agreeing that the USAO would work on composing acceptable language on an immunity provision.

23.     That same evening (Friday June 2), at or around 9:43 PM EST, I emailed AUSA Wolf, copying my co-counsel, and proposed one revision to Paragraph 15 of the Diversion Agreement (the provision governing immunity): that Paragraph 15 provide that "The United States agrees not to criminally prosecute Biden, outside the terms of this Agreement, for *any federal crimes arising from the conduct generally described in* the attached Statement of Facts (attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day." (Emphasis added.) In the email, I advised AUSA Wolf that it was "very critical for us" that the Diversion Agreement include "[t]his language or its functional equivalent." A true and correct copy of Chris Clark's June 2, 2023, email to AUSA Wolf, copying co-counsel, is attached hereto as Exhibit I.

24.     On Monday June 5, 2023, at or around 5:25 PM EST, AUSA Wolf sent me revised

drafts of a Plea Agreement, Diversion Agreement, Statements of Facts for both the firearm possession and tax-related affairs, and two Informations (one for the firearm charge and one for the tax misdemeanors).  The USAO's draft Diversion Agreement reflected the version that we had discussed on June 2 in Wilmington but rejected the edits I had proposed in my June 2 email to Paragraph 15.  In the USAO's draft, Paragraph 15 instead provided that "The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for *any federal crimes described in* the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day."  (Emphasis added.)  A true and correct copy of AUSA Wolf's June 5, 2023, email and draft Diversion Agreement to Chris Clark is attached hereto as Exhibit J.

25.     By this point, the USAO had assumed full drafting responsibilities over the various agreements and had proposed a bifurcated set of agreements and told defense counsel that it had to work within this bifurcated agreement structure.  This structure was new to me and my co-counsel and not something we had ever suggested.  Accordingly, AUSA Wolf sent me revised drafts of the Diversion Agreement and Statements of Facts throughout the week of June 5.  A true and correct copy of AUSA Wolf's June 6, 2023, email to Chris Clark is attached hereto as Exhibit K.  A true and correct copy of AUSA Wolf's June 7, 2023, email and redlined Diversion Agreement to Chris Clark is attached hereto as Exhibit L.  A true and correct copy of AUSA Wolf's June 8, 2023, email to Chris Clark, copying AUSA Hudson, is attached hereto as Exhibit M.

26.     At each stage of the negotiation, AUSA Wolf assured me and co-counsel that the format in which the USAO was structuring the resolution would address our concerns and protect Mr. Biden's rights.

27.     Throughout our negotiations and during and after the June 2 meeting, I repeatedly

discussed with AUSAs Wolf and Hudson that a critical and essential component of any plea agreement was a broad immunity provision for Mr. Biden that brought closure and finality to this investigation, and would protect Mr. Biden from being charged for the same conduct by a possible future Trump-led DOJ.  They did not disagree.

28.     After extensive discussion with AUSA Wolf in which she repeatedly stated that U.S. Attorney Weiss was unwilling to revise the language of the Agreement's immunity provision, I conveyed that if this language could not be revised, we would not have a deal and that it was the most important term in the Agreement that Mr. Biden get finality.  Accordingly, I requested to speak directly with U.S. Attorney Weiss, whom I was told was the person deciding the issues of the Agreement.  Later that afternoon, on June 6, 2023, I spoke directly with U.S. Attorney Weiss. During that call, I conveyed to U.S. Attorney Weiss that the Agreement's immunity provision must ensure Mr. Biden that there would be finality and closure of this investigation, as I had conveyed repeatedly to AUSA Wolf during our negotiations.  I further conveyed to U.S. Attorney Weiss that this provision was a deal-breaker.  I noted that U.S. Attorney Weiss had changed the deal several times heretofore, and that I simply could not have this issue be yet another one which Mr. Biden had to compromise.  The U.S. Attorney asked me what the problem was with the proposed language, and I explained that the immunity provision must protect Mr. Biden from any future prosecution by a new U.S. Attorney in a different administration.  The U.S. Attorney considered the proposal and stated that he would get back to me promptly.

29.     Later that same evening on June 6, 2023, at or around 5:47 PM EST, AUSA Wolf emailed me proposed language for the immunity provision that read: "How about this- *The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes **encompassed by** the attached Statement of Facts (Attachment A) and the Statement*

*of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day.*"
(Emphasis in original.)   After speaking with Mr. Biden, I responded to AUSA Wolf that the
language she sent me "works" and is suitable for Mr. Biden as well, at which point the Parties had
a deal.  A true and correct and correct copy of AUSA Wolf's June 6, 2023, email to Chris Clark is
attached hereto as Exhibit K.

30.     On June 7, 2023, AUSA Wolf emailed me a revised draft of the Diversion
Agreement that incorporated the language she had proposed in her June 6 email to me.  In that
draft, the revised Paragraph 15 provided that "The United States agrees not to criminally prosecute
Biden, outside of the terms of this Agreement, for any federal crimes *encompassed by* the attached
Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the
Memorandum of Plea Agreement filed this same day."  (Emphasis added.)  A true and correct
copy of AUSA Wolf's June 7, 2023, email and redlined Diversion Agreement to Chris Clark is
attached hereto as Exhibit L.

31.     This language was also reflected in the Diversion Agreement that AUSA Shannon
Hanson sent to the Court on June 8, 2023.  A true and correct copy of AUSA Hanson's June 8,
2023, email to Judge Noreika is attached hereto as Exhibit N.

32.     Consistent with the conversations described above with U.S. Attorney Weiss and
with AUSAs Wolf and Hudson wherein I sought closure for Mr. Biden, I conveyed to Mr. Biden
that the Agreements drafted and approved by the USAO, and submitted to the Court on June 8,
2023, constituted a final resolution of the investigation of Mr. Biden by the DOJ.

33.     Also on June 8, AUSAs Hanson, Wolf, and I began making arrangements for Mr.
Biden's initial appearance, as well as getting all the necessary approvals from and reports prepared
by Probation and Pretrial Services, including arranging an interview of Mr. Biden with Probation.

AUSA Hanson wrote that a hearing was tentatively scheduled for Tuesday, June 13 at 4:00 PM. A true and correct copy of AUSA Hanson's June 8, 2023, email to Judge Noreika is attached hereto as Exhibit N.

34.     However, on June 9, 2023, the Courtroom Deputy communicated to AUSA Hanson, Chief U.S. Probation Officer Margaret Bray, and me that the Court would prefer to set the schedule once the documents are filed and the case is opened.  A true and correct copy of Mark Buckson's June 9, 2023, email to AUSA Hanson, copying Chris Clark, Margaret Bray, and April Smith, is attached hereto as Exhibit O.

35.     On June 19, 2023, at 2:53 PM EST, after I had a phone call with AUSA Hanson indicating I would do so, I emailed AUSA Hanson a proposed press statement to accompany the public release of both Informations that read, in part, "I can *confirm* that the five-year long, extensive federal investigation into my client, Hunter Biden, *has been concluded* through agreements with the United States Attorney's Office for the District of Delaware."  (Emphases added.)  A true and correct copy of Chris Clark's June 19, 2023, email to AUSA Hanson is attached hereto as Exhibit P.

36.     Shortly after that email, I had another phone call with AUSA Hanson, during which AUSA Hanson requested that the language of Mr. Biden's press statement be slightly revised.  She proposed saying that the investigation would be "resolved" rather than "concluded."  I then asked her directly whether there was any other open or pending investigation of Mr. Biden overseen by the Delaware U.S. Attorney's Office, and she responded there was not another open or pending investigation.  Thereafter, at 4:18 PM EST that day, I sent AUSA Hanson a revised statement that read: "With the announcement of two agreements between my client, Hunter Biden, and the United States Attorney's Office for the District of Delaware, it is *my understanding* that the five-year

investigation into Hunter *is resolved*." (Emphases added.)  The new statement revised the language from "concluded" to "resolved," a stylistic change that meant the same thing.  A true and correct copy of Chris Clark's June 19, 2023, email to AUSA Hanson is attached hereto as Exhibit Q.

37.      Section I of Diversion Agreement defined the "Parties" to be the United States of America, by and through the U.S. Attorney's Office for the District of Delaware, and Mr. Biden himself.  At no point during the negotiations, drafting, or filing of the Diversion Agreement was there any discussion that the Probation Officer was a Party to the Diversion Agreement.

38.      In accordance with its language and the communications I had with the USAO, the Diversion Agreement was not conditioned on a guilty plea with respect to the tax-related charges and would be effective regardless of whether a guilty plea was ultimately accepted and regardless of any sentence ultimately imposed by the Court with regard to the tax misdemeanors.

39.      On June 19, 2023, at or around 12:45 PM EST, AUSA Hanson emailed me, copying Special AUSAs Leo Wise and Derek Hines and AUSA Benjamin Wallace (none of whom had been involved in the prior negotiations), attaching final copies of the agreements and Informations. A true and correct copy of AUSA Hanson's June 19, 2023 email to Chris Clark, copying U.S. Attorney Weiss and AUSAs Wise, Hines, and Wallace, is attached hereto as Exhibit R.

40.      On June 20, 2023, pursuant to the Agreement reached by the Parties, Special AUSA Wise filed two Informations with the Court.

41.      On July 19, 2023, prior to Mr. Biden's scheduled appearance in Wilmington on July 26, 2023, after he had been contacted and interviewed by the Probation Office, Chief U.S. Probation Officer Margaret Bray approved the Diversion Agreement and issued a copy of Mr. Biden's Pretrial Diversion Report, which Terri Kilgoe emailed to me and AUSAs Wallace, Wise, and Hines (copying Ms. Bray) that same day.  Ms. Bray's signed cover letter and Report (dated

July 19, 2023) included Probation's approval of diversion for Mr. Biden in this case and stated: "*The United States Probation Office recommends the defendant as a candidate for a 24-month term of Pretrial Diversion.*"  A redacted copy of Terri Kilgoe's July 19, 2023, email to Chris Clark, Benjamin Wallace, Leo Wise, Derek Hines, and Margaret Bray, attaching Hunter Biden's Pretrial Diversion Report dated July 19, 2023 and signed by Ms. Bray, is attached hereto as Exhibit S.

42.     On July 20, 2023, the USAO, Probation, and I made final revisions to specifically conform the Diversion Agreement to Probation's July 19 report.  AUSA Wallace then emailed the final copy of the Agreement to the Court on July 20, 2023, at 4:07 PM EST (copying me, Ms. Bray, and AUSAs Hanson, Wise, and Hines), and he stated in his email: "[t]he parties and Probation *have agreed* to revisions to the diversion agreement to more closely match the conditions of pretrial release that Probation recommended in the pretrial services report issued yesterday." (Emphasis added.)  A true and correct copy of AUSA Wallace's July 20, 2023 email to the Court's Deputy is attached hereto as Exhibit T.

43.     The Diversion Agreement that AUSA Wallace sent to the Court on July 20, 2023 reflected the final agreement of the "parties and Probation," which followed Probation's approval of Mr. Biden's placement in a 24-month pretrial diversion program, and was the exact same version that AUSA Wise, Mr. Biden, and I signed in Court on July 26, 2023.  An executed copy of the Diversion Agreement, dated July 26, 2023, can be found on this case's docket at ECF 24-1.

44.     As of July 26, 2023, the Diversion Agreement was thus both approved and executed by the Parties required for that Agreement with the approval of the Chief U.S. Probation Officer.

45.     At no time following the execution of the Diversion Agreement did Mr. Biden agree to rescind the Agreement, nor authorize me to do so.

13

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2023.

Respectfully submitted,

/s/ *Christopher J. Clark*
Christopher J. Clark

# Exhibit A

**From:** Weinsheimer, Bradley (ODAG)
**Sent:** Thursday, May 11, 2023 8:04 PM
**To:** Salerno, Matthew (NY)
**Cc:** clark@clarksmithvillazor.com; McCarten, Timothy (DC); McManus, Brian (BN); Weiss, David (USADE)
**Subject:** RE: In re: Grand Jury Subpoena Nos. 19-3-LFWS-V-176 - 179 - CONFIDENTIAL


Thank you for the presentation you provided to me and U.S. Attorney David Weiss on April 26, 2023.  U.S. Attorney Weiss and I discussed the issues you raised, and I now am referring you back to him for next steps in this matter.  As the Attorney General has stated, U.S. Attorney Weiss has full authority to bring charges in any jurisdiction as he deems appropriate.

Brad Weinsheimer
Associate Deputy Attorney General
Department of Justice
950 Pennsylvania Ave., NW, Rm. 4113
Washington, DC 20530


**From:** matthew.salerno@lw.com <matthew.salerno@lw.com>
**Sent:** Friday, April 21, 2023 7:07 PM
**To:** Weinsheimer, Bradley (ODAG)
**Cc:** clark@clarksmithvillazor.com; Timothy.McCarten@lw.com; Brian.McManus@lw.com
**Subject:** [EXTERNAL] In re: Grand Jury Subpoena Nos. 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Dear Brad,

Please find the attached materials.

Best,

**Matthew S. Salerno**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Direct Dial: +1.212.906.4738
Email: matthew.salerno@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal

information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# Exhibit B

| | |
|---|---|
| **From:** | Wolf, Lesley (USADE) |
| **Sent:** | Monday, May 15, 2023 11:17 AM |
| **To:** | clark@clarksmithvillazor.com; Salerno, Matthew (NY) |
| **Cc:** | McCarten, Timothy (DC); McManus, Brian (BN); Weede, Shawn (USADE); Daly, Mark F. (TAX); Hudson, Carly (USADE) |
| **Subject:** | Call this week? |

Chris and Matt,

We were hoping to schedule a relatively brief phone call this week with you and your team.  Is there a time that works either later this afternoon, tomorrow afternoon or on Wednesday?

Thanks,
Lesley

*Lesley F. Wolf*
**Assistant United States Attorney**
**Section Chief, Economic Crimes**
**District of Delaware**
**1313 N. Market Street, Suite 400**
**Wilmington, DE 19801**

# Exhibit C

| | |
|---|---|
| **From:** | McCarten, Timothy (DC) |
| **Sent:** | Thursday, May 18, 2023 1:29 PM |
| **To:** | 'Wolf, Lesley (USADE)'; Hudson, Carly (USADE) |
| **Cc:** | Christopher Clark; Salerno, Matthew (NY); McManus, Brian (BN) |
| **Subject:** | RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL |
| **Attachments:** | 2023.05.18 Agreement (PRELIMINARY DRAFT - CONFIDENTIAL).docx; 2023.05.18 Agreement (PRELIMINARY DRAFT - CONFIDENTIAL).pdf |

**CONFIDENTIAL**
**SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)**

Lesley and Carly,

Per your discussion this morning with Chris, attached please find an initial draft of a Non Prosecution Agreement (with an initial draft Statement of Facts at Attachment A).

We are sharing the enclosed draft document as a confidential settlement communication, for the purpose of facilitating further discussions about the contours of a possible resolution.  The enclosed draft is both preliminary in nature and subject to change.  We are sharing it with you on the understanding that there will be opportunities for both sides to review and revise the document, and we expressly reserve the right to supplement or amend.

As I understand Chris communicated to you this morning, the enclosed draft has not been reviewed by our client.  Nothing in the enclosed draft is to be construed as an admission by our client.

Consistent with the above, the enclosed draft is protected by Federal Rules of Evidence 408 and 410, as well as Federal Rule of Criminal Procedure 11(f), and neither the content of the enclosed draft nor the fact of its transmission can be used to prove or disprove the validity of a disputed claim or to impeach Mr. Biden by a prior inconsistent statement or a contradiction. Mr. Biden does not intend to waive any such privileges in this transmission or in any other correspondence with the Department, and any such waivers should be construed as inadvertent.

Best,
Tim

**Timothy H. McCarten**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.637.1036
Email: timothy.mccarten@lw.com
https://www.lw.com

1

*PRELIMINARY DRAFT – 05/18/2023*
*For Discussion Purposes Only – Subject to Review and Revision By Both Sides*
*Subject to FRE 408, FRE 410, Fed. R. Crim. P. 11(f), and All Similar Rules of Federal and State Law*



**U.S. Department of Justice**

*United States Attorney*
*District of Delaware*

*The Hercules Building*
*1313 N. Market Street, Suite 400*
*P. O. Box 2046*                                    *(302) 573-6277*
*Wilmington, Delaware  19899-2046*          *FAX (302) 573-6220*

[MONTH] [DAY], 2023

*Via Electronic Mail*

Christopher J. Clark, Esq.
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, NY 10019

Brian C. McManus, Esq.
Mattthew S. Salerno, Esq.
Timothy H. McCarten, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW
Washington, DC 20004

      **Re:**    *Robert Hunter Biden and Owasco P.C. – Non-Prosecution Agreement*

Dear Counsel:

      As you know, the United States Attorney's Office for the District of Delaware and the United States Department of Justice, Tax Division have been investigating your client, Robert Hunter Biden, and his affiliated businesses, including but not limited to Owasco P.C. ("the affiliated businesses") in regard to possible federal criminal tax violations, including but not limited to the Internal Revenue Code, Title 26, United States Code, Sections 7201 (tax evasion); 7203 (willful failure to file a return or pay tax); 7206(1) (filing a false return); 7206(2) (assisting in the preparation of a false tax return); and related potential criminal violations of Title 31, Report of Foreign Bank and Financial Accounts. As you likewise know, the United States Attorney's Office for the District of Delaware has been investigating your client, Robert Hunter Biden, in regard to additional possible criminal violations of federal law, including but not limited to Title 18, United States Code, Sections 922(g)(3) (possession of a firearm by an unlawful drug user or addict); 922(a)(6) (material false statement to a firearm dealer in connection with the purchase of a firearm); and 924(a)(1)(A) (false statement to a licensed firearm dealer). After careful consideration of Robert Hunter Biden's conduct and all of the surrounding circumstances, the United States hereby extends this Non-Prosecution Agreement (the "Agreement") to Robert Hunter Biden and Owasco P.C. per the following terms and conditions:

*PRELIMINARY DRAFT – 05/18/2023*
*For Discussion Purposes Only – Subject to Review and Revision By Both Sides*
*Subject to FRE 408, FRE 410, Fed. R. Crim. P. 11(f), and All Similar Rules of Federal and State Law*

1.     **Term of the Agreement.** The term of this Agreement shall begin on the date of signing this agreement and shall expire on January 19, 2025, unless there is a breach as set forth in paragraphs 4 and 5. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.     **Acknowledgment of Facts.** Robert Hunter Biden (individually and on behalf of Owasco P.C.) acknowledges and agrees that the Statement of Facts as set forth in Attachment A, is truthful and accurate.

3.     **Undertakings of Mr. Biden.** It is understood that during and under the terms of this Agreement, Robert Hunter Biden shall:

a.     Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)), during the term of this Agreement or at any time thereafter.

b.     Pay or cause to be paid (to the extent not already paid) to the IRS, before the expiration of this Agreement, all outstanding federal income tax, penalties, and interest owed by Robert Hunter Biden and Owasco P.C. for calendar years 2014 through 2022, inclusive. The amounts due by Robert Hunter Biden and Owasco P.C. for those tax years will be determined by the United States Department of Justice, Tax Division, and specified in a document to be shared between the parties to this Agreement.

c.     During the term of this Agreement and for five (5) years thereafter, timely file federal income tax returns, and timely pay or cause to be paid all federal income tax owed to the IRS in connection therewith, in all cases subject to duly-authorized extensions.

4.     **Violation of Agreement.**

a.     Robert Hunter Biden (individually and on behalf of Owasco P.C.) agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

b.     If the United States determines that Robert Hunter Biden or Owasco P.C. committed a knowing material breach of this Agreement, the United States shall provide Robert Hunter Biden with written notice of this preliminary breach determination. Within thirty (30) calendar days from the date of the United States' written notice, Robert Hunter Biden shall have the right to make a presentation to the United States or its designees to demonstrate that no breach has occurred, or to the extent applicable, that the breach was not a knowing or material breach or that the breach has been cured. If Robert Hunter Biden elects to make a presentation, then the United States shall thereafter provide written notice to Robert Hunter Biden of the United States' final determination regarding whether a breach occurred within thirty (30) days of the presentation. If Robert Hunter Biden elects fails to make a presentation within the thirty (30) day time period, then the initial notification will become the United States' final determination.

2

*PRELIMINARY DRAFT – 05/18/2023*
*For Discussion Purposes Only – Subject to Review and Revision By Both Sides*
*Subject to FRE 408, FRE 410, Fed. R. Crim. P. 11(f), and All Similar Rules of Federal and State Law*

   c. If the United States makes a final determination that Robert Hunter Biden or Owasco P.C. made a knowing and material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

     i. **Remedy 1** – The United States may give the breaching party a specific time period in which to remedy the breach. If the United States determines that the breaching party has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

     ii. **Remedy 2** – The United States may prosecute the breaching party for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A); perjury; and obstruction of justice; and any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. It is the intent of this Agreement for Robert Hunter Biden (individually and on behalf of the affiliated businesses) to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware for any such prosecution.

   d. It is the further intent of this Agreement for Robert Hunter Biden (individually and on behalf of Owasco P.C.) to waive all defenses based on the statute of limitations and the Speedy Trial Act (18 U.S.C. § 3161) with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

   e. Robert Hunter Biden (individually and on behalf of Owasco P.C.) further agrees to the tolling of any applicable statute of limitations from the date this Agreement is signed until the terms of this Agreement are fulfilled.

