Angela M. Machala (State Bar No. 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Abbe David Lowell (*pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036-3508
Telephone:   (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Robert Hunter Biden*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 2:23-cr-00599-MCS** |
| Plaintiff, | *Hon. Mark C. Scarsi* |
| vs. | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS THE INDICTMENT FOR DUE PROCESS VIOLATIONS BASED ON OUTRAGEOUS GOVERNMENT CONDUCT** |
| ROBERT HUNTER BIDEN, | |
| Defendant. | Hearing Date:   March 27, 2024<br>Time:   1:00 PM<br>Place:   Courtroom 7C |

1

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

2  TO: SPECIAL COUNSEL DAVID WEISS, PRINCIPAL SENIOR ASSISTANT

3  SPECIAL COUNSEL LEO J. WISE, SENIOR ASSISTANT SPECIAL COUNSEL

4  DEREK E. HINES

5          PLEASE TAKE NOTICE that on March 27, 2024, at 1:00 p.m., or as soon

6  thereafter as the matter may be heard, in the courtroom of Honorable Mark C. Scarsi,

7  Defendant Robert Hunter Biden, by and through his attorneys of record, will, and

8  hereby does, respectfully move this Court for an order dismissing the Indictment due to

9  outrageous government conduct that violated his right to due process of law.   In the

10 alternative, this Court should exercise its supervisory power to dismiss this Indictment

11 to vindicate Mr. Biden's rights, preserve judicial integrity and deter illegal or improper

12 conduct by government agents.

13         Mr. Biden's motion is based on Federal Rule of Criminal Procedure 6(e) and 26

14 U.S.C. § 6103, this Notice of Motion and Motion, the attached Memorandum of Points

15 and Authorities, the pleadings, papers, and documents on file with the Court, the oral

16 arguments of counsel, and such other matters as the Court may deem proper to consider.

17

18

19    Dated:  February 20, 2024                  Respectfully submitted,

                                                 WINSTON & STRAWN LLP
20

21

22                                               By: */s/ Angela M. Machala*
                                                     Angela M. Machala
23                                                   Abbe David Lowell
                                                     Christopher D. Man
24
                                                     *Attorney for Robert Hunter Biden*
25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION...........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.............................................2

    A.    Frustrated By The Direction Of The Investigation Of Mr. Biden, IRS Agents Investigating Mr. Biden Willfully Disclosed His Confidential Tax Information Prior To Any Public Disclosure By The Committee On Ways And Means……………………………………………………………...3

    B.    IRS Personnel Continued To Discuss Mr. Biden's Confidential Tax Information Publicly Despite Clear Instructions During Their Testimony Before The Committee On Ways And Means......................6

    C.    IRS Personnel Completely Disregarded Their Confidentiality Obligations After Testifying Before The House Of Representatives.......8

    D.    Public Disclosure Of Confidential Return Information By Shapley And Ziegler Continued After The Filing Of Nine Tax Charges In California...............................................................................................11

ARGUMENT .............................................................................................14

I.    THE INDICTMENT AGAINST MR. BIDEN SHOULD BE DISMISSED AS THIS PROSECUTION ARISES FROM OUTRAGEOUS GOVERNMENT CONDUCT BY THE INVESTIGATING AGENTS ................................14

II.    IN THE ALTERNATIVE, THIS COURT SHOULD USE ITS SUPERVISORY POWERS TO DISMISS THIS INDICTMENT ..........................................17

CONCLUSION ...........................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bank of Nova Scotia v. United States*,
487 U.S. 250 (1988)..................................................................................18, 19

*Dixon v. D.C.*,
394 F.2d 966 (D.C. Cir. 1968) ......................................................... 18

*In re Blue Grand Jury*,
536 F. Supp. 3d 435 (D. Minn. 2021) ............................................. 16

*United States v. Banks*,
383 F. Supp. 389 (D.S.D. 1974).......................................................... 18

*United States v. Biden*,
No. 23-mj-00274-MN (D. Del. 2023) .................................................. 6

*United States v. Combs*,
827 F.3d 790 (8th Cir. 2016) ...................................................... 14

*United States v. De Rosa*,
783 F.2d 1401 (9th Cir. 1986) ......................................................... 18

*United States v. Garza-Juarez*,
992 F.2d 896 (9th Cir. 1993) ......................................................... 15

*United States v. Hunt*,
No. 8:10-CR-101-RWT (D. Md. Sept. 8, 2010) ............................. 16

*United States v. Kilgore*,
2020 WL 4747881 (W.D. Wash. Aug. 17, 2020)............................... 18

*United States v. Marcello*,
731 F.2d 1354 (9th Cir. 1984) ...................................................... 14

*United States v. Marshank*,
777 F. Supp. 1507 (N.D. Cal. 1991).........................................15, 17

*United States v. Pedrin*,
797 F.3d 792 (9th Cir. 2015)..............................................1, 14, 15

*United States v. Russell,*
  411 U.S. 423 (1973).............................................................................1, 14, 15

*United States v. Samango,*
  607 F.2d 877 (9th Cir. 1979)...........................................................18, 19, 20

*United States v. Sells Eng'g, Inc.,*
  463 U.S. 418 (1983) ................................................................................ 15

*United States v. So,*
  755 F.2d 1350 (9th Cir. 1985) ................................................................ 14

*United States v. Stenberg,*
  803 F.2d 422 (9th Cir. 1986)...........................................................14, 15

*United States v. Stinson,*
  647 F.3d 1196 (9th Cir. 2011) ................................................................ 1

*United States v. Toilolo,*
  666 F. App'x 618 (9th Cir. 2016) ........................................................ 18

*United States v. Walters,*
  910 F.3d 11, 32 (2d Cir. 2018)............................................................ 16

**Statutes**

26 U.S.C. § 6103..............................................................................*passim*

26 U.S.C. § 7213.........................................................................5, 6, 16

**Other Authorities**

Fed. R. Crim. P. 6(e)......................................................................2, 3, 16, 17

