Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Abbe David Lowell (*pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
Kyllan J. Gilmore
KGilmore@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT HUNTER BIDEN<br><br>Defendant. | **Case No. 2:23-cr-00599-MCS**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR, IN THE ALTERNATIVE, TO DISMISS ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY**<br><br>Date: March 27, 2024<br>Time: 1:00 PM<br>Place: Courtroom 7C |

# NOTICE OF MOTION AND MOTION TO DISMISS

TO: SPECIAL COUNSEL DAVID WEISS, PRINCIPAL SENIOR ASSISTANT SPECIAL COUNSEL LEO J. WISE, SENIOR ASSISTANT SPECIAL COUNSEL DEREK E. HINES

PLEASE TAKE NOTICE that on March 27, 2024, at 1:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Mark C. Scarsi, Defendant Robert Hunter Biden, by and through his attorneys of record, will, and hereby does, respectfully move this Court for an order dismissing Count 1 of the Indictment as untimely or, in the alternative, to dismiss all counts for failure to state an offense and/or lack of specificity.  Dismissal is warranted because the statute of limitations for a charge under Section 7203 runs six years from an alleged willful failure to pay taxes and Count 1 was thus barred after April 18, 2023.  In the alternative, if the prosecution argues Count 1 accrued within the SOL, it will, in effect, concede that it fails to allege willfulness as a matter of law, which will doom all the counts for failure to state an offense pursuant to Rule 12(b)(3)(B)(v) and failure to meet the specificity requirements of Rules 7(c) and 12(b)(3)(B)(iii).

Mr. Biden's motion is based on Federal Rules of Criminal Procedure 7(c), 12(b)(3) and 18, this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings, papers, and documents on file with the Court, the oral arguments of counsel, and such other matters as the Court may deem proper to consider.

Dated:  February 20, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Angela M. Machala*
Angela Machala
Abbe David Lowell
Christopher D. Man

*Attorneys for Robert Hunter Biden*

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1
RELEVANT FACTS .............................................................................................3
LEGAL STANDARDS .........................................................................................5
ARGUMENT .........................................................................................................6
    I.    THE DATE MR. BIDEN'S 2016 TAX RETURNS WERE FILED IN JUNE 2020 WAS NOT THE DATE HIS 2016 TAX PAYMENT WAS "DUE" ..........................................................................................................6
    II.   THE INDICTMENT ALLEGES NUMEROUS FACTS MEANT TO ESTABLISH WILLFULL FAILURE TO PAY IN 2017 ..........................7
    III.  IF THE PROSECUTION CLAIMS MR. BIDEN WAS FIRST WILLFUL IN 2020, ALL COUNTS IN THE INDICTMENT FAIL TO STATE OFFENSES AND LACK SPECIFICITY ....................................9
CONCLUSION ....................................................................................................11

i

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR, IN THE ALTERNATIVE, ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Gault*,
    387 U.S. 1 (1967)...................................................................................................11

*Hamling v. United States*,
    418 U.S. 87 (1974).................................................................................................11

*Russell v. United States*,
    369 U.S. 749 (1962).................................................................................................5

*State v. Cobbs*,
    1164 A.3d 1062 (N.J. Sup. Ct. June 23, 2017).......................................................7

*Sunderland v. United States*,
    19 F.2d 202 (8th Cir. 1927) ..................................................................................11

*Toussie v. United States*,
    397 U.S. 112 (1970).................................................................................................5

*United States v. Andros*,
    484 F.2d 531 (9th Cir. 1973) ..........................................................................2, 6, 7

*United States v. Boren*,
    278 F.3d 911 (9th Cir. 2002) ...................................................................................6

*United States v. Cabrales*,
    524 U.S. 1 (1998)...................................................................................................12

*United States v. Cantrell*,
    612 F.2d 509 (10th Cir. 1980) ...............................................................................10

*United States v. Cantril*,
    8 U.S. (4 Cranch) 167 (1807) ................................................................................10

