Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone:  (202) 282-5000
Facsimile:   (202) 282-5100

Attorneys for Robert Hunter Biden

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>ROBERT HUNTER BIDEN,<br><br>　　　　　　　Defendant. | **Case No. 2:23-cr-00599-MCS-1**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 OF THE INDICTMENT FOR SPECIFIC SELECTIVE PROSECUTION**<br><br>Hearing Date:　March 27, 2024<br>Time:　　　　1:00 PM<br>Place:　　　　Courtroom 7C |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO: SPECIAL COUNSEL DAVID WEISS, PRINCIPAL SENIOR ASSISTANT SPECIAL COUNSEL LEO J. WISE, SENIOR ASSISTANT SPECIAL COUNSEL DEREK E. HINES

PLEASE TAKE NOTICE that on March 27, 2024, at 1:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of Honorable Mark C. Scarsi, Defendant Robert Hunter Biden, by and through his attorneys of record, will, and hereby does, respectfully move this Court for an order dismissing Count 9 because the prosecution's charging decision is selective and vindictive.

Mr. Biden's motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the pleadings, papers, and documents on file with the Court, the oral arguments of counsel, and such other matters as the Court may deem proper to consider.

Dated: February 20, 2024

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Angela M. Machala*
    Angela M. Machala
    Abbe David Lowell
    Christopher D. Man

*Attorneys for Robert Hunter Biden*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND ........................................................................................2

ARGUMENT .................................................................................................................6

    I.    COUNT 9 SHOULD BE DISMISSED AS SELECTIVE AND VINDICTIVE ................................................................................................6

CONCLUSION ............................................................................................................11

i

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Neely v. United States*,
   300 F.2d 67 (9th Cir. 1962) ..................................................................................7

*Spies v. United States*,
   317 U.S. 492 (1943)..................................................................................6, 7

*United States v. Bishop*,
   412 U.S. 346 (1973)..................................................................................6

*United States v. Croessant*,
   178 F.2d 96 (3d Cir. 1949) ..................................................................................7

*United States v. Damra*,
   621 F.3d 474 (6th Cir. 2010) ..................................................................................7

*United States v. Laws*,
   No. 21-mj-00055-DSC (W.D.N.C. Feb. 2021) ......................................................8

*United States v. Madera*,
   No. 23-cr-00135-ZNQ (D.N.J. Feb. 2023) ..........................................................8

*United States v. Morford*,
   No. 23-cr-00112-RGE-HCA (S.D. Iowa July 2023) ............................................8

*United States v. Peterson-Janovec*,
   No. 21-cr-00124-JRT-BRT (D. Minn. May 2021) ..............................................8

*United States v. Walczak*,
   No. 23-cr-80024-KAM (S.D. Fl. Feb. 2023)..........................................................8

*United States v. Xiong*,
   No. 22-cr-00189-PJS-JFD (D. Minn. Aug. 2022) ................................................8

**Statutes**

18 U.S.C. § 371 ..............................................................................................7

18 U.S.C. § 1001 ............................................................................................7

ii

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

26 U.S.C. § 7203 ................................................................................................2, 8, 9

26 U.S.C. § 529 ......................................................................................................5, 6

42 U.S.C. § 5121. ........................................................................................................3

**Other Authorities**

177 Tax Notes Federal (2022) ..............................................................................4, 10

iii

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Mr. Biden has sought to dismiss the Indictment as a whole for selective and vindictive prosecution, *see* DE 27 (filed concurrently), but those claims are especially true as to Count 9 of the Indictment. The final two pages of the Indictment tack on allegations concerning a tax year that is sparsely discussed in the prosecution's roving 56-page Indictment: the 2019 tax year. Count 9 charges Mr. Biden with failure to pay his 2019 income tax of $197,372 on time. The charge is remarkable because Mr. Biden did file an individual tax return on time for the 2019 tax year and he *paid* his 2019 taxes with interest and penalties in the amount of $227,204, more than two years ago, on October 15, 2021. Taxpayers often file timely returns, and then arrange to pay their taxes later with added interest in penalties. When a taxpayer has paid all they owe under those circumstances, as Mr. Biden has, criminal tax charges simply are not brought. The fact that they were brought here highlights that Mr. Biden is being subject to a selective and vindictive prosecution.

