1  DAVID C. WEISS
2  Special Counsel
   LEO J. WISE
3  Principal Senior Assistant Special Counsel
   DEREK E. HINES
4  Senior Assistant Special Counsel
5      950 Pennsylvania Avenue NW, Room B-200
       Washington, D.C. 20530
6      Telephone:  (771) 217-6091
7      E-mail:     Leo.Wise@USDOJ.GOV, DEH@USDOJ.GOV

8  Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10                 UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA,        No. CR 23-cr-00599-MCS

14              Plaintiff,           GOVERNMENT'S OPPOSITION TO
                                     DEFENDANT'S MOTION TO DISMISS
15          v.                       THE INDICTMENT FOR DUE PROCESS
                                     VIOLATIONS BASED ON
16                                   OUTRAGEOUS GOVERNMENT
   ROBERT HUNTER BIDEN,              CONDUCT
17
            Defendant.
18
                                     Hearing Date:    March 27, 2024
19                                   Hearing Time:    1:00 p.m.
20                                   Location:        Courtroom of the
                                                      Hon. Mark Scarsi
21

22

23

24        Plaintiff United States of America, by and through its counsel of record, hereby

25  opposes defendant's motion to dismiss the indictment for due process violations based

26  on outrageous government conduct (Dkt. 28) (the "Motion").

27  //

28
                                     1

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and any further argument as the Court may deem necessary.

Dated:   March 11, 2024                    Respectfully submitted,

                                           DAVID C. WEISS
                                           Special Counsel

                                           /s/
                                           LEO J. WISE
                                           Principal Senior Assistant Special Counsel

                                           DEREK E. HINES
                                           Senior Assistant Special Counsel

                                           Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY ........................................................... 1

II.     ARGUMENT ........................................................................................ 2

        A.    The Defendant's Motion to Dismiss for Outrageous Government
              Misconduct Should be Denied ......................................................... 2

              1.    Congress has provided multiple remedies for violations of
                    6103 and dismissal of indictments is not one of them....................... 2

              2.    The Defendant has failed to prove that the charges in this case
                    resulted from the public statements of Shapley and Ziegler. ............. 4

              3.    Shapley and Ziegler's involvement in the tax investigation
                    ended one year before charges were brought...................................... 9

              4.    The defendant has not established any "outrageous
                    misconduct" on the part of the IRS.................................................. 10

        B.    The Defendant's Motion to Dismiss the Indictment Pursuant to the
              Court's Supervisory Powers Should Be Denied. ........................................ 12

III.    CONCLUSION........................................................................................ 16

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988)................................................................14, 15

*United States v. Bundy,*
    968 F.3d 1019 (9th Cir. 2020) ...............................5, 12, 14, 15

*Greene v. United States,*
    454 F.2d 783 (9th Cir. 1971) ..................................................6

*Marvin v. United States,*
    732 F.2d 669 (8th Cir.1984) ...................................................3

*Rushen v. Spain,*
    464 U.S. 114 (1983)..............................................................13

*United States v. Barnes,*
    604 F.2d 121 (2d Cir.1979)....................................................3

*United States v. Bundy,*
    968 F.3d 1019 (9th Cir. 2020) ...............................5, 12, 14, 15

*United States v. Chemical Bank,*
    593 F.2d 451 (2d Cir. 1979)...................................................3

*United States v. Ciszkowski,*
    492 F.3d 1264 (11th Cir. 2007) .............................................6

*United States v. Citro,*
    842 F.2d 1149 (9th Cir. 1988) ...............................................6

*United States v. Claiborne,*
    765 F.2d 784 (9th Cir. 1985) ..................................................3

*United States v. Combs,*
    827 F.3d 790 (8th Cir. 2016) ...............................................6, 8

ii

*United States v. Frazin,*
    780 F.2d 1461 (9th Cir. 1986) ...................................................................3

*United States v. Garza-Juarez,*
    992 F.2d 896 (9th Cir. 1993) ...........................................................6, 8, 9

*United States v. Hasting,*
    461 U.S. 499 (1983).................................................................................15

