Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone:   (213) 615-1700
Facsimile:   (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone:   (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ROBERT HUNTER BIDEN,<br><br>　　　　Defendant. | **Case No. 2:23-cr-00599-MCS-1**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT BASED ON IMMUNITY CONFERRED BY HIS DIVERSION AGREEMENT**<br><br>Hearing Date:　March 27, 2024<br>Time:　　　　1:00 PM<br>Place:　　　　Courtroom 7C |

# INTRODUCTION

The crux of the prosecution's argument that it is not bound by the Diversion Agreement ("DA"), which it agrees *every* party to the DA signed, is its imaginary claim that the DA contains an unwritten condition precedent conferring veto power to a non-party, Probation. There is no such condition precedent. The Special Counsel ("SC") is correct that the DA became effective upon "execution and approval." (DE35 at 2 (citing DA ¶2).) But this language in DA Paragraph 2 makes no mention of Probation; rather, Paragraph 1 identifies the parties as the United States and Biden. It should come as no surprise that the parties must both approve and execute a contract, and that is reflected in the plain meaning of this language. Language that does not mention Probation cannot be read to mean that this "approval" must come from Probation, rather than the parties.[1]

# ARGUMENT

## I.  THERE IS NO CONDITION PRECEDENT

### A.  The Diversion Agreement Should Be Construed In Biden's Favor

The SC does not contest that any ambiguity in the DA must be construed in Biden's favor (DE25 at 9–10), but instead maintains there is no ambiguity. Despite acknowledging this inquiry is governed by "federal common law" (DE35 at 7), the SC ignores Ninth Circuit law that makes clear the DA should be construed based on Biden's reasonable understanding of it (DE25 at 10). Instead, the SC points to Delaware law stating that contracts are read objectively (DE35 at 10), but those cases address contracts generally, not agreements with the government that are construed in a defendant's favor given the constitutional rights that are implicated, the power disparity between the parties, and the role of the prosecution as the drafter. (DE25 at 9–10).

---

[1] As it did in the Delaware litigation, the SC continues to feign confusion about Biden's position, claiming he has invoked "three different and conflicting theories" about why the DA is in effect. (DE35 at 6; *see id.* at 12 ("inconsistent positions").) Biden is just following basic contract law in making a single claim: the DA is in effect because it was approved by the parties, as manifested by their execution of the contract.

1

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS BASED ON IMMUNITY CONFERRED BY HIS DIVERSION AGREEMENT
CASE NO. 2:23-CR-00599-MCS-1

In addition to any ambiguities being construed in a defendant's favor, "conditions precedent are not readily assumed" and "conditions precedent must be 'expressed in unmistakable language.'" *Sohm v. Scholastic, Inc.*, 959 F.3d 39, 46 (2d Cir. 2020) (quoting *Bank of N.Y. Mellon Tr. v. Morgan Stanley Mortg. Capital*, 821 F.3d 297, 305 (2d Cir. 2016)); *see Young Women's Christian Home v. French*, 187 U.S. 401, 417 (1903) (requiring "unmistakable language" to create a "condition precedent"); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 298 F. Supp. 2d 1, 4 (D.D.C. 2002) ("language in a contract not clearly identified as a condition precedent is presumed not to be one") (quoting *Shook of West Virginia, Inc. v. York City Sewer Auth.*, 756 F. Supp. 848, 851 (M.D. Pa. 1991)). The current Attorney General, while on the D.C. Circuit, found the government breached a plea agreement and rejected the government's argument that there was an unmet condition precedent because the law "demands that conditions precedent be expressed in unmistakable language." *United States v. Murray*, 897 F.3d 298, 306 (D.C. Cir. 2018) (Garland, C.J.). Because it is the prosecution that claims a condition precedent exists as an affirmative defense, it must prove this "unmistakable language" exists in the agreement, even with any ambiguity construed in Biden's favor.[2]

### B. No "Unmistakable Language" Created A Condition Precedent

The DA never uses the words "condition precedent" or any language creating one. The SC knows what sort of "unmistakable language" is necessary to overcome the presumption that a contract does not contain a condition precedent, he tells us "such words

