Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Abbe David Lowell (*pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ROBERT HUNTER BIDEN,<br><br>　　　　　Defendant. | **Case No. 2:23-cr-00599-MCS-1**<br><br>*Hon. Mark C. Scarsi*<br><br>**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT BECAUSE SPECIAL COUNSEL WEISS WAS UNLAWFULLY APPOINTED AND THIS PROSECUTION VIOLATES THE APPROPRIATIONS CLAUSE**<br><br>Hearing Date: March 27, 2024<br>Time:　　　　1:00 PM<br>Place:　　　　Courtroom 7C |

## INTRODUCTION

The Special Counsel ("SC") ignores that agencies often promulgate regulations with the force of law that limit the agency's statutory authority, which is precisely what happened with the SC regulations at issue here. Those regulations require that "[t]he Special Counsel shall be selected from outside the United States Government," 28 C.F.R. § 600.3, which makes sense because an SC appointment is needed only "when the Attorney General concludes that extraordinary circumstances exist such that the public interest would be served by removing a large degree of responsibility for the matter from the Department of Justice." 64 Fed. Reg. 37038 (July 9, 1999). No degree of responsibility is removed from DOJ through an appointment of a U.S. Attorney, like Weiss, who is a part of DOJ. That regulation cannot be ignored here, any more than the regulation appointing the Special Prosecutor in Watergate. *United States v. Nixon*, 418 U.S. 683 (1974).

Nevertheless, the SC seeks to use an appropriation for appointed counsel who are "independent" of the federal government. The truth, however, is that DOJ's regulations flatly preclude Weiss from being appointed SC, and his DOJ insider status prevents him from using an appropriation for counsel who are "independent" of DOJ.

## ARGUMENT

### I. WEISS WAS UNLAWFULLY APPOINTED SPECIAL COUNSEL

#### A. DOJ Regulations Render Weiss Ineligible To Be Appointed SC

The SC does not contest that he is an officer of the United States and ineligible to be appointed as SC under DOJ regulations, but he makes the curious argument that the Attorney General ("AG") can appoint him as SC in violation of an explicit legal prohibition anyway. The SC claims the AG can make this appointment under his statutory authority, 28 U.S.C. §§ 509, 510, 515, and 533, while ignoring his own regulations implementing those statutes. But like everyone else, the AG must follow the law.

Those statutes may authorize the AG to appoint a prosecutor, but they make no mention of his authority to appoint a "Special Counsel." Instead, "Special Counsel" is a term of art created by DOJ regulations. *See* 28 C.F.R. §§ 600.1–600.10. Those regulations require that a "Special Counsel shall be selected from outside the United States Government." *Id.* § 600.3. Therefore, the AG's statutory authority has been limited by his own regulations in this context. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (specific law controls over the general). Those regulations have the force of law. *See, e.g.*, *Nixon*, 418 U.S. 683.

The SC claims "the Supreme Court approved" the AG's use of §§ 509, 510, 515, and 533 to delegate investigatory and prosecutorial authority to the Special Prosecutor" in *Nixon* (DE36 at 2), which is true, but those statutes cannot override Section 600.3's prohibition. In fact, *Nixon* cuts decisively against the SC. *See also* 38 FR 14688 (June 4, 1973) (Special Prosecutor regulations based on the same statutory authority).

"Nixon argued that the Watergate Special Prosecutor could not challenge a claim of executive privilege made by the President. The Court rejected this contention on the basis of a *regulation* promulgated by the Attorney General which gave the Special Prosecutor the explicit power to contest the invocation of executive privilege." *United States v. Exxon Corp.*, 470 F. Supp. 674, 684 (D.D.C. 1979) (emphasis added). Nixon maintained this was an "intra-branch dispute between a subordinate and superior officer of the Executive Branch," *Nixon*, 418 U.S. at 692, and argued "the President, as the chief executive officer, and not the Special Prosecutor or the Judiciary, is and remains the final authority as to what presidential material may be utilized in the furtherance of any prosecution." Br. of Nixon at 28–29, No. 73-1766, *United States v. Nixon* (U.S. filed June 21, 1974). The Supreme Court found the case justiciable and that the President's authority as head of the Executive Branch to conduct criminal prosecutions was delegated to the AG who, through the Special Prosecutor *regulation*, delegated the authority to handle the case to the Special Prosecutor. The Court found the AG's *regulation* binding and

prevented both the President or his AG from withdrawing that delegation. Although "it is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority," the Court explained, "he has not done so. So long as this regulation remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it." *Nixon*, 418 U.S. at 696.

