Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Abbe David Lowell (*pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
Kyllan J. Gilmore
KGilmore@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Telephone:  (202) 282-5000
Facsimile:   (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 2:23-cr-00599-MCS** |
| Plaintiff, | *Hon. Mark C. Scarsi* |
| vs. | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT 1 AS UNTIMELY OR, IN THE ALTERNATIVE, TO DISMISS ALL COUNTS FOR FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY** |
| ROBERT HUNTER BIDEN | |
| Defendant. | |
| | Date:        March 27, 2024 |
| | Time:       1:00 PM |
| | Place:      Courtroom 7C |

**INTRODUCTION**

Count 1 should be dismissed for violating the statute of limitations.  The parties use slightly different phrasing, but agree: (1) willful failure to pay taxes is a single offense with a six-year statute of limitations ("SOL") that begins running when all elements of the offense are present, i.e., when a defendant's failure to pay taxes becomes willful; (2) generally, this is the date payment is due, although there are cases where a defendant's failure to pay does not become willful until *after* that date (e.g., a forgotten deadline); and (3) in such cases, the SOL begins to run from the date the failure to pay first becomes willful.  *See infra* Legal Standards.

The Special Counsel's ("SC's") analysis of Count 1 is inconsistent with how it treats the other counts.  For the other counts, the SC argues that Biden's willful failure to pay was established at the time those taxes were owed, because he did not pay then and he knew what he owed from his accountants and what he reported as owing to the IRS.  The SC makes those same allegations against Biden concerning his 2016 taxes, which would make his non-payment a willful violation when they were due in April 2017.  But because that would render the charge time barred as of April 2023, the SC does not draw the same conclusion from the same facts as charged in the other counts that Biden's willfulness was established when the taxes were owed.  Instead, to circumvent the SOL, the SC claims that Biden's willful failure to pay arose later.  As to Count 1, the SC is committing to the position that Biden was not willful until 2020 when he filed his late returns, and thus did not complete the crime and start the SOL until that time.[1] (DE38 at 1 ("the Indictment alleges that the offense occurred in June 2020").)

---

[1] Although the Indictment alleges facts that it elsewhere claims suggest a willful violation arose in April 2017, the SC claims a jury could find the violation did not become willful until later.  It suggests willfulness could have arisen in 2020, although it is unclear why the SC claims Biden's knowing failure to pay his taxes did not become willful until then.  It also is a strange view of willfulness that it did not exist from 2017–2020, when Biden knew he had not paid his taxes, it became a willful failure to pay in 2020, but that willful failure to pay was a short-lived impulse because he paid his taxes in full, with interest and penalties, in 2021.  The SC tries to act noncommittal with assertions that when willfulness arises is a factual issue for the jury, but it is the jury's place to vote up or down on proper charges brought by the SC.  It is not for the jury to decide what the charge should be;

1

1   The SC cannot have it both ways.  If knowledge of what is owed and a failure to

2   then pay establishes a willful failure to pay with respect to Biden's 2017 taxes (Count

3   2), 2018 taxes (Count 4), and 2019 taxes (Count 9), then the same should be true of his

4   2016 taxes (Count 1).  In that case, Count 1 should be dismissed as time-barred.  But if

5   the evidence the SC alleges is not sufficient to establish a willful failure to pay 2016

6   taxes, then the remaining charges should be dismissed as inadequately pled.

7   The SC also argues the SOL on Count 1 is avoided by tolling agreements, but

8   reliance on the tolling agreements is misplaced because the SC is not a party to those

9   agreements and is in no position to enforce them.  (DE38 at 4–6.)  As such, the tolling

10  agreements Biden entered into with a different Office are of no benefit to the SC.

11  **LEGAL STANDARD**

12  The parties agree on the legal standards relevant to this motion.  Failure to pay

13  taxes under Section 7203 is complete when the elements of "(1) willfulness and (2)

14  failure to pay the tax when due" have occurred.  (*United States v. DeTar*, 832 F.2d 1110,

15  1113 (9th Cir. 1987); *see* DE38 at 3.)  As DOJ's Criminal Tax Manual ("CTM") notes,

16  DOJ considers the offense of willful failure to pay complete when the defendant first has

17  knowledge of his duty to pay and fails to do so, and the SC alleges that first occurred in

18  2017, even if the SC alleges it was also later true in 2020.  CTM 10.06[6] (2024) ("[T]he

19  government generally would proceed on the theory that the crime was complete on the

20  date the payment was due and the taxpayer failed to pay, i.e., April 15, unless there was

21  evidence to establish that willfulness occurred after that date.").