   5. **No Repudiation or Contradiction of Statement of Facts.** Robert Hunter Biden (individually and on behalf of Owasco P.C.) agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts associated with this Agreement (Attachment A). Any contradictory statement by Robert Hunter Biden or Owasco P.C., or by an agent for Robert Hunter Biden or Owasco P.C., shall constitute a violation of this Agreement. If such contradictory statement is determined by the United States to constitute a knowing material breach of this Agreement, then the breaching party shall be subject to prosecution for the conduct as described in the Statement of Facts (Attachment A), and waives the right to contest or object to the facts set forth therein. The decision as to whether any contradictory statement will be imputed to Robert Hunter Biden or Owasco P.C. for the purpose of determining whether Robert Hunter Biden or Owasco P.C. committed a violation of this Agreement shall be at the sole discretion of the United States. Upon the United States reaching a determination that a contradictory statement has been made by Robert Hunter Biden or Owasco P.C., the United States shall promptly notify Robert Hunter Biden (individually or on behalf of Owasco P.C.) in writing, and Robert Hunter Biden and Owasco P.C. may avoid a breach of this Agreement by repudiating the statement in question both to the recipient of the statement and to

*PRELIMINARY DRAFT – 05/18/2023*
*For Discussion Purposes Only – Subject to Review and Revision By Both Sides*
*Subject to FRE 408, FRE 410, Fed. R. Crim. P. 11(f), and All Similar Rules of Federal and State Law*

the United States within seven (7) days after Robert Hunter Biden's receipt of notice. Robert Hunter Biden (individually and on behalf of Owasco P.C.) consents to the public release by the United States, in its sole discretion, of any repudiation.

6.    **Public Record.** Robert Hunter Biden and the United States agree that upon execution of this Agreement, the Agreement and the associated Statement of Facts (Attachment A) shall be a matter of public record. Moreover, Robert Hunter Biden (individually and on behalf of Owasco P.C.) agrees to waive any and all statutory rights afforded to him under 26 U.S.C. § 6103, solely insofar as 26 U.S.C. § 6103 pertains to the public disclosure of information contained in the Statement of Facts.

7.    **Agreement Not to Prosecute.** The Department of Justice agrees not to criminally prosecute Robert Hunter Biden and the affiliated businesses (namely: Owasco P.C.; Owasco LLC; and Skaneateles LLC): (a) for any federal crimes arising from the conduct generally described in the attached Statement of Facts (Attachment A); or (b) for any other federal crimes relating to matters investigated by the United States. This Agreement does not provide any protection against prosecution for any future conduct by Robert Hunter Biden or the affiliated businesses.

8.    **Totality of this Agreement.** This Agreement sets forth all of the terms of the Non-Prosecution Agreement between the United States and Robert Hunter Biden (individually and on behalf of Owasco P.C.). It constitutes the complete and final agreement between the United States and Robert Hunter Biden (individually and on behalf of Owasco P.C.) in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications or additions of this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Robert Hunter Biden, and Robert Hunter Biden's counsel.

Sincerely,

[SIGNATURE BLOCK FOR THE UNITED STATES]

4

*PRELIMINARY DRAFT – 05/18/2023*
*For Discussion Purposes Only – Subject to Review and Revision By Both Sides*
*Subject to FRE 408, FRE 410, Fed. R. Crim. P. 11(f), and All Similar Rules of Federal and State Law*

**AGREED AND CONSENTED TO:**

_____          _____
Robert Hunter Biden                                          Date

_____          _____
Robert Hunter Biden                                          Date
on behalf of Owasco P.C.

**APPROVED:**

_____          _____
Christopher J. Clark                                          Date
Clark Smith Villazor LLP
*Attorney for Robert Hunter Biden and Owasco P.C.*

_____          _____
Brian C. McManus                                          Date

Matthew S. Salerno
Timothy H. McCarten

Latham & Watkins LLP
*Attorneys for Robert Hunter Biden and Owasco P.C.*

5

*PRELIMINARY DRAFT – 05/18/2023*
*For Discussion Purposes Only – Subject to Review and Revision By Both Sides*
*Subject to FRE 408, FRE 410, Fed. R. Crim. P. 11(f), and All Similar Rules of Federal and State Law*

## ATTACHMENT A

## STATEMENT OF FACTS

The following Statement of Facts is incorporated by reference as part of the Non-Prosecution Agreement (the "Agreement") between the United States and Robert Hunter Biden (individually and on behalf of Owasco P.C.). Robert Hunter Biden (individually and on behalf of Owasco P.C.) hereby agrees and stipulates that the following information is true and accurate.

1.      In or around October 2018, in the District of Delaware, Robert Hunter Biden knowingly possessed a firearm while then an unlawful user of a controlled substance.

2.      In calendar years 2017 and 2018, Robert Hunter Biden was a U.S. citizen and earned income from U.S. sources. At all times relevant to this Statement of Facts, Robert Hunter Biden knew that he had legal duties to file an income tax return and to pay federal income taxes, in relation to both 2017 and 2018.

3.      In calendar years 2017 and 2018, Owasco P.C. was an entity organized under the laws of the District of Columbia, and earned income from U.S. sources. At all times relevant to this Statement of Facts, Robert Hunter Biden, including in his capacity as agent of Owasco P.C., knew that Owasco P.C. had legal duties to file an income tax return and to pay federal income taxes, in relation to both 2017 and 2018.

4.      In or around February 2020, Robert Hunter Biden filed individual federal income tax returns for calendar years 2017 and 2018.

5.      In or around February 2020, Owasco P.C. filed corporate federal income tax returns for calendar years 2017 and 2018.

# Exhibit D

| | |
|---|---|
| **From:** | Christopher Clark |
| **To:** | Wolf, Lesley (USADE) |
| **Cc:** | Hudson, Carly (USADE) |
| **Subject:** | Re: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL |
| **Date:** | Friday, May 19, 2023 12:22:11 AM |

Lesley and Carly,

I've reviewed your email preliminarily with my client. We will work on a draft for discussion. If you can send an exemplar in the morning we can try to conform our draft to it to make things as easy to compare as possible.

Thanks for your continuing efforts,

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Thursday, May 18, 2023 10:02:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

**<u>CONFIDENTIAL</u>**
**<u>SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)</u>**

Chris,

Thanks for taking the time to speak with us earlier this evening. Below please find what we would consider to be the key terms of any potential diversion agreement. A number of these were essentially included in the NPA draft you sent to us earlier today. As I said during our call, the below list is preliminary in nature and subject to change. We have not discussed or obtained approval for these terms, but are presenting them in attempt to advance our discussions about a potential non-trial resolution and accordingly this communication is subject to the protections of Fed. R. Crim. P. 11(f) and FREs 408 and 410. We understand you will work with your team to incorporate them into a draft agreement and will identify for us anything that you immediately see as problematic. I can also check in the morning to see if there is a useful form we have that will assist in drafting. Please let me know if you want me to directly copy the Latham team-otherwise, I will just send to you to forward along.

(1) Pre-trial Diversion Agreement;

(2) Agreement to waive indictment (which requires an in-court proceeding-understand your request as to this);

(3) Information filed charging 922(g)(3) and the tax misdemeanors;

(4) Agree to dismiss after three years;

(5) On non-reporting supervision by Probation Office in Delaware during that time;

(6) Diversion agreement will be public record and filed in the criminal case;

(7) Diversion agreement will specifically reference both prior drug use and current sobriety;

(8) There will be some conditions of the diversion agreement, to include no drug use, drug testing, etc.;

(9) A more comprehensive statement of facts than what was included in your initial draft;

(10)  Lifetime firearms ban (consent to NICS entry that he is prohibited);

(11)  No contradictory public statements regarding guilt;

(12)  Remedies for breaches- remove all the 30-day requirements, but omit that the US Attorney has "sole discretion" to determine whether there is a breach.  That leaves it up to the Court akin to a supervised release violation.

Other than 10-12 tomorrow (EST), we are around and available to speak.

-Lesley

# Exhibit E

| | |
|---|---|
| **From:** | Christopher Clark <clark@csvllp.com> |
| **Sent:** | Friday, May 19, 2023 8:59 AM |
| **To:** | Wolf, Lesley (USADE) |
| **Cc:** | Hudson, Carly (USADE); McCarten, Timothy (DC); Salerno, Matthew (NY); McManus, Brian (BN) |
| **Subject:** | Re: [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL |

Thanks Lesley,

We will use this as a template and understand the points you raise and will address them.

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Friday, May 19, 2023 8:52:15 AM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)                    ; Timothy.McCarten@lw.com <Timothy.McCarten@lw.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>; Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

## CONFIDENTIAL
## SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)

Chris,

After talking it through on this end, we thing Aegis might be the best exemplar- while it is a DPA, it seems like substituting in "Diversion" in most places for "Deferral" would be a good starting point.  It sounds like you already have it- but am attaching it and copying the team as I know you are a few hours behind.  A couple of things to flag in here.  First, there is a whole section on cooperation here, which is not part of our discussions.  Also thinking about the breach point and how to best address the concerns you raised.  Instead of a thirty day back and forth, we suggest including notice from the government and if contested, then presented to the Court for determination in the same way a supervised release violation might be handled.

I am tied up much of the morning and expect to free up around noon, but can step out for a quick call if it is important to connect sooner.

-Lesley

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 12:22 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Lesley and Carly,

I've reviewed your email preliminarily with my client. We will work on a draft for discussion.  If you can send an exemplar in the morning we can try to conform our draft to it to make things as easy to compare as possible.

Thanks for your continuing efforts,

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Thursday, May 18, 2023 10:02:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

## <u>CONFIDENTIAL</u>
## <u>SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)</u>

Chris,

Thanks for taking the time to speak with us earlier this evening.  Below please find what we would consider to be the key terms of any potential diversion agreement.  A number of these were essentially included in the NPA draft you sent to us earlier today.  As I said during our call, the below list is preliminary in nature and subject to change.  We have not discussed or obtained approval for these terms, but are presenting them in attempt to advance our discussions about a potential non-trial resolution and accordingly this communication is subject to the protections of Fed. R. Crim. P. 11(f) and FREs 408 and 410.  We understand you will work with your team to incorporate them into a draft agreement and will identify for us anything that you immediately see as problematic.  I can also check in the morning to see if there is a useful form we have that will assist in drafting.  Please let me know if you want me to directly copy the Latham team-otherwise, I will just send to you to forward along.

(1)  Pre-trial Diversion Agreement;

(2)  Agreement to waive indictment (which requires an in-court proceeding- understand your request as to this);

(3)  Information filed charging 922(g)(3) and the tax misdemeanors;

(4)  Agree to dismiss after three years;

(5)  On non-reporting supervision by Probation Office in Delaware during that time;

(6)  Diversion agreement will be public record and filed in the criminal case;

(7)  Diversion agreement will specifically reference both prior drug use and current sobriety;

(8)  There will be some conditions of the diversion agreement, to include no drug use, drug testing, etc.;

(9)  A more comprehensive statement of facts than what was included in your initial draft;

(10)   Lifetime firearms ban (consent to NICS entry that he is prohibited);

(11)   No contradictory public statements regarding guilt;

(12)   Remedies for breaches- remove all the 30-day requirements, but omit that the US Attorney has "sole discretion" to determine whether there is a breach.  That leaves it up to the Court akin to a supervised release violation.

Other than 10-12 tomorrow (EST), we are around and available to speak.

-Lesley

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 11 - 17 - UNA |
| | ) | |
| AEGIS ELECTRONIC GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |

DEFERRED PROSECUTION AGREEMENT

I.    PARTIES

This Deferred Prosecution Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware (collectively, the "United States"), and Aegis Electronic Group, Inc. ("Aegis"), collectively referred to herein as "Parties," by and through their authorized representatives.

II.    TERMS AND CONDITIONS OF DEFERRED PROSECUTION AGREEMENT

Criminal Charges

1.    Aegis shall waive indictment and agrees that the United States will file a one count information (hereinafter "the Information") in the United States District Court for the District of Delaware, charging Aegis with one count of failing to comply with the International Emergency Economic Powers Act, Title 50, United States Code, Section 1701, et seq., and the Iranian Transaction Regulations, 31 Code of Federal Regulations, Part 560.

2.    Aegis agrees to pay the United States Department of Treasury, Office of Foreign Assets Control (OFAC) $20,000 (the "Settlement Amount"), no later than twenty months from the date

1

FILED

MAR   1  2011

U.S. DISTRICT COURT DISTRICT OF DELAWARE

Case 2:23-cr-00599-MCS   Document 60-2   Filed 02/09/23   Page 62 of 326   Page ID #:1290

of this Agreement by electronic funds transfer pursuant to written instructions to be provided by OFAC. The parties incorporate by reference the settlement agreement between Aegis and OFAC, and agree that a breach by Aegis of the OFAC settlement agreement constitutes a breach of this agreement. The twenty month period following the execution of this Agreement shall be known as the "Deferral Period."

Deferred Prosecution

3.      In light of the fact that Aegis has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached Appendix A (hereinafter "Statement of Facts"), and because Aegis has agreed to undertake the Remedial Action Plan, and in consideration for the other terms recited herein, the United States will recommend that prosecution of Aegis on the Information shall be deferred pursuant to the terms and conditions set forth herein.

4.      Aegis agrees that the United States has probable cause to bring the charge in the Information, and that the charge is not frivolous, vexatious or made in bad faith. Aegis also agrees that if at a future time the government should move to dismiss the Information pursuant to this Agreement, Aegis is not a "prevailing party" with regard to the Information. Aegis further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

5.      The United States agrees that if Aegis complies with all of its obligations under this Agreement, the United States, within thirty (30) days after the expiration of the Deferral Period, will file a motion with the Court seeking the dismissal of the Information.

6.      The United States agrees to conduct a review of Aegis' progress in implementing the Remedial Action Plan prior to the conclusion of the Deferral Period. If, in the sole discretion of the United States, the United States concludes from its review that: (1) Aegis has successfully

2

implemented the Remedial Action Plan, (2) Aegis is in full compliance with all of its obligations under this Agreement and (3) no further monitoring under this Agreement is necessary, the United States shall file a motion to dismiss the Information. Aegis and the United States agree that a dismissal of the Information prior to the expiration of the full twenty month Deferral Period will be considered a closing of the Deferral Period and a termination of any further obligations under this Agreement unless otherwise required by applicable law.

7. Aegis agrees to waive its right to raise any defense relating to the statute of limitations with regard to the charge set forth in the Information, and agrees that the applicable statute of limitations period for any charges arising out of the conduct described in the Appendix A shall be tolled during the term of this Agreement. Aegis further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

Remedial Actions & Non-Prosecution

8. Aegis agrees to implement the Remedial Action Plan and such other remedial actions that might be necessary to ensure that Aegis is in compliance with the export laws of the United States of America. Aegis further agrees not to willfully commit any violation of the export laws of the United States of America.

9. As outlined in the Remedial Action Plan, Aegis agrees to continue its independent internal investigation of its possible violations of the export laws of the United States. Nothing in this Agreement shall preclude or limit the United States from bringing a criminal prosecution for any criminal violation of the Arms Export Control Act or its implementing regulations, or the International Emergency Economic Powers Act, that Aegis fails to inform the United States

3

about prior to the date of this Agreement.   Nothing in this Agreement shall preclude or limit the United States from bringing a criminal prosecution against Aegis under any criminal statute for any criminal act that takes place after the date of this Agreement.

Statement of Facts

10.     Aegis agrees that the Statement of Facts attached as Appendix A is true and accurate to the best of its knowledge and belief.   In respect to those facts to which it has no independent knowledge, Aegis agrees that they are true and accurate for the limited and sole purpose of this Agreement.

11.     Aegis acknowledges responsibility, as set forth in the Statement of Facts, for the (1) criminal and illegal conduct of Jim Larrison, a former Aegis employee, and (2) the acts of those individuals and entities who acted on behalf of Aegis.

12.     Aegis agrees that it will not, through its present or future attorneys, board of directors, agents, affiliates, officers or employees, make any public statement, including statements or positions in litigation in which any United States department or agency is a party, contradicting any statement of fact set forth in the attached Statement of Facts. Any contradictory public statement by Aegis, its present or future attorneys, board of directors, agents, affiliates, officers or employees, shall constitute a breach of this Agreement.   The decision as to whether any public statement by an Aegis representative will be imputed to Aegis for the purpose of determining whether Aegis has breached this Agreement shall be at the sole discretion of the United States.   If and when the United States determines that a contradictory statement was made by Aegis, the United States shall so notify Aegis and discuss, in good faith, whether the statement is contrary to the intent of this paragraph 12.   If a contradictory statement was made, Aegis may avoid a breach of this Agreement by publicly repudiating such statement within three

4

business days after the conclusion of the good faith discussions between the Parties.

<u>Cooperation</u>

13.     Aegis agrees to cooperate during the Deferral Period with the United States, and, as directed by the United States, with any other governmental department or agency regarding any matters related to this Agreement.

14.     Aegis agrees that with respect to this Agreement, Aegis' cooperation shall include, but is not limited to, the following:

     a.     Truthfully disclosing information within Aegis' possession, custody or control with respect to the activities of Aegis, its affiliates and its present and former officers, agents, and employees, concerning the subject matters inquired into by the United States regarding possible violations of the laws, regulations and programs listed in Section I.A. of the Remedial Action Plan.   This obligation of truthful disclosure includes an obligation to provide the United States access to Aegis' documents and employees, whether or not located in the United States, and reasonable access to Aegis' facilities for that purpose.

     b.     Assembling, organizing and providing on request from the United States, documents, records or other tangible evidence in Aegis' possession, custody, or control in such format as the United States reasonably requests. Where appropriate, Aegis will continue to use the services of expert technical consultants to assist in the identification and retrieval of relevant information and data.

     c.     Using its reasonable best efforts to make available its present or former officers, directors and employees, whether or not located in the United States, to provide information and/or testimony as requested by the United States, including sworn

testimony before a federal grand jury or in federal trials, as well as interviews with federal authorities. Cooperation under this paragraph will include identification of witnesses who, to Aegis' knowledge, may have relevant information regarding possible violations of the laws, regulations and programs listed in Section I.A. of the Remedial Action Plan.

      d.    Providing testimony and other information deemed necessary by the United States or a court to identify or establish the original location, authenticity, or other evidentiary foundation necessary to admit into evidence documents or other exhibits in any criminal or other proceeding as requested by the United States.

15.    Aegis agrees that the United States, in its sole discretion, may disclose to any government department or agency any information, testimony, document, record or other tangible evidence provided to the United States pursuant to this Agreement.

<u>Breach of Agreement</u>

16.    Aegis agrees that a knowing failure to abide by or fully perform any of the terms, promises or agreements set forth in this Agreement shall constitute a breach of the Agreement.

17.    If the United States determines that Aegis has committed a knowing material breach of this Agreement, the United States shall provide Aegis with written notice of this preliminary breach determination.  Within thirty (30) calendar days from the date of the government's written notice, Aegis shall have the right to make a presentation to the United States or its designees to demonstrate that no breach has occurred, or to the extent applicable, that the breach was not a knowing or material breach or that the breach has been cured.  If Aegis elects to make a presentation, the United States shall thereafter provide written notice to Aegis of the United States final determination regarding whether a breach occurred within thirty (30) days of the

6

presentation.  If Aegis fails to make a presentation within the thirty (30) day time period, the initial notification will become the United States' final determination.

18.     If the United States makes a final determination that Aegis has made a knowing and material breach of this Agreement, the United States may elect from the following remedies depending on the nature and seriousness of the breach:

> **Remedy 1** - The United States may give Aegis a specific time period in which to remedy the breach.  If the United States determines that Aegis has failed to remedy the breach during the specified time period, the United States may elect Remedy 2 below.

> **Remedy 2** - The United States may prosecute Aegis with regard to the Information and any other criminal conduct.  Aegis shall be deemed to have stipulated to the admissibility into evidence of the Statement of Facts.  Aegis shall also be precluded from offering any evidence or arguments that the statements in Appendix A are untrue. Aegis agrees that all statements made by and on behalf of Aegis, including testimony given by Aegis or any employee (current or former) at Aegis' direction before a grand jury, or elsewhere, shall be admissible in evidence when offered by the United States in any and all criminal proceedings brought by the United States against Aegis.     Aegis further agrees that it shall not assert any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, or any other rule, that statements made by, on behalf, and at the direction of Aegis prior to or subsequent to this Agreement should be inadmissible or suppressed.  Aegis also agrees to waive any right to be indicted by a grand jury and stipulates that the United States may proceed by Information.

III.    GENERAL TERMS AND CONDITIONS

19.     It is expressly understood that this Agreement has no bearing on the rights and

7

Case 2:21-cr-00016-WNG-DSC Document 66-7 2 Filed 02/31/09/31 Page 43 of 306 Page ID #:1296

obligations of either Party with respect to potential administrative suspension and debarment issues.   However, the United States agrees to notify administrative agencies that may initiate any civil proceedings involving Aegis related to acts referenced in the Statement of Facts of this Agreement, the Remedial Action Plan, and Aegis' cooperation in the government's investigation.

20.   Upon completion of the Deferment Period and dismissal of the Information, Aegis fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) which Aegis has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the United States' investigation and prosecution of the transactions described in Appendix A.

21.   This Agreement, together with all the obligations and terms hereof, shall inure to the benefit of and shall bind assigns, successors-in-interest, or transferees of the Parties thereto within the Deferral Period.

22.   Each of the signatories of this Agreement represents that he or she has the full power and authority to enter into this Agreement.

23.   This writing constitutes the entire agreement of the signatories with respect to the subject matter of this Agreement and may not be modified, amended or terminated except by a written agreement signed by the Parties specifically referring to this Agreement.

24.   Aegis agrees that, if Aegis' business operations are sold, whether by sale of stock, merger, consolidation, sale of a significant portion of its assets, or other form of business combination, or otherwise undergo a direct or indirect change of control within the Deferral Period under this Agreement, Aegis shall include in any contract for the sale or merger a provision binding the purchaser/successor to the obligations of this Agreement, including Appendix B.

8

25.     It is further understood that this Agreement does not relate to or cover any criminal conduct by Aegis other than the conduct or transactions within the scope of the Investigation, as described in this Agreement.

26.     All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

27.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

In Witness Whereof, the Parties, through their duly authorized representatives, hereunder set their hands.

ON BEHALF OF THE UNITED STATES OF AMERICA

DAVID C. WEISS
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

Keith Rosen
Assistant United States Attorney
Chief, Criminal Division


David L. Hall                                                   Dated: FEBRUARY 23, 2011
Assistant United States Attorney

ON BEHALF OF AEGIS ELECTRONIC GROUP, INC.