United States House of Representatives, Comm. On Ways & Means,
  Report on Materials Presented to the Committee Under 26 U.S.C.
  § 6103, Chairman Jason Smith (Sept. 27, 2023)........................................10, 12

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Mr. Biden moves this Court to dismiss the indictment filed against him as it results from what courts define as outrageous government conduct that violates his right to due process of law.   In *United States v. Russell*, the Supreme Court held that a prosecution arises from outrageous government conduct when the actions of law enforcement officers or informants are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . ." 411 U.S. 423, 431–32 (1973) (citation omitted).   For its part, the Ninth Circuit agrees that an indictment may be dismissed where the government's conduct is "so grossly shocking and so outrageous as to violate the universal sense of [] justice." *United States v. Pedrin*, 797 F.3d 792, 795–96 (9th Cir. 2015) (citing *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011)).   The pertinent question is what constitutes "outrageous government conduct."   That phrase should not be tossed around lightly and should only apply in extreme cases in which the government's conduct violates fundamental fairness to the defendant.   This is exactly such a case.

If government case agents assigned to a criminal investigation (i) electing to disobey supervisors; (ii) taking the law into their own hands; (iii) acting as if they know better than experienced prosecuting attorneys as to how a high-profile investigation should be handled and what charges should be filed; (iv) undertaking a public media campaign (while still employed by the government) to force prosecutors' hands to bring charges beyond what had been approved and agreed to; (v) attempting to have a subject tried in the court of public opinion; and (vi) doing all this in violation of federal statutes and rules designed to prevent the very abuse the agents were undertaking *does not* amount to "outrageous government conduct," then it is difficult to imagine what would. The bad actors were not just Internal Revenue Service (IRS) Agents in title, they were also agents of the government who bound their agency to the improper actions they took.   In turn, the agency committed its own "outrageous conduct" by not taking action

1  to curtail the misconduct or prevent the unauthorized disclosure of confidential grand

2  jury and taxpayer return information.

3      The result is not just violations of Federal Rule of Criminal Procedure 6(e) and

4  26 U.S.C. § 6103 by those charged to enforce and upload the law.  The specific harm

5  to Mr. Biden includes his prior Plea Agreement for two failure to pay tax misdemeanors

6  (for tax years 2017 and 2018) abandoned and improperly transformed into to twelve

7  charges, including felony charges, in this case and the prosecution's repudiation of a

8  Diversion Agreement on a gun charge in another jurisdiction that it has now prosecuted

9  there as multiple firearm felonies.  It also includes the extraordinary prejudice created

10  by the publicity of the IRS agents' misconduct which has led to virtually anyone in the

11  country with a television, radio, newspaper subscription, or online news source already

12  convicting Mr. Biden in the court of public opinion.

13      That is the definition of "outrageous government conduct" that requires dismissal

14  of the indictment in this case.

15              **FACTUAL AND PROCEDURAL BACKGROUND**

16      This prosecution of Mr. Biden has been prejudiced by, and is the byproduct of,

17  unprecedented leaks by two IRS agents involved in a private internal investigation and

18  by those IRS agents' improper disclosures of Mr. Biden's confidential return

19  information despite statutes designed to protect and safeguard such information.  The

20  public statements disclosing Mr. Biden's confidential return information began, at the

21  latest, in April 2023, when the two IRS case agents, Supervisory Special Agent Gary

22  Shapley and Special Agent Joseph Ziegler, went public with claims the Department of

23  Justice (DOJ) and the Biden Administration were interfering with the investigation of

24  Mr. Biden's taxes.  The two IRS agents, who had been investigating Mr. Biden since at

25  least 2018, began giving public interviews prior to any congressional testimony

26  regarding Mr. Biden's confidential return information.

27      After claiming "whistleblower" protection in Congress in Spring 2023, and

28  despite clear warnings from Congress that they were prohibited from disclosing the

contents of their testimony to the public in another forum, Messrs. Shapley and Ziegler's testimony only emboldened their media campaign against Mr. Biden. Between May 24 and December 14, 2023, Messrs. Shapley and Ziegler gave roughly 10 public interviews in which they discussed the ongoing investigation of Mr. Biden, confidential grand jury information in breach of Rule 6(e), and confidential return information in violation of 26 U.S.C § 6103. Since their public testimony before the House of Representatives on July 19, 2023, the two agents have become regular guests on national media outlets and have made new allegations and public statements regarding Mr. Biden's confidential tax information that were not previously included in their transcripts before the Committee on Ways and Means. Meanwhile, the government (both DOJ and IRS CI) has stood silently while its agents continued to comment on and publicly scrutinize Mr. Biden, the prosecution's charging decisions, and this investigation.

**A. Frustrated By The Direction Of The Investigation Of Mr. Biden, IRS Agents Investigating Mr. Biden Willfully Disclosed His Confidential Tax Information *Prior To* Any Public Disclosure By The Committee On Ways And Means**

Beginning on April 19, 2023, Mr. Shapley, through his lawyer, sent a letter to Members of Congress in which he disclosed confidential return information about an "ongoing and sensitive investigation of a high-profile, controversial subject[.]"[1] The letter requested that Mr. Shapley be allowed to testify before certain congressional oversight committees to, among other things, "detail examples of preferential treatment and politics improperly infecting decisions and protocols that would normally be followed by law enforcement professionals in similar circumstances if the subject were not politically connected."[2] Media outlets, including NBC News, CBS News, and the

---

[1] Letter from Mark D. Lytle, Attorney of Mr. Shapley, to Members of Congress at 34 (April 19, 2023), https://waysandmeans.house.gov/wp-content/uploads/2023/06/Whistleblower-1-Transcript_Redacted.pdf.

[2] *Id.* at 34–35.

Wall Street Journal, immediately reported that the letter was referring to the investigation of Mr. Biden.  The letter disclosed confidential return information about Mr. Biden provided by Mr. Shapley.