*United States v. Cisneros*,
    26 F. Supp. 2d 24 (D.D.C. 1998)...........................................................................10

*United States v. Conde*,
    309 F. Supp. 2d 510 (S.D.N.Y. 2003) ...................................................................10

ii

Defendant's Notice of Motion and Motion To Dismiss Count 1 As Untimely Or, In The Alternative, All Counts For Failure To State A Claim And Lack of Specificity - Case No. 2:23-cr-00599-MCS-1

*United States v. Cruikshank*,
    92 U.S. 542 (1875)...........................................................................................11

*United States v. DeTar*,
    832 F.2d 1110 (9th Cir. 1987) ........................................................................5

*United States v. Easterday*,
    539 F.3d 1176 (9th Cir. 2008) ........................................................................9

*United States v. Hess*,
    124 U.S. 483 (1888)......................................................................................11

*United States v. Howell*,
    78 U.S. 432 (1870)........................................................................................10

*United States v. Matosky*,
    421 F.2d 410 (7th Cir. 1970) ..........................................................................6

*United States v. Murphy*,
    762 F.2d 1151 (1st Cir. 1985) ......................................................................11

*United States v. Nance*,
    533 F.2d 699 (D.C. Cir. 1976)......................................................................11

*United States v. Ogbazion*,
    2016 WL 6070365 (S.D. Ohio Oct. 17, 2016) ...............................................5

*United States v. Resendiz-Ponce*,
    549 U.S. 102 (2007).........................................................................................5

*United States v. Sams*,
    865 F.2d 713 (6th Cir. 1988) ......................................................................6, 7

*United States v. Silverman*,
    745 F.2d 1386 (11th Cir. 1984) ....................................................................11

*Venegas v. Wagner*,
    704 F.2d 1144 (9th Cir. 1983) ...............................................................1, 7, 8

**Statutes**

26 U.S.C. § 6151(a) ................................................................................................1

26 U.S.C. § 6531(4) ................................................................................................5

iii

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR, IN THE ALTERNATIVE, ALL COUNTS
FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1

26 U.S.C. § 7201 ..................................................................................................... 1

26 U.S.C. § 7203 ............................................................................................. *passim*

**Other Authorities**

Fed. R. Crim. P. 7(C) ..................................................................................3, 5, 10

Fed. R. Crim. P. 12(b)(3) .........................................................................2, 3, 10, 11

Fed. R. Crim. P. 18.......................................................................................... 12

U.S. Dep't of Just. Criminal Tax Manual (2024) .............................................*passim*

iv

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR, IN THE ALTERNATIVE, ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Count 1 of the Indictment is defective for many reasons. It charges Mr. Biden under 26 U.S.C. § 7203 with willfully failing to pay all his 2016 taxes that were due on or before April 18, 2017. (Indict. ¶¶ 60, 65.)[1] The statute of limitations (SOL) for Section 7203 runs six years from an alleged willful failure to pay taxes. That means this charge was barred after April 18, 2023, and thus Count 1 (filed in December 2023, eight months too late) must be dismissed.[2]

Trying to avoid the SOL bar for Count 1, the prosecution alleges that Mr. Biden's failure to pay his 2016 taxes did not occur until June *2020*, when his accountants late-filed his 2016 returns noting an outstanding amount, but that is not the relevant date for determining when a defendant willfully failed to pay his taxes on time. (Indict. ¶¶ 62, 65.) The Indictment refers to this as failing to pay taxes when "due," *id.* ¶ 61, but the statute of limitations "cannot be avoided merely by artful pleading." *Venegas v. Wagner*, 704 F.2d 1144, 1146 n.1 (9th Cir. 1983). DOJ's Criminal Tax Manual clearly states that "tax must be paid at the time and place fixed for filing 'determined without regard to any extension of time for filing the return.'" CTM 10.06[3] (2024) (quoting I.R.C. § 6151(a)). And the Indictment specifically and repeatedly alleges that Mr. Biden was required by law to pay the tax due "*on or before April 18, 2017*." (Indict. ¶¶ 60, 65 (emphasis added).)