The emergence of the COVID-19 epidemic in 2019 brought physical, mental and financial strain in its wake, and the government was determined not to have the tax burden compound those problems. The IRS instituted several tax collection leniency programs and other relief efforts to ease the burden on American taxpayers, which focused on assisting those with tax debts resolve outstanding balances or enter into installment agreements. In due course, millions of taxpayers entered payment plans, received refunds or tax credits, or arranged an Installment Agreement without a notice of federal tax lien, or, like Mr. Biden, they paid their taxes with interest and penalties. Unlike Mr. Biden, *none* of these taxpayers—defense counsel cannot identify a single one—faced criminal charges for failure to pay 2019 Form 1040, where the individual filed an individual tax return as Mr. Biden did by October 15, 2020, and paid that tax obligation, with interests and penalties, the following year.

1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

As the statistics and cases demonstrate, there have been few, if any, DOJ criminal prosecutions based on remotely similar circumstances. Not only does the evidence demonstrate that people in Mr. Biden's position have not been prosecuted under these circumstances, the record also establishes that DOJ initially rejected bringing these charges against Mr. Biden himself. Even when the prosecution reversed course and filed its Information charging two tax misdemeanors, no charge involving 2019 was brought. When extremist Republicans pressured the prosecution to be more punitive, it responded with felony gun charges. Then, extremist House Republicans took the unprecedented step of subpoenaing Special Counsel Weiss to testify about a pending prosecution and berated him for not being more punitive. Following that further pressure, and Mr. Biden's assertion of his rights under a Diversion Agreement signed by the prosecution that the prosecution no longer wanted to honor, only then did the prosecution bring these tax charges. With respect to Count 9, in particular, the record is especially clear that the prosecution's charging decision is selective and vindictive, and it should be dismissed.

## FACTUAL BACKGROUND

Count 9 charges Mr. Biden with failing to pay income tax due for tax year 2019, in violation of 26 U.S.C. § 7203. The Indictment alleges that for tax year 2019, anyone under 65, filing individually, and who made more than $12,200, was required by law to file a federal tax return, and the deadline for doing so and paying 2019 taxes was July 15, 2020. (Indict. ¶¶ 153–54.) The July deadline was because the IRS provided an automatic extension in response to the COVID-19 pandemic, unless a taxpayer filed for a personal extension, in which case the deadline for filing 2019 taxes was October 15, 2020. (Indict. ¶ 154.)

Mr. Biden filed a 2019 Form 1040 on October 15, 2020, and self-reported that he earned total gross income of $1,045,850 and taxable income of $843,577, and self-assessed that he owed $197,372 for the 2019 tax year. (Indict. ¶ 156.) The Indictment alleges Mr. Biden failed to pay his outstanding tax debt for 2019 when he filed his return on October 15, 2020, despite having "the funds available to pay his taxes" and spending

2

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

"more than $600,000 on personal expenses" between January 2020 and October 15, 2020. (Indict. ¶ 158–59.)  Thus, the prosecution alleges he willfully failed on July 15, 2020 in this judicial district to pay the income tax due. (Indict. ¶ 160.)

The Indictment omits a number of critical facts (of which the Court can take judicial notice) with respect to Count 9 and the 2019 tax year, which demonstrate that criminal prosecution was discouraged when someone ultimately paid their taxes, just as Mr. Biden did. *First*, on March 13, 2020, the then-President of the United States issued an emergency declaration under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 *et seq.* ("Emergency Declaration").  The Emergency Declaration instructed the Secretary of the Treasury "to provide relief from tax deadlines to Americans who have been adversely affected by the COVID-19 emergency, as appropriate, pursuant to 26 U.S.C. 7508A(a)."  In response, the Department of the Treasury and the IRS issued a series of notices and other guidance to provide relief to affected taxpayers.  For example, in a program announced on November 2, 2020, the IRS instituted several changes designed to aid struggling taxpayers impacted by COVID-19 more easily resolve their tax debts with the IRS.  Among the collection procedures implemented, "[s]ome individual taxpayers who only owe for the 2019 tax year and who owe *less than $250,000* may qualify to set up an Installment Agreement without a notice of federal tax lien filed by the IRS."[1]  (Ex. A)  Other terms included that the IRS would offer "flexibility for some taxpayers who are temporarily unable to meet the payment terms of an accepted Offer in Compromise."  For the 2019 tax year, Mr. Biden had a self-assessed tax due of only $197,372, so he was in the range of taxpayers who were not being targeted for criminal enforcement.