*United States v. Isgro,*
    974 F.2d 1091 (9th Cir. 1992) ...............................................................13

*United States v. Jayyousi,*
    657 F.3d 1085 (11th Cir. 2011) ................................................................7

*United States v. King,*
    351 F.3d 859 (8th Cir. 2003) ....................................................................6

*United States v. Marshank,*
    777 F.Supp. 1507 (N.D. Cal. 1991) .........................................................8

*United States v. McLaughlin,*
    910 F. Supp. 1054 (E.D. Pa. 1995) ....................................................4, 14

*United States v. Michaelian,*
    803 F.2d 1042 (9th Cir. 1986) .............................................................1, 3

*United States v. Montalvo-Murillo,*
    495 U.S. 711 (1990).................................................................................13

*United States v. Morrison,*
    449 U.S. 361 (1981).................................................................................13

*United States v. Pedrin,*
    797 F.3d 792 (9th Cir. 2015) ..................................................4, 7, 9, 10

*United States v. Russell,*
    411 U.S. 423 (1973).........................................................................4, 6, 7

*United States v. Samango,*

iii

607 F.2d 877 (9th Cir. 1979) ........................................................................ 15

*United States v. Smith*,

924 F.2d 889 (9th Cir. 1991) ......................................................................... 9

*United States v. Stein*,

No. S1 05 Crim. 0888 (LAK), 2008 WL 4212516 (S.D.N.Y. Sept. 10, 2008) ............. 3

*United States v. Stenberg*

803 F.2d 422 (9th Cir. 1986) ..................................................................... 5, 8

*United States v. Struckman*,

611 F.3d 560 (9th Cir. 2010) ....................................................................... 12

*United States v. Williams*,

504 U.S. 36 (1992) ............................................................................... 14, 15

**Statutes**

5 U.S.C. § 552 ....................................................................................... 13

18 U.S.C. § 401(3) ................................................................................... 14

18 U.S.C. § 1905 ...................................................................................... 3

26 U.S.C. § 6103 ............................................................................... passim

26 U.S.C. § 7213 ...................................................................................... 3

26 U.S.C. § 7431 .................................................................................... 13

iv

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION AND SUMMARY

3        The defendant has moved to dismiss the indictment returned by the grand jury in

4   this case "as it results from what courts define as outrageous government conduct that

5   violates his right to due process of law." Motion at 1. The conduct of which he complains

6   consists of testimony before Congress and statements on television of two IRS agents,

7   Gary Shapley and Joseph Ziegler, in 2023, after they ceased working on this case. In sum,

8   these two agents have made unsubstantiated claims that prosecutors' decision-making in

9   this investigation was affected by politics. In advancing his claim, the defendant acts no

10  differently than these two agents, making unfounded accusations that prosecutors'

11  decision-making in this case was affected by politics, although in the opposite direction.

12  In any event, the defendant has failed to put forth any evidence that the indictment resulted

13  from Shapley and Ziegler's public comments. And that's because it didn't.

14       Defense counsel baldly asserts that the agents' public statements to Congress and

15  on television were not authorized by 26 U.S.C. § 6103 and violated Federal Rule of

16  Criminal Procedure 6(e). Whether that is the case or not is irrelevant because the Ninth

17  Circuit has held that where Congress has created remedies to statutory violations, as it has

18  done with Section 6103, judicially created remedies like dismissing an indictment are not

19  appropriate. *United States v. Michaelian*, 803 F.2d 1042, 1043 (9th Cir. 1986).  And even

20  if the Ninth Circuit had not already foreclosed dismissal, the defendant's motions should

21  still be denied because the question before the court, as framed by the defendant in his

22  motion and the relevant case law, is whether charges in this case "resulted" from Shapley

23  and Ziegler's conduct. Because the defendant fails to offer any evidence that the charges

24  resulted from Shapley and Ziegler's conduct, his motion should be denied.

25       In all of the discovery produced to date, the defendant points to no evidence

26  suggesting that the indictment resulted from Shapley and Ziegler. There is none because

27  Shapley and Ziegler ceased having any involvement in the investigation before the instant

28

charges were brought. *See* Exh. 1 ("Batdorf Declaration"). Thus, there was nothing they could do to result in the indictment.