---

[2] *See, e.g.*, *Safeco Ins. Co. v. City of White House*, 191 F.3d 675, 682–83 (6th Cir. 1999); *Bengston v. Gibbs*, 1989 WL 100677, at *1 (4th Cir. Aug. 15, 1989); *Ampex Credit Corp. v. Bateman*, 554 F.2d 750, 752 (5th Cir. 1977). In the Delaware case, Biden also cited *Mellon Bank v. Aetna Bus. Credit*, 619 F.2d 1001, 1007 (3d Cir. 1980) ("The generally accepted rule is that the burden of proof in regard to a condition precedent is on the party alleging the breach of the conditional promise."). The SC notes *Mellon Bank* placed the burden of *satisfying* a condition precedent on the plaintiff (DE35 at 15–16), but all parties agreed there was a condition precedent. 619 F.2d at 1007 n.4. The issue here is not whether a condition precedent has been fulfilled, but whether a condition precedent exists. It is the SC that claims a condition precedent exists, so it must prove it does.

as 'on condition that,' 'provided that' and 'if' are often used for this purpose." (DE35 at 13 (quoting Restatement (Second) of Contracts § 226 & cmt. A (1981)). There are others. "Linguistic conventions of condition—such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to[]'—can 'make plain' a condition precedent." *Sohm*, 959 F.3d at 46 (quoting *Bank of N.Y. Mellon*, 821 F.3d at 305–06).

No such language appears anywhere in the DA and the SC points to none for that reason. The DA's actual language cuts against it. The DA's first paragraph identified the prosecution and Biden as the parties. They are the *only* persons mentioned when the subsequent two paragraphs address the need for the DA to be "approv[ed]" and "execut[e] and approv[ed]." (DA at II(1), (2).) Probation is not mentioned in these or any preceding paragraphs. Thus, if anyone reading the document would ask themselves who must "approve" and "execute" the DA, the only answer would be the parties.

There is no reason for a non-party to have to sign the DA for it to become effective among parties who do sign it. DA Paragraph 19 clarifies that no such requirement exists. Biden highlighted that Paragraph 19 (DE25 at 12), states that any modifications of the DA must be "in writing and *signed by the United States, Biden, and Biden's counsel*." (DA at II(19) (emphasis added).) There is no role for Probation whatsoever. The SC's wishful reading to make Probation a party as its way of escaping an agreement it now finds hard to defend to its critics is plainly belied by this provision.

DA Paragraph 19 disproves any notion that Probation's approval of the DA was necessary to make the DA effective among the parties because it is illogical to assume that the DA gives Probation the power to approve the terms of the DA, but also gives the parties the ability to re-write the terms of the DA and cut Probation entirely out of the process. Nothing prevents the parties from adding to Probation's authority or stripping it away entirely, no matter how forcefully Probation may object. Unable to meaningfully respond to this point, the prosecution says nothing—and that silence is deafening.

Without any "unmistakable language" creating a condition precedent in the body of the DA—language necessary to overcome the heavy presumption that a contract does not have conditions precedent—the SC rests its argument on two words in a *signature block* for Probation: "approved by." But that is a slender reed for the SC to place so much weight upon, as that language is merely in the signature block—not the body of the document—and it fails to use any of the traditional language noted above to designate a condition precedent. It does not even contain a noun to specify what it is that Probation is being asked to approve. Surely, Probation's role would not be to agree what charges would be in the DA or what immunity the DA would bestow. Its only role would be its traditional, discretionary role in deciding whether to supervise someone. Probation's approval reflects only its awareness that it is being given such authority.

The SC is wrong to claim those two words give Probation a veto power over the authority of the SC and Biden to bind themselves through the DA. Rather than convey a veto power, the "approved by" language is simply an acknowledgment by Probation that it has been given the authority to supervise Biden—authority Probation is not required to exercise.³ If Probation refuses to give its approval, that does not alter the validity of the DA between the parties. Biden has done all that is required of him by agreeing to submit to Probation's supervision, whether or not Probation chooses to exercise that discretion.

### C. The SC Confuses Approval And Execution

The SC makes a baffling surplusage argument in suggesting that that the parties do not need to approve a contract. Looking to the approval and execution language of the DA, the SC argues: "If the parties alone both executed and approved the agreement, the former would render the latter redundant." (DE35 at 14.) Not so.