By the same token, Section 600.3 remains in effect and it flatly precludes the AG from appointing an SC from within the U.S. government. As in *Nixon*, the AG could seek to amend or revoke the regulation, but he cannot simply ignore it. Neither President Nixon nor his AG did so, but it remains an option for the current President and AG. Although the SC claims the AG can revise the regulation through his appointment order (DE36 at 11), the AG did not change the regulation in any way.

The SC's notion that the AG can use his general statutory authority to appoint any prosecutor to justify naming an SC who is ineligible to be an SC is further undermined by the Independent Counsel ("IC") Act. When it was in force, a special court was convened to appoint an IC when the AG determined one should be appointed. *Morrison v. Olson*, 487 U.S. 654, 661 (1988). By the SC's reasoning, the AG could have cut this special court out of the process and side-stepped the IC Act by selecting his own IC under the AG's general statutory authority. That would have defeated the very purpose of the IC Act. Likewise, the AG cannot side-step his own SC regulations to appoint an SC.[1]

**B. The Special Counsel Regulations Are Enforceable**

The SC claims the regulations are unenforceable internal rules that do not create any rights, but this position is patently inconsistent with *Nixon*. There, the Supreme Court

---

[1] The SC cites *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), noting that IC Walsh was given authority under the IC Act and the AG's other statutory authorities, but that instance was sui generis. Walsh was first appointed IC by the special court and, after the constitutionality of the IC Act was challenged, the AG delegated Walsh "identical" authority in case the IC Act was found unconstitutional. *Id.* at 267. Thus, the AG had not attempted an end-run around the IC Act or sought to appoint an ineligible IC. The AG's independent action did not give Walsh any power unless the IC Act was invalidated.

rejected a similar claim that a regulation appointing a Special Prosecutor could not limit the President's "absolute discretion to decide whether to prosecute a case." *Nixon*, 418 U.S. at 693. The regulation appointing a Special Prosecutor in *Nixon* cannot be considered any less of an internal rule than the SC regulations (they invoke the same statutory authority and do the same thing), and the Supreme Court unanimously found that regulation binding. *Id.* at 696 ("the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.")

*Nixon* would have come out the other way, *in President Nixon's favor*, if the SC is right and such regulations are non-binding internal rules that the Judicial Branch is powerless to enforce when the President or AG decides the law should not be followed. If that were true, President Nixon could have ignored the delegation under the regulation and used his authority as head of the Executive Branch to assert executive privilege (or ordered his AG to do so, as he did in the "Saturday Night Massacre") in refusing to enforce the subpoena, and the Special Prosecutor would have been powerless to rely upon the non-binding regulation as his authority for challenging the President's claim.[2]

Agencies' obligation to follow their own regulations "is not limited to rules attaining the status of formal regulations," as the Supreme Court has extended the *Nixon* principle to unpublished procedural regulations. *Mass. Fair Share v. Law. Enf. Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) (citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)). The SC regulations are published and longstanding; they do not provide the AG the discretion to ignore them. Although DOJ "could have reserved to itself the discretion it now claims, it simply failed to do so." *Clean Ocean Action v. York*, 57 F.3d 328, 333 (3d Cir. 1995).

---

[2] The SC is correct that his position was upheld in an out-of-circuit district court opinion that found "those regulations are not substantive rules that create individual rights; they are merely statements of internal departmental policy." *United States v. Manafort*, 312 F. Supp. 3d 60, 75 (D.D.C. 2018). Biden maintains that decision is flatly contrary to *Nixon*.

4

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR UNLAWFUL APPOINTMENT OF THE SPECIAL COUNSEL AND IN VIOLATION OF THE APPROPRIATIONS CLAUSE
NO. 2:23-CR-00599-MCS-1

The SC attempts to portray his appointment as following a typical pattern for DOJ, but that is not true and, even if it was, the SC surely knows it is no defense for a law breaker to claim they had gotten away with breaking the same law before. Since the SC regulations were enacted in 1999, few SCs have been appointed, so the historical record is scant, with only one prior appointment (John Durham in 2020) involving a U.S. government employee being appointed SC with the authority granted by the SC regulations.[3] Durham's appointment was not litigated and none of the three cases that he brought (one guilty plea and two acquittals) were appealed. Thus, the selection of a U.S. government employee to serve as SC is rare and the legality of such appointments, despite a regulation that explicitly prevents it, has gone untested.