22  The Ninth Circuit recognizes that in failure to pay cases, willfulness does not

23  necessarily arise on the date that the taxes are owed, but instead can arise later if

24  willfulness is shown to have first arisen sometime after the due date.  (*United States v.*

25

26  Biden's right to a grand jury would be violated if the petit jury was free to define for itself
    some other crime that occurred in some other year.  If the same facts are sufficient to make

27  the crime complete when the taxes were due in subsequent tax years, the grand jury's
    charge that those same facts were present as to Biden's 2016 taxes demands the same

28  conclusion.  The logic does not change merely because the SC has a SOL problem.  *See
    also* Biden Reply in support of his MTD Counts 2, 4, and 6 for Duplicity, at 3 n.1.

*Andros,* 484 F.2d 531, 532 (9th Cir. 1973); *see* DE38 at 4; CTM 10.06[6] ("the government generally would proceed on the theory that the crime was complete on the date the payment was due and the taxpayer failed to pay, i.e., April 15, unless there was evidence to establish that willfulness occurred after that date").) However, both parties understand the concept of late arising willfulness is simply another way to state that "[a] crime is complete as soon as every element in the crime occurs." (*United States v. Musacchio*, 968 F.2d 782, 790 (9th Cir. 1991); DE38 at 8.)

## ARGUMENT

### I.  THE TOLLING AGREEMENTS DO NOT TOLL THE SOL BECAUSE THE SC IS NOT A PARTY TO THOSE AGREEMENTS

The SC's reliance upon two tolling agreements with Biden is misplaced because the SC is not a party to those agreements. Those agreements are between Biden and the U.S. Attorney's Office for the District of Delaware and the Tax Division at Main Justice (which acts through specific U.S. Attorney's Offices). At the time Biden entered into these tolling agreements, he knew he was being investigated for tax violations by the U.S. Attorney's Office for the District of Delaware, District of Columbia, and the Central District of California, but he entered tolling agreements only with Delaware. Venue and statute of limitations considerations would be unique as to each District.

Similarly, Biden did not enter into any tolling agreements with the SC, as no SC had even been appointed to investigate him when these tolling agreements were signed. The fact that the U.S. Attorney for Delaware David Weiss was subsequently appointed as SC—as opposed to someone else—does not mean the SC's Office suddenly became a party to those prior agreements. The agreement is with the office, not the man (who did not sign these agreements in any event; AUSA Leslie Wolf signed on behalf of the Office and she is not a member of the Special Counsel's Office). Weiss's U.S. Attorney team is separate from his SC team, complete with distinct websites, email addresses (which they insist be used in place of their USAO addresses), stationary, and, more importantly, different responsibilities. Surely, the Delaware Office would not claim that

such agreements become void whenever the U.S. Attorney leaves the office.  Nor could anyone claim the State of Delaware would be a party to such an agreement if Weiss had become Attorney General of the state instead.  Similarly, if John Doe had been named SC, instead of Weiss, there would be no basis for Doe to claim he inherited the tolling agreements entered into by Weiss or any other U.S. Attorney.

Tolling agreements are contracts, and the entry into those agreements by one U.S. Attorney's Office does not typically bind other government entities absent language saying so.  *See, e.g.*, *United States v. Viola*, 562 Fed. App'x 559 (9th Cir. 2014) (Probation not bound by U.S. Attorney's plea agreement); *see also SOS Co. v. E-Collar Techs.*, 2017 WL 5714716, at *5 (C.D. Cal. Oct. 17, 2017) (tolling agreement did not apply to non-party that was not the alter ego of a party); *Osman v. Young Healthcare*, 2023 WL 2021703, at *7 (E.D. Va. Feb. 15, 2023) (tolling agreement with Department of Labor with respect to certain named plaintiffs' claims did not extent to unnamed plaintiffs); *United States v. FedEx Corp.*, 2016 WL 1070653, at *1 (N.D. Cal. Mar. 8, 2016) (finding tolling agreement with one company did not apply to a related company, even where government believed the agreement covered all related entities); *Morning Star Packing v. Crown Cork and Seal*, 2004 WL 7339592, at *7 (E.D. Cal. Aug. 3, 2004) (tolling agreements cannot be extended to new parties).  The general rule is that agreements entered into by one U.S. Attorney's Office binds only that office, unless stated otherwise.  *United States v. Annabi,* 771 F.2d 670, 672 (2d Cir. 1985) ("A plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction.").[2]  Federal prosecutors in one office, for example, may prosecute a