I, Carolynn Larson-Garcia, the duly authorized representative of Aegis, hereby expressly acknowledges the following: (1) that I have read this entire Agreement; (2) that I have had an opportunity to discuss this Agreement fully and freely with Aegis' outside attorneys; (3) that Aegis fully and completely understands each and every one of its terms; (4) that Aegis is fully satisfied with the advise and representation provided to them by its attorneys; and (5) that Aegis has signed this Agreement voluntarily.

10


Aegis Electronic Group, Inc.

_____          _____
DATE:                                    Carolynn Larson-Garcia

Counsel for Aegis

The undersigned are outside counsel for Aegis.  In connection with such representation, we acknowledge that: (1) we have discussed this Agreement with our clients; (2) that we have fully explained each one of its terms to our clients; (3) that we have fully answered each and every question put to us by our clients regarding the Agreement; and (4) we believe our clients completely understand all of the Agreement's terms.

_____          _____
DATE:                                    Gregory A. Brower, Esq.
                                         Brett W. Johnson, Esq.
                                         Snell & Wilmer LLP
                                         Attorneys for Aegis Electronic Group, Inc.

10

STATEMENT OF FACTS
APPENDIX A

The United States and Aegis agree to the following statement of facts.

On September 5, 2007, Amir Ahkami, purportedly a General Purchase employee for SBC Technology Groups, sent an e-mail to Aegis seeking a quote for certain products to be sent to Dubai. Aegis communicated with Mr. Ahkami until September 18, 2007, about a possible purchase. During this communication, Mr. Ahkami did not make any reference in regard to a re-export to Iran. A purchase and export never occurred at this time.

In October, 2007, the government obtained a search warrant for the laptop computer of Iranian procurement agent Amir Ardebili. Pursuant to the warranted search, Immigration Customs Enforcement ("ICE") agents found communication between Ardebili and Aegis Electronic Group, Inc.

On June 26, 2008, Aegis management specifically advised its employees who had involvement with international purchases about export controls and that transactions in violation of such sanctions were strictly prohibited. Aegis' senior management sent a memorandum to its employees listing the government websites associated with prohibited export transactions.

An ICE Special Agent, acting in an undercover capacity and herein after referred to as the UCA, purported to be two different businessmen in communicating with Aegis, one by the name of "Amir Dave" (an alias of Ardebili) and the other as "Harry." On August 15, 2008, "Amir Dave" contacted Aegis via electronic mail and advised he wanted to purchase a Hitachi-brand JU-Z2 camera controller from Aegis for export to Iran, by transshipping the merchandise to Vienna, Austria:

> I am hope that you are remember me from last year. My customer have request for the camera control box, P/N: JU-Z2, $1900. Can you kindley provide the total amount to include shipping to Vienna. I can make arrangements from there to have it shipped to my customer in Iran,
>
> I await your prompt reply,
>
> Regards,
>
> Amir

The JU-Z2 is a level converter to enable the remote control of multiple compatible color cameras (such as the HV-C20A, HV-D15, HV-D25, HV-D27, and HV-D37) from a single personal computer. Multiple cameras can be controlled by the computer; centralized control can be performed in studio surveillance and other types of systems.

11

On August 18, 2008, the UCA received an email from Jim Larrison, now a former employee of Aegis, using the email account jim@aegiselect.com.   Larrison emailed the UCA the following:

> Amir,
>
> Good Morning.   Last week you sent a request to [M, an Aegis employee] with our company for a quote on the JU-Z2 control box. My name is Jim Larrison and I am now the International Sales Rep for Aegis Electronic Group, Inc.   [M, an Aegis employee] has forwarded me your request.   Your cost on the control box is $1235.00/usd.   In order to provide you with a shipping cost I would need your complete ship to address.   Please provide me with that info.   If you have any questions or if I can provide any additional assistance please let me know.
>
> Best Regards,
>
> Jim
>
> Jim Larrison
> Aegis Electronic Group

On August 25, 2008, the UCA received an email from Larrison, using the email account jim@aegiselect.com.   Larrison emailed the UCA the following:

> Amir,
>
> Good Morning.   Last week I quoted you on the Hitachi Control Box Ju-Z2.   I am following up today to make sure you received the quote an to answer any questions you may have.   Did you receive the info? When will you be needing this box? When will a decision be made? Please provide me with an update when you have a chance.   If you have any questions or if I can assist you in any way please let me know.
>
> Best Regards,
>
> Jim.

On September 1, 2008, the UCA responded to Larrison with the following email:

> I am apologize for lengthy time to return email.   I speak with my

12

customer in Iran and he wish the product be sent to the following address:

Vabguard International
Nussdorfe, Stasse 1-140
Vienna, Austria A -1090

I will handle the subsequent shipping from Vienna.

I am look forward to your reply .

Regards,

Amir

On September 2, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com with the following information:

Thanks for the email. In order to set up this account and place the order I will need your billing address. When you forward me that information I will set up your account and send you a performa Invoice. The standard terms for International Orders is bank wire transfer. I will forward my bank details along with the proforma invoice so you can make payment. Once the payment is received I will send out the product. Please send me the billing address as soon as possible.

Best Regards,

Jim.

On September 9, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com with the following information:

Good Morning. Last week you advised me that you wanted to order the JU-Z2 Control Box. You provided me with the ship to address but I advised you I would need the bill to information so that I could set up your account and send you a proforma invoice for payment. I have not heard back fro you. Could you please provide me with the information as soon as possible so that I may process your order. If you have any questions or if I can assist you in any way please let me know.

Best Regards,

13

Jim.

On September 23, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com with the following information:

Amir,

Hello.   Several weeks ago you sent me an email that you wanted to purchase the JU-Z2 Control Box.   You gave me the ship to address but I advised you I would need the bill to information so that I could set up your account and send you a proforma invoice for payment.   I have not heard from you and have been unable to proceed with the order.   Please provide me with the necessary information so I can process your order.   If I don't hear from you by Friday I will assume that you have decided to cancel the order. Please let me know if you have any questions or if I can assist you in any way.

Best Regards,

Jim.

On October 6, 2008, the UCA responded to Larrison at the following email address jim@aegiselect.com, with the following:

Mr. Larrison,

I am sorry there seems to be a lot of confusion, I know my english is not very good.

Kan you please use the below address for shipping and billing.   I will need the box very soon.   How much will it cost just to ship to Vienna, do not worry anout iran.

I think you had more questions that you need answer from me, so I am addressing all questions now if I can.   If there is anything else, please let me know,

Best Regards

Amir

On October 8, 2008, the UCA responded to Larrison at the following email address

14

Case 2:31-cr-00001-MKS   Document 60-2   Filed 02/09/23   Page 15 of 36   Page ID #:163

jim@aegiselect.com, with the following:

> Mr. Larrison,
>
> I apologize again for the lengthy delay in response.  Please use the Vienna address for billing needs as well as shipping address.  My customer in Iran is worried that I can not ship to him because of export law, but I am ensure to him that I can handle that after you ship to me in Vienna.  If you need further information for billing purposes, please contact Harry (the last name of UCA has been intentionally omitted from this search warrant) a business partner in London.  He can provide you with means of billing, and he will make arrangement to pay you.
>
> Harry
> Vanguard International
> English telephone number
> UCA email address
>
> Best regards,
>
> Amir

On October 9, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com with the following information:

> Harry,
>
> Good Morning, I have been working with a business partner of yours, Amir Dave.  He has placed an order for a JU-Z2 Control Box.  He has advise me that I should contact you for payment.  Our terms for payment are bank wire transfer.  I am forwarding you a copy of the proforma invoice and our bank details for payment.  If you have any questions or if I can assist you in any way please let me know.
>
> Best Regards,
>
> Jim.

On October 20, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com, with the following information:

> Good Morning.   About a week ago I sent you an Invoice and our

15

bank details regarding an order for the Hitachi JU-Z2.   This order was placed by a business partner of yours Amir Dave.   I am following up today to make sure you received my email and to answer any questions you may have.   Did you receive my email? Have you sent the payment? When are you going to send it? Please provide me with an update when you have a chance.   If you have any questions or if I can assist you in any way please let me know.

Thanks.

Jim.

On October 21, 2008, the UCA responded to Larrison at the following email address jim@aegiselect.com, with the following:

Mr. Larrison,

I just called your office regarding Invoice number #72344.   I must apologize for taking so long to return you email.   As I simply overlooked your last email.

I am currently awaiting Amirs payment to me.   As you can imagine, it is rather difficult for Amir to get money to me in London.   Once I get the money it wont take long to wire it to you. Also I need to change the order and have it shipped to the address in Vienna, and I will take care of shipping the Control Box to Amir.

Please call me at your earliest convenience.   Again, I apologize for the lengthy time in my response.

Regards,

Harry

As the UCA sent the above-mentioned e-mail, Larrison contacted the UCA on his telephone.   The UCA asked Larrison if he had the information in front of him in reference to invoice number # 72344 and the e-mail that referenced Amir, who is trying to buy a part that the UCA was not familiar with and referred to a control box.   The UCA asked Larrison what the JU-Z2 Control Box was for.   Larrison stated that it was to control up to four cameras with one personal computer.   The UCA asked if he could order two cameras instead of one, Larrison agreed to change the order.   The UCA asked Larrison if he saw the e-mail from him [Amir] on October 8th.   Larrison asked if that was the one with UCA'S information on it.   The UCA said, "maybe."   After a brief moment, Larrison advised he had the email, as referenced above, pulled

16

up.

The UCA then said, "you understand where this stuff is going, so that's the problem right now, there just waiting to get the money from Amir….", Larrison said "OK", "…..which is taking a little while to obviously get the money out of Iran to get to me in London so, there is….." Larrison said "OK", "…..obviously a little bit of…. you know a little bit of lag time there, em….", Larrison responded, "Sure".    The UCA said, "….and that's another thing I don't know why? This guy [Amir] continues to mention where it's going [Iran], which you know obviously we don't want eh, I'd rather just not even, just avoid talking about that [Iran] all together". Larrison said "exactly, exactly, I'm pretending I don't….I know nothing", as he laughed.    The UCA said, "Exactly and that's what I want to do as well, so let's try not to mention that [Iran] any more, you know obviously with the Embargo, we've got an Embargo in my country [the United States] and you've got Embargo's in your country [England] with Iran, so there's no reason to….."    Larrison said "it was going to Vienna for all I know", the UCA said "Exactly, so…" and Larrison laughed again.    The UCA concluded the conversation, by advising soon as he got the money from Amir, he would have the money wired to Larrison by a contact in the United States, it would raise less flags if they did it that way.    This call ended at approximately 1:35 P.M., (Eastern Standard Time).

Approximately thirty minutes after the telephone conversation Larrison emailed the UCA with the following emails which stated:

Tuesday, October 21, 2008 5:49 PM (Greenwich Mean Time)

Harry,

Here is the updated proforma invoice you requested.    If you have any questions or if I can assist you further please let me know.

Thanks,

Jim

Tuesday, October 21, 2008 5:50 PM (Greenwich Mean Time)

Harry,

I forgot to attach the invoice before I sent you the last email. Here it is.

Thanks,

Jim

17

Proforma invoice (971-4-2259535) to the UCA with the following information:

JU-Z2 Hitachi Control Boxes quantity of two:
$2470.00

| | |
|---|---|
| Freight and Handling: | $175.00 |
| Wire fee | $40.00 |
| Invoice total | $2685.00 |

On October 28, 2008, the UCA, acting as "Harry Umbrage," wired US $ 2,685.00 from his account at WSFS Bank in Wilmington, Delaware, to Aegis' Bank Account for the camera controllers at issue.

On October 29, 2008, the UCA emailed Larrison at the following email address jim@aegiselect.com, with the following:

Jim,

On 10/27/08, $2685.00 was wired to the [BANK INFORMATION].

I noticed on the performa invoice there is a new address for your company....Should I use this address for my records or the address listed below?

Can you confirm when you received the money and advise when the two JU-Z2 Control Boxes will be shipped to Vienna, Austria.

I look forward to completing more business with you, upon successful delivery of this order to my customer.

Thanks,

Harry.

On October 29, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com, with the following:

Hello, I received your wire transfer this morning. I will advise when we ship out the control boxes. You may also use the address listed in my signature. If you have any questions let me know.

18

Thanks,

Jim

On October 31, 2008, SAC/PH sent an initial license request to ICE Exodus Accountability Referral System (EARS), in reference to the two JU-Z2 Hitachi Control Boxes purchased by the UCA from Aegis on October 27, 2008.   An initial request for a license determination was submitted by an ICE Special Agent through the Exodus Command Center. The Exodus Command Center is the point of contact for ICE special agents which provide operational support from export licensing authorities.

On November 5, 2008, the Department of Treasury, Office of Foreign Assets Control (OFAC) License Determination, referral number 2008-11-3-ICE-01494, indicated that the JU-Z2 Hitachi Control Box did not have a general authorization or exemption for exportation of camera conversion equipment to Iran.   Therefore, a specific license is required for such export to Iran. OFAC Enforcement searched their central database, which contains records data from 2002 to the present.   No license applications or licenses were found for Aegis.

In a reply dated November 15, 2008, Exodus Command Center replied that the JU-Z2 Control Box part is not a US Munitions List item under category XII(d) and therefore does not require a State Department license for export.

On November 18, 2008, the UCA received an email from Larrison using email account jim@aegiselect.com, with the following:

> Good afternoon. I was just notified by Hitachi today that the JU-Z2 controllers that you have ordered are back ordered and won't be in till Mid December.   I will keep you informed and let you know when we receive them.   If you have any questions please let me know.
>
> Thanks.
>
> Jim.

On December 2, 2008, Aegis shipped two (2) Hitachi-brand JU-Z2 camera controller devices to Vienna, Austria under Aegis Invoice Number 72344.   As stated, the total value of the attempted transaction for these camera controllers was US $ 2,685.00 (including freight and wire transfer fee).

On December 5, 2008, the item arrived in Vienna, Austria via UPS.

On December 8, 2008, Aegis' senior management first learned of the details of this

19

attempted transaction.   UPS contacted Aegis' senior management and stated that the address in Vienna, Austria was incorrect.   Aegis' senior management accessed Larrison's e-mail and learned for the first time that a possible re-export to Iran could occur.

Aegis' senior management took immediate action to stop the transaction, divert the products back to the United States, cancel the transaction, and refund any monies received.

On January 1, 2009, the UCA emailed Larrison at jim@aegiselect.com and wrote the following:

> Jim,
>
> I wanted to check on the progress of the JU-Z2.  Last I heard, they were supposed to be ready in Mid-December, but I never heard back from you.
>
> Thank you in advance,
>
> Harry.

On January 5, 2009, Aegis advised the purported purchaser that it could not ship a product whose ultimate destination was Iran.     On January 5, 2009, the UCA received an email from Larrison using email account jim@aegiselect.com, with the following:

> Harry,
>
> Good Morning and Happy New Year.  I have been on Vacation since December 23 and have not been able to check on the package. I have been notified by UPS that the address we were given to ship the product to Austria is invalid and they have been shipping product to Iran.   Due to Embargo's on Iran and Legal issues I will not be able to supply you with this product.   If you could please supply me with the bank name, Swift Code and account number you would like me to send the money back to I will do that for you.
>
> Best Regards,
>
> Jim.

On January 6, 2009, the UCA responded to Larrison at the following email address jim@aegiselect.com, with the following:

> Jim,

20

Thank you for your prompt response. I will forward you our bank information later. Can you please provide me the tracking number and the contact number at UPS, I am concerned that they have provided you with that information as that will interfere with future business for us. I know it comes as no surprise to who the end user of this product was. However, I do not know how UPS knows and now we will have to obtain a new address.

Thank you for your assistance in this matter,

Harry.

On January 7, 2009, the UCA received an email from Larrison using email account jim@aegiselect.com, with the following:

Harry,

Please send me your Swift and Bank account info so that I can send your money back. The tracking number was 1Z9V0F026796501037.

Thanks,

Jim.

At approximately 1:26 P.M., Larrison responded to the UCA with the following:

Thanks. I will be sending the money back to you shortly. All of the shipping info is the same as whats on the invoice. Due to the issues of this being sold to Iran I have been directed to no longer discuss any issues with you except the return of the money. Please keep all further conversations on this topic.

Thanks,

Jim.

On January 7, 2009, the UCA contacted Larrison telephonically, the following is a synopsis of the conversation between the UCA and Larrison, and is not verbatim of the recorded conversation. The UCA asked Larrison if the shipment went to Vienna, Austria. Larrison advised that the product went to Vienna, Austria. However, UPS said the address was undeliverable. Subsequently, UPS returned the package to AEGIS. Larrison advised that after UPS had returned the product his company reviewed the paperwork and advised they could not send the product, because the UCA wanted to send it to Iran. The UCA asked Larrison if he

could ship the product to another address.   Larrison said, "unfortunately not".   The UCA asked for the UPS tracking number, Larrison advised he would e-mail the UPS tracking number to the UCA.   Larrison asked the UCA for his Swift and Bank account information so he could return the money to the UCA.

On January 8, 2009, the UCA received an email from Larrison using email account jim@aegiselect.com.   Larrison requested to know the name on the bank account in order to wire the money to the UCA.   Larrison advised he had all of the bank account information.

On January 9, 2009, Aegis returned $2,470.00 United States Dollars into the undercover bank account of ICE SAC/PH.

Aegis initiated an informal investigation into the transaction and the conduct of Larrison. Larrison claimed ignorance of understanding or comprehending the impact of the transaction, despite Aegis' senior management e-mail memorandum dated June 26, 2008.   As a result, Aegis enrolled Larrison in export control training through the U.S. Department of Commerce, Bureau of Industry & Security (BIS).   Larrison attended a BIS sponsored training course on January 27-28, 2009, in Scottsdale, Arizona.   The transaction was not reported to law enforcement authorities.

On August 26, 2009, ICE agents visited Aegis' corporate offices.   Aegis' senior management was completely cooperative with the agents and answered all of their questions concerning the cancelled transaction to Austria and Larrison's illegal conduct.   By this time, Larrison was no longer an Aegis employee.

At the time of the offense, Aegis did not have written export compliance policies and procedures, export compliance controls, or an export compliance training program.   However, Larrison has admitted that he would have attempted to complete the transaction subject to the offense regardless of whether or not Aegis had a written export compliance program in place. Further, Larrison has admitted that he was not forced or coerced into committing his offense and that Aegis' senior management was not aware of the transaction before it was cancelled on December 8, 2008.

B.    Compliance Management Structure

Aegis shall restructure its management of all Aegis employees charged with the responsibility of implementing the compliance laws, regulations and programs listed in Section I. A. above within three (3) months of the date of this Agreement. In particular, all Aegis export compliance managers and/or security managers with the responsibility of safeguarding export controlled materials, including all "Empowered Officials" (hereinafter "EO") pursuant to the ITAR or "Facility Security Officers" (hereinafter "FSO") shall be supervised, evaluated and report directly to the EMC or other export/security compliance managers who report directly to the EMC.   All other Aegis export compliance employees or security employees with responsibility for safeguarding export controlled materials shall be supervised, evaluated and report directly to an export/security compliance manager who is directly or indirectly supervised by the EMC.   The purpose of this provision is to ensure that all Aegis export compliance and security personnel with responsibility for safeguarding export controlled materials can act to ensure full compliance with the laws, regulations and programs listed in Section I. A. above without fear of adverse action.

II.   Compliance Education &Training

A.    Annual Training

The Parties acknowledge that Aegis has already instituted a comprehensive export compliance program for its employees.   All Aegis employees who have access to or who manage Aegis employees who have access to export controlled materials shall receive annual training which at a minimum shall include the purpose of, their responsibilities under, and the potential consequences of violating the compliance laws, regulations and programs listed in Section I. A. above.   Aegis shall submit to the United States an outline of the training to be given along with any materials to be provided during the training at least one (1) month prior to the training.   If the United States does not object or provide comment as to the training outline and material prior to the actual training session, such training will be deemed approved by the United States.   The first annual training pursuant to this Remedial Action Plan shall take place within six (6) months of the date of this Agreement.

B.    Additional Manager Training

Aegis shall ensure that all export compliance managers and security managers, including all EOs, FSOs and their immediate assistants shall have sufficient

24

REMEDIAL ACTION PLAN
APPENDIX B

As part of its obligations pursuant to the Agreement, Aegis agrees to implement the Remedial Action Plan set forth below.   The United States acknowledges that Aegis has already implemented the majority of the Remedial Action Plan.   Aegis understands that the remedial actions set forth below impose obligations that are in addition to those imposed by existing laws, regulations and contractual obligations.   Nothing in the Agreement shall be construed to, or shall have the effect of, excusing any failure of Aegis to comply with the provisions of existing laws, regulations and contractual obligations.

I.      Compliance Management

    A.      Executive Manager of Compliance

        Aegis shall retain an outside consultant to be integrated within its corporate structure dedicated to the mission of ensuring that Aegis is in full compliance with all U.S. export laws and regulations and all U.S. programs directed at the protection of technology, including, but not limited to the following:

        1.      The Arms Export Control Act (hereinafter "AECA") and its implementing regulations contained in the International Traffic in Arms Regulations (hereinafter "ITAR"); and

        3.      The Export Administration Act/International Emergency Economic Powers Act (hereinafter "IEEPA") and its implementing regulations contained in the Export Administration Regulations (hereinafter "EAR") and the Office of Foreign Assets Control Regulations;

        Aegis shall submit to the government for approval the name and background of the outside consultant who will fill the position of executive manager of compliance (hereinafter "EMC") within thirty (30) days of the date of this Agreement.   The EMC shall be retained within three (3) months of the date of this Agreement.   The EMC shall have significant background, training and experience with the compliance laws, regulations and programs listed above. The EMC will report directly to the Chief Executive Officer of Aegis (hereinafter "CEO") and shall have access to Aegis's Board of Directors.   The EMC shall have the authority and the resources necessary to ensure that Aegis is in full compliance with the laws, regulations and programs listed above.   If the United States does not object or provide comment as to the EMC nominee before the retention date of the EMC, such EMC nominee will be deemed approved by the United States.