That same day, Mr. Shapley's lawyer participated in several interviews.  First, he spoke with conservative media personality John Solomon and raised concerns "about political interference in the Hunter Biden investigation"[3] and referenced a certain meeting "with both agents and prosecutors."  That same day, Mr. Shapley's lawyer also spoke with CBS News' Jim Axelrod and discussed Mr. Biden's confidential return information.  The lawyer transmitted the allegation of his client, then unnamed but understood to be Mr. Shapley, that "typical steps that a law enforcement investigator would take were compromised because of political considerations."[4]  And on April 20, 2023, Mr. Shapley's lawyer spoke with Bret Baier of Fox News and again discussed Mr. Biden's confidential return information.   During that interview, the lawyer communicated that his client "has spotted and observed things that are done differently in this particular matter . . . and he wants to talk about them."[5]

On May 24, 2023, after identifying himself publicly, Mr. Shapley gave a CBS News interview during which he discussed DOJ's ongoing investigation into Mr. Biden.  Mr. Shapley stated that he became involved in the investigation in January 2020 and asserted that:

> [F]or a couple years, we'd been noticing these deviations in the investigative process.  And I just couldn't, you know, fathom that DOJ might be acting

---

[3] *Exclusive: Lawyer For IRS Whistleblower In Hunter Biden Case Breaks Silence*, Just the News, https://justthenews.com/podcasts/john-solomon-reports/exclusive-lawyer-irs-whistleblower-hunter-biden-case-breaks-silence.

[4] Jim Axelrod et al., *In Hunter Biden Tax Investigation, IRS Agent Requests Whistleblower Protections To Talk About 'Political Considerations'*, CBS News (Apr. 19, 2023), https://www.cbsnews.com/news/hunter-biden-investigation-irs-agent-requests-whistleblower-protections-congress/.

[5] Brooke Singman, *IRS Whistleblower Is 'Not A Political Person,' Has Documents To Support Hunter Biden Allegations: Attorney*, Fox News (Apr. 20, 2023), https://www.foxnews.com/politics/irs-whistleblower-not-political-person-has-documents-support-hunter-biden-allegations-attorney.

1  unethically on this.[6]

2  Neither the IRS nor DOJ instructed Mr. Shapley, who remains employed by the IRS to

3  this day, or his representatives to refrain from publicly and unlawfully commenting on

4  the ongoing investigation or Mr. Biden's confidential return information, much less

5  took reasonable steps to prevent its personnel from doing so.

6    Then, claiming to be a "whistleblower," Mr. Shapley testified before the House

7  Ways and Means Committee on May 26, 2023 regarding the ongoing grand jury

8  investigation of Mr. Biden.  It was clear to everyone involved that Mr. Shapley's

9  testimony was "confidential."  The Committee on Ways and Means noted that it

10 "consider[ed] this entire interview and the resulting transcript as protected confidential

11 information under Section 6103[,]"[7] and "remind[ed] the witness and everyone in the

12 room that 26 U.S.C. Section 7213 makes it unlawful to make any disclosure of returns

13 or return information not authorized by Section 6103" and that "[u]nauthorized

14 disclosure of such information can be a felony punishable by fine or imprisonment."

15 The Committee could not have been clearer: "[g]iven the statutory protection for this

16 type of information, we ask that you not speak about what we discuss in this interview

17 to individuals not designated to receive such information."  Yet, the numerous media

18 outlets on which the agents appeared and spoke are "not designated to receive such

19 information."

20   During his testimony, Mr. Shapley selectively and publicly disclosed certain

21 aspects of Mr. Biden's confidential return information.  For example, Mr. Shapley

22 disclosed a description of the timeline of his involvement in Mr. Biden's case, his

23 purported communications with members of DOJ, information obtained from stolen

24 data belonging to Mr. Biden and likely accessed in violation of state and federal law,

25

26 [6] Jim Axelrod et al., *IRS Whistleblower Speaks: DOJ 'Slow-Walked' Tax Probe Said
To Involve Hunter Biden*, CBS Evening News (May 24, 2023),

27 https://www.cbsnews.com/news/irs-whistleblower-tax-probe-hunter-biden/.

28 [7] Interview of Gary A. Shapley at 7, H. Comm. on Ways & Means (May 26, 2023),
*transcript available at* https://waysandmeans.house.gov.

1   and his biased lay opinions and conclusions regarding Mr. Biden's tax liability.

2       Then, on June 1, 2023, Mr. Ziegler, the second purported "whistleblower"

3   (originally known only as "Agent X"), testified before the Committee on Ways and

4   Means about the same investigation.  As with Mr. Shapley's testimony, it was clear to

5   those involved that Mr. Ziegler's testimony was "confidential information" under

6   Section 6103 and counsel "remind[ed] the witness and everyone in the room that 26

7   U.S.C. Section 7213 makes it unlawful to make any disclosure of returns or return

8   information not authorized by Section 6103."[8]  Nevertheless, Mr. Ziegler selectively

9   and publicly disclosed certain aspects of Mr. Biden's confidential return information,

10  including a timeline of his involvement in Mr. Biden's case, his communications with

11  DOJ, information he obtained from what he described as a laptop, and his lay opinions

12  and conclusions regarding Mr. Biden's tax liability.

13  **B. IRS Personnel Continued To Discuss Mr. Biden's Confidential Tax**

14  **Information Publicly Despite Clear Instructions During Their Testimony**

15  **Before The Committee On Ways And Means**

16      On June 20, shortly after the two IRS agents testified before Congress,

17  prosecutors in Delaware docketed, for the first time, two Informations indicating Mr.

18  Biden "has agreed to plead guilty" to two tax misdemeanors (along with a diverted gun

19  charge).  *United States v. Biden*, No. 23-mj-00274-MN (D. Del. 2023) (DE 2).  The

20  public rebuke from Congressional Republicans was instant, decrying the agreement

21  reached as a "sweetheart deal" and a "slap on the wrist." Two days later, the Committee

22  on Ways and Means, led by Republicans, voted 25 to 18 to release the agents' case files

23  and documents provided to Congress protected under IRS Section 6103 (the "June 22

24  Vote").  The June 22 Vote only released the transcript and exhibits (various IRS case

25  files) to Mr. Shapley and Mr. Ziegler's testimony; it did not and could not release Mr.