Nevertheless, it appears the prosecution tried to square its untimely charge by claiming that June 2020 triggered the SOL because that is when Mr. Biden "willfully" failed to pay the 2016 taxes. (*Id.* ¶ 65.) However, unlike, for example, felony tax evasion under Section 7201, where the SOL runs from the *last* affirmative act of evasion, the SOL for failure to pay under Section 7203 runs from *when the failure first became willful*. *See*

---

[1] Although taxes are normally due on April 15, the IRS accepted returns until April 18 in 2016 because of office closure on the 15th for Emancipation Day.

[2] Notably, unlike most of the other tax years charged in the Indictment, the prosecution does not charge Mr. Biden with a failure to timely *file* a 2016 tax return, presumably because such a charge is similarly time-barred. *See* DOJ Criminal Tax Manual (CTM) 7.02[2] (2024) (noting that in cases in which a defendant fails to file a tax return, the SOL begins to run when the return is due).

1

*United States v. Andros*, 484 F.2d 531, 532 (9th Cir. 1973).  Thus, an alleged failure to pay in June 2020 could only save Count 1 if that were the *first* time the prosecution accused Mr. Biden of willfully failing to pay his 2016 taxes.  But it is not.  Although the Indictment does not use the word "willfully" in connection with Mr. Biden's alleged knowledge and actions in April 2017, it clearly alleges facts meant to demonstrate his willful failure to pay at that time.  (*See, e.g.*, Indict. ¶ 61 (claiming Mr. Biden "knew he had to pay taxes for the 2016 tax year in 2017 because on or about April 21, 2016, he made a payment of $30,000 towards his 2016 tax liability and on or about April 18, 2017, [Biden's] D.C. accountant told him he owed an additional $26,000.").)  Just as the Court must accept the factual allegations in the Indictment at the dismissal stage, the prosecution is bound by its own allegations, and here it alleges an untimely crime.

Alternatively, the prosecution's allegation that Mr. Biden's alleged failure to pay first became willful in 2020 means *all* counts (all of which require the prosecution to prove willfulness) must be dismissed for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v).  This is because the prosecution would be conceding that its allegations of Mr. Biden's knowledge and failure to meet his tax obligations in 2017 are insufficient to allege willfulness.  (*See* Indict. ¶¶ 53–59 (alleging willfulness in 2020 when Mr. Biden late filed his returns based on the same or similar allegations of knowledge alleged in 2017).)  And if the prosecution concedes that the facts in 2017 do not allege willfulness, it must agree the same allegations do not allege willfulness any other year.

In short, the prosecution cannot escape its dilemma.  If it asserts, consistent with the allegations in the Indictment, that Mr. Biden willfully refused to pay his taxes when they were due on April 18, 2017, then Count 1 is barred by the SOL.  If the prosecution instead claims that Mr. Biden did not willfully fail to pay until he filed his returns in 2020, then it relies solely on allegations it agrees are insufficient to allege willfulness in 2017, which requires dismissal of all counts for failure to state an offense pursuant to Rule 12(b)(3)(B)(v) since all counts relay on the same evidence.  And if the prosecution refuses

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1

to clarify its position on willfulness one way or another, then the Indictment fails to meet the specificity requirements of Rules 7(c) and 12(b)(3)(B)(iii). Thus, while the prosecution may, in its opposition, pick its poison, either Count 1 or all counts must be dismissed.

## RELEVANT FACTS

The prosecution alleges Mr. Biden "earned approximately $1,580,283 in gross income" in 2016 and, after receiving an extension, was obligated to file a federal tax return by October 16, 2017. (Indict. ¶¶ 50–52.) The prosecution claims Mr. Biden "did not timely file his 2016 Form 1040 by that date." (*Id.* ¶ 52.) But Mr. Biden is not charged with failure to timely file his 2016 taxes, only a failure to timely pay 2016 taxes. Nevertheless, the failure to pay charge cannot withstand the SOL any more than a failure to file charge could.