---

[1] Press Release, Internal Revenue Service, IRS Makes It Easier To Set Up Payment Agreements; Offers Other Relief To Taxpayers Struggling With Tax Debts (Nov. 2, 2020) (emphasis added), *available at* https://www.irs.gov/newsroom.

3

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

Moreover, a records search indicates that, at the time, the IRS chose not to file a notice of federal tax lien[2] regarding Mr. Biden's 2019 taxes, even though Mr. Biden did not formally seek such relief under the IRS's COVID-19 program. That the IRS chose not to take even this common civil protective measure demonstrates that it did not view Mr. Biden of worthy of the more serious sanction of a criminal indictment.

*Second*, Count 9 of the Indictment also omits another uncontested fact that on October 15, 2021—less than a year after the IRS announced these changes—Mr. Biden's 2019 taxes were paid in full to the IRS, with interest and penalties, in the amount of $227,204.[3] While the obligation to pay taxes owed arose in July 2020, the entire amount (plus interest and penalties) was paid a year later in 2021 while IRS relief programs provided leniency for taxpayers who owed less than $250,000.

*Third*, the continuance for such relief lasted at least *until tax year 2022*. According to one report, "[the] initiative that allows taxpayers to remain on installment agreements despite filing later tax returns with balances due" lasted "[f]rom November 2020 through October 2022," during which time "nearly 1.07 million agreements that otherwise would have entered default instead had the balances increased."[4] In such cases, those taxpayers simply would have the new balances added to the existing installment agreements. Similarly, IRS programs rolled out during the COVID-19 pandemic allowed taxpayers "to spread installment agreements *below $250,000* across the rest of the collection period without submitting collection information statements[.]"[5] As noted above, Mr. Biden's self-assessed tax due for 2019 was paid in October 2021, before the expiration of this tax

---

[2] A lien in favor of the IRS immediately arises (the "secret lien") on all of the taxpayer's property and remains there until the assessment is satisfied. If the IRS files a notice of federal tax lien, that provides the IRS with first priority on all of the taxpayer's real property in the jurisdiction where the NFTL is filed.

[3] The October 15, 2021 payment also resolved and paid Mr. Biden's past due taxes for 2016, 2017, and 2018 as well as that owed for tax year 2020. In total, on October 15, 2021, Mr. Biden caused to be paid $2,600,158 for various tax years going back to 2016 (including tax year 2019).

[4] Nathan J. Richman, *Pandemic Payment Flexibility Doesn't Have an Expiration Date*, 177 Tax Notes Federal 1014, 1014 (Nov. 2022).

[5] *Id.* (emphasis added).

4

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

relief program, which further demonstrates that persons with tax debts in the same range as Mr. Biden were not being targeted for criminal enforcement.

On December 19, 2023, the IRS touted as "a major step to help people who owe back taxes," the agency's *new* failure to pay penalty relief for approximately 4.7 million individuals, businesses, and tax-exempt organizations for the 2020 and 2021 tax years. In explaining the motivation for the program, IRS Commissioner Danny Werfel stated:

> The IRS wants to help taxpayers and provide them easy options to deal with unpaid tax bills and avoid additional interest and penalties. People receiving these notices should remember that there are frequently overlooked options that can help them set up an automatic payment plan or catch up with their tax filings. Making additional improvements in the collection area will be an important focus for the IRS going forward as we continue and accelerate our transformation work.[6]

(Ex. B) Bringing criminal charges against an individual who timely filed their return for late payment of 2019 taxes is diametrically opposed to the IRS's publicly stated goals. And yet, rather than use its resources to engage in the promised "transformation work" affecting taxpayers to help taxpayers resolve outstanding debts, certain IRS Criminal Investigation agents in 2023 appear to have been more focused on using the agency's resources to investigate Mr. Biden for failing to pay his 2019 tax obligation on time, even though they have long been paid with interest and penalties.