Nor does the defendant's contention that the IRS "committed its own 'outrageous conduct' by not taking action to curtail the misconduct or prevent the unauthorized disclosure of confidential grand jury and taxpayer return information," have any merit. The defendant fails to offer any evidence that inaction by the IRS "resulted" in the charges in this case. And as a factual matter, the defendant's contentions about the IRS are incorrect.

Nor should the court dismiss the indictment as an exercise in its supervisory authority, as the defendant urges the court to do. If the two agents broke the law by testifying in Congress and appearing on television, there are other remedies available to address their conduct, including criminal prosecution, a civil action, of which the defendant has already availed himself, and disciplinary actions by the IRS. The agents' actions came after their participation in the investigation of the defendant concluded. The defendant has failed to show that the agents' actions had any effect on either the investigation, or the grand jury's decision to indict the defendant. Consequently, these actions did not implicate the integrity of the proceedings. Finally, it is the specter of criminal prosecution, civil actions and agency discipline that will deter agents from making disclosures not authorized by 26 U.S.C. § 6103, not the dismissal of a valid indictment of the defendant returned by a grand jury.

## II.     ARGUMENT

### A.     The Defendant's Motion to Dismiss for Outrageous Government Misconduct Should be Denied

#### 1.     Congress has provided multiple remedies for violations of 6103 and dismissal of indictments is not one of them.

Assuming for the sake of argument that Shapley and Ziegler's public statements were not authorized by 26 U.S.C. § 6103, the Ninth Circuit has foreclosed dismissal of the

indictment as a remedy. In *United States v. Michaelian*, the defendant asserted that federal agents violated the confidentiality requirement of 26 U.S.C. § 6103 and moved to dismiss the indictment. 803 F.2d 1042, 1043 (9th Cir. 1986). The district court denied the motion to dismiss. The Ninth Circuit held that "the district court did not abuse its discretion in refusing to fashion a dismissal or suppression remedy for a violation of § 6103." *Id*. at 1050. In reaching that conclusion the Ninth Circuit noted that:

> It is clear that Congress specifically provided criminal penalties for unauthorized disclosure of tax return information in violation of § 6103. *See* 26 U.S.C. § 7213, 18 U.S.C. § 1905; *United States v. Chemical Bank*, 593 F.2d 451, 457 (2d Cir. 1979). This Court has previously demonstrated its reluctance to imply a judicial remedy for violations of § 6103 given Congress' explicit provision of a remedy. *See United States v. Claiborne*, 765 F.2d 784, 793 (9th Cir. 1985) (§ 6103(i)), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). *Cf. United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir. 1986) (Financial Right to Privacy Act provided for civil penalties). Other circuits have reached similar conclusions. *See, e.g., Marvin v. United States*, 732 F.2d 669, 673 (8th Cir.1984); *United States v. Barnes*, 604 F.2d 121, 146 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). **Indeed, no court has held that a § 6103 violation warrants dismissal or suppression**.

*Id*. at 1049 (emphasis added). The defendant does not address *Michaelian* nor does he cite a single case where a court held that a violation of § 6103 warrants dismissal. And the logic of the Ninth Circuit's decision in *Michaelian* applies with equal force to this case. The remedies Congress provided for violations of § 6103 are available here, if appropriate. Dismissing a valid indictment returned by a lawful grand jury is not one of them.[1]

---

[1]    Other courts have reached the same conclusion as the Ninth Circuit in *Michaelian*. *See, e.g.*, *United States v. Stein*, No. S1 05 Crim. 0888 (LAK), 2008 WL 4212516, at *2
*(footnote cont'd on next page)*

2.    <u>The Defendant has failed to prove that the charges in this case resulted from the public statements of Shapley and Ziegler.</u>

The defendant moved to dismiss the indictment "**as it results** from what courts define as outrageous conduct that violates his right to due process of law," citing the Ninth Circuit's decision in *United States v. Pedrin*, 797 F.3d 792 (9th Cir. 2015). Motion at 1 (emphasis added). As described above, the "outrageous government misconduct," according to the defendant, consists of the agents' testimony before Congress and subsequent media appearances. *Id.* at 2. Because defendant offers no evidence that the charges in this case "resulted from" the IRS agent's public statements, the test he concedes he must satisfy in the very first sentence of his motion as quoted above, his motion should be dismissed.