---

³ DA Paragraph 10 states "Biden shall," among other things, "[b]e subject to pretrial supervision as directed by the U.S. Probation and Pretrial Service Office in this District." Again, this is not a direction that Probation do anything. It is a requirement that Biden submit to being supervised by Probation and follow whatever directions Probation, in its discretion, asks of him. If Probation were never to exercise that discretion, that would not alter the fact that Biden agreed to be subject to Probation's supervision.

4

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS BASED ON IMMUNITY CONFERRED BY HIS DIVERSION AGREEMENT
CASE NO. 2:23-CR-00599-MCS-1

All contracts must be approved by the parties and executed in a way that manifests that approval because a contract is not formed until all parties reach agreement. *See, e.g.*, *Sturges v. Crowninshield*, 17 U.S. (4 Wheat) 122, 197 (1819) (Marshall, C.J.) ("A contract is an agreement, in which a party undertakes to do, or not to do, a particular thing."). The SC does not dispute that contracts typically do not have to be signed and a signature is just one way for a party to manifest its approval of a contract. (DE25 at 17.) There are, however, contracts (like the DA) in which parties have extensive negotiations with the understanding that their tentative agreement be "subject to the approval of a formal contract." 1 Williston on Contracts § 1.8 (4th ed. 2023) (citing *First Nat'l Mortg. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1065 (9th Cir. 2011)). Although the parties may reach an agreement among themselves (what would ordinarily be an oral contract), no contract is formed until that approved agreement is reduced to an executed (signed) written contract. The written DA does that by specifying that the parties—defined exclusively as the SC and Biden (not Probation)—must both approve and execute the agreement.

## II. PROBATION'S APPROVAL OF THE DA WAS NOT REQUIRED, BUT WAS GIVEN IN ANY EVENT

The SC erroneously claims that after Biden explains that Probation did not need to approve the DA for it to become effective, he "abandons this position" and "reverse[s] course" to argue that Probation did approve the DA. (DE35 at 11–12.) Of course, Biden appropriately takes both positions. Probation's approval was not needed for the DA to become effective, but Probation was consulted on appropriate diversion conditions and approved the DA. There should be no room for debate here.

Probation sent the Court and the parties a copy of Biden's Pretrial Diversion Report on July 19, 2023, along with a copy of the proposed DA, conveying the Recommendation: "The United States Probation Office *recommends* the defendant as a candidate for a 24-month term of Pretrial Diversion." (DE25 at 16 (citation omitted).) Then, on July 20, 2023, the SC emailed the Court to report that "[t]he parties *and Probation have agreed* to

revisions to the *diversion agreement* to more closely match the conditions of pretrial release that Probation recommended in the pretrial services report issued yesterday." (*Id.* (emphasis added).)

The SC's claim that Probation "recommending the defendant for pretrial diversion to the Court is not the same thing as . . . approving the diversion agreement," is at war with the facts. (DE35 at 11.) A defendant cannot be placed in a diversion program without his consent, so a DA is necessary. And Probation was not recommending Biden for diversion in an abstract way; rather, Probation's recommendation to the court included a copy of the DA and even the prosecution told the court that Probation "agreed to revisions to the diversion agreement." (DE25 at 16.) The fact that Probation did not sign the DA does not mean Probation did not give its approval, as approval can be manifested in other ways, and (unlike contract terms) approval can be proven through parol evidence. *See, e.g., Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 81 (2d Cir. 1985) (citing Restatement (Second) of Contracts § 27); *United States v. Clementon Sewage Auth.*, 365 F.2d 609, 612 (3d Cir. 1966); *Nat'l Sur. Co. of N.Y. v. Jackson Cty. Bank*, 20 F.2d 644, 647 (4th Cir. 1927); *Bekhor v. Josephthal Grp.*, 2000 WL 1521198, at *4–5 (S.D.N.Y. Oct. 13, 2000); *Hanna v. Motiva Enters., LLC*, 839 F. Supp. 2d 654, 667 (S.D.N.Y. 2012).