**C. The Unauthorized Indictment Must Be Dismissed**

It does not matter that the SC regulations disclaim creating any rights, 28 C.F.R.§ 600.10, because Biden is contesting the authority of the SC regardless of whether the regulations grant Biden a right. In numerous contexts, the Supreme Court allows a defendant to challenge government officials' actions in excess of their authority. *See, e.g.*, *Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020); *Bond v. United States*, 564 U.S. 211, 220 (2011).[4] *Collins* specifically noted

---

[3] In 2003, Acting Attorney General James Comey appointed then-U.S. Attorney Patrick Fitzgerald to a position that he confusingly titled "Special Counsel," but the appointment made clear this role was not defined by the SC regulations. In making the appointment, Comey directed that Fitzgerald exercise his authority "independent of the supervision or control of any officer of the Department" and he later clarified: "Further, my conferral on you of the title 'Special Counsel' in this matter should not be misunderstood to suggest that your position and authorities are defined and limited by 28 C.F.R Part 600." *United States v. Libby*, 429 F. Supp. 2d 27, 29 (D.D.C. 2006) (quoting appointment letters). Later, Comey acknowledged the SC regulations, but he explained "the mandate that I am giving Mr. Fitzgerald is significantly broader than that that would go to an outside special counsel." DOJ Press Conference, *Appointment of Special Prosecutor* (Dec. 30, 2003), https://irp.fas.org/news/2003/12/doj123003.html. He added that he told Fitzgerald that "I've delegated to you all the approval authority that I as attorney general have" and explained, "I have given him all the approval authorities that rest—that are inherent in the attorney general; something that does not happen with an outside special counsel." *Id.*

[4] The SC seeks to distinguish this line of cases as concerning standing, but the SC *is* challenging Biden's standing—his lack of right to complain about this improper prosecution. (DE36 at 15 n.7.) While the SC is right that the question of remedy is distinct from standing, where the issue is the lack of authority for the government to bring an action, the only remedy is the dismissal of the action. That was the result in each of these

that the actions that "involved a Government actor's exercise of power that the actor did not lawfully possess," including where a government actor was improperly "appointed," must be invalidated. 141 S. Ct. at 1788. Thus, the Court should invalidate the improperly appointed SC's actions, including this prosecution by dismissing the Indictment. Biden, like every defendant, has the right to challenge the authority of an improperly constituted grand jury that indicts him or the lack of authority for the prosecutor who brings the case. It is shocking that the SC claims otherwise.

Although the issue seldom arises (fortunately), where a DOJ attorney lacks the authority to obtain an indictment, it is settled practice to dismiss the indictment. *See, e.g.*, *United States v. Williams*, 65 F.R.D. 422, 448 (W.D. Mo. 1974) (dismissing indictment where DOJ Special Attorneys lacked authority to bring the indictment); *United States v. Huston*, 28 F.2d 451, 456 (N.D. Oh. 1928) (dismissing indictment by unauthorized Special Assistant to the AG); *United States v. Rosenthal*, 121 F. 862, 873 (C.C.S.D.N.Y. 1903) (dismissing indictment by an "unauthorized prosecutor"); *see also Providence Journal*, 485 U.S. at 708 (dismissing case because a court-appointed prosecutor was not authorized to petition for certiorari); *United States v. Weyhrauch*, 544 F.3d 969, 975 (9th Cir. 2008) (dismissing unauthorized appeal). It has long been clear:

> The power to bring informations . . . is a great power, carrying with it possibilities of serious oppression, if improperly used. . . . This power is lodged in the United States Attorney . . . and in the Attorney General. . . . Both by the statute, therefore, and by general principles of law, a delegation of this power, if intended, must be made in clear and precise terms, and not left to inference or implication[.] . . . For these reasons, [a Special Assistant to the Attorney General] was not, in my opinion, authorized to bring these informations, and as they were not submitted to or approved by the Attorney General they were not legally brought.

---

cases. Any lesser remedy would have this Court bestow upon the SC an ultra vires power that has not been bestowed upon him by law and that this Court has no constitutional authority to confer. *See United States v. Providence Journal Co.*, 485 U.S. 693, 707 (1988).