---

[2] The Diversion Agreement made with respect to Biden illustrates the difference.  It provides: "This Diversion Agreement (the 'Agreement') is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware, and Robert Hunter Biden ("Biden"), collectively referred to herein as 'Parties,' by and through their authorized representatives."  (DA ¶1.)  Thus, in the Diversion Agreement, the U.S. Attorney's Office is executing the agreement on behalf of the United States.  By contrast, the tolling agreements indicate that the party is the U.S. Attorney's Office, but not the United States as a whole.  *Compare United States v. Sertich*,

---

4

defendant who is immunized by an agreement with another office.  *See, e.g.*, *Sertich*, 649 F.3d 545, at *1 (ND Ind. Prosecution not barred by CDCA plea agreement); *United States v. Laskow*, 688 F. Supp. 851, 853 (E.D.N.Y. 1988) (finding EDNY prosecution not barred by CDCA plea agreement).[3]  What is good for the goose is good for the gander.  The same rules that hold one U.S. Attorney's Office not bound by plea agreements reached with other Offices mean that one Office cannot seek the benefits of tolling agreements reached by other Offices.  Prosecutors should not be allowed to elect whether they are or are not bound by agreements between other Offices and defendants, depending on what suits them.  Moreover, as with plea agreements and diversion agreements, any ambiguities in tolling agreements are construed in the defendant's favor.  *See, e.g.*, *United States v. Spector*, 55 F.3d 22, 26 (1st Cir. 1995); *United States v. Goyal*, 2007 WL 1031102, *3 (N.D. Cal. Apr. 3, 2007).

## II.   THE   SC   CONCEDES   THE   INDICTMENT'S   WILLFULNESS ALLEGATIONS ARE INSUFFICIENT

The Indictment claims Biden manifested the willfulness to not pay his 2016 taxes when he late-filed his 2016 Form 1040 on June 15, 2020, and the prosecution doubles down on this being when he first committed the crime in its opposition.  (Indict. ¶65; DE38 at 3.)  Simply put, the SC's argument that Biden first manifested willfulness to

---

649 F.3d 545, at *1 (9th Cir. Oct. 24, 1995) (unpublished) (explaining an agreement that is confined to a particular U.S. Attorney's Office binds only that office, as opposed to a more general agreement that binds the United States as a whole), *with Thomas v. INS*, 35 F.3d 1332, 1335 n.1 (9th Cir. 1994) (explaining an agreement made on behalf of the United States government, as opposed to a sub-part, applies to the government as a whole); *United States v. Harvey*, 791 F.2d 294, 301–03 (4th Cir. 1986) (explaining that an agreement entered into on behalf of the United States, as opposed to just a particular U.S. Attorney's Office, binds the United States as a whole); *see also Morgan v. Gonzales*, 495 F.3d 1084, 1091 (9th Cir. 2007) ("As a general matter of fundamental fairness, promises made by the government to induce either a plea bargain or a cooperation agreement must be fulfilled. . . .  A United States Attorney is authorized to enter into cooperation agreements and, in so doing, to make promises that are binding on other Federal agencies.") (citations omitted).

[3] By analogy, Andrea Gacki recently transitioned from her role as Director of the Office of Foreign Assets Control to being Director of the Financial Crimes Enforcement Network.  It is difficult to imagine that anyone would think the agreements reached by OFAC under her watch no longer bind OFAC or that FinCEN is now bound by those OFAC agreements.

not pay his 2016 taxes on June 15, 2020 requires finding that Biden knew he had not paid his taxes in 2017—after they were due—insufficient to show willfulness. Remarkably, the knowledge the prosecution claims is insufficient in Count 1 is the exact same knowledge that the prosecution claims is sufficient in the other similar counts.[4] This is evident from a comparison of the allegations supporting each count.