23

training and experience to ensure full compliance with the compliance laws, regulations and programs listed in Section I. A. above. The EMC, on behalf of Aegis, shall submit to the United States within six (6) months from the date of this Agreement, a written certification stating that Aegis has reviewed the background and training of all Aegis EOs, FSOs, and their immediate assistants, and that all Aegis EOs, FSOs, and their immediate assistants have sufficient training and experience to ensure full compliance with the compliance laws, regulations and programs listed in Section I. A. above. Aegis shall ensure that all export compliance and security managers and their immediate assistants regularly obtain additional training to improve and update their knowledge of the export compliance laws, regulations and programs listed in Section I. A. above.

C.      Record Keeping

Aegis shall keep a record of the training provided and the names and positions of the individuals who received training for a period of at least five (5) years. Each employee who received training shall sign a document verifying that he/she has received the required annual training and understands the purpose of, their responsibilities under, and the consequences of violating the export compliance laws, regulations and programs listed in Section I. A. above. Aegis shall also keep a record of all training received by all export compliance managers and security managers, including all EOs, FSOs and their immediate assistants for a period of at least ten (10) years.

III.    Mandatory Reporting of Violations

A.      AECA/ITAR Violations

During the Deferral Period, Aegis shall make an initial written report of all violations of the AECA/ITAR to the U.S. Department of State, Office of Defense Trade Controls Compliance, and the United States within two (2) weeks of the discovery of the violation. Aegis shall make written interim and/or final reports of all violations of the AECA/ITAR as directed by the U.S. Department of State, Office of Defense Trade Controls Compliance. During the Deferral Period, a copy of any interim or final reports shall also be provided to the United States.

B.      IEEPA/EAR Violations

During the Deferral Period, Aegis shall make an initial written report of all violations of the IEEPA/EAR to the U.S. Department of Commerce, Office of Export Enforcement, and the United States within two (2) weeks of the discovery of the violation. Aegis shall make written interim and final reports of all

violations of IEEPA/EAR as directed by the U.S. Department of Commerce, Office of Export Enforcement.   During the Deferral Period, a copy of any interim or final reports shall also be provided to the United States.

IV.    Compliance Investigation

    A.    Export Compliance

During the Deferral Period, Aegis shall conduct an export compliance audit of each Aegis business unit that has access to export controlled materials. The primary purpose of these audits will be to identify past and present violations of the compliance laws, regulations and programs listed in Section I. A. above.   The audits shall also determine whether each Aegis business unit has a sufficient program and resources to ensure full compliance with the export laws of the United States.   The audits shall also determine whether proper export licenses are in place and whether the terms, conditions, and provisos of Aegis' export licenses are being fully complied with.   Upon completion of the audit, a copy of the audit shall be provided to the United States.   Within three (3) months of the completion of each audit, the Chief Executive Officer of the Aegis business unit audited shall sign and submit to the United States a certification stating that a comprehensive audit has been completed.   All export compliance audits shall be completed within six (6) years of the date of this Agreement. All export compliance deficiencies shall be corrected within the Deferral Period.

V.    Compliance Certification

The Chief Executive Officer of Aegis shall sign a compliance certification stating the following:

"I, (Name)_____, (Title) _____, on behalf of Aegis Electronic Group, Inc. _____, do hereby certify that to the best of my knowledge and belief, Aegis Electronic Group, Inc. is in full compliance with the export laws of the United States.   I further certify that all violations of the export laws of the United States have been reported to the appropriate official(s) of the United States government."

The executed compliance certification shall be dated and notarized by a notary public.   The executed compliance certification shall be forwarded to the United States no later than the last day of the Deferral Period.

# Exhibit F

| | |
|---|---|
| **From:** | McCarten, Timothy (DC) |
| **Sent:** | Friday, May 19, 2023 5:10 PM |
| **To:** | Wolf, Lesley (USADE); Hudson, Carly (USADE) |
| **Cc:** | 'Christopher Clark'; Salerno, Matthew (NY); McManus, Brian (BN) |
| **Subject:** | RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL |
| **Attachments:** | 2023.05.19 Agreement (PRELIMINARY DRAFT - CONFIDENTIAL).pdf; 2023.05.19 Agreement (PRELIMINARY DRAFT - CONFIDENTIAL).docx |

**CONFIDENTIAL**
**SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)**

Lesley and Carly,

Further to your emails, attached please find a draft agreement for discussion.

We are sharing the enclosed draft in an attempt to advance our discussions about a potential non-trial resolution.  Accordingly this communication and the enclosure are subject to Federal Rules of Evidence 408 and 410, as well as Federal Rule of Criminal Procedure 11(f), and neither the content of the enclosed draft nor the fact of its transmission can be used to prove or disprove the validity of a disputed claim or to impeach Mr. Biden by a prior inconsistent statement or a contradiction. Mr. Biden does not intend to waive any such privileges in this transmission or in any other correspondence with the Department, and any such waivers should be construed as inadvertent.

Best,

Tim

**Timothy H. McCarten**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.1036

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 8:59 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)                                ; McCarten, Timothy (DC) <Timothy.McCarten@lw.com>; Salerno, Matthew (NY) <matthew.salerno@lw.com>; McManus, Brian (BN) <Brian.McManus@lw.com>
**Subject:** Re: [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Thanks Lesley,

We will use this as a template and understand the points you raise and will address them.

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP

250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Friday, May 19, 2023 8:52:15 AM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)                              ; Timothy.McCarten@lw.com <Timothy.McCarten@lw.com>;
matthew.salerno@lw.com <matthew.salerno@lw.com>; Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

**<u>CONFIDENTIAL</u>**
**<u>SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)</u>**


Chris,

After talking it through on this end, we thing Aegis might be the best exemplar- while it is a
DPA, it seems like substituting in "Diversion" in most places for "Deferral" would be a good
starting point.  It sounds like you already have it- but am attaching it and copying the team as I
know you are a few hours behind.  A couple of things to flag in here.  First, there is a whole
section on cooperation here, which is not part of our discussions.  Also thinking about the breach
point and how to best address the concerns you raised.  Instead of a thirty day back and forth, we
suggest including notice from the government and if contested, then presented to the Court for
determination in the same way a supervised release violation might be handled.

I am tied up much of the morning and expect to free up around noon, but can step out for a quick
call if it is important to connect sooner.

-Lesley


---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 12:22 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Lesley and Carly,

I've reviewed your email preliminarily with my client. We will work on a draft for discussion.  If you can send an
exemplar in the morning we can try to conform our draft to it to make things as easy to compare as possible.

Thanks for your continuing efforts,

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor

New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Thursday, May 18, 2023 10:02:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

<u>**CONFIDENTIAL**</u>
<u>**SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)**</u>

Chris,

Thanks for taking the time to speak with us earlier this evening.  Below please find what we would consider to be the key terms of any potential diversion agreement.  A number of these were essentially included in the NPA draft you sent to us earlier today.  As I said during our call, the below list is preliminary in nature and subject to change.  We have not discussed or obtained approval for these terms, but are presenting them in attempt to advance our discussions about a potential non-trial resolution and accordingly this communication is subject to the protections of Fed. R. Crim. P. 11(f) and FREs 408 and 410.  We understand you will work with your team to incorporate them into a draft agreement and will identify for us anything that you immediately see as problematic.  I can also check in the morning to see if there is a useful form we have that will assist in drafting.  Please let me know if you want me to directly copy the Latham team- otherwise, I will just send to you to forward along.

(1)  Pre-trial Diversion Agreement;

(2)  Agreement to waive indictment (which requires an in-court proceeding- understand your request as to this);

(3)  Information filed charging 922(g)(3) and the tax misdemeanors;

(4)  Agree to dismiss after three years;

(5)  On non-reporting supervision by Probation Office in Delaware during that time;

(6)  Diversion agreement will be public record and filed in the criminal case;

(7)  Diversion agreement will specifically reference both prior drug use and current sobriety;

(8)  There will be some conditions of the diversion agreement, to include no drug use, drug testing, etc.;

(9)  A more comprehensive statement of facts than what was included in your initial draft;

(10)  Lifetime firearms ban (consent to NICS entry that he is prohibited);

(11)  No contradictory public statements regarding guilt;

(12)  Remedies for breaches- remove all the 30-day requirements, but omit that the US Attorney has "sole discretion" to determine whether there is a breach.  That leaves it up to the Court akin to a supervised release violation.

Other than 10-12 tomorrow (EST), we are around and available to speak.

3

-Lesley

# Exhibit G

| | |
|---|---|
| **From:** | Christopher Clark |
| **To:** | Wolf, Lesley (USADE) |
| **Cc:** | Hudson, Carly (USADE) |
| **Subject:** | RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL |
| **Date:** | Tuesday, May 30, 2023 10:14:00 AM |
| **Attachments:** | image001.png |

Lesley and Carly,

I hope you had a good weekend.  Just checking in, it's been some time since we spoke.

Thanks,

Chris

Christopher J. Clark

Clark Smith Villazor LLP

250 West 55th Street, 30th Floor

New York, New York 10019

**O** (212) 582-4400 | **D** (212) 377-0853



**From:** Wolf, Lesley (USADE)
**Sent:** Tuesday, May 23, 2023 6:28 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Just freeing up. Can you give me 5?

Get Outlook for iOS

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Tuesday, May 23, 2023 6:22:56 PM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

I hate to pester but I think it would be beneficial if we could speak tonight. Please let me know. Thanks.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor

New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Tuesday, May 23, 2023 5:56:05 PM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Ok. My client has asked that I speak to you further. Are you able to speak?  I may have some slight flexibility.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Tuesday, May 23, 2023 5:31:54 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Chris,

I got your text message.  As we indicated in our emails and discussions we did not have approval for a pre-trial diversion agreement.  As you know, that authority rests with the US Attorney who ultimately did not approve continued discussions for diversion relating to the tax charges.

-Lesley

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Saturday, May 20, 2023 1:13 PM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

115p?

**Christopher J. Clark**
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019

**O** (212) 582-4400

www.csvllp.com

---

**From:** Wolf, Lesley (USADE)
**Sent:** Saturday, May 20, 2023 1:10:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Do you have a minute to talk?  Will be very brief.


Get Outlook for iOS

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 6:48:56 PM
**To:** Wolf, Lesley (USADE)                    ; Timothy.McCarten@lw.com
<Timothy.McCarten@lw.com>; Hudson, Carly (USADE)
**Cc:** matthew.salerno@lw.com <matthew.salerno@lw.com>; Brian.McManus@lw.com
<Brian.McManus@lw.com>
**Subject:** [EXTERNAL] Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 -
CONFIDENTIAL

Thanks.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Friday, May 19, 2023 6:15:58 PM
**To:** Timothy.McCarten@lw.com <Timothy.McCarten@lw.com>; Hudson, Carly (USADE)

**Cc:** Christopher Clark <clark@csvllp.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>;
Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Received. Thanks Tim.
We will take a look at this.

Lesley

Get Outlook for iOS

---

**From:** Timothy.McCarten@lw.com <Timothy.McCarten@lw.com>
**Sent:** Friday, May 19, 2023 5:09:35 PM
**To:** Wolf, Lesley (USADE)                        ; Hudson, Carly (USADE)
**Cc:** clark@csvllp.com <clark@csvllp.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>;
Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** [EXTERNAL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

**CONFIDENTIAL**
**SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)**

Lesley and Carly,

Further to your emails, attached please find a draft agreement for discussion.

We are sharing the enclosed draft in an attempt to advance our discussions about a potential non-trial resolution.   Accordingly this communication and the enclosure are subject to Federal Rules of Evidence 408 and 410, as well as Federal Rule of Criminal Procedure 11(f), and neither the content of the enclosed draft nor the fact of its transmission can be used to prove or disprove the validity of a disputed claim or to impeach Mr. Biden by a prior inconsistent statement or a contradiction. Mr. Biden does not intend to waive any such privileges in this transmission or in any other correspondence with the Department, and any such waivers should be construed as inadvertent.

Best,

Tim

**Timothy H. McCarten**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.1036

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 8:59 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)                        ; McCarten, Timothy (DC)
<Timothy.McCarten@lw.com>; Salerno, Matthew (NY) <matthew.salerno@lw.com>; McManus,
Brian (BN) <Brian.McManus@lw.com>
**Subject:** Re: [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 -
CONFIDENTIAL

Thanks Lesley,

We will use this as a template and understand the points you raise and will address them.

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Friday, May 19, 2023 8:52:15 AM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)                               ; Timothy.McCarten@lw.com
<Timothy.McCarten@lw.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>;
Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

## CONFIDENTIAL
## SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)

Chris,

After talking it through on this end, we thing Aegis might be the best exemplar-
while it is a DPA, it seems like substituting in "Diversion" in most places for
"Deferral" would be a good starting point.  It sounds like you already have it- but
am attaching it and copying the team as I know you are a few hours behind.  A
couple of things to flag in here.  First, there is a whole section on cooperation
here, which is not part of our discussions.  Also thinking about the breach point
and how to best address the concerns you raised.  Instead of a thirty day back and
forth, we suggest including notice from the government and if contested, then
presented to the Court for determination in the same way a supervised release
violation might be handled.

I am tied up much of the morning and expect to free up around noon, but can step
out for a quick call if it is important to connect sooner.

-Lesley

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 12:22 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)

**Subject:** [EXTERNAL] Re: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Lesley and Carly,

I've reviewed your email preliminarily with my client. We will work on a draft for discussion.  If you can send an exemplar in the morning we can try to conform our draft to it to make things as easy to compare as possible.

Thanks for your continuing efforts,

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Thursday, May 18, 2023 10:02:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

## CONFIDENTIAL
## SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)

Chris,

Thanks for taking the time to speak with us earlier this evening.  Below please find what we would consider to be the key terms of any potential diversion agreement.  A number of these were essentially included in the NPA draft you sent to us earlier today.  As I said during our call, the below list is preliminary in nature and subject to change.  We have not discussed or obtained approval for these terms, but are presenting them in attempt to advance our discussions about a potential non-trial resolution and accordingly this communication is subject to the protections of Fed. R. Crim. P. 11(f) and FREs 408 and 410.  We understand you will work with your team to incorporate them into a draft agreement and will identify for us anything that you immediately see as problematic.  I can also check in the morning to see if there is a useful form we have that will assist in drafting.  Please let me know if you want me to directly copy the Latham team- otherwise, I will just send to you to forward along.

  (1)  Pre-trial Diversion Agreement;

(2)  Agreement to waive indictment (which requires an in-court proceeding- understand your request as to this);

(3)  Information filed charging 922(g)(3) and the tax misdemeanors;

(4)  Agree to dismiss after three years;

(5)  On non-reporting supervision by Probation Office in Delaware during that time;

(6)  Diversion agreement will be public record and filed in the criminal case;

(7)  Diversion agreement will specifically reference both prior drug use and current sobriety;

(8)  There will be some conditions of the diversion agreement, to include no drug use, drug testing, etc.;

(9)  A more comprehensive statement of facts than what was included in your initial draft;

(10)   Lifetime firearms ban (consent to NICS entry that he is prohibited);

(11)   No contradictory public statements regarding guilt;

(12)   Remedies for breaches- remove all the 30-day requirements, but omit that the US Attorney has "sole discretion" to determine whether there is a breach.  That leaves it up to the Court akin to a supervised release violation.

Other than 10-12 tomorrow (EST), we are around and available to speak.

-Lesley

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# Exhibit H

| | |
|---|---|
| **From:** | Wolf, Lesley (USADE) |
| **To:** | Christopher Clark |
| **Subject:** | RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL |
| **Date:** | Thursday, June 1, 2023 4:19:32 PM |
| **Attachments:** | image001.png |

Chris,

That should work.  Just a warning- I wanted to put you in a conference room that was a little off of the beaten path here to afford you some privacy to communicate with your client and the conference room tends to be freezing.  So I'd bring a jacket or sweater.

-Lesley

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Thursday, June 1, 2023 12:45 PM
**To:** Wolf, Lesley (USADE)
**Subject:** [EXTERNAL] RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Thanks Lesley,

Might say 1p ET work?  I think just Matt would come as well.

Let me know,

Chris

Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O** (212) 582-4400 | **D** (212) 377-0853



**From:** Wolf, Lesley (USADE)
**Sent:** Thursday, June 1, 2023 12:42 PM
**To:** Christopher Clark <clark@csvllp.com>
**Subject:** RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Chris,

Think it would be great if you could come down tomorrow.  Flexible on start time here.

-Lesley

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Thursday, June 1, 2023 11:56 AM
**To:** Wolf, Lesley (USADE)
**Subject:** [EXTERNAL] RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Hey Lesley,

Just checking in.

Chris

Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O** (212) 582-4400 | **D** (212) 377-0853



**From:** Wolf, Lesley (USADE)
**Sent:** Tuesday, May 30, 2023 11:06 AM
**To:** Christopher Clark <clark@csvllp.com>
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Chris-

Does 1130 work to talk?

Lesley

Get Outlook for iOS

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Tuesday, May 30, 2023 10:14:55 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Lesley and Carly,

I hope you had a good weekend.  Just checking in, it's been some time since we spoke.

Thanks,

Chris

Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O** (212) 582-4400 | **D** (212) 377-0853



**From:** Wolf, Lesley (USADE)
**Sent:** Tuesday, May 23, 2023 6:28 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Just freeing up. Can you give me 5?

Get Outlook for iOS

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Tuesday, May 23, 2023 6:22:56 PM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 -
CONFIDENTIAL

I hate to pester but I think it would be beneficial if we could speak tonight. Please let me know.
Thanks.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Tuesday, May 23, 2023 5:56:05 PM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Ok. My client has asked that I speak to you further. Are you able to speak?  I may have some slight flexibility.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Tuesday, May 23, 2023 5:31:54 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** RE: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Chris,

I got your text message.  As we indicated in our emails and discussions we did not have approval for a pre-trial diversion agreement.  As you know, that authority rests with the US Attorney who ultimately did not approve continued discussions for diversion relating to the tax charges.

-Lesley

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Saturday, May 20, 2023 1:13 PM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

115p?

**Christopher J. Clark**
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O** (212) 582-4400

www.csvllp.com

---

**From:** Wolf, Lesley (USADE)
**Sent:** Saturday, May 20, 2023 1:10:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Do you have a minute to talk?  Will be very brief.


Get Outlook for iOS

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 6:48:56 PM
**To:** Wolf, Lesley (USADE)                          ; Timothy.McCarten@lw.com
<Timothy.McCarten@lw.com>; Hudson, Carly (USADE)
**Cc:** matthew.salerno@lw.com <matthew.salerno@lw.com>; Brian.McManus@lw.com
<Brian.McManus@lw.com>
**Subject:** [EXTERNAL] Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 -
CONFIDENTIAL

Thanks.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Friday, May 19, 2023 6:15:58 PM
**To:** Timothy.McCarten@lw.com <Timothy.McCarten@lw.com>; Hudson, Carly (USADE)

**Cc:** Christopher Clark <clark@csvllp.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>;
Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** Re: [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Received. Thanks Tim.
We will take a look at this.

Lesley

Get Outlook for iOS

---

**From:** Timothy.McCarten@lw.com <Timothy.McCarten@lw.com>
**Sent:** Friday, May 19, 2023 5:09:35 PM
**To:** Wolf, Lesley (USADE)                          ; Hudson, Carly (USADE)
**Cc:** clark@csvllp.com <clark@csvllp.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>;
Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** [EXTERNAL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

**CONFIDENTIAL**
**SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)**

Lesley and Carly,

Further to your emails, attached please find a draft agreement for discussion.

We are sharing the enclosed draft in an attempt to advance our discussions about a potential non-trial resolution.   Accordingly this communication and the enclosure are subject to Federal Rules of Evidence 408 and 410, as well as Federal Rule of Criminal Procedure 11(f), and neither the content of the enclosed draft nor the fact of its transmission can be used to prove or disprove the validity of a disputed claim or to impeach Mr. Biden by a prior inconsistent statement or a contradiction. Mr. Biden does not intend to waive any such privileges in this transmission or in any other correspondence with the Department, and any such waivers should be construed as inadvertent.

Best,

Tim

**Timothy H. McCarten**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.1036

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 8:59 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)                          ; McCarten, Timothy (DC) <Timothy.McCarten@lw.com>; Salerno, Matthew (NY) <matthew.salerno@lw.com>; McManus, Brian (BN) <Brian.McManus@lw.com>
**Subject:** Re: [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Thanks Lesley,

We will use this as a template and understand the points you raise and will address them.

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019

**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Friday, May 19, 2023 8:52:15 AM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)                          ; Timothy.McCarten@lw.com
<Timothy.McCarten@lw.com>; matthew.salerno@lw.com <matthew.salerno@lw.com>;
Brian.McManus@lw.com <Brian.McManus@lw.com>
**Subject:** [EXTERNAL EMAIL] RE: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

<u>**CONFIDENTIAL**</u>
<u>**SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)**</u>

Chris,

After talking it through on this end, we thing Aegis might be the best exemplar-
while it is a DPA, it seems like substituting in "Diversion" in most places for
"Deferral" would be a good starting point.  It sounds like you already have it- but
am attaching it and copying the team as I know you are a few hours behind.  A
couple of things to flag in here.  First, there is a whole section on cooperation
here, which is not part of our discussions.  Also thinking about the breach point
and how to best address the concerns you raised.  Instead of a thirty day back and
forth, we suggest including notice from the government and if contested, then
presented to the Court for determination in the same way a supervised release
violation might be handled.

I am tied up much of the morning and expect to free up around noon, but can step
out for a quick call if it is important to connect sooner.

-Lesley

---

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Friday, May 19, 2023 12:22 AM
**To:** Wolf, Lesley (USADE)
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL] Re: In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

Lesley and Carly,

I've reviewed your email preliminarily with my client. We will work on a draft for discussion.  If you
can send an exemplar in the morning we can try to conform our draft to it to make things as easy to
compare as possible.