26  Ziegler, Mr. Shapley, their authorized representatives, or any other individual who

27

28  [8] Interview of [Agent X] at 7, H. Comm. on Ways & Means (June 1, 2023), *transcript available at* https://waysandmeans.house.gov.

1  attended their testimony from their obligations not to otherwise disclose information

2  concerning the grand jury investigation or Mr. Biden's confidential return information.

3  Following the June 22 Vote, the Committee on Ways and Means released the full

4  transcripts of Messrs. Shapley and Ziegler's testimony.[9]

5       Still, Mr. Shapley did not relent in publicly airing grievances about the

6  investigation of and his views about Mr. Biden's conduct.  On June 28, Mr. Shapley did

7  an interview with Fox News' Bret Baier and discussed confidential WhatsApp

8  messages purportedly sent and received by Mr. Biden.  Mr. Shapley stated, "when we

9  received the attorney-client filter-reviewed copy of information from the search warrant

10 to Apple which produced that document, we went back to the prosecutors and we

11 requested to take various investigative steps, and they were not supported."[10]  Mr.

12 Shapley opined that critical steps in the investigation of Mr. Biden were "put on the

13 back burner" as the presidential election approached and "the most substantive felony

14 charges were left off the table."  Mr. Shapley went on to state that he sought to obtain

15 and execute warrants to search Mr. Biden's property between April and June 2020.

16      Unhappy with only two failure to pay tax misdemeanors that U.S. Attorney David

17 Weiss decided was the proper resolution of this case on June 20, Mr. Shapley asserted

18 that Mr. Biden *should have been charged* with tax evasion for 2014, false tax returns

19 for 2018 and 2019, and that Mr. Biden did not report income from certain foreign

20 entities.  This was just the start of the public campaign that would, ultimately, result in

21 Special Counsel Weiss reneging on his initial offer and revert to charging Mr. Biden

---

[9] *Smith: Testimony of IRS Employees Reveals Biden IRS, DOJ Interfered in Tax Investigation of Hunter Biden, Revealing Preferential Treatment for Wealthy and Politically Connected*, H. Comm. on Ways & Means (June 22, 2023), https://waysandmeans.house.gov/smith-testimony-of-irs-employees-reveals-biden-irs-doj-interfered-in-tax-investigation-of-hunter-biden-revealing-preferential-treatment-for-wealthy-and-politically-connected/.  The only information that the Committee redacted from the transcript protected Mr. Ziegler's identity and the identities of questioning majority and minority counsel.

[10] Brooke Singman, *IRS Whistleblower Says 'Most Substantive Felony Charges Were Left Off The Table' In Hunter Biden Probe*, Fox News (June 28, 2023), https://www.foxnews.com/politics/irs-whistleblower-says-most-substantive-felony-charges-were-left-off-table-hunter-biden-probe.

with *nine* tax counts in this jurisdiction, include three felony charges.

Also on June 28, Mr. Shapley told CBS News' Jim Axelrod that punishment for Mr. Biden's conduct was warranted: "if this was any other person, they likely would have already served their sentence."[11]   Mr. Shapley cited to alleged "[p]ersonal expenses that were taken as business expenses—prostitutes, sex club memberships, hotel rooms for purported drug dealers" and claimed that "from 2014 to 2019 [Mr. Biden owed] $2.2 million [in unpaid taxes]." Mr. Shapley gave a similar interview with John Solomon the next day, stating:

> [T]he evidence that we collected that, that were, mashed up with the elements
> of the criminal violations . . . those elements were met and then some.  If these
> facts were from the local businessman or the neighbor next door, they would
> have been charged and they would have already had their entire sentence.[12]

Mr. Shapley also claimed Mr. Biden had not paid sufficient taxes from 2014 to 2019. At no time did the IRS take steps to prevent its employee from unlawfully and without authorization disclosing such information.

**C. IRS Personnel Completely Disregarded Their Confidentiality Obligations After Testifying Before The House Of Representatives**

On July 19, 2023, Messrs. Shapley and Ziegler testified before the U.S. House of Representatives, Oversight and Accountability Committee.[13]   During their six hours of testimony, Messrs. Shapley and Ziegler answered questions from House Democrats and Republicans.  Although Section 6103(f) allows certain Committees of Congress to

---

[11] Graham Kates & Michael Kaplan, *Hunter Biden Files Lawsuit Against IRS Alleging Privacy Violations*, CBS News (Sept. 18, 2023), https://www.cbsnews.com/news/hunter-biden-irs-lawsuit-alleging-privacy-violations/.

[12] *IRS Whistleblower Gary Shapley: Prosecutors Allowed Hunter Biden 2014 Tax Evasion Charge To Expire*, Just the News (June 29, 2023), https://justthenews.com/videos/irs-whistleblower-gary-shapley-prosecutors-allowed-hunter-biden-2014-tax-evasion-charge?utm_source=mux&utm_medium=social&utm_campaign=tw.

[13] *See IRS Whistleblower In Hunter Biden Case Says He 'Felt Handcuffed' During 5-Year Investigation*, CBS News (July 19, 2023), www.cbsnews.com/news/hunter-biden-irs-whistleblower-felt-handcuffed-case-hearing-investigation/.

review an individual's tax return or return information "sitting in closed executive session" to avoid public disclosure, the Oversight Committee is not among them. Thereafter, the IRS agents continued their media crusade.