The prosecution notes that Mr. Biden made a payment of $30,000 towards his 2016 income tax liability on or about April 21, 2016, *id.* ¶ 53, but alleges that even after making that payment, he still owed about $26,000 in taxes, which was "due on or before April 18, 2017." (*Id.* ¶ 53.) According to the Indictment, the remaining balance was not paid by the April 18, 2017 due date, and the prosecution cites an email between Mr. Biden's business associate and his D.C. accountant noting what was still owed, which was forwarded to Mr. Biden on April 15, 2017. (*Id.* ¶ 54.) The Indictment alleges that while Mr. Biden's accountant requested an extension to file the 2016 return, no further payment was made. (*Id.*)

The prosecution asserts Mr. Biden's accountant prepared a Form 1040 for him and a Form 1120 for Owasco, PC (Mr. Biden's professional services company) in October 2017 and that the Form 1040, which also needed to be signed by Mr. Biden's ex-wife, "indicated that the Defendant owed taxes in addition to what he had already paid." (*Id.* ¶ 55.) The prosecution claims the forms were left in Mr. Biden's office in a large envelope, which he did not find until around November 27, 2017. Mr. Biden then allegedly gave

3

the forms to his ex-wife, who reviewed them with her accountant and returned them the next day.  (*Id.* ¶¶ 56–57.)

The prosecution asserts that on March 9, 2018, Mr. Biden's ex-wife found the tax returns in Mr. Biden's car, and that when she texted him about them, Mr. Biden replied with his understanding that the returns had been filed and that the documents she found must have been copies of the returns with his assistant's notes.  (*Id.* ¶ 58.)  Mr. Biden's ex-wife allegedly responded that she believed they were the originals because they still had the checks attached to them.  (*Id.*)

The Indictment next alleges that in 2019, Mr. Biden retained California accountants, who contacted the IRS on January 22, 2020 and learned that Mr. Biden had *not* filed his 2016 income tax return.  (*Id.* ¶ 62.)  The accountants allegedly prepared and late filed the 2016 Form 1040 on June 12, 2020.  (*Id.*)  In that return, Mr. Biden "self-assessed that he owed an additional $45,661 in taxes."  (*Id.*)

The prosecution also alleges that Mr. Biden had "funds available to pay some or all of his taxes owed for 2016" when Mr. Biden "filed his 2016 Form 1040, on June 12, 2020. . . ."  (*Id.* ¶ 63.)  The prosecution claims that, instead of doing so, Mr. Biden spent large sums of money "to fund his lifestyle."  (*Id.* ¶ 64.)  The prosecution concludes that Mr. Biden "had the funds available to pay his taxes when they were due," *id.* at 19 (Heading F.), but does not allege any facts regarding Mr. Biden's finances in 2017.

The Indictment alleges all these facts lead to the charge that Mr. Biden owed 2016 taxes that "[h]e was required by law to pay, on or before April 18, 2017," but that "he did willfully fail, on June 12, 2020, in the Central District of California and elsewhere, to pay the income tax due."  (*Id.* ¶ 65.)

In addition to Count 1, the prosecution brings eight other counts that also assert willful violations of the tax laws.  These allegations rely on the same or similar allegations of knowledge in support of Count 1.

## LEGAL STANDARDS

Rule 7(c)(1) requires the Indictment describe in "plain, concise, and definite" terms the "essential facts" supporting each element. An indictment *must*: (1) "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend"; and (2) "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (citations omitted); *see also United States v. Ogbazion*, 2016 WL 6070365, at *16 (S.D. Ohio Oct. 17, 2016) ("[A]n indictment is legally deficient where it fails to set forth facts which constitute an offense or to identify the essential elements of the offense."). Apart from protecting the rights of the accused, the constitutional requirements of a valid indictment further "inform[s] the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction." *Russell v. United States*, 369 U.S. 749, 768 (1962).