*Fourth*, the tax liability for the 2019 tax year arises in part from the liquidation of a 529 Plan tuition account for which Mr. Biden was the owner. The account was liquidated by the financial institution to comply with certain matters in connection with divorce proceedings. Mr. Biden's attorney assisted in procuring the distribution from the 529 Plan in February 2019, facilitating the wiring of the funds to Mr. Biden's ex-wife, and preparing

---

[6] Press Release, Internal Revenue Service, IRS Helps Taxpayers By Providing Penalty Relief On Nearly 5 Million 2020 And 2021 Tax Returns; Restart Of Collection Notices In 2024 Marks End Of Pandemic-Related Pause (Dec. 19, 2023), *available at* https://www.irs.gov/newsroom.

5

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

the 2019 tax return in 2020. Further, Mr. Biden provided his accountants with an account statement reflecting the distribution from the 529 Plan for purposes of preparing Mr. Biden's 2019 tax return. Thus, Mr. Biden provided his accountants with sufficient information to prepare the return correctly. Section 529(c) of the Internal Revenue Code provides that, with specific enumerated exceptions, distributions and earnings from 529 Plans are generally *not included* in the gross income of a contributor to the 529 Plan. *See* 26 U.S.C. § 529(c)(1). Where a taxpayer has vetted a thorny issue like this through his accountants, criminally prosecuting the taxpayer is unheard of.

# ARGUMENT

## I. COUNT 9 SHOULD BE DISMISSED AS SELECTIVE AND VINDICTIVE

Mr. Biden's motion to dismiss the entire Indictment for a selective and vindictive prosecution establishes that DOJ had decided not to bring this charge, but that Special Counsel Weiss reversed course in response to pressure from extremist Republicans and in retaliation for Mr. Biden's insistence that the prosecution honor the Diversion Agreement that the prosecution signed. Mr. Biden will not repeat those arguments here, but will highlight why prosecutors would not have otherwise brought this specific charge concerning 2019 taxes.

Mr. Biden would otherwise *not* have been prosecuted for a 2019 failure to pay income tax charge. The Supreme Court explains that, "in view of our traditional aversion to imprisonment for debt," courts should "not without the clearest manifestation of Congressional intent assume that mere knowing and intentional default in payment of a tax where there had been no willful failure to disclose the liability is intended to constitute a criminal offense of any degree." *Spies v. United States*, 317 U.S. 492, 498 (1943). The Ninth Circuit in *Wilson v. United States* later applied *Spies*' guidance in a case of income tax evasion, concluding that the court "cannot find the semblance of such Congressional intent" for proving a charge of tax evasion. 250 F.2d 312, 320–21 (9th Cir. 1957) ("[T]here is nothing in any revenue statute which would alter the subjective element of felonious tax evasion . . . It would require a clear manifestation of Congressional intent

6

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

that the Internal Revenue Code should be construed to set up one rule for 'special fund' taxes."); *see also United States v. Bishop*, 412 U.S. 346, 361 (1973) (applying *Spies* and noting "[t]he Court's consistent interpretation of the word 'willfully' to require an element of *mens rea* implements the pervasive intent of Congress to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers."). And in *United States v. Croessant*, the Third Circuit agreed *Spies*' language "creates a strong inference" that Congress's intent controls and courts should give effect to the congressional language. 178 F.2d 96, 98–99 (3d Cir. 1949) ("Speaking of the language used by Congress the Court says: 'It may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return.'"). Additionally, *Spies* has been applied to assess the meaning of 'willfulness' in certain non-tax contexts to determine Congress's intent in the statute's plain language. *See, e.g.*, *United States v. Damra*, 621 F.3d 474, 499 (6th Cir. 2010) (applying *Spies* to assess 'willfulness' element of a conspiracy charge, 18 U.S.C. § 371); *Neely v. United States*, 300 F.2d 67, 73 (9th Cir. 1962) (applying *Spies* to assess 'willfully' under 18 U.S.C. § 1001 for making a false statement, in order to give effect to the clearest manifestation of congressional intent).