In *Pedrin*, the Ninth Circuit held that,

A prosecution **results from** outrageous government conduct when the actions of law enforcement officers or informants are "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."

*Id.* at 795 (quoting *United States v. Russell*, 411 U.S. 423, 431–32 (1973)) (emphasis added). In other words, there must be a causal link between the conduct and the charges the defendant faces or his conviction. It is that link that establishes a due process violation. The conduct may violate other statutes, give rise to civil liability, agency disciplinary action, or other outcomes. To establish a due process violation, however, the defendant must show that the charges **resulted from** the conduct.

---

(S.D.N.Y. Sept. 10, 2008) ("Congress has provided civil and criminal remedies for violations of Section 6103. Courts therefore have declined to create additional remedies such as suppression of evidence or dismissal."); *see also United States v. McLaughlin*, 910 F. Supp. 1054, 1062 (E.D. Pa. 1995) ("… dismissal of the indictment is not an appropriate remedy for Special Agent White's alleged violations of federal statutes … . Adding the sanction of dismissal of an indictment would thwart Congress' and the IRS' respective wills.").

In *United States v. Stenberg*, cited by the defendant in his Motion, the Ninth Circuit described the kind of conduct that gives rise to a due process violation:

> We have also stated that "the due process channel which *Russell* kept open is a most narrow one." The outrageous government conduct defense is available only where "the government is so involved in the criminal endeavor that it shocks our sense of justice." Constitutionally unacceptable conduct includes, but is not limited to, situations where law enforcement agents employed unwarranted physical or mental coercion, where "government agents engineer and direct the criminal enterprise from start to finish," and where the government essentially manufactures new crimes in order to obtain the defendant's conviction.

803 F.2d 422, 429 (9th Cir. 1986) (internal citations omitted). Here, the two IRS agents were not involved in the "criminal endeavor" in any way. As the Ninth Circuit further noted in *Stenberg*, "[o]n the other hand, the outrageous conduct defense is generally unavailable where the criminal enterprise was already in progress before the government became involved or where the defendant was involved in a continuing series of similar crimes during the government conduct at issue." 803 F.2d at 429. The criminal conduct at issue here, the defendant's various tax offenses as charged in the indictment, were committed years before the two IRS agents made public statements beginning in the spring of 2023.

More recently, the Ninth Circuit repeated the *Stenberg* formulation of the outrageous government misconduct doctrine. In *United States v. Bundy*, the Ninth Circuit noted that "[t]he due process argument is usually raised in situations where law enforcement conduct involves extreme physical or mental brutality or where the crime is manufactured by the government from whole cloth." 968 F.3d 1019, 1030 (9th Cir. 2020). The Ninth Circuit has also held that outrageous conduct may be found when the government "operate[s], for an extended period of time, an actual and illegal apparatus."

1  *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993); *Greene v. United States*,

2  454 F.2d 783, 786–87 (9th Cir. 1971) (government established illegal bootlegging

3  operation, provided substantial equipment and supplies, ran it for two-and-a-half years and

4  was its sole customer)); *see also United States v. Citro*, 842 F.2d 1149, 1152–53 (9th Cir.

5  1988) ("This defense ... may be applied where involvement by undercover police officers

6  or informers in contraband offenses is so extensive that due process prevents the

7  conviction of even a predisposed defendant.")

8       Obviously, none of those circumstances are present here.

9       Other circuits that have recognized the outrageous government misconduct doctrine

10  (and not all circuits have) have similarly required a nexus between the conduct and the

11  charges brought or the defendant's conviction. The Eighth Circuit has held that:

12       Like the Supreme Court in *United States v. Russell*, 411 U.S. 423, 431–32,

13       93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), our cases have left open the possibility

14       that, in rare instances, the **investigative methods** employed by law

15       enforcement could be "so outrageous that due process bars the government

16       from invoking the judicial process to obtain a conviction."