### III.   THE DELAWARE COURT HAD NO ROLE IN APPROVING THE DA

The SC's explanation of the Delaware hearing on the plea agreement is contradicted by the written transcript. The SC's fiction begins with the first sentence of its opposition, calling the fully-executed DA a "proposed agreement" and then falsely claiming "the district court rightly referred to [it] as a 'proposed agreement.'" (DE35 at 1.) The SC cites nothing for that supposed quote because it appears nowhere in the transcript.

The DA was fully executed and did not require the Delaware court's approval; the only thing being "proposed" was a plea agreement on tax misdemeanor charges. In addition to addressing the plea agreement, the court stated, "I also understand that the plan for the gun charge is a Diversion Agreement," and asked if the court needed to address

that. Counsel for both sides told the court that was not necessary. (7/26/23 Tr. at 6.) The court only discussed the DA because the immunity provision that normally is in a plea agreement was in the DA, and the court wanted to make sure that Biden had the immunity he believed he had before accepting the plea agreement. The judge declined to accept the plea agreement and requested additional information, explaining to Biden that the judge was "making sure that your plea gets you what you think it gets." (*Id.* at 108.)

The SC's claim that the Delaware court "deferred a decision on the proposed diversion agreement and the proposed plea agreement" is misleading. (DE35 at 5.) The only decision before the Delaware court was whether to accept the plea agreement—that was the only decision deferred. The court's concern was Biden expected the plea agreement to resolve not only the misdemeanor tax charges subject to the plea, but also to be immunized from other charges based on the immunity provision of the DA. The SC's decision to put the immunity provision in a separate DA that did not require the court's approval is unusual, and the court questioned the legality of the DA's enforcement mechanism, which required the court to find a breach before the SC could bring otherwise immunized charges. The court requested supplemental briefing on whether that provision would be valid because the court had no role in approving the DA. The court asked for such briefing despite the fact the parties obviously agreed this procedural mechanism was valid (or could easily be tweaked). (*See also* DE25 at 4 n.4 (explaining validity).) In response to extremist political backlash to the proposed plea agreement, however, the SC chose to withdraw the plea agreement rather than brief the issue.

Nevertheless, the Delaware court plainly understood the DA was a separate agreement from the plea agreement and that the court had no role in approving the DA. The SC unhesitatingly agreed with the Court that the agreements are "completely separate," and added that "the plea agreement stands on its own." (7/26/23 Tr. at 42 (Wise); *see also id.* at 52 (explaining the plea agreement does not incorporate the DA).) Similarly, Biden's counsel explained: "The parties have taken the position that the

Diversion Agreement is a separate agreement from the Plea Agreement. The Diversion Agreement is a bilateral contract between the parties." (*Id.* at 57 (Clark).) The validity of the DA was not an issue before the Court on July 26. (*Id.* at 50 (court explaining "you are not asking me to sign off on" the DA), 92 (court explaining the DA is "a separate agreement, there's no place for me to sign off on it"); *see also id.* at 51 ("[W]e are not asking the Court to rule in any way on the Diversion Agreement.") (Clark).)

The SC also cites a misleading quote from the Delaware court asking about whether Probation "should agree" with the terms of the DA and claims "the phrase 'should agree' reflects future, not past tense." (DE35 at 4.) But the court was not speaking in a temporal sense, but in a normative sense in terms of what is appropriate or how things *should* be done. That is clear from the prosecution's answer: "Your Honor, I believe that this is a bilateral agreement between the parties that the parties view in their best interest. I don't believe that the role of probation would include weighing whether the benefit of the bargain is valid or not from the perspective of the United States or the Defendant." (7/26/23 Tr. at 46.) In other words, even the SC viewed the question as being one of whether Probation "should" have a say, and it said Probation should have none.