6

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR UNLAWFUL APPOINTMENT OF THE SPECIAL COUNSEL AND IN VIOLATION OF THE APPROPRIATIONS CLAUSE
NO. 2:23-CR-00599-MCS-1

*United States v. Cohen*, 273 F. 620, 621 (D. Mass. 1921).

Even if viewed as a violation of Biden's rights under the regulations, an agency cannot provide rights but then attach a provision saying "we don't really mean it" to shield them from being enforced in court. The Supreme Court would have wasted its time deciding cases that found such regulation-created rights enforceable, such as *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Service v. Dulles*, 354 U.S. 363 (1957); *Vitarelli v. Seaton*, 359 U.S. 535 (1959), if an agency can render those regulations unenforceable by adding a "we don't mean it" clause. There is a clear difference between the DOJ's policy manuals not being enforceable in litigation and official regulations.

## II. DOJ IS VIOLATING THE APPROPRIATIONS CLAUSE BY FUNDING SC WEISS'S INVESTIGATION AND PROSECUTION

### A. SC Weiss Lacks An Appropriation From Congress

The funds spent on SC Weiss's investigation and prosecution of Biden have not been appropriated by Congress in accordance with the Appropriations Clause. The SC relies upon an appropriation established in a Note to 28 U.S.C. § 591, which provides: "[A] permanent indefinite appropriation is established within the Department of Justice to pay all necessary expenses of investigations and prosecutions by *independent counsel* appointed pursuant to the provisions of 28 U.S.C. 591 et seq. or other law." *See* Pub. L. 100–202, § 101(a) [title II], Dec. 22, 1987 (emphasis added). This appropriation was passed one week after the IC Reauthorization Act creating the role of IC was passed.

The SC's claim that the appropriation covers him fails because he is not an "independent counsel" under any "other law." The SC claims "or other law" covers more than the IC under the expired statute. That is true, but the SC ignores that the statute still requires that the covered person be a lower-case "independent counsel"—similar to the ICs—and he is in no sense "independent" from the U.S. government he already serves.

Incredibly, the SC claims this funding practice is longstanding, approved by the Government Accounting Office ("GAO"), and that Biden's argument was rejected in

*United States v. Stone*, 394 F. Supp. 3d 1, 17–23 (D.D.C. 2019). (DE36 at 10.) Critically here, the GAO report and *Stone* cut *against* the Special Counsel's position. Start with the GAO Report, which looked only at SC Fitzgerald's position. *Special Counsel and Permanent Indefinite Appropriation*, GAO B-302582, 2004 WL 2213560 (Comp. Gen. Sept. 30, 2004), ("GAO Report"). As noted above, SC Fitzgerald was delegated the *full* authority of the AG and powers the AG described as "significantly broader" than those given to an SC subject to the SC regulations. *See supra* at 5 n.3. By contrast, SC Weiss acknowledges that his authority to act is governed by the SC regulations (though he claims his appointment need not comply with those regulations). (DE36 at 11.)

Fitzgerald's more expansive authority over the typical SC was critical for the GAO, which explained, "[s]ince the permanent indefinite appropriation is available for independent counsels, we looked for indicia of independence of Special Counsel Fitzgerald," and found "[t]he parameters of his authority and independence are defined in the appointment letters which delegate to Special Counsel Fitzgerald all (plenary) the authority of the Attorney General." GAO Report at *3. It emphasized "the express exclusion of Special Counsel Fitzgerald from the application of 28 C.F.R. Part 600, which contains provisions that might conflict with the notion that the Special Counsel in this investigation possesses all the power of the Attorney General, contributes to the Special Counsel's independence." *Id.* Among other things, the GAO Report noted that Section 600.7's consulting requirement—applicable to Weiss, but not Fitzgerald—is "inconsistent" with the delegation of the "plenary authority of the Attorney General." *Id.*

Biden notes that an opinion from the GAO—not a court—on the lawfulness of a DOJ practice is weak authority, but the GAO Report nevertheless undermines the SC's claim. SC Weiss does not have the plenary authority given to SC Fitzgerald and is instead subject to the SC regulations that the GAO found would undermine the SC's independence. The GAO Report did not opine on whether an SC with the authority designated by the SC regulations is sufficiently independent to qualify for this

appropriation—particularly where the SC's insider status would *disqualify* him from being an SC.