**A. Count 1**

The Indictment alleges Biden "did willfully fail, on June 12, 2020" to pay his 2016 income tax. (*Id.*) However, the Indictment demonstrates Biden had knowledge that his taxes were unfiled in 2017. First, the Indictment states that on April 15, 2017, three days before his taxes were due, Biden was forwarded an email from his accountant stating, "[l]ooks like Owasco will owe about $52,000 and Hunter (individually) will owe about $26,000." (*Id.* ¶54.) Second, the Indictment states that on November 27, 2017, Biden sent an email to his business associate and personal assistant stating that he found his unfiled taxes in his office, which still required his signature. (*Id.* ¶56.) Taking all the Indictment's allegations as true, in both April 2017 and November 2017, Biden had failed to pay his taxes by their due date and was aware that his taxes were unpaid. The prosecution cannot logically argue that this level of knowledge was insufficient to trigger a willful completion of the offense, while simultaneously arguing that the same knowledge alleged in 2020 was sufficient.[5]

---

[4] While the prosecution may, in many contexts, pursue alternative theories, prosecutors and indictments cannot take inconsistent positions of this nature. (*United States v. Cisneros*, 26 F. Supp. 2d 24, 52 (D.D.C. 1998) (Pursuant to the Fifth and Sixth Amendment notice requirements, "[a] count of an indictment is 'repugnant' and must be dismissed if there is a 'contradiction between material allegations' in the count.") (citations omitted); *see* DE29 at 10 n.10).)

[5] The SC tries to explain away the difference, stating that after Biden's November 27, 2017 email, he "subsequently appears to have formed a subjective belief, regardless of evidence to the contrary, that he filed the 2016 Form 1040 and paid the taxes due," when he told his ex-wife in 2018 that the taxes had been filed. (DE38 at 2.) To make this argument, the SC is either completely ignoring its own allegations of Biden's knowledge that he had not filed his taxes in November or is arguing that Biden somehow uncommitted the offense of failing to pay taxes by convincing himself that he had, in fact, paid and filed his taxes. The SC does not identify any evidence of later manifestation that would justify treating Biden's willfulness in 2020 differently, or anything else that distinguishes Biden's alleged knowledge and failure to pay in 2020 from 2017. Moreover, to prove willfulness,

This puts the prosecution in a bind of its own making.  It cannot simultaneously be true that (1) Biden had not met all elements of failure to pay tax under 26 U.S.C. § 7203 given his clear knowledge that he had not paid, and (2) that knowledge of taxes being owed past their due date is sufficient to complete the same crime in 2020 (or any other time).  Because the SC committed to the position that Biden was first willful in 2020 and was not willful in 2017, the SC concedes the allegations of knowledge and failure to pay related to 2017 are insufficient as a matter of law to allege willfulness and the SC defeats its own claim in trying to avoid an SOL issue with Count 1.[6]

**B. Count 2**

Count 2 alleges Biden "did willfully fail on April, 17, 2018, and February 18, 2020" to pay his 2017 income tax.  (Indict. ¶89.)[7]  To show Biden's willfulness on April 17, 2018 (2017 tax due date), the SC alleges the accountant preparing Biden's tax forms informed Biden's assistant that he "owes a lot of money" for his 2017 taxes on April 16, 2018.  (*Id*. at 72.)  The Indictment then states Biden had a call on April 17, 2018 with his accountant, after which an extension was filed on Biden's behalf for his tax filings.  (*Id*.)  Thus, the Indictment alleges only that Biden's knowledge that he owed the taxes, combined with his failure to pay as of the due date, constitutes the completed offense.

**C. Count 4**

Count 4 alleges that Biden "did willfully fail on April 15, 2019, and on February 2020" to pay his 2018 income tax.  (Indict. ¶105.)  To support Biden's willfulness as of April 15, 2019 (the day his 2018 taxes were due), the SC alleges that "[b]etween April

---

the SC must prove Biden had the subjective intent not to pay his taxes in addition to knowing they were owed.  (DE29 at 5–6.)  To the extent the 2017 and 2020 allegations differ, the SC does not allege any change in intent on Biden's part, which is the only thing that would justify the claim he first became willful in 2020.