Thanks for your continuing efforts,

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

---

**From:** Wolf, Lesley (USADE)
**Sent:** Thursday, May 18, 2023 10:02:52 PM
**To:** Christopher Clark <clark@csvllp.com>
**Cc:** Hudson, Carly (USADE)
**Subject:** [EXTERNAL EMAIL] In re Grand Jury Subpoenas 19-3-LFWS-V-176 - 179 - CONFIDENTIAL

## CONFIDENTIAL
## SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)

Chris,

Thanks for taking the time to speak with us earlier this evening.  Below please find what we would consider to be the key terms of any potential diversion agreement.  A number of these were essentially included in the NPA draft you sent to us earlier today.  As I said during our call, the below list is preliminary in nature and subject to change.  We have not discussed or obtained approval for these terms, but are presenting them in attempt to advance our discussions about a potential non-trial resolution and accordingly this communication is subject to the protections of Fed. R. Crim. P. 11(f) and FREs 408 and 410.  We understand you will work with your team to incorporate them into a draft agreement and will identify for us anything that you immediately see as problematic.  I can also check in the morning to see if there is a useful form we have that will assist in drafting.  Please let me know if you want me to directly copy the Latham team-otherwise, I will just send to you to forward along.

(1)  Pre-trial Diversion Agreement;

(2)  Agreement to waive indictment (which requires an in-court proceeding-understand your request as to this);

(3)  Information filed charging 922(g)(3) and the tax misdemeanors;

(4)  Agree to dismiss after three years;

(5)  On non-reporting supervision by Probation Office in Delaware during that time;

(6)  Diversion agreement will be public record and filed in the criminal case;

(7)  Diversion agreement will specifically reference both prior drug use and current sobriety;

(8)  There will be some conditions of the diversion agreement, to include no drug use, drug testing, etc.;

(9)  A more comprehensive statement of facts than what was included in your initial draft;

(10)   Lifetime firearms ban (consent to NICS entry that he is prohibited);

(11)   No contradictory public statements regarding guilt;

(12)   Remedies for breaches- remove all the 30-day requirements, but omit that the US Attorney has "sole discretion" to determine whether there is a breach.  That leaves it up to the Court akin to a supervised release violation.

Other than 10-12 tomorrow (EST), we are around and available to speak.

-Lesley

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

# Exhibit I

**From:**        Christopher Clark <clark@csvllp.com>
**Sent:**        Friday, June 2, 2023 9:43 PM
**To:**          Wolf, Lesley (USADE)
**Cc:**          Salerno, Matthew (NY); McCarten, Timothy (DC); McManus, Brian (BN)

Hi Leslie,

Thanks again for taking the time to work with us today, we really appreciate it.  Two issues left to raise.

We would request that Diversion Agreement, in Paragraph 15, be revised to --

"The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes arising from the conduct generally described in the attached Statement of Facts (attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day.  This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses."

This language or its functional equivalent is very critical for us and I am happy to discuss when convenient for you if necessary.

We would also request, as we discussed, that the Plea Agreement, in Paragraph 5a conclude with the sentence --

"[T]he parties reserve the right to enter into a revised stipulation on this issue after consultation and before the preparation of a final Pre Sentence Report."

Thank you so much for your consideration, I am available all weekend and on Monday at any time.

Chris

Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street
New York, NY 10019
(212) 582-4400(o)

# Exhibit J

| | |
|---|---|
| **From:** | Wolf, Lesley (USADE) |
| **To:** | Christopher Clark |
| **Subject:** | [EXTERNAL EMAIL] Docs |
| **Date:** | Monday, June 5, 2023 5:25:53 PM |
| **Attachments:** | RedlineJune5TaxFacts.pdf |
| | RedlineJune5TaxFacts.docx |
| | June5GunDiversion.pdf |
| | RedlineJune5GunDiversion.docx |
| | June5GunInformation.pdf |
| | June5TaxPleaAgreementwithAttachA.pdf |
| | June5TaxInformation.pdf |

---

## CONFIDENTIAL
## SUBJECT TO FRE 408, FRE 410, AND FED. R. CRIM. P. 11(f)

Chris,

Attached please find the relevant documents.  Where there were edits since Friday, I am sending a redline.  Otherwise, just the current version of the documents as of this afternoon.  I have noted in the tax facts that there is still the open question relating to the inclusion of and precise language relating to 2019.

To make these easier to read and review, I have not watermarked them, but they are being provided confidentially and subject to FRE 408, FRE 410 and Fed. R. Crim. P. 11(f).

I am happy to discuss these with you later tonight or tomorrow.

-Lesley

*Lesley F. Wolf*
**Assistant United States Attorney**
**Section Chief, Economic Crimes**
**District of Delaware**
**1313 N. Market Street, Suite 400**
**Wilmington, DE 19801**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 23- |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## DIVERSION AGREEMENT

I.   PARTIES

     This Diversion Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware and Robert Hunter Biden ("Biden"), collectively referred to herein as "Parties," by and through their authorized representatives.

II.   TERMS AND CONDITIONS OF DIVERSION AGREEMENT

1.    The term of this Agreement shall be twenty-four (24) months, beginning on the date of signing this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.    The twenty-four (24) month period following the execution of this Agreement shall be known as the "Diversion Period."

3.    Biden shall waive indictment and agree that the United States will file an information (hereinafter "the Information") in the United States District Court for the District of Delaware, charging Biden with one count of knowingly possessing a

firearm while then an unlawful user of or person addicted to a controlled substance, in violation of Title 18, United States Code, Section 922(g)(3).

4.      The United States agrees that if Biden complies with all of his respective obligations under this Agreement, then the United States, within thirty (30) days after the expiration of the Diversion Period, will file a motion with the Court seeking the dismissal of the Information.

5.      Biden agrees that the United States has probable cause to bring the charges in the Information, and that the charges are not frivolous or made in bad faith. Biden also agrees that if at a future time the United States should move to dismiss the Information pursuant to this Agreement, Biden would not be a "prevailing party" with regard to the Information. Biden further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

6.      In light of the fact that Biden has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached Appendix A (hereinafter "Statement of Facts"), and taking into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety, and in consideration for the other terms recited herein, the United States shall divert this matter in the manner set forth in this Agreement pursuant to the terms and conditions set forth herein.

7.      Biden agrees to waive all defenses based on the statute of limitations with respect to the charge set forth in the Information and any other federal firearms

charges that could be brought with respect to the conduct set forth in the Statement of Facts  and agrees that the applicable statute of limitations period for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A) shall be tolled during the Diversion Period. Biden further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

8.      It is the intent of this Agreement for Biden to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware with respect to the charge set forth in the Information, and for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A).

Commitments and Undertakings of Mr. Biden

9.      It is understood that under the terms of this Agreement, Biden shall:

   a. Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)), during the Diversion Period or at any time thereafter; and

   b. Consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that he will be denied via NICS if he attempts to legally purchase another firearm.

<u>Additional Conditions Applicable to Diversion Period</u>

10.     Without limiting or otherwise modifying any of the Commitments and Undertakings set forth in the preceding paragraph, it is further understood that during the Diversion Period, Biden shall:

    a.  Be subject to non-reporting supervision by the United States Probation and Pretrial Services Office in this District.

    b.  Refrain from unlawfully consuming or possessing any controlled substance and be subject to drug-testing on a periodic basis as determined by the Probation and Pretrial Services Office.

    c.  Not commit a violation of any federal, state, or local law.

<u>Statement of Facts</u>

11.     Biden acknowledges and agrees that the Statement of Facts as set forth in Attachment A, is truthful and accurate.

12.     Biden agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts (Attachment A) associated with this Agreement. Any contradictory statement by Biden, or by an agent for Biden, shall constitute a violation of this Agreement. If the United States believes such a contradictory statement has been made and that such statement constitutes a knowing material breach of this Agreement, then the United States may seek a determination regarding such alleged breach pursuant to the procedures set forth in paragraph 14, below.

4

<u>Breach of Agreement</u>

13.     Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

14.     If the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for the supervision of this Agreement. Upon notice to Biden, the United States may seek a determination on a preponderance of the evidence presented to such District Judge. Biden shall have the right to present evidence to rebut any such claim in such proceeding. If after that process the judge overseeing such process makes a final determination that Biden committed a knowing material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

   a. **Remedy 1** – The United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

   b. **Remedy 2** – The United States may prosecute Biden for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A), perjury; and obstruction of justice; and any such prosecution that is not time-barred by the applicable statute of limitations

on the date of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. The United States is not required to offer Remedy 1 before proceeding to Remedy 2 if, in its sole determination, the nature and seriousness of the breach warrants termination of this Agreement.

Agreement Not to Prosecute

15.    The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes described in the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day. This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

General Terms and Conditions

16.    All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement, the attached Statement of Facts (Attachment A), the Information, and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

17.    The parties stipulate and agree that the conduct set forth in the Statement of Facts (Attachment A) does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 to the offenses arising under Title 26 of the United States Code as set forth in the Information filed this same day.

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

19.     This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications or additions of this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

In Witness Whereof, the Parties, through their duly authorized representatives, hereunder set their hands.


ON BEHALF OF THE UNITED STATES OF AMERICA

[SIGNATURE BLOCK FOR THE UNITED STATES]


ON BEHALF OF ROBERT HUNTER BIDEN

[SIGNATURE BLOCK FOR MR. BIDEN

8

# ATTACHMENT A

# STATEMENT OF FACTS

Robert Hunter Biden ("Biden") began using crack and powder cocaine in or around October 2016, became a habitual user in 2017, and continued to use frequently and regularly through approximately May 2019.  During that time, he enrolled in multiple in- and outpatient rehabilitation programs with varying degrees of temporary success but did not achieve long-term sobriety.  Instead, his drug use overall escalated.

Biden moved to California in the spring of 2018, where he used crack cocaine on a regular basis, at times as frequently as every 15 minutes.  He enrolled in an additional rehabilitation program in California from August 16-27, 2018, and then lived with a sober companion from August 27-September 2, 2018.  He relapsed shortly thereafter, and his crack cocaine use continued when he returned to the East Coast in the fall of 2018.

On October 12, 2018, Biden visited StarQuest Shooters & Survival Supply, a federally licensed firearms dealer in Wilmington, Delaware.  He purchased a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Firearm"), along with several other items, including an HKS speed loader for that firearm and a box of ammunition.

When he purchased the Firearm, Biden completed an ATF Form 4473, which required him to answer the question "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"  Biden answered "No," even though he was a user of, and addicted to, crack cocaine at the time.  RHB certified that his "answers in Section A" were "true, correct, and complete," and that he understood that a person who answers "yes" to that question is "prohibited from purchasing or receiving a firearm."

Biden possessed the Firearm from October 12-23, 2018.  During that time, he purchased and used crack cocaine regularly.  On October 23, 2018, the Firearm was found in Biden's vehicle along with drug remnants and paraphernalia.  The Firearm was subsequently discarded in a trashcan outside Janssen's Market in Greenville, Delaware and later recovered by law enforcement.

# Exhibit K

**From:** Christopher Clark
**To:** Wolf, Lesley (USADE)
**Subject:** Re: [EXTERNAL EMAIL] Revised statement of facts
**Date:** Tuesday, June 6, 2023 5:56:09 PM

Thank you.

Yes. The language you sent works. I spoke to my client and he is good as well. I really appreciate it.

Chris

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

**From:** Wolf, Lesley (USADE)
**Sent:** Tuesday, June 6, 2023 5:47:26 PM
**To:** Christopher Clark <clark@csvllp.com>
**Subject:** RE: [EXTERNAL EMAIL] Revised statement of facts

Thanks- tomorrow fine for that.

How about this-

The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes **encompassed by** the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day.

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Tuesday, June 6, 2023 5:37 PM
**To:** Wolf, Lesley (USADE)
**Subject:** [EXTERNAL] Re: Revised statement of facts

Brian is driving but will send me the facts as soon as he's able re 2019.

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

**From:** Wolf, Lesley (USADE)

**Sent:** Tuesday, June 6, 2023 1:30:01 PM
**To:** Christopher Clark <clark@csvllp.com>
**Subject:** [EXTERNAL EMAIL] Revised statement of facts

*Lesley F. Wolf*
**Assistant United States Attorney**
**Section Chief, Economic Crimes**
**District of Delaware**
**1313 N. Market Street, Suite 400**
**Wilmington, DE 19801**

# Exhibit L

**From:**        Wolf, Lesley (USADE)
**To:**          Christopher Clark
**Subject:**     [EXTERNAL EMAIL] Current documents
**Date:**        Wednesday, June 7, 2023 6:56:28 PM
**Attachments:** RedlineJune7TaxPleaAgreement.docx
                 RedlineJune7GunDiversion.docx
                 June7TaxFactsRedline.docx
                 June7TaxInformation.docx
                 June7GunInformation.docx

---

Chris-

Take a look at these- all in redline where there have been edits since we last spoke.  If you have
proposed edits, please let me know.  Clean copies will then follow.  Thanks.

*Lesley F. Wolf*

**Assistant United States Attorney**
**Section Chief, Economic Crimes**
**District of Delaware**
**1313 N. Market Street, Suite 400**
**Wilmington, DE 19801**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |

Criminal Action No. 23-

**DIVERSION AGREEMENT**

## I.  PARTIES

This Diversion Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware and Robert Hunter Biden ("Biden"), collectively referred to herein as "Parties," by and through their authorized representatives.

## II.  TERMS AND CONDITIONS OF DIVERSION AGREEMENT

1.  The term of this Agreement shall be twenty-four (24) months, beginning on the date of ~~signing~~approval of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.  The twenty-four (24) month period following the execution and approval of this Agreement shall be known as the "Diversion Period."

3.  Biden shall waive indictment and agree that the United States will file an information (hereinafter "the Information") in the United States District Court for the District of Delaware, charging Biden with one count of knowingly possessing a

firearm while then an unlawful user of or person addicted to a controlled substance, in violation of Title 18, United States Code, Section 922(g)(3).

4.      The United States agrees that if Biden complies with all of his respective obligations under this Agreement, then the United States, within thirty (30) days after the expiration of the Diversion Period, will file a motion with the Court seeking the dismissal of the Information.

5.      Biden agrees that the United States has probable cause to bring the charges in the Information, and that the charges are not frivolous or made in bad faith. Biden also agrees that if at a future time the United States should move to dismiss the Information pursuant to this Agreement, Biden would not be a "prevailing party" with regard to the Information. Biden further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

6.      In light of the fact that Biden has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached ~~Appendix~~ Attachment A (hereinafter "Statement of Facts~~"~~ (Attachment A)", and taking into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety, and in consideration for the other terms recited herein, the United States shall divert this matter in the manner set forth in this Agreement pursuant to the terms and conditions set forth herein.

7.      Biden agrees to waive all defenses based on the statute of limitations with respect to the charge set forth in the Information and any other federal firearms

charges that could be brought with respect to the conduct set forth in the Statement of Facts (Attachment A) and agrees that the applicable statute of limitations period for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A) shall be tolled during the Diversion Period. Biden further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

8.      It is the intent of this Agreement for Biden to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware with respect to the charge set forth in the Information, and for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A).

<u>Commitments and Undertakings of Mr. Biden</u>

9.      It is understood that under the terms of this Agreement, Biden shall:

    a.  Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)), during the Diversion Period or at any time thereafter; and

    b.  Consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that he will be denied via NICS if he attempts to legally purchase another firearm.

3

<u>Additional Conditions Applicable to Diversion Period</u>

10.   Without limiting or otherwise modifying any of the Commitments and Undertakings set forth in the preceding paragraph, it is further understood that during the Diversion Period, Biden shall:

   a.  Be subject to non-reporting supervision by the United States Probation and Pretrial Services Office in this District.

   b.  Refrain from unlawfully consuming or possessing any controlled substance and be subject to drug-testing on a periodic basis as determined by the <u>United States</u> Probation and Pretrial Services Office.

   c.  Not commit a violation of any federal, state, or local law.

<u>Statement of Facts</u>

11.   Biden acknowledges and agrees that the Statement of Facts as set forth in Attachment A, is truthful and accurate.

12.   Biden agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts (Attachment A) associated with this Agreement. Any contradictory statement by Biden, or by an agent for Biden, shall constitute a violation of this Agreement. If the United States believes such a contradictory statement has been made and that such statement constitutes a knowing material breach of this Agreement, then the United States may seek a determination regarding such alleged breach pursuant to the procedures set forth in paragraph 14, below.

4

<u>Breach of Agreement</u>

13.    Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

14.    If the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for the supervision of this Agreement.  Upon notice to Biden, the United States may seek a determination on a preponderance of the evidence presented to such District Judge.  Biden shall have the right to present evidence to rebut any such claim in such proceeding.  If after that process the judge overseeing such process makes a final determination that Biden committed a knowing material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

    a.  **Remedy 1** – The United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

    b.  **Remedy 2** – The United States may prosecute Biden for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A), perjury; and obstruction of justice; and any such prosecution that is not time-barred by the applicable statute of limitations

5

on the date of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. The United States is not required to offer Remedy 1 before proceeding to Remedy 2 if, in its sole determination, the nature and seriousness of the breach warrants termination of this Agreement.

Agreement Not to Prosecute

15.    ~~The United States agrees not to criminally prosecute Biden, outside the terms of this Agreement, for any federal crimes arising from the conduct generally described in the attached Statement of Facts (Attachment A) or the offenses arising under Title 26 of the United States Code as set forth in the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day.~~ _The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes encompassed by the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day._  This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

General Terms and Conditions

16.    All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement, the attached Statement of Facts (Attachment A), the

Information, and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

17.     The parties stipulate and agree that the conduct set forth in the Statement of Facts (Attachment A) does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 to the offenses arising under Title 26 of the United States Code as set forth in the Information filed in a separate case matter this same day.

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

19.     This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications of or additions to this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

In   Witness   Whereof,   the   Parties,   through   their   duly   authorized representatives, hereunder set their hands.


ON BEHALF OF THE UNITED STATES OF AMERICA

[SIGNATURE BLOCK FOR THE UNITED STATES]


ON BEHALF OF ROBERT HUNTER BIDEN

[SIGNATURE BLOCK FOR MR. BIDEN

SIGNATURE BLOCK FOR COUNSEL FOR DEFENDANT


APPROVED BY:


_____
Margaret M. Bray
Chief, United States Probation Officer,
District of Delaware

8

**ATTACHMENT A**

**STATEMENT OF FACTS**

Robert Hunter Biden ("Biden") began using crack and powder cocaine in or around October 2016, became a habitual user in 2017, and continued to use frequently and regularly through approximately May 2019.  During that time, he enrolled in multiple in- and outpatient rehabilitation programs with varying degrees of temporary success but did not achieve long-term sobriety.  Instead, his drug use overall escalated.

Biden moved to California in the spring of 2018, where he used crack cocaine on a regular basis, at times as frequently as every 15 minutes.  He enrolled in an additional rehabilitation program in California from August 16-27, 2018, and then lived with a sober companion from August 27-September 2, 2018.  He relapsed shortly thereafter, and his crack cocaine use continued when he returned to the East Coast in the fall of 2018.

On October 12, 2018, Biden visited StarQuest Shooters & Survival Supply, a federally licensed firearms dealer in Wilmington, Delaware.  He purchased a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Firearm"), along with several other items, including an HKS speed loader for th~~e cat f~~Firearm and a box of ammunition.

When he purchased the Firearm, Biden completed an ATF Form 4473, which required him to answer the question "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"  Biden answered "No," even though he was a user of, and addicted to, crack cocaine at the time.  ~~RHB~~ Biden certified that his "answers in Section A" were "true, correct, and complete," and that he understood that a person who answers "yes" to that question is "prohibited from purchasing or receiving a firearm."

Biden possessed the Firearm from October 12-23, 2018.  During that time, he purchased and used crack cocaine regularly.  On October 23, 2018, the Firearm was found in Biden's vehicle along with drug remnants and paraphernalia.  The Firearm was subsequently discarded in a trashcan outside Janssen's Market in Greenville, Delaware and later recovered by law enforcement.

9

# Exhibit M

| | |
|---|---|
| **From:** | Wolf, Lesley (USADE) |
| **To:** | Christopher Clark |
| **Cc:** | Hudson, Carly (USADE) |
| **Subject:** | [EXTERNAL EMAIL] Clean Documents |
| **Date:** | Thursday, June 8, 2023 9:32:58 AM |
| **Attachments:** | June8TaxInformation.pdf |
| | June8CombinedTaxPleaEx1AttA.pdf |
| | June8GunDiversion.pdf |
| | June8GunInformation.pdf |

Chris,

Attaching clean copies in PDF form of the documents we plan to send over to the Court today. Please let me know if you spot an issues- I did find a couple of missing commas that I added in and deleted a redundancy of date in the second to last paragraph of the plea facts (we had the 10/18/21 date at both the beginning and end of the sentence).  I am actually traveling for work for much of the day, so please copy Carly on anything as she may be in a better position to respond/make necessary corrections (hoping there are none).

-LW

*Lesley F. Wolf*

**Assistant United States Attorney**
**Section Chief, Economic Crimes**
**District of Delaware**
**1313 N. Market Street, Suite 400**
**Wilmington, DE 19801**

# Exhibit N

| | |
|---|---|
| **From:** | Hanson, Shannon (USADE) |
| **To:** | Judge Maryellen Noreika |
| **Cc:** | Christopher Clark; Margi Bray |
| **Subject:** | [EXTERNAL EMAIL] Regarding |
| **Date:** | Thursday, June 8, 2023 7:43:50 PM |
| **Attachments:** | RHBiden GunDiversion and exh a.pdf |
| | RHBiden combined tax plea ex1 attA.pdf |
| | RHBiden Tax Information.pdf |
| | RHBiden Gun Information.pdf |

Dear Judge Noreika:

Our sincere apologies for the delay in getting these draft documents to you for review. We have been working diligently today with defense counsel, Mr. Christopher Clark, cced above, to finalize their content.  The attached are in final form, with exception of the signature blocks.

Accordingly, please find:

**Tax**:

- An Information charging two misdemeanor tax offenses, in violation of Title 26, United States Code, Section 7203
- A Memorandum of Plea Agreement for the tax offenses, including a standard Attachment A and a Statement of Facts (Exhibit 1).