On July 20, Mr. Ziegler appeared in an interview with CNN's Jake Tapper during which he (inaccurately) stated that "the four assigned prosecutors to [Mr. Biden's] case agreed with recommending felony and misdemeanor charges for Hunter Biden."[14] Mr. Ziegler also stated that he recommended that Mr. Biden should be charged with "felony and misdemeanor tax charges related to 2017, 2018 and 2019" for evasion of income tax. Mr. Ziegler did not disclose that he proposed felony tax charges for 2017 in his statements to the Committee on Ways and Means or the Oversight Committee and, in fact, these statements contradict his sworn testimony. Mr. Ziegler stated in his testimony under oath before the Committee on Ways and Means that he only recommended charges for "Section 7203, failure to timely file and pay tax" (a misdemeanor charge) in 2017. Also on July 20, both men appeared in an interview on the Megyn Kelly Show, during which Mr. Shapley stated, Mr. Biden "got preferential treatment and if it was a business owner on the corner, he or she wouldn't have gotten that special treatment and he probably would have been in jail already."[15]

A few days later, on July 24, Mr. Ziegler asserted on John Solomon's podcast that there were "deduction[s] that [were] taken on [Mr. Biden's] tax return"[16] that contradicted statements made in his book of business and alleged that Mr. Biden incorrectly described certain payments as loans, which constituted "clear cut tax

---

[14] *IRS Whistleblower Joseph Ziegler Joins The Lead In His First Televised Interview Since Testifying Before Congress*, CNN (July 20, 2023), www.cnn.com/videos/tv/2023/07/20/the-lead-irs-whistleblower-joseph-ziegler-jake-tapper-live.cnn.

[15] The Megyn Kelly Show, *IRS Whistleblowers Gary Shapley And Joseph Ziegler Recall "Disappointing" Congressional Hearing* (July 20, 2023), *available at* https://www.youtube.com/watch?v=JiYBzCZ0k3E.

[16] *IRS Whistleblower Ziegler: Hunter Biden's 'Contradicting' Statements In Autobiography Was Evidence In Tax Fraud Case*, Just the News (July 24, 2023), https://justthenews.com/podcasts/john-solomon-reports/irs-whistleblower-ziegler-hunter-bidens-contradicting-statements.

evasion." Mr. Ziegler claimed Mr. Biden had "delinquent taxes" going back to the early 2000s and opined that Mr. Biden's activities demonstrated "a willful intent to either deceive or make it so that income is not reported."

Mr. Shapley's lawyer also continued his media crusade on behalf of his client, appearing on a Fox News program on July 26 in which he stated that Mr. Shapley "wanted the proper authorities to see what happened that was different from all of his fourteen years in, ya know, working as an IRS agent." Mr. Shapley's lawyer then stated:

> There really needs to be a Special Counsel, this has really been too messed up. There needs to be a Special Counsel who not only can decide what to do with the Bidens, the Biden Family, the President, in terms of charges, but also write a report about what happened behind the scenes here, so it never happens again because clearly a lot of wrong things were done. And we're hoping that Congress will be able to get to the bottom of it and flush out what caused the preferential treatment, the wrong decisions on investigative steps. [17]

These statements came two weeks before U.S. Attorney Weiss sought Special Counsel status from the Attorney General. [18]  Mr. Shapley's lawyer reiterated the same need for a Special Counsel during an interview on Fox News on July 31, 2023.

Mr. Shapley appeared again on Fox News on August 1 to discuss Mr. Biden, stating: "They can go talk to the individuals involved and they can get to the bottom of it because every time that we needed to ask questions about President Biden's involvement in relation to the business dealings, we just weren't allowed to do that." [19]

---

[17]  Ashely Carhahan, *Attorney For IRS Whistleblower Urges Special Counsel After Hunter Biden Plea Deal Collapses*, Fox News (July 27, 2023), https://www.foxnews.com/media/attorney-irs-whistleblower-urges-special-counsel-hunter-biden-plea-deal-collapses.

[18]  Press Release, DOJ, Appointment of a Special Counsel (Aug. 11, 2023), https://www.justice.gov/opa/pr/appointment-special-counsel-2 ("On Tuesday, August 8, Mr. Weiss requested to be appointed as Special Counsel, and today the Attorney General made that appointment.").

[19]  Bailee Hill, *Biden IRS Whistleblower Calls On Congress To Demand Access To More Witnesses: Evidence 'Cannot Be Denied'*, Fox News (Aug. 1, 2023), https://www.foxnews.com/media/biden-irs-whistleblower-calls-congress-demand-

Mr. Shapley alleged that FBI General Counsel Jason Jones

> [W]as given a letter the Sunday before [his July 17 deposition before the House Oversight Committee] from DOJ basically telling him not to talk. I know that he could have confirmed additional material facts on this investigation. And he did confirm the FBI headquarters notifying the transition team and Secret Service.

Mr. Shapley did not disclose this confidential return information in his testimony to the Ways and Means Committee or the Oversight Committee. In fact, Mr. Shapley never mentioned Mr. Jones in his testimony to the Committee. Unsurprisingly, these alleged revelations grabbed the headlines.[20]

Following the Attorney General's appointment of a Special Counsel in this matter on August 11, 2023, Mr. Shapley went on CNN's *The Source* with Kaitlan Collins and repeated many of his prior comments, stating again that Mr. Biden was "provided preferential treatment" and that "[the United States Attorney's Office] stymied investigative steps."[21] He publicly disclosed Mr. Biden's confidential return information and his potential tax liability. Neither the IRS nor DOJ instructed Mr. Shapley or Mr. Ziegler, either personally or through their authorized representatives, to refrain from publicly and unlawfully disclosing such information, much less took reasonable steps to prevent its employee from doing so.

**D. Public Disclosure Of Confidential Return Information By Shapley And Ziegler Continued After The Filing Of Nine Tax Charges In California**

The public pressure campaign calling for more severe tax charges against Mr. Biden did not relent in the days and weeks leading up to the instant indictment. On

---

access-more-witnesses-evidence-denied.

[20] Steven Nelson, *Hunter Biden Whistleblower Gary Shapley Claims FBI Spooked Corroborating Witness*, N.Y. Post (Aug. 1, 2023), https://nypost.com/2023/08/01/hunter-biden-irs-whistleblower-gary-shapley-says-fbi-spooked-witness/.

[21] The Source With Kaitlan Collins, CNN (Aug. 11, 2023), https://transcripts.cnn.com/show/skc/date/2023-08-11/segment/01.