To state a claim for misdemeanor willful failure to pay tax under Section 7203, the prosecution must allege a defendant "willfully fail[ed] to pay" taxes owed "at the time or times required by law or regulations." The elements of this claim are (1) failure to pay taxes when due and (2) willfulness. *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987).

The SOL is six years "for the offense of willfully failing to pay any tax . . . at the time or times required by law or regulations." 26 U.S.C. § 6531(4). Because failure to pay under Section 7203 is not a continuing offense (where the SOL is tied to the last criminal act), the SOL begin to run when every element of the crime is *first* present. *See Toussie v. United States*, 397 U.S. 112, 115 (1970) (statutes that are not defined as continuing offenses "run when the crime was first complete" and when charge is failure to do something "at a particular time. . . failure to do so at that time is a single offense").

In *United States v. Sams*, the Sixth Circuit held that, in a Section 7203 failure to pay charge, "the limitations period begins to run when the taxpayer manifests some act of willful nonpayment." 865 F.2d 713, 716 (6th Cir. 1988) (citing *Andros*, 484 F.2d at 532).

5

That means a defendant must not only know taxes are owed, but the allegations must also indicate intent to withhold payment. *See id.* at 716 (jury reasonably found no willfulness where evidence indicated defendant "intended to 'make arrangements to pay' the taxes owed") (citations omitted); *United States v. Matosky*, 421 F.2d 410, 412 (7th Cir. 1970) ("[T]he government [must] prove [] a deliberate intention not to file returns which the defendant knew ought to have been filed.").

## ARGUMENT

### I. THE DATE MR. BIDEN'S 2016 TAX RETURNS WERE FILED IN JUNE 2020 WAS NOT THE DATE HIS 2016 TAX PAYMENT WAS "DUE"

The prosecution unequivocally refers to April 18, 2017 as the date Mr. Biden's 2016 income taxes were due. (Indict. ¶¶ 60, 65.) But because the prosecution did not timely charge Mr. Biden with failure to pay within the required six years of that date, it instead attempts to allege that the SOL was first triggered in June *2020*, when his 2016 income tax returns were filed. (*Id.* ¶¶ 63–65.) The prosecution's sleight of hand is reflected in the Indictment's allegation that Mr. Biden willfully failed to pay his 2016 taxes in June 2020 "when they were due." (*Id.* ¶ 48.)

The prosecution may obliquely refer to the 2020 filing date as the "due date," but it cannot escape its own allegations that the *payment* due date was April 18, 2017.[3] *See Venegas*, 704 F.2d at 1146 n.1 ("The statute of limitations cannot be avoided merely by artful pleading."); *see also United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (courts considering motions to dismiss an indictment are bound by the allegations in the indictment).[4] Failure to pay under Section 7203 is a single offense completed once each

---

[3] The prosecution wants this to be a failure to file charge, but—despite all its criticism of Mr. Biden's late filing—the IRS lost his submitted returns for 2016, and thus did not charge him with failure to file. Regardless, the six-year SOL for a failure to file charge runs from the original file date or extended date; here those dates were April 18, 2017 or October 16, 2017. Because the Indictment was filed more than six years after either date, a failure to file charge also would have been untimely here. *See* DOJ CTM 10.05[8] (2024) (discussing failure to file SOL).

[4] *See also State v. Cobbs*, 1164 A.3d 1062, 1071 (N.J. Sup. Ct. June 23, 2017) ("As the State itself alleged in the indictment, defendant failed to pay his 2007 taxes when due—

6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1

element is *first* present, which occurs on the *first* instance of willful failure to pay on or after the original deadline—not the arbitrary date when someone late files their returns. *See Sams*, 865 F.2d at 715 (specifically rejecting the argument that the SOL for a failure to pay charge runs from when the tax returns are late filed) (citing *Andros*, 484 F.2d at 532); *see also* CTM 10.06[6] (2024) ("the government generally would proceed on the theory that the crime was complete on the date the payment was due and the taxpayer failed to pay, i.e., April 15, unless there was evidence to establish that willfulness occurred after that date"). Thus, the fact Mr. Biden's 2016 tax returns were filed in June 2020 does not render his 2016 tax payment "due" in 2020.[5]