Consequently, more is needed to warrant criminal charges where a defendant has disclosed their tax liability, but nevertheless failed to pay. That something extra does not exist here; it is not even alleged. Mr. Biden did timely disclose his tax liability and he ultimately paid his 2019 taxes, with interest and penalties, at a time when the federal government was especially mindful in being lenient about late payments due to the COVID-19 epidemic. Absent proof of some additional factors establishing willfulness, a delayed payment made during the pandemic in connection with a timely filed return does not warrant a criminal charge.[7] There is no reason why Mr. Biden *alone* should be placed in a debtor's prison for people who both properly disclosed their tax liability and

---

[7] It would surely be a tremendous waste of IRS resources to have collections or revenue agents chase down every taxpayer who failed to pay in full or had a check to the IRS get lost in the mail for evidence of "willfulness" in making the delayed payment.

7

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-cr-00599-MCS-1

ultimately paid their taxes in full, with interest and penalties. That is not the American way, and it was especially true in the wake of COVID-19.

As discussed above, the IRS's collection relief and leniency programs in place in response to the COVID-19 pandemic in 2020 and 2021 necessarily militated against holding American taxpayers criminally responsible for outstanding tax debts. For instance, DOJ has hardly, if ever, criminally charged individual taxpayers for failure to timely *pay* Form 1040 for tax year 2019. Mr. Biden has identified only a handful of criminal cases nationwide in which DOJ has brought *criminal* charges in connection with tax year 2019, and those were charges for failure to *file* an individual tax return for tax year 2019. *See, e.g.*, *United States v. Laws*, No. 21-mj-00055-DSC (W.D.N.C. Feb. 2021) (failure to file individual tax returns 2015 – 2019); *United States v. Peterson-Janovec*, No. 21-cr-00124-JRT-BRT (D. Minn. May 2021) (failure to file individual tax returns 2018 – 2019); *United States v. Xiong*, No. 22-cr-00189-PJS-JFD (D. Minn. Aug. 2022) (failure to file individual tax return 2019); *United States v. Madera*, No. 23-cr-00135-ZNQ (D.N.J. Feb. 2023) (failure to file individual tax return 2019); *United States v. Walczak*, No. 23-cr-80024-KAM (S.D. Fl. Feb. 2023) (failure to file individual tax return 2018 – 2020); *United States v. Morford*, No. 23-cr-00112-RGE-HCA (S.D. Iowa July 2023) (plea agreement indicates failed to file individual tax return for 2019, among other years). For tax year 2019, we have not identified a single case in which a defendant timely filed a tax return but was later charged individually (unrelated to employment) for failing to pay that 2019 self-assessed tax on time. Moreover, we have not identified a single case where a taxpayer was charged under Section 7203 with a crime for late payment of tax where the taxpayer had timely filed his or her return (and was not alleged to be a fraudulent return). Each of the above cases charged violations of Section 7203 for failure to *file* an individual tax return for 2019, and not for failure to *pay* 2019 taxes on time. And unlike in those instant cases, Mr. Biden was not delinquent in filing his individual return; he filed a 2019 Form 1040 on October 15, 2020 (Indict. ¶ 156.) and paid his 2019 tax debt due (with interest and penalties) the following year on October 15, 2021.

8

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

Part of the rationale for not *criminally* prosecuting failure to pay charges for the 2019 tax year is likely due to the IRS's collections leniency efforts and programs in place in this period to lessen the burden on American taxpayers. As noted above, the IRS instituted several changes in November 2020 designed to help taxpayers impacted by COVID-19 more easily settle their tax debts. Among the collection procedures implemented, "[s]ome individual taxpayers who only owe for the 2019 tax year and who owe *less than $250,000* may qualify to set up an Installment Agreement without a notice of federal tax lien filed by the IRS." (Ex. A) Other terms included that the IRS would offer "flexibility for some taxpayers who are temporarily unable to meet the payment terms of an accepted Offer in Compromise." For the 2019 tax year, Mr. Biden had a self-assessed tax due of less than $250,000.

Furthermore, as discussed *supra* at 4, a records search indicates that the IRS chose not to file a notice of federal tax lien regarding Mr. Biden's taxes even though Mr. Biden did not formally seek such relief under the IRS's COVID-19 program. This suggests that, during the COVID-19 pandemic, the IRS was exercising its discretion to informally grant temporary collection relief to taxpayers as well. Having declined to take even this civil step against Mr. Biden, it is all the more remarkable that years after he paid in full the prosecution would take the unprecedented step of charging him criminally.