17  *United States v. Combs*, 827 F.3d 790, 794 (8th Cir. 2016) (quoting *United States v. King*,

18  351 F.3d 859, 867 (8th Cir. 2003)) (emphasis added). Here, the defendant does not even

19  allege, much less prove, that the investigative methods employed by law enforcement

20  amounted to outrageous government misconduct that resulted in the charges in this case.

21  Making public statements to Congress and on television are not "investigative methods"

22  of any kind. In fact, these statements were all made after Shapley and Ziegler ceased to be

23  involved in the tax investigation into the defendant. *See* Exh. 1 at ¶¶ 3-5.

24       The Eleventh Circuit has held that "[o]utrageous government conduct occurs when

25  law enforcement obtains a conviction for conduct beyond the defendant's predisposition

26  by employing **methods** that fail to comport with due process guarantees.'" *United States*

27  *v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) (emphasis added). The Eleventh

28

Circuit has further explained, "the actionable government misconduct must relate to the defendant's underlying or charged criminal acts." *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011). In *Jayyousi*, the defendant moved to dismiss the indictment, not based on "any government intrusion into his underlying criminal conduct," but based on "alleged mistreatment he received at the brig after the conclusion of his criminal acts and prior to the indictment on the present charges." *Id*. at 1112. The Eleventh Circuit held that even if it were to adopt the outrageous government conduct doctrine, "the doctrine does not apply in this situation." *Id*. Similarly, here the defendant does not claim that Shapley and Ziegler had any role in his criminal conduct. Instead, like the defendant in *Jayyousi*, he claims to have been mistreated, in his case by Shapley and Ziegler's public comments.

Not surprisingly, precisely because the test is whether outrageous government conduct **resulted** in charges or the conviction of a defendant, in each of the cases the defendant cites, the charges **resulted from** such conduct.[2]

- In *United States v. Russell*, the first case cited by the defendant in his motion, an undercover agent offered the defendants a legal but difficult to obtain chemical that was used in the production of illegal narcotics. 411 U.S. at 425. The defendant accepted the government's agent's offer and was ultimately charged with narcotics offenses.

- In *Pedrin*, an undercover agent presented the defendant with the opportunity to rob a fictitious stash house, where there was supposedly a large quantity of cocaine, referred to in the opinion as a "reverse sting operation." 797 F.3d at 795. The defendant took the agent up on his offer and took various steps in preparation for the robbery of the stash house and was charged with conspiracy to possess with intent to distribute cocaine.

---

[2] In each of these cases, with the exception of *Marshank*, the defendant's conviction was affirmed.

7

- In *Combs*, the "investigative method" that the defendant argued was outrageous was "[a] sting operation involving a fake stash-house robbery," where there was supposedly a large quantity of cocaine, the same investigative technique at issue in *Pedrin*. 827 F.3d at 795. Like in *Pedrin*, the defendant took various steps to effectuate the robbery and was charged with conspiracy to possess with intent to distribute cocaine and other offenses.

- In *Stenberg*, the United States Fish and Wildlife Service conducted an undercover operation called "Operation Trophykill," where an agent posed as a taxidermist to disrupt the illegal taking and sale of wildlife. 803 F.2d at 424. The complained-of law enforcement conduct included the agent asking one of the defendants to take him on an illegal hunt. *Id*. The defendant was charged for doing so.

- In *Garza-Juarez*, law enforcement agents posed as purchasers of illegal firearms. 992 F.2d at 901. Law enforcement asked the defendants for silencers and a number of illegal weapons, including an automatic weapon that required some "prodding" from law enforcement to get the defendant to agree to supply. *Id*. The defendants were convicted of firearms charges stemming from these sales.

- In *United States v. Marshank*, the defendant was prosecuted for being a member of a drug conspiracy. 777 F.Supp. 1507 (N.D. Cal. 1991). The defendant moved to dismiss the indictment on the basis of outrageous government conduct because his attorney was working with law enforcement and the U.S. Attorney's Office to collect evidence to use against him during the course of the investigation.