Even before the hearing, the SC expressed its agreement that the DA resolved the firearm charge in emails with defense counsel regarding a draft press statement by Biden's counsel. (*See* DE25-2 ¶¶35–36.) The SC agreed that Biden's counsel could say "the firearm charge [is] subject to a diversion agreement and will not be subject to the plea agreement." (6/19/23 Email from C. Clark to S. Hanson (DE25-2 ¶35).) Moreover, Biden's counsel had proposed saying this "concluded" the SC's investigation (into whatever the DA covered), but the SC preferred the word "resolved," so the draft was changed to "it is my understanding that the five-year investigation into Hunter is resolved." (*Id.*) Those words are synonymous and reflect that the investigation is now over. *Compare Concluded*, Merian-Webster Dictionary (2023), https://www.merriam-webster.com/dictionary/concluded (defining "concluded" as "to bring to an end"), *with*

*Resolved*, *id.*, https://www.merriam-webster.com/dictionary/resolved (defining "resolved" as "to deal with successfully" or "to find an answer to" or "to reach a firm decision about"). Plainly, with the SC telling Biden's counsel that at least the firearm charges have been "resolved" by the DA, neither Biden nor his counsel would have thought otherwise.[4]

Again at the July 26, 2023 hearing, all sides recognized that the DA was in effect. Using the present tense, the SC told the Court: "Your Honor, the Diversion Agreement is a contract between the parties so it's in effect until it's either breached or a determination [of breach has been made], period." (7/26/23 Tr. at 91 (Wise).) The SC's claim that Biden has somehow "cherry-picked" this answer is bewildering because it is the answer literally given. (DE35 at 3 n.2.) The SC explains it was answering a hypothetical as to what would happen if the firearm statute at issue in the DA was later held unconstitutional, which is true but that does not change the SC's answer. The SC's answer is in the present tense, stating the DA is "in effect." The only "if" in the hypothetical was whether a Second Amendment challenge may succeed, there was no "if" in the SC's answer as to whether the DA goes into effect. The fact that the DA was "in effect" was stated as a given because it already was in effect.

Similarly, Biden's counsel told the Court: "I want to be clear that it is the parties' position that there is a Diversion Agreement between the parties which is binding." (*Id.* at 44 (Clark).) Biden's counsel also was clear that this was his understanding from the prosecution: "our understanding of the Diversion Agreement, which is a bilateral agreement between the Defendant and the government which the government has reaffirmed to me it will stand by." (*Id.*) Although the SC has now reversed course and claims the DA never became effective, the SC said the opposite at the hearing and never attempted to correct Biden's counsel before the Court.

---

[4] This understanding is further supported by the clear fact that when Biden's counsel asked AUSA Shannon Hanson directly, on July 19, 2023, "whether there was any other open or pending investigation of Mr. Biden overseen by the Delaware U.S. Attorney's Office . . . she responded there was not[.]" (DE25-2 ¶36.)

9

1  Ignoring these discussions, the SC turns to another portion of the transcript that is admittedly a bit sloppy. The SC summarized various parts of the DA at length, and one of his comments was that the DA would run upon Probation's approval. (DE35 at 3–4.) The court asked Biden's counsel if he had any corrections, and he did not. (*Id.*)

To be sure, Biden's counsel could have corrected this one technical point, but it did not seem particularly important at the time. Probation *had* approved the DA, so the DA was in effect and Biden's counsel had told the court so. Moreover, because the DA was negotiated among the parties with input from Probation, they all had approved the DA around the same time. That is reflected in the prosecution's email to the Court prior to the hearing, stating "[t]he parties *and Probation have agreed* to revisions to the diversion agreement to more closely match the conditions of pretrial release that Probation recommended in the pretrial services report issued yesterday." (7/20/23 Email from B. Wallace to M. Buckson (DE25-2 ¶ 42 (emphasis added).)) Thus, the clarification seemed immaterial, as the DA was in effect and became effective at roughly the same time whether approval is measured from approval by the parties or Probation.

Additionally, on the next page of the transcript, Biden's counsel answered the same question from the court concerning a possible Second Amendment challenge: "I can tell you our intention would be to abide by the agreement and only raise such constitutional determining at such time that somebody tried to bring any charges on this, otherwise it's an agreement between the parties. We are going to honor the agreement." (DE25 at 7.)

## CONCLUSION

The Indictment should be dismissed based on Biden's immunity in the DA.

Dated: March 18, 2024                    Respectfully submitted,

By: */s/ Angela M. Machala*
Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543

10

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS BASED ON IMMUNITY CONFERRED BY HIS DIVERSION AGREEMENT
CASE NO. 2:23-CR-00599-MCS-1

Telephone: (213) 615-1700
Facsimile:  (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone : (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Robert Hunter Biden*