The SC's reliance upon *Stone* is similarly misleading. *Stone* found SC Mueller sufficiently independent to qualify for this appropriation because he was appointed under SC regulations that make it "appropriate to appoint an investigator from *outside* the Department." 394 F. Supp. 3d at 18 (emphasis added). Mueller was an outsider. To be sure, there is ample reason to question whether the SC regulations delegate sufficient authority for even an *outside* SC to be sufficiently independent to qualify for this appropriation,[5] but the Court need not reach that issue because, unlike SC Mueller, SC Weiss is an *insider*. *Stone* does not support the notion that he could be independent of the very government he works for. That is a contradiction in terms.[6]

**B. The Appropriations Clause Violation Prevents This Case From Being Tried**

The SC disputes that an Appropriations Clause violation requires dismissal, arguing "[t]he remedy in criminal cases is limited to denying the prosecution the fruits of its transgression." (DE36 at 15 (quoting *Morrison*, 449 U.S. at 364–65).) Instead, the SC claims he "could simply transition to a funding source other than the permanent

---

[5] The Congressional Research Service ("CRS") analyzed the differences in authority granted to SC, IC, and Special Prosecutors. *Independent Counsel Law Expiration and the Appointment of "Special Counsels,"* RL 31246 (Jan. 15, 2002). CRS explained "it seems appropriate that such personnel are called Special Counsels, since their designation as 'independent' counsels might be something of a misnomer." *Id.* at 4. It found "the most significant change" is that "the Attorney General, rather than the Special Counsel, will have the 'ultimate responsibility' for any matter referred to the Special Counsel," which is "a major shift of discretion and ultimate authority back to the Attorney General." *Id.* at 5, 6. The "review and approval procedures" under the regulations are extensive (catalogued at length by CRS) and impose the "most significant impact . . . upon the 'independence' of a Special Counsel." *Id.* at 10. They essentially allow the AG to thwart the SC at every turn.

[6] The SC erroneously claims the history of the AG using this appropriation for SC has somehow been ratified by Congress. (DE36 at 10–11.) Only one other *inside* SC (Durham) ever has been appointed SC as Weiss was, and this issue was never litigated. "[T]he doctrine of congressional ratification applies only when Congress reenacts a statute without relevant change." *Holder v. Martinez Gutierez*, 566 U.S. 583, 593 (2012). Ratification requires "the supposed judicial consensus [be] so broad and unquestioned that we must presume Congress knew of and endorsed it"). *Jama v. ICE*, 543 U.S. 335, 349 (2005). There is no such judicial construction approving the appropriation's use for an *outside* SC.

appropriation." (*Id.*) Even if there were some other valid appropriation—the SC identifies none—that remedy would not deny the prosecution the fruits of its prior transgression. He would keep his basket of ill-gotten fruit. Ninth Circuit cases, including *United States v. McIntosh*, 833 F.3d 1163, 1175 (9th Cir. 2016), and *United States v. Pisarski*, 965 F.3d 738, 743 (9th Cir. 2020), confirm that a more sweeping remedy is required.

*Collins* addressed the remedy in separation of powers cases, distinguishing cases that "involved a Government actor's exercise of power that the actor did not lawfully possess," including where a government official was improperly "appointed," from cases that do not. 141. S. Ct. at 1788. Where the government actor lacked authority, government actions taken without authority are invalidated. *Id. Collins* requires that "[t]he remedy in those cases, invalidation of the unlawful actions, flows 'directly from the government actor's lack of authority to take the challenged action in the first place.'" *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 642 (5th Cir. 2022) (citation omitted).

An improperly appointed SC's actions should be invalidated. As Biden noted, DOJ advised Congress that IC "are largely insulated from any meaningful budget process" and accountability, which "eliminates the incentive to show restraint in the exercise of prosecutorial power." (DE26 at 3.) That led to criticism the IC were "wasting both his time and the taxpayers' good money." (*Id.*) Those concerns arise especially in this case. (*See* DE27 (selective prosecution motion).) Congress let the IC Act expire because it was tired of runaway ICs perpetuating their own positions free from financial restraint. If the Court does not invalidate the SC's actions, the Court will restore the very problem Congress meant to forestall and that the Appropriations Clause precludes.

## CONCLUSION

The Indictment should be dismissed.

Date: March 18, 2024

Respectfully submitted,

By: */s/ Angela M. Machala*
Angela M. Machala (SBN: 224496)

10

AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Robert Hunter Biden*