[6] As noted in Biden's opening motion, mere knowledge and failure to act *is not* sufficient to allege willfulness, but that is not relevant here.  What is relevant is what the SC is alleging is a crime and not a crime, and the SC cannot allege the same conduct is a crime and is not a crime in the same Indictment and meet its pleading standards.

[7] The SC alleges willfulness happened on both April 17, 2018 (when the taxes were due) and February 18, 2020 (when Biden filed his 2017 Form 1040), but only the first instance of willfulness is relevant to establishing the commission of the offense.  *Musacchio*, 968 F.2d at 790; (DE38 at 4 ("[W]illful failure to pay is not a continuing offense.").)

7

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT 1 AS UNTIMELY OR ALL COUNTS FOR
FAILURE TO STATE A CLAIM AND LACK OF SPECIFICITY CASE NO. 2:23-CR-00599-MCS-1

13 and April 15, 2019, the Defendant, D.C. Accountant, and the Defendant's attorney corresponded regarding the need for the Defendant to file a U.S. Individual Income Tax Return or tax extension for the 2018 tax year and to pay taxes." (*Id.* ¶ 97.)  Again, the Indictment alleges only that Biden's knowledge of the fact he owed the taxes, combined with his failure to pay as of the due date constitutes the completed offense.

### D. Count 9

Count 9 alleges Biden "did willfully fail on July 15, 2020" to pay his 2019 income tax.  (*Id.* ¶ 160.)  The SC's allegations of willfulness for this count rest exclusively on the fact that "[f]rom at least January 2019 through September 2019, the Defendant was provided with periodic updates regarding his cashflow and outstanding liabilities, including his various income tax liabilities."  The willfulness element of this count is based on Biden's knowledge of his tax liability nearly a year before the tax was due. Further, unlike in Count 1, the Indictment chooses not to allege that Biden's failure to pay became willful in October 2020, when he filed his 2019 Form 1040.

### E. Counts 3, 5, 6–8

Counts 3, 5, and 6–8 are not failure to pay claims like Counts 1–2, 4, and 9, but these Counts also require the prosecution to prove willfulness as an element of the offense.  (DE29 at 2.)  And because they too rely on the same allegations of mere knowledge and failure to pay that DOJ concedes are insufficient for Counts 1–2, 4, and 9, they must fall as well.  Exhibit A is a chart that displays the willfulness allegations of Counts 3, 5, and 6–8.  As can be seen from the chart, while they differ a bit in form and substance, these allegations all boil down to the same allegations of knowledge and failure to meet tax obligations that the prosecution now concedes are insufficient to allege willfulness.

### CONCLUSION

The SC argues Count 1 survives the SOL because of tolling agreements, but these tolling agreements are inapplicable.  As such, Count 1 should be dismissed based on a plain reading of the Indictment as alleging Biden committed the offense of Count 1 in

8

2017, outside the applicable SOL.  Alternatively, the SC confirms in its Opposition that it now claims Biden first willfully failed to pay his 2016 taxes when he late filed his 2016 returns in 2020 based on his alleged knowledge and failure to pay at that time.  As a simple matter of logic, that means the SC concedes its allegations of knowledge and failure to pay in 2017 are insufficient as a matter of law to allege willfulness.  Because all counts rest on these same or substantially equivalent allegations of knowledge and all include an element of willfulness, the position the SC takes in its opposition regarding Count 1 occurring in 2020 requires dismissal of the other counts.

Dated: March 18, 2024

Respectfully submitted,

By: /s/ *Angela M. Machala*
Angela M. Machala (SBN: 224496)
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: (213) 615-1924
Fax: (213) 615-1750
AMachala@winston.com

Abbe David Lowell (*pro hac vice*)
Christopher D. Man
Kyllan J. Gilmore
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000
Fax: (202) 282-5100
AbbeLowellPublicOutreach@winston.com
CMan@winston.com
KGilmore@winston.com

*Attorneys for Robert Hunter Biden*