**Firearm:**

- An Information charging one gun offense, in violation of 18 U.S.C. Section 922(g)(3).
- A Pretrial Diversion Agreement for the gun offense, including a Statement of Facts (Attachment A).

We anticipate filing the signed documents with the Court on Tuesday.

You will notice that the Pretrial Diversion Agreement contemplates approval by the U.S. Probation and Pretrial Services Office.  We have been speaking with Margi Bray, Chief U.S. Probation Officer. Through her diligence, we hope to have the requisite pretrial diversion report completed prior to the hearing, currently tentatively scheduled for Tuesday, June 13th at 4:00 p.m.

We are available at the call of the Court.

Respectfully submitted,

Shannon Hanson

*Shannon T. Hanson*
*First Assistant U.S. Attorney*
*U.S. Attorney's Office for the District of Delaware*
*1313 N. Market Street, Suite 400*

*Wilmington, DE 19801*

*302 573 6669 (desk)*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 23- |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## DIVERSION AGREEMENT

## I.   PARTIES

This Diversion Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware, and Robert Hunter Biden ("Biden"), collectively referred to herein as "Parties," by and through their authorized representatives.

## II.   TERMS AND CONDITIONS OF DIVERSION AGREEMENT

1.     The term of this Agreement shall be twenty-four (24) months, beginning on the date of approval of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.     The twenty-four (24) month period following the execution and approval of this Agreement shall be known as the "Diversion Period."

3.     Biden shall waive indictment and agree that the United States will file an information (hereinafter "the Information") in the United States District Court for the District of Delaware, charging Biden with one count of knowingly possessing a

firearm while then an unlawful user of or person addicted to a controlled substance, in violation of Title 18, United States Code, Section 922(g)(3).

4.     The United States agrees that if Biden complies with all of his respective obligations under this Agreement, then the United States, within thirty (30) days after the expiration of the Diversion Period, will file a motion with the Court seeking the dismissal of the Information.

5.     Biden agrees that the United States has probable cause to bring the charges in the Information, and that the charges are not frivolous or made in bad faith. Biden also agrees that if at a future time the United States should move to dismiss the Information pursuant to this Agreement, Biden would not be a "prevailing party" with regard to the Information. Biden further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

6.     In light of the fact that Biden has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached Attachment A (hereinafter "Statement of Facts (Attachment A)", and taking into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety, and in consideration for the other terms recited herein, the United States shall divert this matter in the manner set forth in this Agreement pursuant to the terms and conditions set forth herein.

7.     Biden agrees to waive all defenses based on the statute of limitations with respect to the charge set forth in the Information and any other federal firearms

charges that could be brought with respect to the conduct set forth in the Statement of Facts (Attachment A) and agrees that the applicable statute of limitations period for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A) shall be tolled during the Diversion Period. Biden further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

8.    It is the intent of this Agreement for Biden to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware with respect to the charge set forth in the Information, and for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A).

<u>Commitments and Undertakings of Mr. Biden</u>

9.    It is understood that under the terms of this Agreement, Biden shall:

    a.   Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)), during the Diversion Period or at any time thereafter; and

    b.   Consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that he will be denied via NICS if he attempts to legally purchase another firearm.

<u>Additional Conditions Applicable to Diversion Period</u>

10.     Without limiting or otherwise modifying any of the Commitments and Undertakings set forth in the preceding paragraph, it is further understood that during the Diversion Period, Biden shall:

    a.  Be subject to <span style="color:red">pretrial diversion supervision as directed by the U.S. Probation and Pretrial Services Office in this District</span>.

    b.  Refrain from unlawfully consuming or possessing any controlled substance and be subject to drug-testing on a periodic basis as determined by the United States Probation and Pretrial Services Office.

    c.  Not commit a violation of any federal, state, or local law.

<u>Statement of Facts</u>

11.     Biden acknowledges and agrees that the Statement of Facts as set forth in Attachment A, is truthful and accurate.

12.     Biden agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts (Attachment A) associated with this Agreement. Any contradictory statement by Biden, or by an agent for Biden, shall constitute a violation of this Agreement. If the United States believes such a contradictory statement has been made and that such statement constitutes a knowing material breach of this Agreement, then the United States may seek a determination regarding such alleged breach pursuant to the procedures set forth in paragraph 14, below.

Breach of Agreement

13.    Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

14.    If the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for the supervision of this Agreement.  Upon notice to Biden, the United States may seek a determination on a preponderance of the evidence presented to such District Judge.  Biden shall have the right to present evidence to rebut any such claim in such proceeding.  If after that process the judge overseeing such process makes a final determination that Biden committed a knowing material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

    a.  **Remedy 1** – The United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

    b.  **Remedy 2** – The United States may prosecute Biden for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A), perjury; and obstruction of justice; and any such prosecution that is not time-barred by the applicable statute of limitations

5

on the date of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. The United States is not required to offer Remedy 1 before proceeding to Remedy 2 if, in its sole determination, the nature and seriousness of the breach warrants termination of this Agreement.

<u>Agreement Not to Prosecute</u>

15.   The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes encompassed by the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day. This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

<u>General Terms and Conditions</u>

16.   All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement, the attached Statement of Facts (Attachment A), the Information, and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

17.   The parties stipulate and agree that the conduct set forth in the Statement of Facts (Attachment A) does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 to the offenses arising under Title 26 of the United States Code as set forth in the Information filed in a separate case matter this same day.

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

19.     This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications of or additions to this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

In Witness Whereof, the Parties, through their duly authorized representatives, hereunder set their hands.

ON BEHALF OF THE UNITED STATES OF AMERICA

BY:   _____
      DAVID C. WEISS
      United States Attorney

Dated:

ON BEHALF OF ROBERT HUNTER BIDEN

BY: _____        BY: _____
    Robert Hunter Biden             Christopher Clark, Esq.
    Defendant                       Attorney for Robert Hunter Biden

Dated:

APPROVED BY:

_____
Margaret M. Bray
Chief, United States Probation Officer,
District of Delaware

Dated:

8

# ATTACHMENT A

## STATEMENT OF FACTS

Robert Hunter Biden ("Biden") began using crack and powder cocaine in or around October 2016, became a habitual user in 2017, and continued to use frequently and regularly through approximately May 2019. During that time, he enrolled in multiple in- and outpatient rehabilitation programs with varying degrees of temporary success but did not achieve long-term sobriety. Instead, his drug use overall escalated.

Biden moved to California in the spring of 2018, where he used crack cocaine on a regular basis, at times as frequently as every 15 minutes. He enrolled in an additional rehabilitation program in California from August 16-27, 2018, and then lived with a sober companion from August 27-September 2, 2018. He relapsed shortly thereafter, and his crack cocaine use continued when he returned to the East Coast in the fall of 2018.

On October 12, 2018, Biden visited StarQuest Shooters & Survival Supply, a federally licensed firearms dealer in Wilmington, Delaware. He purchased a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Firearm"), along with several other items, including an HKS speed loader for theFirearm and a box of ammunition.

When he purchased the Firearm, Biden completed an ATF Form 4473, which required him to answer the question "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" Biden answered "No," even though he was a user of, and addicted to, crack cocaine at the time. Biden certified that his "answers in Section A" were "true, correct, and complete," and that he understood that a person who answers "yes" to that question is "prohibited from purchasing or receiving a firearm."

Biden possessed the Firearm from October 12-23, 2018. During that time, he purchased and used crack cocaine regularly. On October 23, 2018, the Firearm was found in Biden's vehicle along with drug remnants and paraphernalia. The Firearm was subsequently discarded in a trashcan outside Janssen's Market in Greenville, Delaware and later recovered by law enforcement.

USAO Rev. 10/22

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Action No. 23- |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>MEMORANDUM OF PLEA AGREEMENT</u>

Pursuant to discussions between the United States of America, by and through its attorney, David C. Weiss, United States Attorney for the District of Delaware, and the defendant, Robert Hunter Biden, by and through his attorney, Christopher Clark, Esquire, the following agreement is hereby entered into by the respective parties:

1.     The defendant shall waive indictment and venue and plead guilty in the United States District Court for the District of Delaware to:   Counts One and Two of the Information, which charge the defendant with willful failure to pay tax, in violation of Title 26, United States Code, Section 7203.

2.     The defendant understands that the maximum penalties for each of Counts One and Two are:   12 months of imprisonment; a $100,000 fine or twice the gross gain or loss from the offense, whichever is greater; 1 year of supervised release; restitution; a $25 special assessment; and the costs of prosecution, which the parties stipulate to be zero.

3.     The defendant understands that if there were a trial with regard to Counts One and Two the government would have to prove the following elements beyond a reasonable doubt:   (1) the defendant had a duty to pay a tax; (2) the tax

was not paid at the time required by law; and (3) the failure to pay was willful.   The defendant knowingly, voluntarily, and intelligently admits his guilt to each of the above-described elements of Counts One and Two.   The defendant further admits to the information contained in the Statement of Facts, attached to this Memorandum as Exhibit 1.

4.     The defendant is pleading guilty to Counts One and Two because he is, in fact, guilty.

5.     Pursuant to Section 6B1.4 of the November 1, 2021, edition of the United States Sentencing Guidelines Manual ("U.S.S.G."), the parties enter into the following stipulations:

> a.     Pursuant to U.S.S.G. § 2T1.1, the amount of loss as to Counts One and Two, including relevant conduct as defined in U.S.S.G. § 1B1.3, is no less than $1,199,524.00 and no greater than $1,593,329.00;

> b.     The conduct set forth in the Statement of Facts (Attachment A) to the Diversion Agreement filed this same day does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3; and

> c.     Provided that the United States does not subsequently learn of conduct by the defendant inconsistent with the acceptance of responsibility, the United States agrees that in consideration of the defendant's timely guilty plea, it will not oppose a two-level

2

reduction in the Offense-Level pursuant to U.S.S.G. § 3E1.1(a). Further, should it be determined that the defendant's Offense Level is 16 or greater prior to the application of the aforementioned two-level reduction, the United States agrees that the defendant's Offense Level should be reduced by one additional level, pursuant to U.S.S.G. § 3E1.1(b), for a total reduction of three levels.

It is understood and agreed that: (1) these stipulations are not binding upon either the Probation Office or the Court; and (2) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

6.     For reasons to be articulated at or near the time of sentencing, the United States will recommend a sentence of probation.

7.     The United States retains the right to defend the rulings of the District Court at any subsequent proceeding.

8.     The defendant understands that the District Court must consider the United States Sentencing Guidelines, the applicable statutory maximum penalties, and the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence.   The defendant understands that the ultimate determination of an appropriate sentence will be up to the sentencing judge.   The Court may impose a

3

sentence that exceeds, falls below, or is contained within the sentencing range prescribed by the Sentencing Guidelines.   The defendant expressly acknowledges that if the Court imposes a sentence outside the range set forth in the Sentencing Guidelines, is otherwise different than the defendant expected, or is contrary to the recommendation of his attorney or the United States, the defendant will not be allowed to withdraw his guilty plea on that basis.

9.   In exchange for the promises made by the government in entering this plea agreement, the defendant knows that he has, and voluntarily and expressly waives, the right to appeal or collaterally attack his conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.   Notwithstanding the foregoing, the defendant reserves the right to (1) file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel, and (2) appeal his sentence if:   (a) the government appeals from the sentence; (b) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code; or (c) the District Court imposes an "upward variance" above the final Sentencing Guideline range that it determines at sentencing.

10.   The defendant agrees to pay the $50 special assessment the day of sentencing.

4

11.    This Memorandum expressly incorporates Attachment A, which is attached hereto and filed under seal.   In accordance with the June 30, 2016 Standing Order of the Court (https://www.ded.uscourts.gov/sites/ded/files/general-orders/Standing%20Order%20Criminal%20Cases.pdf), the government routinely files such an attachment, even though it may or may not contain additional terms. To the extent, however, that Attachment A contains additional terms, the parties acknowledge and agree to be bound by those terms.

12.    Pursuant to 18 U.S.C. §§ 3663 and 3663A, the defendant agrees to the entry of a Restitution Order for the full amount of the victim's losses attributable to the defendant's activities as ordered by the Court, which is expected to be:  $0.00, because the self-assessed tax due at the time of filing and associated interest and penalties have been paid to the Internal Revenue Service by a third-party on behalf of the defendant.   The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw his guilty plea.   The parties further understand that should the Internal Revenue Service determine there are additional taxes due and owing for tax years 2014-2019, they are not subject to the terms of this agreement.   For purposes of this Memorandum, the sole victim of Count One and Count Two is the United States Treasury.

////

13.     It is further agreed by the undersigned parties that this Memorandum and Exhibit 1 – together with sealed Attachment A – supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in writing signed by all the parties; and that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever, unless they comport with the subsequent written modification provisions of this paragraph.


_____          _____
Christopher Clark, Esquire          David C. Weiss
Attorney for Defendant          United States Attorney


_____
Robert Hunter Biden, Defendant

Dated:


**AND NOW**, this _____ day of _____, 2023, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.


_____
THE HONORABLE MARYELLEN NOREIKA
UNITED STATES DISTRICT JUDGE

6

**EXHIBIT 1**

At all times relevant to the instant information, the defendant, Robert Hunter Biden ("Biden") was an attorney and businessman with lucrative domestic and international business interests. From 2017 to 2019, he served on the board of a Ukrainian energy company and a Chinese private equity fund. He further negotiated and executed contracts for business and legal services that paid millions of dollars of compensation to him and/or his domestic corporations, Owasco, PC and Owasco, LLC. Through at least early 2017, he also was employed by a prestigious multi-national law firm in an "of counsel" capacity.  For this work, he earned substantial income, totaling more than $2.3 million in 2017 and $2.1 million in 2018.

Biden also has a well-documented and long-standing struggle with substance abuse.  Following the death of his brother in 2015, Biden relapsed and over time progressed from alcohol to abusing illegal drugs, including crack cocaine in 2016. This contributed to the collapse of his marriage, with his divorce finalized in March 2017, as well as the collapse of his most significant professional relationship in Fall 2017.  Nonetheless, in 2017, despite his addiction, Biden successfully entered into business ventures and landed legal clients, earning millions of dollars.  By his own telling in a memoir published in 2021, Biden's substance abuse worsened in 2018 that included a move to Los Angeles and a "spring and summer of nonstop debauchery." Even during this period, however, Biden continued to earn money and exercise control over his personal and corporate finances.

Federal income tax returns and payments are due on or about April 15 of each year for the prior calendar year.  Biden, like many other taxpayers, routinely requested an automatic extension to file his returns, pushing the due date for a tax return to on or about October 15.  An extension of time to file a return, however, does not extend the deadline for payment of taxes, which remain due on the April filing date.

During calendar year 2017, Biden earned substantial income, including:  just under $1 million from a company he formed with the CEO of a Chinese business conglomerate; $666,666 from his domestic business interests; approximately $664,000 from a Chinese infrastructure investment company; $500,000 in director's fees from a Ukrainian energy company; $70,000 relating to a Romanian business; and $48,000 from the multi-national law firm.

Through tax year 2017, Biden worked with a DC/Maryland-based accountant to prepare his individual and corporate tax returns.  In 2018, this accountant (who died in 2019) prepared Biden's 2017 corporate and individual income tax returns and throughout the fall repeatedly attempted to provide them to Biden for review and signature.  These efforts included directly contacting Biden, reaching out to his administrative assistant, and by sending copies to his former business partner.  The

former business partner reviewed the returns and sent several emails to Biden in which he commented on their substance and reminded Biden of his filing obligations. The former business partner left the final returns for Biden at Biden's office. Despite these actions, Biden neither signed nor submitted the individual or corporate income tax returns to the Internal Revenue Service.

Not only did the accountant timely prepare Biden's individual and corporate tax returns, the accountant repeatedly encouraged Biden to timely pay the taxes associated with the 2017 tax returns. Beginning in April 2018 and continuing into October 2018, the accountant advised Biden to make his tax payments, noting approximately $600,000 owed by Biden personally and an additional $204,000 owed by Owasco, PC. Biden told the accountant he could pay $25,000 in April 2018 towards his taxes, but no such payment was made to the Internal Revenue Service. His large tax liability stemmed in part from the fact that over the course of 2017, Biden began withdrawing substantial funds outside of Owasco, PC's established payroll system, which had been created, in part, to ensure that Biden had sufficient withholdings to timely pay any outstanding tax liability. The end of year liability should not have come as a surprise. At the time of those withdrawals, Biden's business partner advised him that these transfers, made without withholding, would result in a significant tax liability at year end.

Despite his large outstanding tax liability and profligate spending, on or about April 17, 2018, the due date for 2017 tax payments, Biden did, in fact, have the funds available to pay his outstanding 2017 tax liability for both his personal and corporate returns. On or about March 22, 2018, Biden received a $1,000,000 payment into his Owasco, LLC bank account as payment for legal fees for Patrick Ho and $939,000 remained available as of tax day. Over the next six months Biden would spend almost the entirety of this balance on personal expenses, including large cash withdrawals, transfers to his personal account, travel, and entertainment.

Biden continued to earn handsomely and spend wildly in 2018. He received a little over $2.6 million in business and consulting fees from the company he formed with the CEO of a Chinese business conglomerate and the Ukrainian energy company. However, without the structure of a stable business partner and still in the throes of addiction, Biden essentially ignored his tax obligations, withholding only approximately $38,465, less than 6% of the taxes owed. Tax returns and filings for tax year 2018 were due on April 15, 2019. On that date, Biden traded emails with his DC accountant and his attorney about seeking an extension. The accountant advised Biden of his obligation to make a tax payment on that date, irrespective of the extension to file a return. Ultimately, the extension was filed, making the return due on October 15, 2019. Biden, however, paid nothing. As with tax year 2017, at the time his 2018 tax payment was due, Biden continued to have substantial income and the ability to pay his tax liability, having received payments totaling

approximately $758,000 during March and April 2019.  By late May, Biden had spent almost the entire sum on personal expenses, including large cash withdrawals, payments to or on behalf of his children, credit card balances, and car payments for his Porsche.

After numerous programs and trips to rehab, Biden got sober in May 2019, the same month he married his current wife.  He has remained sober since.  Biden remained in California and spent much of Summer 2019 painting and developing plans for his memoir, which he began working on through the fall and into the winter. During the summer of 2019, he was sued in two different domestic-relations lawsuits, both seeking payment of support obligations.  He still did not, however, make preparations to file or actually file either his 2018 individual or corporate income tax returns on or about October 15, 2019, the extension due date.

In or around November 2019, Biden engaged a California accountant to prepare his individual and corporate income tax returns for 2017 and 2018.  The California accountant began gathering materials and started preparing Biden's 2017 and 2018 returns in early 2020.  By that time, the domestic-relations lawsuits had progressed, and having failed to do so previously, Biden was under court order to provide his tax returns or face potential sanctions, including imprisonment.  On or about January 27, 2020, Biden signed a representation letter for the California accountants, averring that he was providing the accountants with truthful and accurate information and acknowledging his responsibility for the accuracy of those tax returns.  Over the days that followed, Biden participated in a series of meetings with the California accountants and identified business and personal expenses in connection with his tax returns.  During this process, Biden miscategorized certain personal expenses as legitimate business expenses, resulting in a reduction in his tax liability.  At the same time, the California accountants overreported Biden's income, which partially offset this reduction.

On or about February 18, 2020, Biden filed his individual and corporate income tax returns with the Internal Revenue Service for tax years 2017 and 2018.  On his 2017 Form 1040, Biden reported $2,376,436.00 in total income and a self-assessed tax due of $710,598.00, of which $125,909.00 was timely paid, leaving a balance due and owing of $581,713.00.  On his 2017 Form 1120 for Owasco, PC, Biden reported gross receipts $2,698,041.00 and a self-assessed tax due and owing of $13,630.00.  On his 2018 Form 1040 Biden reported $2,187,286.00 in total income and a self-assessed tax of $659,366.00, of which $38,465.00 was timely paid, leaving a balance due and owing of $620,901.00.  No additional payment was included at the time of filing.  On his 2018 Form 1120 for Owasco, PC, Biden reported gross receipts $2,659,014.00 and a self-assessed tax due and owing of $4,247.00.

Approximately a year and a half later, on or about October 18, 2021, a third party paid the Internal Revenue Service $955,800.00 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2017 and $956,632.00 to cover Biden's self-assessed individual tax liability with interest and penalties for tax year 2018.

<u>Tax Years 2016 and 2019</u>

In addition, in or around February 2020, Biden's California accountants discovered that Biden's 2016 Form 1040 had not been filed. The return was originally prepared in or around October 2017 and showed $15,520.00 in taxes due and owing. Though it was delivered to Biden at Biden's office, this return was not filed with the Internal Revenue Service. After learning in 2020 that the Form 1040 for 2016 remained unfiled, Biden filed a Form 1040 on June 12, 2020. For tax year 2016, Biden reported $1,580,283.00 in total income and a self-assessed tax due of $492,895.00 of which $447,234.00 was timely paid, leaving a balance due and owing of $45,661.00. Biden did not include a payment with this return. On or about October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by a third party.

After seeking an extension, Biden timely filed his 2019 Form 1040 on or about October 15, 2020. He did not, however, pay his estimated tax due when filing for an extension as required by law. For tax year 2019, Biden reported $1,045,850.00 in total income and a self-assessed tax due and owing of $197,372.00. On October 18, 2021, this liability, plus accrued interest and penalties, was also fully paid by the same third party.

**ATTACHMENT A**
**FILED UNDER SEAL**

There are no additional terms.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Criminal Action No. 23- |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |

## INFORMATION

The United States Attorney for the District of Delaware charges that:

## COUNT ONE

During the calendar year 2017, Robert Hunter Biden, defendant herein, who was a resident of the District of Columbia, had and received taxable income in excess of $1,500,000.00 on which taxable income there was owing to the United States of America an income tax in excess of $100,000.00.  He was required by law to pay, on or before April 17, 2018, that income tax to the Internal Revenue Service Center, at Hartford, Connecticut, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue.  Well knowing and believing all of the foregoing, ROBERT HUNTER BIDEN did willfully fail, on or about April 17, 2018, in the District of Columbia and elsewhere, to pay the income tax due.