September 27, 2023, the Ways and Means Committee voted to dump into the public *hundreds* of case files from the "Sportsman" (e.g., Biden) investigation, provided via sworn Affidavits from Agents Shapley and Ziegler, containing investigative documents, communications, internal memos, and confidential return information related to Mr. Biden.[22]  Chairman Jason Smith also released a 16-page Report on Materials Presented to the Committee on Ways and Means under 26 U.S.C. § 6103.[23]  Then, on December 5, 2023, the Ways and Means Committee voted to release 56 additional pages of confidential return information and investigative case files about Mr. Biden provided by Mr. Ziegler.[24]  Agents Shapley and Ziegler again testified that same day behind closed doors about DOJ's investigation of Mr. Biden—again grabbing national headlines.[25]

Three days later, on December 8, 2023, prosecutors filed nine tax charges in this Court—six tax misdemeanors and three tax felonies—based on the same tax issues that had initially been passed over by DOJ and made only into two late payment tax misdemeanors in Delaware.  That evening, Agents Shapley and Ziegler issued a joint statement to Fox News, calling the indictment a "complete vindication" of their years-long investigation of Mr. Biden.[26]  Such a statement by the very law enforcement agents once charged with leading the investigation (let alone one as high-profile as this) is unprecedented and appalling.  In the days since, Agents Shapley and Ziegler have

---

[22] Meeting on Documents Protected Under Internal Revenue Code Section 6103 (Sept. 27, 2023), *available at* https://waysandmeans.house.gov/.

[23] Report on Materials Presented to the Committee on Ways and Means under 26 U.S.C. § 6103, H. Comm. on Ways & Means (Sept. 27, 2023), *available at* https://gop-waysandmeans.house.gov.

[24] Chairman Smith Opening Statement – Executive Session with IRS Whistleblowers (Dec. 5, 2023), *available at* https://waysandmeans.house.gov/.

[25] *IRS Whistleblowers Testify In Hunter Biden Probe*, CBS News (Dec. 5, 2023), https://www.cbsnews.com/video/irs-whistleblowers-testify-in-hunter-biden-probe/.

[26] Brooke Singman, *IRS Whistleblowers: Hunter Biden Indictment Is A 'Complete Vindication' Of Investigation, Allegations*, Fox News (Dec. 8, 2023), https://www.foxnews.com/politics/irs-whistleblowers-hunter-biden-indictment-complete-vindication-investigation-allegations.

continued their press tour to discuss Mr. Biden's case, including appearing on Fox News' *America's Newsroom* on December 14, 2023 to discuss the congressional testimony of the Assistant U.S. Attorney formerly in charge of the Delaware investigation, Lesley Wolf.[27]  Mr. Ziegler discussed, among other things, internal DOJ deliberations and a "constant concern" surrounding the investigative steps taken by DOJ prosecutors, while Mr. Shapley stated that the lack of any financial involvement of Mr. Biden's father has been "proven patently false by evidence and testimony [Agents Shapley and Ziegler] provided" to Congress.[28]

In sharp contrast to how DOJ and the IRS treat those who leak confidential tax information, neither Mr. Shapley nor Mr. Ziegler have been prosecuted, fired from their jobs, or even instructed to stop making unlawful disclosures.  In this same time frame, another high-profile IRS leaker disclosed confidential tax information concerning former President Trump and was sentenced to prison for five years, although he was not as brazen as Messrs. Shapley and Ziegler by committing his crime repeatedly on live television.  *See United States v. Charles E. Littlejohn*, No. 23-cr-00343-ACR (D.D.C. 2023).  Without acknowledging the blatant hypocrisy, many extremist Republicans complain that Mr. Trump's leaker got off easy, but praise Messrs. Shapley and Ziegler for their unlawful disclosures concerning Mr. Biden.[29]

---

[27] America's Newsroom, *IRS Whistleblowers On Biden's Role In Hunter's Dealings: You Don't Have To Be Financially Connected To Be A Part Of It*, Fox News (Dec. 14, 2023), https://www.foxnews.com/video/6343089520112.

[28] This claim apparently rested upon the false testimony of FBI informant Alexander Smirnov, who was just indicted for lying in making these allegations.  *United States v. Smirnov*, 2:24-cr-00091-ODW (C.D. Cal. filed Feb. 14, 2024).

[29] *See, e.g.*, *Chairman Jordan Opens Inquiry Into DOJ's Sweetheart Deal For Trump Tax Return Leaker*, H. Judiciary Comm. (Feb. 8, 2024), *available at* https://judiciary.house.gov/; A. Singh, *Top GOP Rep Calls On More Whistleblowers To Come Forward, Pledges 'Zero Tolerance' For Retaliation*, Daily Caller (July 19, 2023), https://dailycaller.com/2023/07/19/jason-smith-irs-whistleblower-retaliation/.

1                               **ARGUMENT**

2   **I.**     **THE INDICTMENT AGAINST MR. BIDEN SHOULD BE DISMISSED**

3         **AS THIS PROSECUTION ARISES FROM OUTRAGEOUS**

4         **GOVERNMENT CONDUCT BY THE INVESTIGATING AGENTS**

5         The Due Process Clause bars the prosecution of a defendant where the

6 prosecution arises from fundamentally unfair government conduct.  *United States v.*

7 *Pedrin*, 797 F.3d 792, 795 (9th Cir. 2015).  This bar to prosecution, known as the

8 outrageous government conduct defense, was first identified by the Supreme Court in

9 *Russell*.  The Court found that to constitute a Fifth Amendment violation, the

10 government conduct at issue must be fundamentally unfair and "'shocking to the

11 universal sense of justice,' mandated by the Due Process Clause of the Fifth

12 Amendment."  411 U.S. at 432 (citation omitted).

13         The outrageous government conduct defense is distinct from an entrapment

14 defense, as the Eighth Circuit explains: "[The outrageous government conduct] defense

15 is sometimes raised together with the defense of entrapment, but the two are distinct:

16 Whereas the defense of entrapment focuses on the predisposition of the defendant to

17 commit the crime, the defense of outrageous government conduct focuses on the

18 government's actions."  *United States v. Combs*, 827 F.3d 790, 794 (8th Cir. 2016)

19 (internal quotations and citations omitted).  The Ninth Circuit similarly explains that

20 "[w]hile there is frequently some overlap between the concepts underlying the two

21 defenses, the entrapment defense essentially requires an inquiry into the defendant's

22 predisposition to commit the crime with which he is charged, *see, e.g.*, *United States v.*

23 *Marcello*, 731 F.2d 1354, 1357 (9th Cir. 1984), and the outrageous government conduct

24 defense focuses, not surprisingly, on the conduct of the government, *see, e.g.*, *United*

25 *States v. So*, 755 F.2d 1350, 1353 (9th Cir. 1985)."  *United States v. Stenberg*, 803 F.2d

26 422, 428–29 (9th Cir. 1986).  While the entrapment defense is raised at trial for the jury,

27 a due process challenge is made before trial, focusing on the government's actions.