## II.  THE INDICTMENT ALLEGES NUMEROUS FACTS MEANT TO ESTABLISH WILLFULL FAILURE TO PAY IN 2017

The prosecution knows the SOL runs from the date an alleged failure to pay becomes "willful," which is why the Indictment is careful to *only* use that term in reference to Mr. Biden's failure to pay when his 2016 returns were late filed "on June 12, 2020." (Indict. ¶¶ 62, 65.)[6] Again, "[t]he statute of limitations cannot be avoided merely by artful pleading." *Venegas*, 704 F.2d at 1146 n.1. The prosecution may claim Mr. Biden was *also* willful in 2020, but the Indictment is brimming with allegations that Mr. Biden willfully failed to pay his 2016 taxes *in 2017* when they actually were due. (*See, e.g.*, Indict. ¶ 61 (claiming Mr. Biden "knew he had to pay taxes for the 2016 tax year in 2017 because on or about April 21, 2016, he made a payment of $30,000 towards his 2016 tax liability and on or about April 18, 2017, [Biden's] D.C. accountant told him he owed an

---

which was April 15, 2008. . . . Based on the State's allegations, which we accept as true for purposes of the motion, the crime was committed [outside the statute of limitations].").

[5] *C.f.*, *id.* ¶ 23 ("[A]n extension to file a return does not entitle a taxpayer to delay paying taxes—those are still due on or about April 15."). Indeed, the prosecution notes Mr. Biden obtained an extension to file his 2016 returns but does not suggest that the extension postponed the deadline to pay as well—instead, the prosecution alleges the payment was past due after April 18, 2017. (*Id.* ¶¶ 51–52, 60.)

[6] With respect to all the other counts, the prosecution explicitly refers to the failure to pay when the payment was due as "willful" based on the exact same allegations of knowledge and failure to pay alleged with respect to Mr. Biden's 2016 taxes. This clearly evinces an effort to thwart the SOL through "artful pleading."

7

Defendant's Notice of Motion and Motion To Dismiss Count 1 As Untimely Or All Counts For Failure To State A Claim And Lack of Specificity - Case No. 2:23-cr-00599-MCS-1

additional $26,000."); *id.* ¶ 54 ("In 2017, Business Associate 4 and Personal Assistant 1 frequently apprised the Defendant that he owed taxes for the 2016 tax year."); *see also id.* ¶¶ 55–59, 61.) Two facts confirm this is the prosecution's view.

*First*, the prosecution alleges Mr. Biden was aware from tax returns prepared by his accountants in 2017 that he still owed 2016 taxes, yet he did not pay—the *exact same* facts the prosecution alleges to support its claim that Mr. Biden's failure to pay was "willful" in 2020. (*Id.* ¶¶ 55–57.) Whether the prosecution likes the implications or not, if it considers something willful within the SOL, it must consider the same thing willful outside the SOL.

*Second*, DOJ's CTM itself explains that the prosecution often uses "evidence of past filing or payment history to establish willfulness" and, "[c]onsequently, the prosecution generally would proceed on the theory that the crime was complete on the date that the payment was due and the taxpayer failed to pay, i.e., April 15, unless there was evidence to establish that willfulness occurred after that date." CTM 10.06[6] (2024). As noted above, the Indictment alleges Mr. Biden knew he owed 2016 taxes because he paid a portion of them in 2016 and he learned his 2016 taxes had not been fully paid by November 2017. (Indict. ¶¶ 53–54, 61.) According to its own CTM, DOJ considers the SOL triggered by these facts.