Critically here, that relief program continued through at least *tax year 2022*, which would cover the period in which Mr. Biden paid and fully resolved his 2019 tax obligation (on October 15, 2021). And still, during that period, "nearly 1.07 million agreements that otherwise would have entered default instead had the balances increased."[8] Additionally, as that relief program was coming to a close, on August 24, 2022, the IRS announced *additional* "broad-based penalty relief for certain 2019 and 2020 returns due to the pandemic," including that "[n]early 1.6 million taxpayers will automatically receive more

---

[8] Richman, *supra* note 4 at 1014.

9

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

than $1.2 billion in refunds or credits."[9]  (Ex. C)  The IRS's intentions and relief efforts were clear: given the widespread hardships caused by COVID-19, the IRS sought to lessen or alleviate the tax burdens for 2019 and 2020 for taxpayers to allow them to more easily settle their tax debts.

In due course, millions of taxpayers entered payment plans, received refunds or tax credits, or arranged an Installment Agreement without a notice of federal tax lien, or, like Mr. Biden, simply paid their taxes with interest and penalties.  Other than Mr. Biden, they did *not* face criminal charges for failure to pay 2019 Form 1040, particularly when having filed an individual tax return as Mr. Biden did on October 15, 2020, and paid that tax obligation, with interests and penalties, the following year in October 2021.  Why should Mr. Biden be treated any differently than millions of taxpayers for tax year 2019?  The extension and relief programs provided by the IRS in 2020 and 2022, which covered tax year 2019, confirm this was not an enforcement priority for the IRS.

Moreover, the IRS implemented an additional failure-to-pay penalty relief program in December 2023, which it has touted as "a major step to help people who owe back taxes."  *See supra* at 5.  This program offers new failure to pay penalty relief for approximately 4.7 million taxpayers, businesses, and tax-exempt organizations for the 2020 and 2021 tax years. Mr. Biden's treatment by DOJ for the 2019 tax year ought to be no different (again, given that he *fully paid* his 2019 tax obligations in 2021), and would fall squarely within the mold of a selective and vindictive prosecution.  At the very least, Mr. Biden has shown that the criminal failure to pay charge against him for the 2019 tax year is a statistical anomaly.  If the prosecution had a valid reason to criminally prosecute Mr. Biden for this conduct, surely the prosecution could identify others among the millions

---

[9] Press Release, Internal Revenue Service, COVID Tax Relief: IRS Provides Broad-Based Penalty Relief For Certain 2019 And 2020 Returns Due To The Pandemic; $1.2 Billion In Penalties Being Refunded To 1.6 Million Taxpayers (Aug. 24, 2022), *available at* https://www.irs.gov/newsroom; Press Release, Internal Revenue Service, $1.2 Billion In IRS Penalty Relief Refunds Coming For Certain 2019 And 2020 Tax Returns (Sept. 12, 2022), *available at* https://www.irs.gov/newsroom.

10

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1

who paid their Fiscal Year 2019 taxes late who it would have prosecuted under the same principle. Defense counsel see none.

Finally, it bears repeating that this is not just a situation where DOJ has not criminally prosecuted others who are similarly situated to Mr. Biden; this is a situation where neither the U.S. Attorney for this District nor the Special Counsel himself determined this charge was warranted. Even when the Special Counsel reversed course under pressure and filed tax charges in Delaware, those charges were limited to two failure to pay income tax misdemeanors (concerning tax years 2017 and 2018)—not this charge. The fact that DOJ would not have brought this charge if left to its own devices is therefore established and demonstrates that the piling on of criminal charges with Count 9 reflects a selective and vindictive prosecution.

## CONCLUSION

Mr. Biden respectfully requests that Count 9 of the Indictment be dismissed.

Date: February 20, 2024

Respectfully submitted,

By: */s/ Angela M. Machala*
Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile:  (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone : (202) 282-5000
Facsimile:  (202) 282-5100
*Attorneys for Robert Hunter Biden*

11

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COUNT 9 FOR SPECIFIC SELECTIVE PROSECUTION
CASE NO. 2:23-CR-00599-MCS-1