Here, the defendant does not argue that Shapley and Ziegler used any law enforcement technique that resulted in the charges currently before the court. In fact, the conduct he complains of occurred after Shapley and Ziegler ceased to have any role in the investigation. *See* Exh. 1 at ¶¶ 3-5.

The standard for dismissal for outrageous government misconduct is "extremely high." *Pedrin,* 797 F.3d at 795; *Garza-Juarez,* 992 F.2d at 904; *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991).

As quoted above, the defendant has moved the court to dismiss the indictment "as it **results** from what courts define as outrageous government conduct that violates his right to due process of law." Motion at 1 (emphasis added). Specifically, he claims that a June 28, 2023, television appearance by Shapley on Fox News was "just the start of the public campaign that would ultimately **result** in Special Counsel Weiss reneging on his initial offer and revert to charging Mr. Biden with nine tax counts in this jurisdiction, including three felony charges." Motion at 7-8. But he never explains how the media appearance or the "public campaign" led to the charges. And the defendant does not cite a single case where a court dismissed an indictment because law enforcement agents made public statements about an investigation that they were no longer working on. Instead, as described above, all of the cases cited by the defendant involve specific law enforcement techniques, reverse stash house stings, undercover operations, and others, that "resulted" in the charges that a defendant seeks to dismiss.

Most importantly, the defendant offers no evidence to support his contention that Shapley and Ziegler's public statements "result[ed]" in the Special Counsel charging the defendant with nine tax counts, including three felony charges. Having failed to meet the "extremely high" burden of establishing that outrageous government conduct resulted in the charges in this case, the motion to dismiss should be denied.

        3.     <u>Shapley and Ziegler's involvement in the tax investigation ended one year before charges were brought.</u>

While the defendant has failed to offer any proof that Shapley and Ziegler's public statements resulted in the charges in this case and the government bears no burden to disprove an unfounded claim, it is worth noting that IRS leadership had decided to remove Shapley and Ziegler from the investigation by the end of 2022 and that they were formally

1    replaced by new IRS agents in May 2023, seven months before the indictment was

2    returned by the grand jury on December 7, 2023. *See* Exh. 1 at ¶¶ 3-5. Thus, the actions

3    of Shapley and Ziegler could not have had anything to do with the charges that were

4    presented to the grand jury one year after they ceased to be involved in the case.

5              4.    The defendant has not established any "outrageous misconduct" on the

6              part of the IRS.

7         The defendant also asserts that the IRS "committed its own outrageous conduct by

8    not taking action to curtail the misconduct or prevent the unauthorized disclose of

9    confidential grand jury and taxpayer return information." Motion at 1-2. This argument

10   likewise fails because the defendant offers no proof that anything the IRS did or did not

11   do about Shapley and Ziegler "resulted" in the charges in this case. *Pedrin*, 797 F.3d at

12   795.

13        While the defendant repeatedly asserts, without any factual support, that the IRS

14   took no action to address Shapley and Ziegler's decision to make public statements, that

15   is simply not true, as his own motion makes clear. In his motion, the defendant quotes an

16   email dated May 19, 2023, from the Assistant Special Agent in Charge. Motion at 17. In

17   that email, Shapley and Ziegler's supervisor wrote:

18        You have been told several times that you need to follow your chain of

19        command. IRS-CI maintains a chain of command for numerous reasons to

20        include trying to stop unauthorized disclosures. Your email yesterday may

21        have included potential grand (aka 6e material) in the subject line and

22        contents of the email, and you included recipients that are not on the 6e list.

23   *Id*. That email that the defendant has attached as Exhibit B to his Motion contradicts the

24   defendant's repeated assertion that the IRS took no steps to address Shapley and Ziegler's

25   conduct. Further, as described in the attached declaration, Exhibit 2 (filed under seal), the

26   IRS has taken responsible steps to address Shapley and Ziegler's conduct. *See* Exh. 2 at

27   ¶¶ 3-8.