In violation of Title 26, United States Code, Section 7203.

## COUNT TWO

During the calendar year 2018, Robert Hunter Biden, defendant herein, who was a resident of the District of Columbia, had and received taxable income in excess

1

of $1,500,000.00 on which taxable income there was owing to the United States of America an income tax in excess of $100,000.00.  He was required by law to pay, on or before April 15, 2019, that income tax to the Internal Revenue Service Center, at Hartford, Connecticut, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue.  Well knowing and believing all of the foregoing, ROBERT HUNTER BIDEN did willfully fail, on or about April 15, 2019, in the District of Columbia and elsewhere, to pay the income tax due.

In violation of Title 26, United States Code, Section 7203.


_____

DAVID C. WEISS
United States Attorney


Dated:  June 13, 2023

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Criminal Action No. 23- |
| | ) |
| ROBERT HUNTER BIDEN, | ) |
| | ) |
| Defendant. | ) |

## INFORMATION

The United States Attorney for the District of Delaware charges that:

## COUNT ONE

On or about October 12, 2018, through on or about October 23, 2018, in the District of Delaware, the defendant Robert Hunter Biden, knowing that he was an unlawful user of and addicted to a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly possess a firearm that is, a Colt Cobra 38SPL revolver with serial number RA 551363, said firearm having been shipped and transported in interstate commerce,

In violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2).


_____
DAVID C. WEISS
United States Attorney


Dated:  June 13, 2023

# Exhibit O

| | |
|---|---|
| **From:** | Mark Buckson |
| **To:** | usdoj.gov |
| **Cc:** | Christopher Clark; Margaret Bray; April Smith |
| **Subject:** | RE: [EXTERNAL EMAIL] Regarding |
| **Date:** | Friday, June 9, 2023 3:11:36 PM |

Hi Shannon,

Her Honor wanted me to relay to you that she is not comfortable proceeding in the way that had been discussed earlier and would like the standard procedures followed. Once the documents are filed, case is opened, etc., the parties can request a hearing and we will proceed from there.

Mark Buckson
Courtroom Deputy

**From:** Maryellen Noreika
**Sent:** Friday, June 9, 2023 9:43 AM
**To:**                          usdoj.gov
**Cc:** Christopher Clark <clark@csvllp.com>; Margaret Bray                                    ;
Mark Buckson                                    ; April Smith
**Subject:** Re: Regarding

Ms. Hanson —

Please send information to my Courtroom Deputy and Case Manager.  We do not usually accept information sent only to my private email address.

I do not know when I will have a chance to review, but we will let you know if Tuesday works for us after I have been able to do so.

Thank you.

Maryellen Noreika

On Jun 8, 2023, at 7:38 PM, Hanson, Shannon (USADE)
wrote:

 **CAUTION - EXTERNAL:**

Dear Judge Noreika:

Our sincere apologies for the delay in getting these draft documents to you for review.

We have been working diligently today with defense counsel, Mr. Christopher Clark, cced above, to finalize their content.  The attached are in final form, with exception of the signature blocks.

Accordingly, please find:

**Tax**:

1. An Information charging two misdemeanor tax offenses, in violation of Title 26, United States Code, Section 7203
2. A Memorandum of Plea Agreement for the tax offenses, including a standard Attachment A and a Statement of Facts (Exhibit 1).

**Firearm:**

1. An Information charging one gun offense, in violation of 18 U.S.C. Section 922(g)(3).
2. A Pretrial Diversion Agreement for the gun offense, including a Statement of Facts (Attachment A).

We anticipate filing the signed documents with the Court on Tuesday.

You will notice that the Pretrial Diversion Agreement contemplates approval by the U.S. Probation and Pretrial Services Office.  We have been speaking with Margi Bray, Chief U.S. Probation Officer.  Through her diligence, we hope to have the requisite pretrial diversion report completed prior to the hearing, currently tentatively scheduled for Tuesday, June 13th at 4:00 p.m.

We are available at the call of the Court.

Respectfully submitted,

Shannon Hanson

*Shannon T. Hanson*
*First Assistant U.S. Attorney*
*U.S. Attorney's Office for the District of Delaware*
*1313 N. Market Street, Suite 400*
*Wilmington, DE 19801*


*302 573 6669 (desk)*

**CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.**

# Exhibit P

**From:**      Christopher Clark <clark@csvllp.com>
**Sent:**      Tuesday, August 8, 2023 2:13 PM
**To:**        McCarten, Timothy (DC); McManus, Brian (BN); McCarten, Timothy (DC)
**Subject:**   FW: Revised cover letter and fyi


Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O** (212) 582-4400 | **D** (212) 377-0853

CLARK SMITH VILLAZOR

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Monday, June 19, 2023 2:53 PM
**To:** Hanson, Shannon (USADE)
**Subject:** Re: Revised cover letter and fyi


"I can confirm that the five-year long, extensive federal investigation into my client, Hunter Biden, has been concluded through agreements with the Unites States Attorney's Office for the District of Delaware.  Hunter will take responsibility for two instances of misdemeanor failure to file tax payments when due pursuant to a plea agreement.  A firearm charge, which will be subject to a pretrial diversion agreement and will not be the subject of the plea agreement, will also be filed by the Government.  I know Hunter believes it is important to take responsibility for these mistakes he made during a period of turmoil and addiction in his life.  With the conclusion of this investigation, he looks forward to continuing his recovery and moving forward."
##


Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street
New York, NY 10019
(212) 582-4400(o)


**From:** Hanson, Shannon (USADE)
**Sent:** Monday, June 19, 2023 1:21 PM
**To:** Christopher Clark <clark@csvllp.com>
**Subject:** [EXTERNAL EMAIL] Revised cover letter and fyi

Chris:

Just a couple of revisions to make clear that we want IAs and want 1 proceeding.

Also – we just got a press call.

Best,

Shannon

# Exhibit Q

| | |
|---|---|
| **From:** | Christopher Clark <clark@csvllp.com> |
| **Sent:** | Tuesday, August 8, 2023 2:14 PM |
| **To:** | McCarten, Timothy (DC); Salerno, Matthew (NY); McCarten, Timothy (DC) |
| **Subject:** | FW: Revised cover letter and fyi |

Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O** (212) 582-4400 | **D** (212) 377-0853

CLARK SMITH VILLAZOR

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Monday, June 19, 2023 4:18 PM
**To:** Hanson, Shannon (USADE)
**Subject:** Re: Revised cover letter and fyi

With the announcement of two agreements between my client, Hunter Biden, and the Unites States
Attorney's Office for the District of Delaware, it is my understanding that the five-year investigation into
Hunter is resolved. Hunter will take responsibility for two instances of misdemeanor failure to file tax
payments when due pursuant to a plea agreement.  A firearm charge, which will be subject to a pretrial
diversion agreement and will not be the subject of the plea agreement, will also be filed by the Government.  I
know Hunter believes it is important to take responsibility for these mistakes he made during a period of
turmoil and addiction in his life.  He looks forward to continuing his recovery and moving forward.
##

Christopher Clark
Partner
Clark Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, New York 10019
**O:**212-582-4400 **D:**212-377-0853

**From:** Christopher Clark <clark@csvllp.com>
**Sent:** Monday, June 19, 2023 1:28:11 PM
**To:** Hanson, Shannon (USADE)
**Subject:** Re: Revised cover letter and fyi

Thank you, that makes sense and is fine with me.

Christopher J. Clark
Clark Smith Villazor LLP
250 West 55th Street

New York, NY 10019
(212) 582-4400(o)

---

**From:** Hanson, Shannon (USADE)
**Sent:** Monday, June 19, 2023 1:21 PM
**To:** Christopher Clark <clark@csvllp.com>
**Subject:** [EXTERNAL EMAIL] Revised cover letter and fyi

Chris:

Just a couple of revisions to make clear that we want IAs and want 1 proceeding.

Also – we just got a press call.

Best,

Shannon

# Exhibit R

| | |
|---|---|
| **From:** | Hanson, Shannon (USADE) |
| **To:** | Christopher Clark |
| **Cc:** | Wallace, Benjamin (USADE); Wise, Leo (USAMD); Hines, Derek (USAPAE); Weiss, David (USADE) |
| **Subject:** | [EXTERNAL EMAIL] Documents |
| **Date:** | Monday, June 19, 2023 12:45:24 PM |
| **Attachments:** | RHBiden Tax Information sent to c clark 06192023.pdf |
| | RHBiden combined tax plea ex1 attA to c clark 06192023.pdf |
| | RHBiden GunDiversion and exh a to c clark and margi bray 061923.pdf |
| | RHBiden Cover Letter to court to c clark 06192023.pdf |
| | RHB Gun Info Sheet sent to c clark 06192023.pdf |
| | RHB Tax Info Sheet sent to c clark on 06192023.pdf |
| | RHBiden Gun Information sent to c clark 06192023.pdf |

Chris:

Thank you for your call.  Attached please find the documentation requested.

Best,

Shannon

# Exhibit S

| | |
|---|---|
| **From:** | Terri Kilgoe |
| **To:** | Christopher Clark;          @usdoj.gov;          @usdoj.gov;          usdoj.gov |
| **Cc:** | Margaret Bray |
| **Subject:** | [EXTERNAL EMAIL] Robert Hunter Biden Pretrial Service Report, Diversion report |
| **Date:** | Wednesday, July 19, 2023 11:04:57 AM |
| **Attachments:** | Biden Bail Report.pdf |
| | Robert Hunter Biden Diversion letter.pdf |

**Good Morning Counsel:** Attached is the Pretrial Services Report for **Robert Hunter Biden.**

Please acknowledge receipt of this report by responding to the sender and the assigned Chief U.S. Probation Officer, **Margaret M. Bray.**

**Thank you**

Terri Kilgoe
Data Quality Analyst
District of Delaware
824 N. Market Street, Suite 400
Wilmington, Delaware 19801

"Why be mean when kind will do"

PS3 (12/05-Rev. for PACTS 6/11)                                    Biden, Robert Hunter / 0311 1:23CR00061 & 1:23MJ00274

In accordance with Local Rule 57.1, Pretrial Services Reports are made available to Defense Counsel and the Government. The Pretrial Reports are not public record, are not to be reproduced or disclosed to any other party, and shall remain confidential as provided in Title 18 U.S.C. § 3153(c)(1).

## PRETRIAL SERVICES REPORT

| | |
|---|---|
| District/Office<br>District Of Delaware/Wilmington | **Count One - (Information – 1:23CR00061-MN):** Title 18 U.S.C. § 922(g)(3) and 924(a)(2) – Possession of a firearm by an unlawful user of a controlled substance |
| Judicial Officer<br>Honorable Maryellen Noreika<br>United States District Judge | **Count One & Two -** |
| Docket Number (Year – Sequence No. – Def. No.)<br>0311 1:23CR00061<br>0311 1:23MJ00274 | **(Information – 1:23MJ00274-MN):** Title 26 U.S.C. § 7203 – Willful failure to pay tax |

## DEFENDANT

| | |
|---|---|
| Name<br>Biden, Robert Hunter | |
| Other Names on Charging Document | |

[ *       *       *       * ]

Page 1

PS3 (12/05-Rev. for PACTS 6/11)                                Biden, Robert Hunter / 0311 1:23CR00061 & 1:23MJ00274

**RECOMMENDATION:**

Although the defendant appears to have risk associated with both non-appearance and danger, those risks may be mitigated. To reasonably assure the defendant's appearance and the safety of the community, I respectfully recommend the defendant be released with the following conditions:

1. Report to Pretrial Services.
2. Continue or actively seek employment.
3. Refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. 802, unless prescribed by a licensed medical practitioner. No alcohol use.
4. Submit to substance abuse testing and participate in drug treatment/counseling if recommended.
5. Do not possess a firearm, ammunition, or other destructive device.
6. Any international travel shall be communicated in writing to the U.S. Probation Offices in both the District of Delaware and the district in which you reside.

PS3 (12/05-Rev. for PACTS 6/11)                                      Biden, Robert Hunter / 0311 1:23CR00061 & 1:23MJ00274

| Pretrial Services Officer | Date | 1000AM |
|---|---|---|
| Margaret M. Bray, CUSPO | 07/19/2023 | |
| Reviewed By | | |

*Margaret M Bray*

DS / jr

   

**U.S. DISTRICT COURT**
**U.S. PROBATION & PRETRIAL SERVICES**
**DISTRICT OF DELAWARE**

**MARGARET M. BRAY**
**Chief U.S. Probation Officer**

CENTRAL OFFICE LOCATION:
SUITE 400
824 N MARKET STREET
Wilmington, DE 19801-3024
302-252-2950

**ROBERT HENDERSON**
**Deputy Chief U.S. Probation Officer**

July 19, 2023

BRANCH OFFICE LOCATION:
1218 FORREST AVE
DOVER, DE 19904
302-677-0633

Leo J. Wise, Esquire
Derek E. Hines, Esquire
Benjamin L. Wallace, Esquire
U.S. Attorney's Office
Hercules Building
1313 North Market Street
P.O. Box 2046
Wilmington, DE 19801

**RE: BIDEN, Robert Hunter**
**Docket No. 1:23CR00061-001**

Dear Defense Counsel:

Enclosed, please find the Pretrial Diversion Report for the above-named defendant. A copy of the report has been sent to defense counsel also.

Should you have any questions, please feel free to contact me.

Sincerely,

Margaret M. Bray
Chief U.S. Probation Officer

*Margaret M Bray*

Margaret M. Bray
Chief U.S. Probation Officer

MMB/tk
Enclosure

cc:     Christopher J. Clark, Esquire
        Clark Smith Villazor LLP
        250 West 55th Street
        New York, NY 10019

PS 28

(4/95)

| NAME: Robert Hunter Biden |

[ *     *     *     * ]

RE: Biden, Robert Hunter

## **ASSESSMENT**

35. The defendant has accepted responsibility for his actions in the instant offense and does not contest the Government's version of events.

36. Mr. Biden has cooperated with the pretrial diversion investigation, including providing requested forms and documents and allowing a home inspection. As indicated, housing and employment are stable, and the Probation and Pretrial Services office in the Central District of California has visited the home. The defendant has reportedly refrained from the use of illicit substances since June of 2019.

## **RECOMMENDATION**

37. The United States Probation Office recommends the defendant as a candidate for a 24-month term of Pretrial Diversion.

38. If all parties agree, the following conditions of Pretrial Diversion are recommended:

    1)  You shall not commit another state, federal, or local offense.

    2)  You shall be subject to pretrial diversion supervision as directed by the U.S Probation and Pretrial Services Office in this District.

    3)  You shall continue or actively seek employment.

RE: Biden, Robert Hunter

4)  You shall refrain from the use of or unlawful possession of a firearm, ammunition, or destructive device, (as that term is defined by Title 18, United states Code, Section 921(a)(3)), and you shall not attempt to purchase any firearms or ammunition.

5)  You shall consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that you will be denied via NICS if you attempt to illegally purchase another firearm.

6)  You shall refrain from the use and/or the unlawful possession of a narcotic drug, unless prescribed by a licensed medical professional. You shall not use alcohol.

7)  You shall submit to drug/alcohol testing and/or treatment and following any treatment recommendations as directed by Pretrial Services.

8)  You shall communicate in writing any international travel plans (and provide supporting documentation, if requested), to both the U.S. Probation Office in the District of Delaware and the U.S. Probation Office in the district in which you reside.

9)  You shall submit to fingerprinting by the Federal Bureau of Investigation (FBI). The fingerprint card will be submitted to the FBI for placement in their identification files. Upon successful completion of the term of Pretrial Diversion, the FBI will be notified to mark their records that pretrial diversion was successfully completed. The fingerprint cards will be withdrawn from the FBI records three years after completion of pretrial diversion in accordance with FBI policy.


Respectfully submitted,


Margaret M. Bray
Chief U.S. Probation Officer


July 19, 2023
Date

# Exhibit T

| | |
|---|---|
| **From:** | Wallace, Benjamin (USADE) |
| **To:** | Mark Buckson |
| **Cc:** | Christopher Clark; Margaret Bray; Hanson, Shannon (USADE); Wise, Leo (USAMD); Hines, Derek (USAPAE) |
| **Subject:** | [EXTERNAL EMAIL] US v. Biden -- Revised Diversion Agreement |
| **Date:** | Thursday, July 20, 2023 4:07:48 PM |
| **Attachments:** | image001.png |
| | RHBiden GunDiversion and exh a (7.20.23 - Clean).pdf |
| | RHBiden GunDiversion and exh a (7.20.23 - Redline).pdf |

Mark:

The parties and Probation have agreed to revisions to the diversion agreement to more closely match the conditions of pretrial release that Probation recommended in the pretrial services report issued yesterday.  Attached, please find clean and redline versions of the diversion agreement.

Best,

**Benjamin L. Wallace**
Assistant U.S. Attorney

Office: 302-573-6118
U.S. Attorney's Office | District of Delaware
1313 N. Market Street, Wilmington, DE 19801

---

**From:** Mark Buckson
**Sent:** Thursday, July 13, 2023 9:14 AM
**To:** Wallace, Benjamin (USADE)                              ; Hanson, Shannon (USADE)

**Cc:** Christopher Clark <clark@csvllp.com>; Hines, Derek (USAPAE)                              ; Wise, Leo (USAMD)
**Subject:** RE: Regarding

Received, thank you.

Mark Buckson
Courtroom Deputy

---

**From:** Wallace, Benjamin (USADE)
**Sent:** Wednesday, July 12, 2023 8:37 PM
**To:** shannon.hanson_usdoj.gov                              ; Mark Buckson

**Cc:** Christopher Clark <clark@csvllp.com>; Derek.Hines_usdoj.gov                              ; Wise, Leo (USAMD)
**Subject:** RE: Regarding

**CAUTION - EXTERNAL:**

Mark:

With apologies for the delay, please find attached the redlines the Court requested.

One note: in preparing the redline of the plea agreement, we realized that we had mistakenly omitted subsection heading c from section 5 (just the heading, not the subsection itself).  We've corrected that typographical error in a new clean version attached to this email.

So the Court has everything in one place, we're also reattaching the clean version of the diversion agreement.  No changes – typographical or otherwise – have been made to that agreement.

Best,

**Benjamin L. Wallace**
Assistant U.S. Attorney

Office: 302-573-6118
U.S. Attorney's Office | District of Delaware
1313 N. Market Street, Wilmington, DE 19801

---

**From:** Hanson, Shannon (USADE)
**Sent:** Wednesday, July 12, 2023 3:35 PM
**To:** Mark Buckson                                    ; Wallace, Benjamin (USADE)

**Cc:** Christopher Clark <clark@csvllp.com>; Hines, Derek (USAPAE)                        ; Wise, Leo (USAMD)
**Subject:** RE: Regarding

Mark:

We will get that information to the Court this afternoon.

Respectfully,

Shannon Hanson

---

**From:** Mark Buckson
**Sent:** Wednesday, July 12, 2023 3:30 PM
**To:** Wallace, Benjamin (USADE)                        ; Hanson, Shannon (USADE)

**Cc:** Christopher Clark <clark@csvllp.com>; Hines, Derek (USAPAE)                        ; Wise, Leo (USAMD)
**Subject:** RE: Regarding

Good afternoon,

Her Honor would like redline versions of these agreements, from what was submitted on 6/8/23, as

soon as possible.

Thank you,

Mark Buckson
Courtroom Deputy

---

**From:** Wallace, Benjamin (USADE)
**Sent:** Wednesday, July 12, 2023 1:30 PM
**To:** Mark Buckson                              ;                    usdoj.gov

**Cc:** Christopher Clark <clark@csvllp.com>;              usdoj.gov                     ; Wise,
Leo (USAMD)
**Subject:** RE: Regarding

**CAUTION - EXTERNAL:**


Mark:

Please find updated versions of the plea and diversion agreements.  These versions are final, with the
exception of signatures.

Best,

**Benjamin L. Wallace**
Assistant U.S. Attorney

Office: 302-573-6118

U.S. Attorney's Office | District of Delaware
1313 N. Market Street, Wilmington, DE 19801

---

**From:** Mark Buckson
**Sent:** Tuesday, July 11, 2023 12:57 PM
**To:** Hanson, Shannon (USADE)
**Cc:** Christopher Clark <clark@csvllp.com>; Wallace, Benjamin (USADE)                          ;
Hines, Derek (USAPAE)                          ; Wise, Leo (USAMD)
**Subject:** RE: Regarding

Thanks Shannon! I will relay this to Her Honor.

Mark Buckson
Courtroom Deputy

---

**From:** Hanson, Shannon (USADE)
**Sent:** Tuesday, July 11, 2023 12:35 PM

**To:** Mark Buckson
**Cc:** Christopher Clark <clark@csvllp.com>; Wallace, Benjamin (USADE)
;                    usdoj.gov                    ; Wise, Leo
(USAMD)
**Subject:** RE: Regarding

<mark>CAUTION - EXTERNAL:</mark>

Mark:

I will be speaking with the team later today (I understand they are in a secure location and cannot readily be contacted at the moment.  I will get back with you and the Court as soon as possible.  We will certainly have the documents to the Court no later than Thursday of this week.  I am very much hoping we will have them to you sooner than that.

I will respond with a definitive time later today.

Best,

Shannon

*Shannon T. Hanson*
*First Assistant U.S. Attorney*
*U.S. Attorney's Office for the District of Delaware*
*1313 N. Market Street, Suite 400*
*Wilmington, DE 19801*

---

**From:** Mark Buckson
**Sent:** Tuesday, July 11, 2023 12:30 PM
**To:** Hanson, Shannon (USADE)
**Cc:** Christopher Clark <clark@csvllp.com>; Wallace, Benjamin (USADE)                    ;
Hines, Derek (USAPAE)                    ; Wise, Leo (USAMD)
**Subject:** RE: Regarding

Hi Shannon,

Following up, Her Honor would like to know when you will have final versions of the documents completed.