28 Thus, a prosecution arises from outrageous government conduct where, as here, "the

actions of law enforcement officers or informants are 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *Pedrin*, 797 F.3d at 795 (quoting *Russell*, 411 U.S. at 431–32); *see also United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993); *Stenberg*, 803 F.2d at 429 (dismissing indictment for outrageous government conduct).

As the facts above illustrate, the government, through its now former case agents, demonstrated a "complete lack of respect for the constitutional rights of the defendant [] and an utter disregard for the government's ethical obligations." *United States v. Marshank*, 777 F. Supp. 1507, 1524 (N.D. Cal. 1991). The government's actions in this case are beyond egregious; the agents continuously disobeyed supervisors and flagrantly disregarded numerous federal statutes and rules designed to prevent the very abuse the agents were undertaking. In numerous acts spanning months, these agents engaged in what is best described as vigilante justice in the court of public opinion, making a public mockery of the framework within which these types of investigations should be handled.

The undertaking of a public media campaign on CNN, Fox News, CBS, and elsewhere—while Messrs. Shapley and Ziegler were still employed by the government—to further force prosecutors' hands to bring charges beyond what had been approved and agreed to by U.S. Attorney Weiss in June 2023 (when the Informations, Diversion Agreement, and Plea Agreements were first presented to the Court in Delaware) adds insult to injury. It is difficult to imagine something more shocking to the universal sense of justice than a complete and utter disregard by government agents of their duties and responsibilities to keep private information private and to refrain from unlawfully commenting on ongoing investigations.

Moreover, the federal government and its law enforcement agents have a clear duty to protect confidential grand jury information and tax return information, and are honor-bound to safeguard that information *even when* those investigating agents are discontent with the outcome of an investigation, prosecutors' charging decisions, or

their supervisors' choices about taking (or not taking) overt steps in a particular investigation—regardless of personal or partisan viewpoints. *See United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983) ("[G]overnment attorneys and their assistants[] and other personnel attached to the grand jury are forbidden to disclose matters occurring before the grand jury."). Courts recognize that the crime of leaking or disclosing such information by government agents sworn to uphold the law is often more egregious than the crimes those agents are charged with investigating. *See, e.g.,* *United States v. Walters*, 910 F.3d 11, 32 (2d Cir. 2018) (Jacobs, J., concurring) ("[T]he leak of grand jury testimony is in some respects more egregious than anything [Defendant] did [(insider trading)]—the FBI supervisor took an oath to uphold the law and was acting in a supervisory capacity to discharge an important public function."); Plea Agreement and Statement of Facts, *United States v. Hunt*, No. 8:10-CR-101-RWT (D. Md. filed Sept. 8, 2010) (reflecting terms of IRS agent's plea agreement for violation of Sections 6103 and 7213(a)(1), for having illegally disclosed taxpayer information).[30]

For example, on May 18, 2023, Special Agent Ziegler emailed his supervisors (including, among others, IRS Commissioner Daniel Werfel and Chief of IRS Criminal Investigation James Lee) about the Biden investigation to "apologize for breaking the managerial chain of command" and complaining that he and his Supervisory Special Agent (Mr. Shapley) "have tried to gain the attention of our senior leadership about certain issues prevalent regarding the investigation" but found their lack of involvement "deeply troubling and unacceptable." (Ex. A at 1). Mr. Ziegler then went on to discuss a number of sensitive aspects of the Biden investigation. Despite his frustrations, it did not give Mr. Ziegler the right to set-aside his law enforcement duties or disavow the protections afforded to subjects of confidential grand jury investigations. The following

---

[30] *See also In re Blue Grand Jury*, 536 F. Supp. 3d 435, 437 (D. Minn. 2021) (in response to an "apparent violation of Fed. R. Crim. P. 6(e) . . . order[ing] the United States to show cause why it is not in the interest of justice for this Court to appoint independent counsel to investigate and possibly prosecute criminal contempt charges relating to the apparent disclosures of matters occurring before the Blue Grand Jury").

day, on May 19, IRS Assistant Special Agent in Charge (ASAIC) in Washington DC, Lola Watson, emailed Mr. Ziegler re: "Reminder-Chain of Command" to remind him of exactly this violation and offered the following rebuke:

> You have been told several times that you need to follow your chain of command. IRS-CI maintains a chain of command for numerous reasons to include trying to stop unauthorized disclosures. Your email yesterday *may have included potential grand jury (aka 6e material)* in the subject line and contents of the email, and you included recipients that are not on the 6e list. . . .

(Ex. B at 1) (emphasis added). Mr. Ziegler, however, ignored this warning from ASAIC Watson and, as discussed *supra* at 8–11, went on to conduct numerous media appearances and public interviews in which he discussed and revealed Mr. Biden's confidential return information and grand jury details, without authorization to do so. For its part, the government (both DOJ and IRS) took no active steps in the process to prevent or restrain Mr. Ziegler from doing so. Mr. Biden has raised the agents' misconduct several times with the DOJ Inspector General and U.S. Attorney Weiss (including as recently as August 14, 2023 and December 8, 2023) regarding these Rule 6(e) and 6103 violations based upon the government agents' leaks and public statements. Neither official has yet to acknowledge the complaint.[31]

The duties to protect confidential grand jury, taxpayer, and Rule 6(e) information were unambiguously violated here and, consistent with the case law, this Court should dismiss the indictment and restore some semblance of justice here so that the government understands that such conduct will not be tolerated.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD USE ITS SUPERVISORY POWERS TO DISMISS THIS INDICTMENT

A court may dismiss an indictment either on constitutional grounds or by exercising its supervisory power. *United States v. Owen*, 580 F.2d 365, 367 (9th Cir.