Moreover, beyond vaguely referring to Mr. Biden's failure to file in 2020 as "willful," the prosecution neither expressly claims nor alleges evidence that would suggest willfulness *first* manifested on the late filing date in 2020.[7] And the prosecution's extraneous allegations about Mr. Biden's financial means in 2020 and its criticisms about how Mr. Biden was spending his money while in the throes of addiction, *id*. ¶¶ 37, 48, 63–64, are completely irrelevant to the issues of willfulness or the SOL. *See United States v. Easterday*, 539 F.3d 1176, 1182 (9th Cir. 2008) ("Because the financial circumstances

---

[7] In other words, the prosecution cannot explain why Mr. Biden's nonpayment in 2020 should be considered any more or less willful than the same conduct alleged in 2017. This is particularly notable given DOJ's statement in its CTM that it considers the SOL to run from the payment due date *absent specific evidence* that willfulness first occurred later.

8

of a defendant do not bear on the determination of willfulness," evidence of inability to pay "was irrelevant, and the district court did not abuse its discretion by excluding it.").[8]

In sum, the June 2020 late filing date, which was not a deadline to pay, is just another day (of 365 days in a year) the prosecution accuses Mr. Biden of failing to pay overdue 2016 taxes. The Indictment clearly alleges that Mr. Biden *first* willfully failed to pay his 2016 taxes in 2017, and the prosecution is bound by that allegation. (Indict. ¶¶ 54–57.) Count 1 is therefore barred by the SOL.

### III. IF THE PROSECUTION CLAIMS MR. BIDEN WAS FIRST WILLFUL IN 2020, ALL COUNTS IN THE INDICTMENT FAIL TO STATE OFFENSES AND LACK SPECIFICITY

Even though the prosecution's position is flatly belied by its own allegations and standard practices, the prosecution has no choice but to argue Mr. Biden was first willful in 2020 if it wants to argue Count 1 is within the SOL. Unfortunately for the prosecution, this argument is self-defeating and, if humored, would require dismissal of all charges for failure to state an offense and/or lack of specificity pursuant to Rule 7(C) and Rules 12(b)(3)(B)(iii) and (v).

Arguing Mr. Biden was first willful in 2020 is self-defeating because it requires the prosecution to concede that, had he fully paid up when he filed his tax returns in 2020, he would not be accused of violating Section 7203. That is, the prosecution would have to admit that it does *not* believe Mr. Biden was willful *in 2017*, despite his alleged past tax payments in 2016 and his knowledge by April 18, 2017 that an amount was still owed. Such a concession would confirm the insufficiency of the Indictment's willfulness allegations, upon which all counts depend, as a matter of uncontested law.

That is because, as noted, the prosecution does not allege anything about the late filing of Mr. Biden's 2016 returns in 2020 beyond knowledge from Mr. Biden's tax returns

---

[8] If Mr. Biden claimed in his defense that he was not willful in 2017 because he lacked the means to pay then, the prosecution would no doubt eagerly cite *Easterday* to argue financial means were irrelevant to willfulness. The prosecution cannot have it both ways. Mr. Biden's alleged ability to pay in 2020 cannot be evidence that willfulness first manifested at that time.

9

and other correspondence that he still owed taxes and his failure to pay them at that time, which are the *same facts alleged in 2017*.⁹ And this logic applies to all the other Counts all well because each relies on the same or similar evidence of knowledge to allege willfulness. Normally, as the prosecution will surely emphasize in any opposition, willfulness is a factual issue. But if the prosecution *agrees* those facts are insufficient to charge willfulness for failure to pay in 2017, it cannot argue they are sufficient any other year (particularly when its goal is to game the SOL with respect to Count 1).¹⁰

Consequently, any effort by the prosecution to avoid an SOL bar by arguing that the Count 1 offense was not completed until 2020 will only mean all charges must be dismissed for failure to state an offense under Rule 12(b)(3)(B)(v). Alternatively, if the prosecution persists in its effort to obscure the particulars of its claims and theories about Count 1, including by failing to specify the conduct the prosecution claims is criminal, the prosecution has failed to meet its due process notice and specificity requirements with respect to its willfulness allegations, requiring dismissal of all claims under Rule 12(b)(3)(B)(iii). *See Hamling v. United States*, 418 U.S. 87, 117–18 (1974) ("[T]he language of the statute . . . must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is