28

In addition, on May 25, 2023, the day before Shapley testified in a closed-door deposition before the House Ways and Means Committee, the IRS Deputy Commissioner for Services and Enforcement sent an email to all IRS Services and Enforcement employees, including Shapley and Ziegler, providing guidance on "options" for reporting "potential wrongdoing involving activities where information is subject to protection under" Section 6103 and Federal Rules of Criminal Procedure 6(e). *See* Exh. 3 (email of May 25, 2023).

In addition, on July 7, 2023, more than a week before Shapley and Ziegler testified in an open hearing before the House Oversight and Accountability Committee, the Commissioner of the IRS sent an email to all IRS employees, including Shapley and Ziegler, that discussed "The option(s) you may choose for reporting whistleblower concerns" and addressing "the right approach" "if the issue to be reported might include

taxpayer information protected by Section 6103 of the IRC or information protected by Federal Rule of Criminal Procedure 6(e). *See* Exh. 6 (email of July 7, 2023).

**B.    The Defendant's Motion to Dismiss the Indictment Pursuant to the Court's Supervisory Powers Should Be Denied**

In the alternative, the defendant asks this court to dismiss the indictment in the exercise of its supervisory powers. Motion at 17. It should not. The defendant does not cite a single case where a valid indictment was dismissed because of public statements by law enforcement agents that were not shown to have resulted in the charges in the case. And none exists.

As the Ninth Circuit held in *Bundy*:

A district court may dismiss an indictment under its inherent supervisory powers "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct."

968 F.3d at 1030 (quoting *United States v. Struckman,* 611 F.3d 560, 574 (9th Cir. 2010)). None of these factors are present here.

First, if Shapley and Ziegler have made disclosures not authorized by 26 U.S.C. § 6103, as described above, Congress has created statutory remedies to address their conduct. Thus, the court need not dismiss the indictment as a remedy for a violation of Section 6103. *Bundy*, 968 F.3d at 1030. Statutory remedies are available. Title 26, United States Code, Section 7213 makes it felony punishable by five years' incarceration, criminal fines and termination of employment, to make any disclosure of returns or return information not authorized by that section. Title 18, United States Code, Section 1905 also makes it a crime punishable by one year incarceration to disclose confidential information, including return information. Violations of 7213 are investigated by the Inspector General for Tax Administration ("TIGTA"), who can refer them for prosecution if appropriate. It

is a "general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests," including the government's interest in prosecution and the public's interest in the administration of criminal justice. *United States v. Morrison*, 449 U.S. 361, 364-65 (1981) (holding that dismissal of the indictment is "plainly inappropriate" for violations of Fourth, Fifth, and Sixth Amendment rights because "[t]he remedy in criminal cases is limited to denying the prosecution the fruits of its transgression"); *accord United States v. Montalvo-Murillo*, 495 U.S. 711, 721-22 (1990) (rejecting overbroad remedy that did not target the specific harm); *Rushen v. Spain*, 464 U.S. 114, 119-20 (1983) ("The adequacy of any remedy is determined solely by its ability to mitigate constitutional error, if any, that has occurred."); *see also United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992) ("Dismissal of an indictment with prejudice is the most severe sanction possible.... In deciding whether to dismiss an indictment, a court must not only determine whether a defendant has suffered actual prejudice, it must also limit its consideration to those events that actually bear upon the grand jury's decision to indict.").

Congress has also created a civil cause of action in 26 U.S.C. § 7431, which provides damages for unauthorized disclosures in violation of section 6103. The defendant has already availed himself of this remedy, filing suit against the IRS in the United States District Court for the District of Columbia on September 18, 2023. His complaint seeks damages and other relief for alleged violations of Section 7431 and of the Privacy Act, 5 U.S.C. § 552. *See Robert Hunter Biden v. United States Internal Revenue Service,* 1:23-cv-02711 (D.D.C.).

Agents who make unlawful disclosures can also be disciplined by the IRS pursuant to their internal policies. *See* Internal Revenue Manual § 752.232(1) (providing for IRS discipline for statutory violations by employees).