Thank you,

Mark Buckson
Courtroom Deputy

**From:** Hanson, Shannon (USADE)
**Sent:** Thursday, July 6, 2023 9:48 AM
**To:** Mark Buckson
**Cc:** Christopher Clark <clark@csvllp.com>; Wallace, Benjamin (USADE)
                              ;                    usdoj.gov                    ; Wise, Leo
(USAMD)
**Subject:** RE: Regarding

==**CAUTION - EXTERNAL:**==

Mark:

Thank you for reaching out.  There have been some minor modifications to these documents.  We will confer with defense counsel, cced here, to confirm the final versions and then send them to the Court.  Is there a particular date by which the Court would like the finalized versions with signatures?

Respectfully,

Shannon Hanson

**From:** Mark Buckson
**Sent:** Thursday, July 6, 2023 9:35 AM
**To:** Hanson, Shannon (USADE)
**Cc:** Christopher Clark <clark@csvllp.com>
**Subject:** FW: Regarding

Good morning Shannon,

In preparation for the hearing later this month, do you anticipate any changes to the contents of the attached documents (aside from signatures)? Please let me know when you have a moment.

Mark Buckson
Courtroom Deputy

**From:** Maryellen Noreika
**Sent:** Friday, June 9, 2023 9:43 AM
**To:**                    usdoj.gov
**Cc:** Christopher Clark <clark@csvllp.com>; Margaret Bray                              ;
Mark Buckson                              ; April Smith
**Subject:** Re: Regarding

Ms. Hanson —

Please send information to my Courtroom Deputy and Case Manager.  We do not usually accept

information sent only to my private email address.

I do not know when I will have a chance to review, but we will let you know if Tuesday works for us after I have been able to do so.

Thank you.

Maryellen Noreika


On Jun 8, 2023, at 7:38 PM, Hanson, Shannon (USADE) wrote:


 **CAUTION - EXTERNAL:**


Dear Judge Noreika:

Our sincere apologies for the delay in getting these draft documents to you for review. We have been working diligently today with defense counsel, Mr. Christopher Clark, cced above, to finalize their content.  The attached are in final form, with exception of the signature blocks.

Accordingly, please find:

**Tax**:

1. An Information charging two misdemeanor tax offenses, in violation of Title 26, United States Code, Section 7203
2. A Memorandum of Plea Agreement for the tax offenses, including a standard Attachment A and a Statement of Facts (Exhibit 1).

**Firearm:**

1. An Information charging one gun offense, in violation of 18 U.S.C. Section 922(g) (3).
2. A Pretrial Diversion Agreement for the gun offense, including a Statement of Facts (Attachment A).

We anticipate filing the signed documents with the Court on Tuesday.

You will notice that the Pretrial Diversion Agreement contemplates approval by the U.S. Probation and Pretrial Services Office.  We have been speaking with Margi Bray, Chief

U.S. Probation Officer.  Through her diligence, we hope to have the requisite pretrial diversion report completed prior to the hearing, currently tentatively scheduled for Tuesday, June 13th at 4:00 p.m.

We are available at the call of the Court.

Respectfully submitted,

Shannon Hanson

*Shannon T. Hanson*
*First Assistant U.S. Attorney*
*U.S. Attorney's Office for the District of Delaware*
*1313 N. Market Street, Suite 400*
*Wilmington, DE 19801*


*302 573 6669 (desk)*

**CAUTION - EXTERNAL EMAIL: This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.**


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:23-cr-00061-MN |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## DIVERSION AGREEMENT

## I.   PARTIES

This Diversion Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware, and Robert Hunter Biden ("Biden"), collectively referred to herein as "Parties," by and through their authorized representatives.

## II.   TERMS AND CONDITIONS OF DIVERSION AGREEMENT

1.   The term of this Agreement shall be twenty-four (24) months, beginning on the date of approval of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.   The twenty-four (24) month period following the execution and approval of this Agreement shall be known as the "Diversion Period."

3.   Biden shall waive indictment in relation to the information filed in the United States District Court for the District of Delaware on June 20, 2023, which charges Biden with one count of knowingly possessing a firearm while then an unlawful user of or person addicted to a controlled substance, in violation of Title 18, United States

Code, Sections 922(g)(3) and 924(a)(2) (2018) (hereinafter "the Information").

4.     The United States agrees that if Biden complies with all of his respective obligations under this Agreement, then the United States, within thirty (30) days after the expiration of the Diversion Period, will file a motion with the Court seeking the dismissal of the Information.

5.     Biden agrees that the United States has probable cause to bring the charge in the Information, and that the charge is not frivolous or made in bad faith. Biden also agrees that if at a future time the United States should move to dismiss the Information pursuant to this Agreement, Biden would not be a "prevailing party" with regard to the Information. Biden further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

6.     In light of the fact that Biden has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached Attachment A (hereinafter "Statement of Facts (Attachment A)"), and taking into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety, and in consideration for the other terms recited herein, the United States shall divert this matter in the manner set forth in this Agreement pursuant to the terms and conditions set forth herein.

7.     Biden agrees to waive all defenses based on the statute of limitations with respect to the charge set forth in the Information and any other federal firearms

charges that could be brought with respect to the conduct set forth in the Statement of Facts (Attachment A) and agrees that the applicable statute of limitations period for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A) shall be tolled during the Diversion Period. Biden further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

8.     It is the intent of this Agreement for Biden to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware with respect to the charge set forth in the Information, and for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A).

Commitments and Undertakings of Biden

9.     It is understood that under the terms of this Agreement, Biden shall:

   a.  Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)) or ammunition (as that term is defined by Title 18, United States Code, Section 921(a)(17)), during the Diversion Period or at any time thereafter;

   b.  Consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that he will be denied via NICS if he attempts to legally purchase another firearm; and

    c.  Pursuant to 18 U.S.C. § 924(d), forfeit to the United States all right, title, and interest in all firearms and ammunition involved in the charge set forth in the Information, including but not limited to a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Subject Property"). The defendant agrees to waive any and all interest in the Subject Property in any administrative or judicial proceeding, whether civil or criminal, state or federal, and the defendant shall not file a claim or petition seeking remission or contesting the forfeiture of the Subject Property in any administrative or judicial proceeding, whether civil or criminal, state or federal. The defendant consents and waives all rights to compliance by the United States with any applicable deadlines under 18 U.S.C. §§ 924(d) and 983(a).

<u>Additional Conditions Applicable to Diversion Period</u>

10.    Without limiting or otherwise modifying any of the Commitments and Undertakings set forth in the preceding paragraph, it is further understood that during the Diversion Period, Biden shall:

    a.  Be subject to pretrial diversion supervision as directed by the U.S. Probation and Pretrial Services Office in this District;

    b.  Continue or actively seek employment;

    c.  Refrain from unlawfully consuming or possessing any controlled substance;

    d.  Refrain from using alcohol;

    e.  Submit to substance-abuse testing and participate in substance-abuse treatment as directed by the U.S. Probation and Pretrial Services Office in

this District;

    f.   Submit to fingerprinting by the Federal Bureau of Investigation (FBI). The fingerprint card will be submitted to the FBI for placement in their identification files. Upon successful completion of the term of pretrial diversion, the FBI will be notified to mark their records that pretrial diversion was successfully completed. The fingerprint cards will be withdrawn from the FBI's records three years after completion of pretrial diversion in accordance with FBI policy;

    g.   Communicate in writing all international travel plans (and provide any supporting documentation, if requested) to the U.S. Probation and Pretrial Services Offices in this District and the District where Biden resides; and

    h.   Not commit a violation of any federal, state, or local law.

<u>Statement of Facts</u>

11.    Biden acknowledges and agrees that the Statement of Facts (Attachment A), is truthful and accurate.

12.    Biden agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts (Attachment A) associated with this Agreement. Any contradictory statement by Biden, or by an agent for Biden, shall constitute a violation of this Agreement. If the United States believes such a contradictory statement has been made and that such statement constitutes a knowing material breach of this Agreement, then the United States may seek a determination regarding such alleged breach pursuant to the procedures set forth in paragraph 14,

below.

Breach of Agreement

13.    Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

14.    If the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for the supervision of this Agreement.  Upon notice to Biden, the United States may seek a determination on a preponderance of the evidence presented to such District Judge.  Biden shall have the right to present evidence to rebut any such claim in such proceeding.  If after that process the judge overseeing such process makes a final determination that Biden committed a knowing material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

a.    **Remedy 1** – The United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

b.    **Remedy 2** – The United States may prosecute Biden for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A); perjury; obstruction of justice; and any such prosecution that is not time-barred by the applicable statute of limitations on the date

of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. The United States is not required to offer Remedy 1 before proceeding to Remedy 2 if, in its sole determination, the nature and seriousness of the breach warrants termination of this Agreement.

<u>Agreement Not to Prosecute</u>

15.    The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes encompassed by the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day. This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

<u>General Terms and Conditions</u>

16.    All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement, the attached Statement of Facts (Attachment A), the Information, and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

17.    The parties stipulate and agree that the conduct set forth in the Statement of Facts (Attachment A) does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 for the offenses arising under Title 26 of the United States Code as set forth in the Information filed in a separate case this same day.

18.    This Agreement may be executed in counterparts, each of which constitutes an

original and all of which constitute one and the same agreement.

19.    This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications of or additions to this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

In Witness Whereof, the Parties, through their duly authorized representatives, hereunder set their hands.


ON BEHALF OF THE UNITED STATES OF AMERICA

                              DAVID C. WEISS
                              UNITED STATES ATTORNEY


                    BY:  _____
                              Leo J. Wise
                              Derek E. Hines
                              Special Assistant United States Attorneys

                              Benjamin L. Wallace
                              Assistant United States Attorney

Dated:



ON BEHALF OF ROBERT HUNTER BIDEN


BY:  _____        BY:  _____
     Robert Hunter Biden              Christopher Clark, Esq.
     Defendant                        Attorney for Robert Hunter Biden

Dated:



APPROVED BY:


_____

Margaret M. Bray
Chief United States Probation Officer
District of Delaware

Dated:

**ATTACHMENT A**
**STATEMENT OF FACTS**

Robert Hunter Biden ("Biden") began using crack and powder cocaine in or around October 2016, became a habitual user in 2017, and continued to use frequently and regularly through approximately May 2019.  During that time, he enrolled in multiple in- and outpatient rehabilitation programs with varying degrees of temporary success but did not achieve long-term sobriety.  Instead, his drug use overall escalated.

Biden moved to California in the spring of 2018, where he used crack cocaine on a regular basis, at times as frequently as every 15 minutes.  He enrolled in an additional rehabilitation program in California from August 16–27, 2018, and then lived with a sober companion from August 27–September 2, 2018.  He relapsed shortly thereafter, and his crack cocaine use continued when he returned to the East Coast in the fall of 2018.

On October 12, 2018, Biden visited a federally licensed firearms dealer in Wilmington, Delaware.  He purchased a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Firearm"), along with several other items, including an HKS speed loader for the Firearm and a box of ammunition.

When he purchased the Firearm, Biden completed an ATF Form 4473, which required him to answer the question, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"  Biden answered "no," even though he was a user of, and addicted to, crack cocaine at the time.  Biden certified that his "answers in Section A" were "true, correct, and complete," and that he understood that a person who answers "yes" to that question is "prohibited from purchasing or receiving a firearm."

Biden possessed the Firearm from October 12–23, 2018.  During that time, he purchased and used crack cocaine regularly.  On October 23, 2018, the Firearm was found in Biden's vehicle along with drug remnants and paraphernalia.  The Firearm was subsequently discarded in a trashcan outside a supermarket in Greenville, Delaware, and later recovered by law enforcement.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:23-cr-00061-MN |
| | ) | |
| ROBERT HUNTER BIDEN, | ) | |
| | ) | |
| Defendant. | ) | |

**DIVERSION AGREEMENT**

I.    PARTIES

     This Diversion Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware, and Robert Hunter Biden ("Biden"), collectively referred to herein as "Parties," by and through their authorized representatives.

II.    TERMS AND CONDITIONS OF DIVERSION AGREEMENT

1.    The term of this Agreement shall be twenty-four (24) months, beginning on the date of approval of this Agreement, unless there is a breach as set forth in paragraphs 13 and 14. Obligations hereunder survive the term of this Agreement only where this Agreement expressly so provides.

2.    The twenty-four (24) month period following the execution and approval of this Agreement shall be known as the "Diversion Period."

3.    Biden shall waive indictment ~~and agree that~~in relation to the ~~United States will file an~~ information ~~(hereinafter "the Information")~~filed in the United States District Court for the District of Delaware~~, charging~~ on June 20, 2023, which charges Biden with one count of knowingly possessing a

3.      firearm while then an unlawful user of or person addicted to a controlled substance, in violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2) (2018.) (hereinafter "the Information").

4.      The United States agrees that if Biden complies with all of his respective obligations under this Agreement, then the United States, within thirty (30) days after the expiration of the Diversion Period, will file a motion with the Court seeking the dismissal of the Information.

5.      Biden agrees that the United States has probable cause to bring the charge in the Information, and that the charge is not frivolous or made in bad faith. Biden also agrees that if at a future time the United States should move to dismiss the Information pursuant to this Agreement, Biden would not be a "prevailing party" with regard to the Information. Biden further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

6.      In light of the fact that Biden has accepted responsibility for the actions referenced in the Statement of Facts as set forth in the attached Attachment A (hereinafter "Statement of Facts (Attachment A)"), and taking into consideration Biden's candid acknowledgment of his historical drug use as well as his current sobriety, and in consideration for the other terms recited herein, the United States shall divert this matter in the manner set forth in this Agreement pursuant to the terms and conditions set forth herein.

7.      Biden agrees to waive all defenses based on the statute of limitations with respect to the charge set forth in the Information and any other federal firearms

charges that could be brought with respect to the conduct set forth in the Statement of Facts (Attachment A) and agrees that the applicable statute of limitations period for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A) shall be tolled during the Diversion Period. Biden further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

8.    It is the intent of this Agreement for Biden to agree to be subject to the jurisdiction of, and venue in, the United States District Court for the District of Delaware with respect to the charge set forth in the Information, and for any federal charges arising out of the firearms purchase set forth in the Statement of Facts (Attachment A).

<u>Commitments and Undertakings of Biden</u>

9.    It is understood that under the terms of this Agreement, Biden shall:

  a.  Not purchase, possess, or attempt to purchase or possess, or otherwise come into possession of, a firearm (as that term is defined by Title 18, United States Code, Section 921(a)(3)) or ammunition (as that term is defined by Title 18, United States Code, Section 921(a)(17)), during the Diversion Period or at any time thereafter;

  b.  Consent to a permanent entry in the National Instant Criminal Background Check System ("NICS"), such that he will be denied via NICS if he attempts to legally purchase another firearm; and

3

c. Pursuant to 18 U.S.C. § 924(d), forfeit to the United States all right, title, and interest in all firearms and ammunition involved in the charge set forth in the Information, including but not limited to a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Subject Property"). The defendant agrees to waive any and all interest in the Subject Property in any administrative or judicial proceeding, whether civil or criminal, state or federal, and the defendant shall not file a claim or petition seeking remission or contesting the forfeiture of the Subject Property in any administrative or judicial proceeding, whether civil or criminal, state or federal. The defendant consents and waives all rights to compliance by the United States with any applicable deadlines under 18 U.S.C. §§ 924(d) and 983(a).

<u>Additional Conditions Applicable to Diversion Period</u>

10. Without limiting or otherwise modifying any of the Commitments and Undertakings set forth in the preceding paragraph, it is further understood that during the Diversion Period, Biden shall:

a. Be subject to pretrial diversion supervision as directed by the U.S. Probation and Pretrial Services Office in this District;

b. Continue or actively seek employment;

c. Refrain from unlawfully consuming or possessing any controlled substance and be subject;

d. Refrain from using alcohol;

b.e. Submit to drug substance-abuse testing on a periodic basisand

4

participate in substance-abuse treatment as ~~determined~~directed by the U.S. Probation and Pretrial Services Office in this District;

f.   Submit to fingerprinting by the Federal Bureau of Investigation (FBI). The fingerprint card will be submitted to the FBI for placement in their identification files. Upon successful completion of the term of pretrial diversion, the FBI will be notified to mark their records that pretrial diversion was successfully completed. The fingerprint cards will be withdrawn from the FBI's records three years after completion of pretrial diversion in accordance with FBI policy;

~~c.~~g.   Communicate in writing all international travel plans (and provide any supporting documentation, if requested) to the U.S. Probation and Pretrial Services Offices in this District and the District where Biden resides; and

~~d.~~h.   Not commit a violation of any federal, state, or local law.

<u>Statement of Facts</u>

11.   Biden acknowledges and agrees that the Statement of Facts (Attachment A), is truthful and accurate.

12.   Biden agrees that he shall not, himself or through any agent or representative, make any statement, in litigation or otherwise, repudiating or contradicting the Statement of Facts (Attachment A) associated with this Agreement. Any contradictory statement by Biden, or by an agent for Biden, shall constitute a violation of this Agreement. If the United States believes such a contradictory statement has been made and that such statement constitutes a knowing material breach of this Agreement, then the United States may seek a determination

regarding such alleged breach pursuant to the procedures set forth in paragraph 14, below.

Breach of Agreement

13.   Biden agrees that a knowing failure to abide by or fully perform any of the terms, promises, or agreements set forth in this Agreement shall constitute a breach of this Agreement.

14.   If the United States believes that a knowing material breach of this Agreement has occurred, it may seek a determination by the United States District Judge for the District of Delaware with responsibility for the supervision of this Agreement.  Upon notice to Biden, the United States may seek a determination on a preponderance of the evidence presented to such District Judge.  Biden shall have the right to present evidence to rebut any such claim in such proceeding.  If after that process the judge overseeing such process makes a final determination that Biden committed a knowing material breach of this Agreement, then the United States may elect from the following remedies depending on the nature and seriousness of the breach:

> a.   **Remedy 1** – The United States may give Biden a specific time period in which to remedy the breach. If the United States determines that Biden has failed to remedy the breach during the specified time period, then the United States may elect Remedy 2 below.

> b.   **Remedy 2** – The United States may prosecute Biden for any federal criminal violation of which the United States has knowledge, including crimes related to the conduct set forth in the Statement of Facts (Attachment A); perjury; obstruction of justice; and any such prosecution

that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecution. The United States is not required to offer Remedy 1 before proceeding to Remedy 2 if, in its sole determination, the nature and seriousness of the breach warrants termination of this Agreement.

<u>Agreement Not to Prosecute</u>

15.    The United States agrees not to criminally prosecute Biden, outside of the terms of this Agreement, for any federal crimes encompassed by the attached Statement of Facts (Attachment A) and the Statement of Facts attached as Exhibit 1 to the Memorandum of Plea Agreement filed this same day. This Agreement does not provide any protection against prosecution for any future conduct by Biden or by any of his affiliated businesses.

<u>General Terms and Conditions</u>

16.    All parties consent to the public disclosure of this Agreement. The parties agree that this Agreement, the attached Statement of Facts (Attachment A), the Information, and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware.

17.    The parties stipulate and agree that the conduct set forth in the Statement of Facts (Attachment A) does not constitute relevant conduct pursuant to U.S.S.G. § 1B1.3 for the offenses arising under Title 26 of the United States Code as set forth in the Information filed in a separate case this same day.

7

18.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

19.     This Agreement sets forth all of the terms of the Agreement between the United States and Biden. It constitutes the complete and final agreement between the United States and Biden in this matter. There are no other agreements, written or otherwise, modifying the terms, conditions, or obligations of this Agreement. No future modifications of or additions to this Agreement, in whole or in part, shall be valid unless they are set forth in writing and signed by the United States, Biden, and Biden's counsel.

In Witness Whereof, the Parties, through their duly authorized representatives, hereunder set their hands.


ON BEHALF OF THE UNITED STATES OF AMERICA

DAVID C. WEISS
UNITED STATES ATTORNEY


BY: _____
Leo J. Wise
Derek E. Hines
Special Assistant United States Attorneys

Benjamin L. Wallace
Assistant United States Attorney

Dated:



ON BEHALF OF ROBERT HUNTER BIDEN


BY: _____      BY: _____
Robert Hunter Biden                 Christopher Clark, Esq.
Defendant                               Attorney for Robert Hunter Biden

Dated:



APPROVED BY:


_____

Margaret M. Bray
Chief United States Probation Officer
District of Delaware

Dated:

## ATTACHMENT A
## STATEMENT OF FACTS

Robert Hunter Biden ("Biden") began using crack and powder cocaine in or around October 2016, became a habitual user in 2017, and continued to use frequently and regularly through approximately May 2019.  During that time, he enrolled in multiple in- and outpatient rehabilitation programs with varying degrees of temporary success but did not achieve long-term sobriety.  Instead, his drug use overall escalated.

Biden moved to California in the spring of 2018, where he used crack cocaine on a regular basis, at times as frequently as every 15 minutes.  He enrolled in an additional rehabilitation program in California from August 16–27, 2018, and then lived with a sober companion from August 27–September 2, 2018.  He relapsed shortly thereafter, and his crack cocaine use continued when he returned to the East Coast in the fall of 2018.

On October 12, 2018, Biden visited a federally licensed firearms dealer in Wilmington, Delaware. He purchased a Colt Cobra 38SPL revolver with serial number RA 551363 (the "Firearm"), along with several other items, including an HKS speed loader for the Firearm and a box of ammunition.

When he purchased the Firearm, Biden completed an ATF Form 4473, which required him to answer the question, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"  Biden answered "no," even though he was a user of, and addicted to, crack cocaine at the time.  Biden certified that his "answers in Section A" were "true, correct, and complete," and that he understood that a person who answers "yes" to that question is "prohibited from purchasing or receiving a firearm."

Biden possessed the Firearm from October 12–23, 2018.  During that time, he purchased and used crack cocaine regularly.  On October 23, 2018, the Firearm was found in Biden's vehicle along with drug remnants and paraphernalia.  The Firearm was subsequently discarded in a trashcan outside a supermarket in Greenville, Delaware, and later recovered by law enforcement.