---

[31] As a result, Mr. Biden has now brought a civil action based on these agents' misconduct and their agency's failure to act. *Biden v. United States Internal Revenue Service*, No. 23-cv-02711-TJK (D.D.C. 2023).

1   1978). "The three legitimate bases for the exercise of the supervisory power are: (1) to

2   remedy a violation of a statutory or constitutional right; (2) to preserve judicial integrity;

3   and (3) to deter future illegal conduct." *Marshank*, 777 F. Supp. at 1528 (citations

4   omitted). "The court's supervisory power may be used to vindicate a defendant's rights,

5   as well as to preserve judicial integrity and/or to deter illegal or improper conduct." *Id.*

6   Courts decide whether to exercise their supervisory power to dismiss an indictment on

7   a case-by-case basis. *United States v. De Rosa*, 783 F.2d 1401, 1406 (9th Cir. 1986).

8        Importantly, the government's "conduct need not be so unfair or imprudent as to

9   offend due process before exercise of this supervisory power is appropriate." *United*

10  *States v. Banks*, 383 F. Supp. 389, 392 (D.S.D. 1974); *see also United States v. Kilgore*,

11  2020 WL 4747881, at *3 (W.D. Wash. Aug. 17, 2020) ("If the government conduct does

12  not rise to the level of a due process violation, a court may dismiss an indictment under

13  its supervisory powers for 'flagrant' conduct resulting in 'substantial prejudice' to the

14  defendant where 'no lesser remedial action is available.'" (quoting *United States v.*

15  *Toilolo*, 666 F. App'x 618, 620 (9th Cir. 2016))). "Instead the supervisory power can

16  be utilized whenever the administration of justice is tainted." *Banks*, 383 F. Supp. at

17  392; *see also United States v. Samango*, 607 F.2d 877, 885 (9th Cir. 1979) (following

18  grand jury testimony by a DEA agent laden with conclusory statements about events in

19  which the agent had no personal involvement, along with a thousand pages of

20  transcripts, eventually led to an eleventh hour indictment against defendant, the trial

21  court held "that the manner in which the prosecution obtained the indictment

22  represented a serious threat to the integrity of the judicial process. The District Court's

23  dismissal, therefore, was a proper exercise of its supervisory power."); *Dixon v. D.C.*,

24  394 F.2d 966, 970 (D.C. Cir. 1968) (concluding that "in this case our supervisory power

25  must be used to protect 'the purity of the government and its processes'" and vacating

26  judgment and remanding with instructions to dismiss the information). To warrant

27  dismissal pursuant to a court's supervisory power, the government's misconduct must

28  not only be flagrant, but must also have prejudiced the defendant. *Bank of Nova Scotia*

1   *v. United States*, 487 U.S. 250, 254 (1988) (concluding IRS agents' violations of Rule
2   6 did not constitute an independent ground for dismissal of the indictment pursuant to
3   the court's supervisory authority, because the agents' misconduct did not significantly
4   infringe on the grand jury's ability to exercise independent judgment, nor did allowing
5   joint appearances by IRS agents before the grand jury for the purpose of reading
6   transcripts to the jurors).

7       All three bases for invoking this power are present here.  The above facts clearly
8   demonstrate numerous flagrant violations of statutes, constitutional rights, and ethical
9   responsibilities.  But besides that, this Court should not allow the judicial process to be
10  tarnished with acts that so clearly taint the processes and frameworks established to
11  protect the citizens of this nation.  Left without a deterrent, this indictment will be an
12  indication to other government agents that they can disregard their obligations without
13  consequences and to promote their own political agendas.

14      In addition, the prejudice to Mr. Biden, initially caused by these investigating
15  case agents and furthered by the extremist Republican Congressmen who have
16  pressured the prosecution's hand, cannot be overstated.  Besides clear violations of his
17  due process rights, Mr. Biden has had two tax misdemeanors and a Plea Agreement in
18  one jurisdiction abandoned and improperly changed to *nine tax charges, including*
19  *felony charges*, in this jurisdiction.  Additionally, the prosecution seeks to renege on a
20  Diversion Agreement that precludes the California tax charges altogether and, rather
21  than pursue a diversion on a single gun charge, now seeks to prosecute Mr. Biden for
22  three felony gun charges in Delaware.  And, and unlike the less prejudicial Rule 6
23  violations resulting from government agents' grand jury activities in *Bank of Nova*
24  *Scotia* that did not warrant dismissal pursuant to the court's supervisory authority, Mr.
25  Biden has had extraordinary personal prejudice created by the publicity of the IRS
26  agents' misconduct.  This prejudice included a near constant TV and media campaign
27  by Agents Shapley and Ziegler (and their attorneys) more akin to the circumstances in
28  *Samango*, as well as the release of hundreds of pages of his confidential return

information and grand jury information provided to the House Ways and Means Committee by these two agents. *See, e.g.*, *Samango*, 607 F.2d at 885 (testimony by an investigating agent laden with conclusory statements about events in which the agent had no personal involvement led to an "eleventh hour" indictment of defendant). This Court should vindicate Mr. Biden's rights, and in an extraordinary case such as this one, exercise its supervisory power to dismiss this indictment.

## CONCLUSION

There is no doubt that the government's outrageous misconduct in this case robbed Mr. Biden of his right to due process of law. Accordingly, the Court should dismiss the indictment filed against Mr. Biden as the first step in preventing prejudice and further harm to Mr. Biden.

Date: February 20, 2024          Respectfully submitted,

By: */s/ Angela M. Machala*
Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone : (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Robert Hunter Biden*