---

⁹ In fact, the prosecution asserts far more allegations allegedly indicating Mr. Biden's knowledge in 2017, including emails about the amount due between his assistant and accountant, exchanges with his staff and ex-wife about the returns, and review of the tax returns for one of his businesses that served as a vehicle to pay some of his income taxes. (Indict. ¶¶ 53–58.) If the prosecution concedes that these allegations do not establish willfulness, it must agree that the simple allegation that Mr. Biden submitted returns in 2020 reflecting an amount due similarly does not establish willfulness either.

¹⁰ Pursuant to the Fifth and Sixth Amendment notice requirements, "[a] count of an indictment is 'repugnant' and must be dismissed if there is a 'contradiction between material allegations' in the count." *United States v. Cisneros*, 26 F. Supp. 2d 24, 52 (D.D.C. 1998) (citations omitted); *see United States v. Howell*, 78 U.S. 432, 438 (1870) (discussing repugnant indictments); *United States v. Cantril*, 8 U.S. (4 Cranch) 167, 168 (1807) (Marshall, C.J.) (dismissing indictment as repugnant); *United States v. Cantrell*, 612 F.2d 509, 510–11 (10th Cir. 1980) (overturing conviction because of factual inconsistency in indictment); *United States v. Conde*, 309 F. Supp. 2d 510, 511 (S.D.N.Y. 2003) ("An indictment is defective if it contains logically inconsistent counts."); *Sunderland v. United States*, 19 F.2d 202, 208 (8th Cir. 1927) ("Repugnancy in a count consists in a contradiction between material allegations therein.").

charged."); *In re Gault*, 387 U.S. 1, 33 (1967) (due process requires that the notice "set forth the alleged misconduct with particularity").[11]

The prosecution has painted itself into a corner and nothing it argues in opposition can save Count 1. And trying to do so would just doom the whole Indictment. The prosecution created this untenable situation by sitting on this charge for years and then trying to cobble together a raft of seemingly serious counts when it abandoned a carefully negotiated non-prosecution resolution at the last minute in response to political pressure. Now the prosecution must either voluntarily dismiss Count 1 or, better yet and consistent with DOJ's prior determinations that these charges should not be prosecuted, dismiss the entire Indictment. Otherwise, the Court should do so.

## CONCLUSION

For the foregoing reasons, Mr. Biden respectfully requests that the Court dismiss Count 1 of the Indictment as untimely or, in the alternative, dismiss all counts for failure to state an offense and//or lack of specificity.

Dated: February 20, 2024          Respectfully submitted,

By: /s/ Angela M. Machala
Angela Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 615-1924

---

[11] *See also United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) ("An indictment not framed to apprise the defendant 'with reasonable certainty[] of the nature of the accusation against him is defective, although it may follow the language of the statute.'") (citations omitted); *United States v. Hess*, 124 U.S. 483, 488 (1888) (in an indictment, "facts are to be stated; not conclusions of law alone," and crimes must be charged "with reasonable particularity of time, place, and circumstances"); *United States v. Cruikshank*, 92 U.S. 542, 558 (1875) ("A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."); *United States v. Silverman*, 745 F.2d 1386, 1392 (11th Cir. 1984) ("The accusation. . . must assert facts which in law amount to an offense and which, if proved, would establish prima facie the accused's commission of that offense."); *United States v. Murphy*, 762 F.2d 1151, 1154 (1st Cir. 1985) ("A vital function of an indictment is to provide 'such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation.") (citations omitted).

11

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1

Fax: (213) 615-1750

Abbe David Lowell (*pro hac vice*)
Christopher D. Man
Kyllan J. Gilmore
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com
KGilmore@winston.com

*Attorneys for Robert Hunter Biden*

12

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 1 AS UNTIMELY OR ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY - CASE NO. 2:23-CR-00599-MCS-1