Similarly, if the agents disclosed grand jury information, the appropriate remedy is for them to be investigated by TIGTA, referred for criminal prosecution, if appropriate

13

and/or disciplined by the IRS.[3] Dismissing an indictment that is valid on its face and that was properly returned by a grand jury one year after the agents ceased to have any role in the investigation is not an appropriate remedy for violations of the grand jury secrecy rules. The Supreme Court reached a similar conclusion in *Bank of Nova Scotia v. United States*, where it rejected the dismissal of an indictment for, among other things, violations of Rule 6, noting that "[e]rrors of the kind alleged in these cases can be remedied adequately by means other than dismissal. For example, a knowing violation of Rule 6 may be punished as a contempt of court." *Bank of Nova Scotia v. United States,* 487 U.S. 250, 263 (1988).

Second, because the defendant has failed to establish that Shapley and Ziegler's public statements resulted in the charges in this case, there is nothing to suggest that the charges rest on anything but "appropriate considerations validly before a [grand] jury." *Bundy*, 968 F.3d at 1030. Exercise of the court's supervisory function to preserve judicial integrity is "only appropriate when the government misbehavior violates 'clear' rules designed to protect the fairness of the trial process or grand jury." *United States v. McLaughlin*, 910 F. Supp. 1054, 1060 (E.D. Pa. 1995) (citing *United States v. Williams*, 504 U.S. 36, 45–46 (1992)). The defendant does not allege that outrageous misconduct affected the fairness of the grand jury. Thus, there is no risk to judicial integrity by allowing the case to proceed.

The Supreme Court's decision in *Bank of Nova Scotia*, which the defendant tries unsuccessfully to distinguish, *see* Motion at 18-19, is also instructive on the question of preserving judicial integrity. 487 U.S. 250. In *Bank of Nova Scotia*, the Supreme Court concluded that violations of Rule 6 by law enforcement agents did not warrant dismissal of the indictment because the agents' misconduct did not infringe on the grand jury's

---

[3] Persons bound by the rule of grand jury secrecy in Federal Rule of Criminal Procedure 6(e)(2) are subject to prosecution for criminal contempt under 18 U.S.C. § 401(3) for the unauthorized disclosure of grand jury information. The unauthorized disclosure of grand jury information can also be punished under other criminal statutes as well as pursuant to a district court's contempt powers.

ability to exercise independent judgment. *Id*. at 253-54. Similarly, in *United States v. Williams*, the Supreme Court explained that dismissal of an indictment by a court in the exercise of its supervisory powers is only appropriate when the government misbehavior violates "clear" rules designed to protect the fairness of the trial process or grand jury. 504 U.S. at 45–46. Here, the defendant does not allege any misconduct before the grand jury. Shapley and Ziegler ceased to be part of the investigation approximately one year before the grand jury returned the indictment.

While the defendant claims that Shapley and Ziegler's conduct in this case is similar to the conduct in *United States v. Samango*, it is not. 607 F.2d 877 (9th Cir. 1979). The conduct at issue in *Samango* concerned the presentation of an indictment to a grand jury. There is no allegation here that anything improper occurred before the grand jury and neither Shapley nor Ziegler has ever appeared before a grand jury in this case.

Third, dismissing an otherwise valid indictment will not deter future misconduct, if the agents' actions are found to constitute misconduct. *Bundy*, 968 F.3d at 1030. Shapley and Ziegler have no role in this case and have not had one since late 2022. They will not be specifically deterred by having the charges dismissed; nor will dismissing the charges send a general deterrent message to other IRS agents. Instead, what will deter unauthorized disclosures of returns or return information or grand jury material will be prosecution for criminal violations, if appropriate, civil remedies and agency personnel action. Further, the Supreme Court has held that "deterrence is an inappropriate basis for reversal where 'means more narrowly tailored to deter objectionable prosecutorial conduct are available.'" *Bank of Nova Scotia*, 487 U.S. at 255 (quoting *United States v. Hasting*, 461 U.S. 499, 506 (1983)). The same logic applies to dismissal of a valid indictment where there are "means more narrowly tailored to deter objectionable conduct," by law enforcement including disciplinary actions by their agency and even criminal prosecution of the agents themselves.

## III.   CONCLUSION

The defendant's motion to dismiss the indictment because of public statements made by two IRS agents formerly assigned to the case is meritless and should be denied.