DAVID C. WEISS
Special Counsel
LEO J. WISE
Principal Senior Assistant Special Counsel
DEREK E. HINES
Senior Assistant Special Counsel
950 Pennsylvania Avenue NW, Room B-200
Washington, D.C. 20530
Telephone: (771) 217-6091
E-mail: LJW@USDOJ.GOV, DEH@USDOJ.GOV

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT HUNTER BIDEN,<br><br>Defendant. | No. CR 23-cr-00599-MCS<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF JURISDICTION** |

The United States of America, by and through its counsel of record, hereby submits this response to the defendant's Motion to Dismiss for Lack of Jurisdiction, ECF 133, which he has not withdrawn, and his Amended Motion to Dismiss for Lack of Jurisdiction, ECF 140, which continues to contain numerous misrepresentations. The defendant's motions should be stricken because they contain numerous misstatements of the record in this case. If the motions are not stricken, they should be denied because they are untimely, they do not meet the requirements of a motion for reconsideration, and because United States Attorney Weiss was appointed special counsel in a manner consistent with the

Appointments Clause and has been funded in a manner consistent with the Appropriations Clause.

Dated: July 29, 2024

Respectfully submitted,

DAVID C. WEISS
Special Counsel

/s/
LEO J. WISE
Principal Senior Assistant Special Counsel

DEREK E. HINES
Senior Assistant Special Counsel

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The Defendant's Motions Should Be Stricken Because They Contain Multiple Misstatements of the Record in this Case. ..... 1

B. The Defendant's Motions Do Not Raise Jurisdictional Issues and Are Therefore Untimely. ..... 3

C. The Defendant Fails to Even Address, Let Alone Meet, the Requirements for Reconsideration. ..... 5

D. Special Counsel Weiss Was Lawfully Appointed. ..... 6

1. The Appointments Clause Is Not Implicated Because Special Counsel Weiss Was Nominated by the President and Confirmed by the Senate. ..... 7

2. The Attorney General Has Statutory Authority to Appoint Special Counsel Weiss. ..... 11

E. This Prosecution Does Not Violate the Appropriations Clause. ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) .......... 4
*Edmond v. United States*,
520 U.S. 651 (1997) .......... 7, 13
*Fed. Hous. Fin. Agency v. UBS Americas Inc.*,
712 F.3d 136 (2d Cir. 2013) .......... 10
*Franklin v. Massachusetts*,
505 U.S. 788 (1992) .......... 14
*Freytag v. Commissioner*,
501 U.S. 868 (1991) .......... 4, 14
*Gregory v. Ashcroft*,
501 U.S. 452 (1991) .......... 14
*In re Grand Jury Investigation*,
315 F. Supp. 3d 602 (D.D.C. 2018) .......... 12, 14
*In re Grand Jury Investigation*,
916 F.3d 1047 (D.C. Cir. 2019) .......... 5, 11, 12
*In re Persico*,
522 F.2d 41 (2d Cir. 1975) .......... 12
*In re Sealed Case*,
829 F.2d 50 (D.C. Cir. 1987) .......... 11, 12
*Kucana v. Holder*,
558 U.S. 233 (2010) .......... 14
*Lamos v. Astrue*,
275 F. App’x 617 (9th Cir. 2008) .......... 1
*Lo Duca v. United States*,
93 F.3d 1100 (2d Cir. 1996) .......... 10

*Lucia v. SEC*,
138 S. Ct. 2044 (2018) .......... 6
*NLRB v. Noel Canning*,
573 U.S. 513 (2014) .......... 12
*Pennsylvania Dep't of Corr. v. Yeskey*,
524 U.S. 206 (1998) .......... 14
*Pocket Veto Case*,
279 U.S. 655 (1929) .......... 13
*Shoemaker v. United States*,
147 U.S. 282 (1893) .......... 10
*Smith v. Frank*,
923 F.2d 139 (9th Cir. 1991) .......... 2, 7
*Trump v. United States*,
144 S. Ct. 2312 (2024) .......... 5, 9
*United States v. Arbo*,
691 F.2d 862 (9th Cir. 1982) .......... 4
*United States v. Biden*,
No. CR 23-61 (MN), 2024 WL 1603775 (D. Del. Apr. 12, 2024) .......... 6
*United States v. Concord Mgmt. & Consulting LLC*,
317 F. Supp. 3d 598 (D.D.C. 2018) .......... 11, 12
*United States v. Cotton*,
535 U.S. 625 (2002) .......... 4
*United States v. Donziger*,
No. 11-CV-691 (LAK), 2021 WL 3141893 (S.D.N.Y. July 26, 2021) .......... 4, 5
*United States v. Durham*,
941 F.2d 886 (9th Cir. 1991) .......... 4
*United States v. Fitzhugh*,
78 F.3d 1326 (8th Cir. 1996) .......... 5

*United States v. Hatch*,
919 F.2d 1394 (9th Cir. 1990) .......................................................................4
*United States v. Heath*,
509 F.2d 16 (9th Cir. 1974) ..........................................................................4
*United States v. Lee*,
967 F.2d 594 (9th Cir. 1992) ........................................................................4
*United States v. Libby*,
429 F. Supp. 2d 27 (D.D.C. 2006)..........................................................11, 13, 15
*United States v. Manafort*,
321 F. Supp. 3d 640 (E.D. Va. 2018) ...........................................................11
*United States v. Mendez*,
2008 WL 2561962 (C.D. Cal. June 25, 2008)..................................................6
*United States v. Nixon*,
418 U.S. 683 (1974).....................................................................................8, 11
*United States v. Suescun*,
237 F.3d 1284 (11th Cir. 2001) .......................................................................5
*United States v. Trump*,
No. 23-80101-CR, 2024 WL 3404555 (S.D. Fla. July 15, 2024)..............................5, 9
*Weiss v. United States*,
510 U.S. 163 (1994).......................................................................................10

**Statutes**

28 U.S.C. § 509 ..............................................................................8, 9, 10, 11
28 U.S.C. § 510 ..........................................................................8, 9, 10, 11, 13
28 U.S.C. § 515(a) ...........................................................................8, 9, 10, 11
28 U.S.C. § 533(1) ..........................................................................................8, 14
28 U.S.C. § 541(a) ..............................................................................................7
Act of Aug. 30, 1890, ch. 837, 26 Stat. 371, 409-410 ........................................12

Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986 .......... 13
Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-1182 .......... 13
Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-904 .......... 13
Act of Mar. 4, 1921, Pub. L. No. 66-389, 14 Stat. 1367, 1412 .......... 13
Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317 .......... 13
Pub. L. No. 89-554, § 7(e), 80 Stat. 378, 631 (1966) .......... 14

**Rules**

Federal Rule of Criminal Procedure 12(b)(3)(A) .......... 4, 5

**Other Authorities**

*Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115 (1986) .......... 13
*Private Attorneys*, 4B Op. O.L.C. 434 (1980) .......... 13
The President and the Independent Counsel, 86 Geo. L.J. 2133 (1998) .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The defendant's Motion to Dismiss for Lack of Jurisdiction marks his *fourth* attempt at halting the prosecution of this case based on invented deficiencies in the appointment and funding of Special Counsel Weiss. *See* Def.'s Mot. to Dismiss for Lack of Jurisdiction, ECF 133 ("Def.'s Mot."). And although he has sought to correct some of the factual misrepresentations he made, he has now made a *fifth* attempt, in which defense counsel continues to make knowingly false statements to this Court. Def.'s Amended Mot. to Dismiss for Lack of Jurisdiction ("Def.'s Amended Mot."), ECF 140.[1] The Court previously rejected each of his prior three attempts—first by holding on the merits that United States Attorney Weiss' appointment and funding as special counsel was lawful, and then by striking the defendant's subsequent motions as untimely. The instant motions fare no better. They contain multiple misrepresentations of the record in this case, are untimely, do not meet the requirements for a motion for reconsideration—which is all they are—and, in any event, are wrong on the merits. The Court should therefore strike or deny the defendant's motions.

## II. ARGUMENT

### A. The Defendant's Motions Should Be Stricken Because They Contain Multiple Misstatements of the Record in this Case.

Despite the Court's efforts to give the defendant the opportunity to correct his false representations, *see* ECF 138, the defendant's amended motion still contains numerous unsupported, misleading, and false statements. District courts have inherent authority to control their own dockets, including by striking filings. *See, e.g.*, *Lamos v. Astrue*, 275 F.

[1] Even though he filed an amended motion, the defendant does not appear to have withdrawn his earlier motion to dismiss. And as discussed further below, the only changes to his earlier motion to dismiss are replacing the word "charges" with "indictments" in three places. The government therefore refers to both motions collectively as "Def.'s Mots." throughout its brief, and all of the relief requested herein should apply equally to both the defendant's motion to dismiss and his amended motion to dismiss.

App'x 617, 618 (9th Cir. 2008); *Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991). Both his motion and his amended motion should be stricken.

The first sentence in the memorandum of points and authorities is the first offender. In it, defense counsel writes, "[t]his prosecution (and another in Delaware) did not occur until after unprecedented political pressure was brought to forego an agreed-upon resolution of a four-year investigation." Def.'s Mots. at 1. That is not true and defense counsel knows it is not true. Prior defense counsel signed agreements in July 2021 tolling the statute of limitations for all of the offenses that were ultimately presented to the grand jury in this district in December 2023. The government attached those tolling agreements to its opposition to the defendant's motion to dismiss for vindictive and selective prosecution, so current defense counsel cannot claim they were unaware of them. *See* ECF 37 at 4-6; ECF 37-1 (Ex. 1); ECF 37-2 (Ex. 2). The statement that this "prosecution" only occurred after June 2023 is thus knowingly false. Further, defense counsel clearly wants the reader to draw the misleading inference that this "unprecedented political pressure" somehow led to the charges in this case. Defense counsel has unsurprisingly never been able to offer any proof establishing a causal connection between statements by political actors and the charges that were brought in this district—there simply is none. *See* ECF 72 at 73 ("THE COURT: Do you have any evidence other than the timeline? MR. LOWELL: . . . So, yes, there's a timeline. There's no other evidence[.]"). And yet the defense keeps repeating the accusation, directly or impliedly, as if saying it over and over again makes it so. It doesn't.

The very second sentence in his memorandum of points and authorities contains the next misrepresentation. Defense counsel claims—without any citation—that this case was brought "after the U.S. Attorney in this District declined to indict Hunter Biden." Def.'s Mots. at 1. Later, he repeats it, offering for support not evidence, but a *Politico* article. *Id*. at 5. But the article does not even support his misleading assertion. Instead, what the article actually says is that "Estrada acknowledged in the interview that, in the fall of 2022, he declined to 'co-counsel' with Weiss on filing potential tax charges in

California. Estrada cited the 'practical impact of limited resources' for making that decision." ECF 133-2 (Ex. A. to Geragos Decl.). The defendant makes this false claim in support of his argument that the Attorney General's appointment of Special Counsel Weiss "undermines the President's nomination and Senate's confirmation of Martin Estrada as U.S. Attorney in this District." Def.'s Mots. at 5. It clearly does not "undermine" the role of United States Attorney to have Special Counsel Weiss pursue a case that United States Attorney Estrada declined to join because of his office's "limited resources."

In the third set of false statements—which the Court has already recognized as such—the defendant claims that, "[a]s U.S. Attorney," Special Counsel Weiss had "years to bring whatever charges he believed were merited, but he brought no charges until after he received the Special Counsel title that he sought." Def.'s Mot. at 5; *see also id*. at 6, 7. That statement is obviously not true, as defense counsel knows. *See United States v. Robert Hunter Biden*, Criminal Action Nos. 23-mj-274 (MN) and 23-61 (D. Del); Att'y Gen. Order No. 5730-2023, Appointment of David C. Weiss as Special Counsel (Aug. 11, 2023), perma.cc/LY96-QUZJ ("Appointment Order") (referencing the proceedings that were initiated before United States Attorney Weiss was appointed special counsel). Only in response to the Court's Order to Show Cause has defense counsel even attempted to correct this statement, but all he has done is change the word "charges" to "indictments." *See* ECF 140-1 (redline reflecting changes in amended motion). However, changing the one word does not resolve the issue, as these statements continue to be misleading by suggesting that United States Attorney Weiss failed to take action against the defendant until after he became special counsel. That is patently incorrect.

**B. The Defendant's Motions Do Not Raise Jurisdictional Issues and Are Therefore Untimely.**

Undeterred by the Court's prior two rulings striking as untimely his challenges to United States Attorney Weiss's appointment and funding as special counsel, the defendant again has belatedly filed his two motions to dismiss, this time nearly six months

after the Court's February 20, 2024 deadline. *See* ECF 18 at 13. The defendant himself concedes that his latest motions to dismiss raise only "slightly different" arguments than his prior filings. Def.'s Mots. at 1. The Court's earlier rulings on untimeliness continue to apply equally here, *see* ECF 122 at 3-7; ECF 124, and the Court should again strike as untimely the defendant's fourth and fifth attempts at evading a court-ordered deadline.

The defendant tries to avoid both the Court's prior rulings and the requirements of Federal Rule of Criminal Procedure 12(b)(3)(A) by styling his motions as "motion[s] to dismiss for lack of jurisdiction." Def.'s Mots. at 1. They are not. "[T]he term 'jurisdiction'" means the "courts' statutory or constitutional *power* to adjudicate the case." *United States v. Cotton*, 535 U.S. 625, 630 (2002).[2] Thus, an "Appointments Clause challenge has absolutely nothing to do with subject-matter jurisdiction." *United States v. Donziger*, No. 11-CV-691 (LAK), 2021 WL 3141893, at *53 (S.D.N.Y. July 26, 2021), *aff'd*, 38 F.4th 290 (2d Cir. 2022). This conclusion is supported by Supreme Court and Ninth Circuit caselaw, which consistently describes Appointments Clause challenges as non-jurisdictional. *See, e.g.*, *Freytag v. Commissioner*, 501 U.S. 868, 878-79 (1991) (noting Appointments Clause challenges fall "in the category of nonjurisdictional structural constitutional objections"); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d

---

[2] The cases cited by the defendant all predate *Cotton* and its clarification of the meaning of "jurisdiction" under Rule 12. In *Cotton*, the Supreme Court explained that prior understandings of "jurisdiction" in criminal cases reflected a bygone era with an "expansive notion of 'jurisdiction'" that was "more a fiction than anything else." 535 U.S. at 629 (citation omitted). Accordingly, the Court held that "defects in an indictment do not deprive a court of its power to adjudicate a case," and thus do not constitute a jurisdictional issue under Rule 12. *Id*. The "expansive" views of jurisdiction in the defendant's cited cases do not represent updated law. Moreover, none of those cases involved a similar Appointments Clause challenge to the one here. *See United States v. Durham*, 941 F.2d 886, 891-92 (9th Cir. 1991) (alleging that prosecutor was not authorized to bring case); *United States v. Hatch*, 919 F.2d 1394, 1397-98 (9th Cir. 1990) (alleging failure to state an offense); *United States v. Lee*, 967 F.2d 594 (9th Cir. 1992) (unpublished) (same); *United States v. Heath*, 509 F.2d 16, 17-19 (9th Cir. 1974) (alleging that the government did not prove an element of the offense); *United States v. Arbo*, 691 F.2d 862, 863, 865 (9th Cir. 1982) (alleging offense did not occur on federal land).

1179, 1189 (9th Cir. 2016) (holding that Appointments Clause challenge did not raise a jurisdictional issue).

Rather, such a motion is properly governed by Federal Rule of Criminal Procedure 12(b)(3)(A), which states that "a motion alleging a defect in instituting the prosecution" "must be made before trial." *See Donziger*, 2021 WL 3141893, at *53 (holding Appointments Clause claim constituted a "defect in instituting the prosecution" under Rule 12(b)(3)(A), so was forfeited by failing to timely raise it). Because the defendant's claims are non-jurisdictional, he cannot belatedly assert them after the deadline for pretrial motions has passed. *See United States v. Suescun*, 237 F.3d 1284, 1287-88 (11th Cir. 2001) (holding an Appointments Clause challenge to a temporary United States Attorney on the basis that he was not Senate-confirmed was not jurisdictional); *United States v. Fitzhugh*, 78 F.3d 1326, 1330 (8th Cir. 1996) (holding challenge to the appointment of independent counsel raised a "non-jurisdictional defect").

The defendant also offers no good cause that would excuse his belated filing under Rule 12(c)(3). The defendant had the opportunity to timely raise these arguments in his first motion to dismiss challenging Special Counsel Weiss's appointment and funding, but chose not to. *See* ECF 26. The defendant misleadingly suggests that these arguments were "only recently addressed" by Justice Thomas's solo concurrence in *Trump v. United States*, 144 S. Ct. 2312, 2347-52 (2024) and a Florida district court in *United States v. Trump*, No. 23-80101-CR, 2024 WL 3404555 (S.D. Fla. July 15, 2024). *See* Def.'s Notice of Mots. To the contrary, others have been making these same arguments for years. *See, e.g.*, *In re Grand Jury Investigation*, 916 F.3d 1047 (D.C. Cir. 2019). Because the defendant "was aware in February that he could have" raised these arguments but "elected not to," the motions are untimely. June 10, 2024 Order at 4, ECF 122.

**C. The Defendant Fails to Even Address, Let Alone Meet, the Requirements for Reconsideration.**

The instant motions are plainly motions for reconsideration, regardless of how the defendant styles them. The defendant admits this, expressly requesting that the Court

"reconsider" its previous ruling upholding Special Counsel Weiss's appointment and funding. *See* Def.'s Notice of Mots. But the defendant has not even attempted to meet any of the requisite factors for a motion for reconsideration specified in either the Federal or Local Rules. *See United States v. Mendez*, 2008 WL 2561962, at *2 (C.D. Cal. June 25, 2008) (explaining that "motions for reconsideration in criminal cases are governed by the rules that govern equivalent motions in civil proceedings" and applying Federal Rule of Civil Procedure 60(b)); *see* Local Rule 7-18 (setting forth the standard for a motion for reconsideration in the Central District of California). Nor did the Court's prior ruling make "clear errors of law" that would warrant reconsideration. *See* Def.'s Notice of Mots. In his motion, the defendant relies solely on an out-of-circuit district court decision and a single-Justice concurrence. Neither of these opinions has any precedential effect on this Court (or otherwise). Accordingly, the Court should deny the defendant's mislabeled motion for reconsideration, particularly when the defendant failed to present arguments that were readily available to him when he filed his first motion to dismiss in February.

**D. Special Counsel Weiss Was Lawfully Appointed.**

This Court has already rejected the defendant's challenge to Special Counsel Weiss's appointment and funding. *See* Court's April 1, 2024 Order on Motions to Dismiss at 20-32 ("Order Denying Motion to Dismiss"). Another district court in the District of Delaware has done the same. *See United States v. Biden*, No. CR 23-61 (MN), 2024 WL 1603775 (D. Del. Apr. 12, 2024). The defendant provides no reason why this Court should deviate from its prior ruling, and indeed, there is no basis for doing so.

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States.'" *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018). The Appointments Clause provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall

> be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Department.

Art. II, § 2, cl. 2. The Appointments Clause differentiates between two distinct classes of officers: principal officers and inferior officers. *See Edmond v. United States*, 520 U.S. 651, 659-60 (1997). Principal officers must be nominated by the President and confirmed by the Senate. *Id*. at 559. As to inferior officers, Presidential nomination and Senate confirmation is the "default manner of appointment," *id*., but Congress may also "by law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." Art. II, § 2, cl. 2.

The defendant does not dispute that Special Counsel Weiss is an inferior officer. Def.'s Mots. at 2 n.2. He does not dispute that Special Counsel Weiss was appointed to his position as United States Attorney for the District of Delaware in a manner consistent with the Appointments Clause. And he does not dispute that as United States Attorney, Special Counsel Weiss lawfully instituted the investigation that led to the charges in this case. Rather, the defendant argues only that Special Counsel Weiss cannot pursue this case in California because the "office of a Special Counsel" was not "established by law." *Id*. at 2. This argument fails.

1. <u>The Appointments Clause Is Not Implicated Because Special Counsel Weiss Was Nominated by the President and Confirmed by the Senate.</u>

Because Special Counsel Weiss has already been appointed in a manner consistent with the Appointments Clause, this case does not raise any Appointments Clause issue. In his role as United States Attorney for the District of Delaware, Special Counsel Weiss was nominated by the President and confirmed by the Senate. *See* 28 U.S.C. § 541(a). Since 2019, he has been lawfully investigating the defendant's criminal conduct, including by bringing charges in two cases against the defendant in the District of Delaware. *See United States v. Robert Hunter Biden*, Criminal Action Nos. 23-mj-274 (MN) and 23-61 (MN)

(D. Del.). Pursuant to his authority under 28 U.S.C. §§ 509, 510, 515, 533,[3] Attorney General Garland has merely delegated to Special Counsel Weiss the ability to continue to investigate and prosecute "allegations of certain criminal conduct by, among others, Robert Hunter Biden" and to do so in "any federal judicial district arising from the investigation of these matters." Appointment Order.

The statutory provisions cited in the Appointment Order plainly permit the Attorney General to delegate this authority. As this Court already explained, "Title 28 clearly vests the Attorney General with the functions of the DOJ . . . and permits the Attorney General to delegate those functions to any other officer of the DOJ." *See* Order Denying Motion to Dismiss at 23 (citing 28 U.S.C. §§ 509, 510, 515, 533; *United States v. Nixon*, 418 U.S. 683, 694 (1974)). Section 509 vests in the Attorney General "[a]ll functions" of "other officers of the Department of Justice" and "of agencies and employees of the Department of Justice." 28 U.S.C. § 509. Section 510, entitled "Delegation of authority," reads as follows:

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General.

*Id*. § 510; *see also* § 533(1). And § 515(a) states that any "officer of the Department of Justice . . . may, when specifically directed by the Attorney General, conduct any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought." 28 U.S.C. § 515(a).

[3] As discussed more fully below, *see supra* Section II.D.2., § 533 permits the Attorney General to "appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. 533(1). While the Court need not rely on § 533 to conclude that the Attorney General lawfully delegated his authority to a Senate-confirmed United States Attorney like Special Counsel Weiss, this provision lends further support to the argument that he had a basis on which to do so.

Accordingly, drawing on his authority over "all functions" of the Department of Justice, *id*. § 509, Attorney General Garland delegated to Special Counsel Weiss—an existing "officer" of the Department of Justice—the authority to "perform[]" the function of continuing to investigate and prosecute the defendant, *id*. § 510. The Attorney General also "specifically directed" Special Counsel Weiss to pursue the investigation in districts other than the one where he "is a resident," including the Central District of California. *Id*. § 515(a). As special counsel, Special Counsel Weiss is therefore continuing an investigation that he already had the authority to conduct and he is prosecuting the resulting case in the Central District of California pursuant to § 515(a).[4]

The defendant's argument to the contrary relies exclusively on the recent Florida district court opinion in *United States v. Trump*, No. 23-80101-CR, 2024 WL 3404555 (S.D. Fla. July 15, 2024) and Justice Thomas's solo concurrence in *Trump v. United States*, 144 S. Ct. 2312, 2347-52 (2024). The government respectfully disagrees with the reasoning in those opinions. In any event, those cases involved different facts than those here. Special Counsel Weiss was a duly appointed United States Attorney when he was named special counsel, not a private citizen. He was already investigating the defendant and, contrary to the defendant's blatant misrepresentations, had already filed charges against him in two actions. *See United States v. Robert Hunter Biden*, Criminal Action Nos. 23-mj-274 (MN) and 23-61 (MN) (D. Del.). For that reason, § 515(a)'s language authorizing any "officer . . . when specifically directed by the Attorney General" to "conduct any kind of legal proceeding" applies to Special Counsel Weiss as an existing United States Attorney—an issue that neither Justice Thomas's concurrence nor the Florida district court discussed. *See Trump*, 144 S. Ct. at 2347-48; *Trump*, 2024 WL 3404555, at *12.

The defendant also argues that Special Counsel Weiss's lawful appointment as United States Attorney does not mean that he can occupy the role of special counsel. *See*

[4] In fact, United States Attorneys' Offices routinely litigate in other districts when a district is recused pursuant to the authority in § 515(a).

Def.'s Mots. at 6. But it is well-established that Congress may confer on validly appointed officers "additional duties, germane to the offices already held by them . . . without thereby rendering it necessary that the incumbent should be again nominated and appointed." *Shoemaker v. United States*, 147 U.S. 282, 301 (1893); *accord Weiss v. United States*, 510 U.S. 163, 170-75 (1994) (commissioned officers who were already Senate-confirmed did not need a second appointment pursuant to the Appointments Clause when they were named to the position of military judges); *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 144 (2d Cir. 2013) (an officer who had already been Senate-confirmed to serve as Director of the Office of Federal Housing Enterprise Oversight did not need re-appointment to serve as the Director of the Federal Housing Finance Agency). Congress authorized the Attorney General to delegate his functions to another "officer[]" within the Department of Justice, including the ability to litigate in other jurisdictions. *See* 28 U.S.C. §§ 509, 510, 515, 533. As special counsel, Special Counsel Weiss has merely been delegated the additional authority to continue his ongoing investigation in the Central District of California. This additional authority is plainly "germane" to his existing duties as the prosecutor already investigating the defendant. *See Lo Duca v. United States*, 93 F.3d 1100, 1110-11 (2d Cir. 1996) (holding that *Shoemaker*'s "germaneness" standard is "fully met" because the "performed by an extradition officer are virtually identical to those performed every day by judges and magistrate judges"). Accordingly, Special Counsel Weiss did not need any re-appointment when he assumed the role of special counsel.

The defendant implausibly claims that § 515(a) does not apply because Special Counsel Weiss was not "specifically directed by the Attorney General" to initiate this prosecution and because the underlying investigation was not a "legal proceeding." Def.'s Mots. at 8. The Appointment Order could hardly give a more specific direction—it states that the "Special Counsel is authorized to conduct the ongoing investigation" into "allegations of certain criminal conduct by, among others, Robert Hunter Biden." *See* Appointment Order. And § 515(a) broadly permits attorneys to conduct "any kind of legal proceeding . . . which United States attorneys are authorized by law to conduct." 28 U.S.C.

§ 515(a). That clearly encompasses the investigation into the defendant's tax offenses—an investigation that Special Counsel Weiss began as United States Attorney and that he undisputably was "authorized by law to conduct" in that role.

The defendant also repeatedly criticizes Special Counsel Weiss for wielding the power of a United States Attorney without having gone through the appointments process for that position. *See* Def.'s Mots. at 6 ("Given that Congress requires a U.S. Attorney to be nominated by the President and confirmed by the Senate, it makes no sense to assume that Congress would allow the Attorney General to unilaterally appoint someone as Special Counsel with equal or greater power than a U.S. Attorney."). But this argument makes little sense in this context, where Special Counsel Weiss was *already* Senate-confirmed and *already* has the power of a United States Attorney. The only additional power conferred upon him is the ability to extend his existing investigation and prosecution into other districts, something that is explicitly authorized by statute.

2. <u>The Attorney General Has Statutory Authority to Appoint Special Counsel Weiss.</u>

Even if the Court were to find that the Appointments Clause is implicated, the statutory provisions referenced in the appointment order—28 U.S.C. §§ 509, 510, 515, and 533—establish "by law" the authority in the Attorney General to appoint Special Counsel Weiss. *See* Art. II, § 2, cl. 2. The overwhelming majority of courts—including the Supreme Court—have held as much. *See, e.g.*, *Nixon*, 418 U.S. at 694; *In re Sealed Case*, 829 F.2d 50, 55-59 (D.C. Cir. 1987); *In re Grand Jury Investigation*, 916 F.3d at 1051-54; *United States v. Concord Mgmt. & Consulting LLC*, 317 F. Supp. 3d 598, 607-26 (D.D.C. 2018); *United States v. Manafort*, 321 F. Supp. 3d 640, 655-59 (E.D. Va. 2018); *United States v. Libby*, 429 F. Supp. 2d 27, 34-45 (D.D.C. 2006).

In *Nixon*, the Supreme Court recognized that, taken together, these statutory provisions give the Attorney General the power to "appoint subordinate officers to assist him in the discharge of his duties," including an independent counsel. 418 U.S. at 694 (citing 28 U.S.C. §§ 509, 510, 515, 533). The defendant mentions *Nixon* only in a

parenthetical suggesting that the issue was not raised in that case. *See* Def.'s Mots. at 10. But *Nixon*'s expressly addressed §§ 509, 510, 515, 533 and held that they give the Attorney General the power to appoint an independent counsel. Nor was that statement dicta. In *Nixon*, the Attorney General's statutory authority to promulgate the regulations appointing the independent counsel "was a necessary antecedent to determining whether the regulations were valid, and, therefore, was necessary to the decision that a justiciable controversy existed. The Supreme Court's quoted statement regarding the Attorney General's power to appoint subordinate officers is, therefore, not dictum." *In re Grand Jury Investigation*, 916 F.3d at 1053; *see also, e.g.*, *Concord Mgmt. & Consulting*, 317 F. Supp. 3d at 623; *In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 652 (D.D.C. 2018). Therefore, "these provisions vest in the Attorney General the investigative and prosecutorial functions and powers"—including the ability to prosecute the defendant in the Central District of California—and "authorize him to delegate such functions and powers to others within the Department of Justice," such as Special Counsel Weiss. *In re Sealed Case*, 829 F.2d at 55 n.29 (citation omitted).

Historical practice also supports this conclusion. *See NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (courts "put significant weight upon historical practice" when interpreting constitutional provisions that concern "the allocation of power" between Congress and the Executive Branch). Drawing on the authority to retain counsel originally conferred in 1870, past Attorneys General have "made extensive use of special attorneys." *In re Persico*, 522 F.2d 41, 54 (2d Cir. 1975). These instances—involving appointments by Attorneys General under Presidents Garfield, Theodore Roosevelt, Truman, Kennedy, Nixon, Carter, George H.W. Bush, and Clinton—span nearly 140 years and include some of the most notorious scandals in the Nation's history, including Watergate. *See, e.g.*, Brett M. Kavanaugh, The President and the Independent Counsel, 86 Geo. L.J. 2133, 2142-44 (1998). Congress has also long demonstrated its understanding that the Attorney General has authority to appoint special counsels by repeatedly appropriating funds for the Attorney General to compensate them. *See, e.g.*, Act of Aug. 30, 1890, ch. 837, 26 Stat.

371, 409-410; Act of Mar. 3, 1891, ch. 542, 26 Stat. 948, 986; Act of Mar. 3, 1901, ch. 853, 31 Stat. 1133, 1181-1182; Act of Feb. 25, 1903, Pub. L. No. 57-115, 32 Stat. 854, 903-904; Act of Mar. 4, 1921, Pub. L. No. 66-389, 41 Stat. 1367, 1412; Act of June 3, 1948, Pub. L. 80-597, 62 Stat. 305, 317. And published opinions of the Attorney General, for more than a century, have recognized that authority. *See, e.g.*, *Assignment of Army Lawyers to the Department of Justice*, 10 Op. O.L.C. 115, 117 n.3 (1986); *Application of Conflict of Interest Rules to the Conduct of Government Litigation by Private Attorneys*, 4B Op. O.L.C. 434, 442-43 & n.5 (1980) (Appendix); *Naval Court-Martial*, 18 Op. Att'y Gen. 135, 136 (1885).

The defendant's arguments to the contrary are unavailing. The defendant claims that §§ 509, 510, and 515 cannot support the appointment of a special counsel because they do not reference a "Special Counsel." *See* Def.'s Mots. at 5, 7. But § 509 vests nearly "all functions . . . [of] The Department of Justice . . . in the Attorney General," and "[t]here can be no question that the plain language of 28 U.S.C. § 510 supplies the Attorney General with the authority to delegate to 'any other officer, employee, or agency of the Department of Justice . . . *any function* of the Attorney General,'" *Libby*, 429 F. Supp. 2d at 32, including a special counsel. The defendant's argument would require an explicit statutory directive before the Attorney General can fill a given position. But the Supreme Court has held that a statute does not need to "specifically mention" a position to confer the "power to appoint" someone to that position. *Edmond*, 520 U.S. at 656. And the Attorney General has for decades relied on these same statutory provisions to appoint individuals to numerous other positions within the Department of Justice, including the Principal Deputy Solicitor General and Deputy Assistant Attorneys General. *See The Pocket Veto Case*, 279 U.S. 655, 689 (1929) ("Long settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions.").

The defendant similarly advocates for a "clear statement rule," Def.'s Mots. at 4, but any clear statement rule would be inappropriate here, let alone one that demands such granular specificity. Courts generally require clear statement rules when Congress enacts

a statute that purports to encroach on a well-established sphere of authority. For example, the Supreme Court has imposed a clear statement rule when a statute gives "to one branch authority that otherwise would belong to another," *In re Grand Jury Investigation*, 315 F. Supp. 3d at 658 (citing *Kucana v. Holder*, 558 U.S. 233, 237 (2010); *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992)), or when a federal law alters "the usual constitutional balance of federal and state powers," *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). The position of special counsel—an inferior officer within the executive branch—raises no "danger of one branch's aggrandizing its power at the expense of another branch." *Freytag*, 501 U.S. at 878. And in any case, for the reasons described, the statutory provisions would "plainly satisfy" any clear statement test. *In re Grand Jury Investigation*, 315 F. Supp. 3d at 660.

Finally, the defendant argues that § 533 governs only "the hiring of FBI law enforcement personnel," Def.'s Mots. at 8, but that is inconsistent with a plain reading of the text. Special Counsel Weiss is an "official" who was "appointed" to "prosecute" any crime that arises from the investigation into the defendant. 28 U.S.C. § 533(1). Moreover, the "title of a statute cannot limit the plain meaning of the text" and matters "only when it sheds light on some ambiguous word or phrase." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (citations omitted). And the placement of § 533(1) in the Section of Title 28 entitled "Federal Bureau of Investigation" occurred in 1966 as part of a reorganization of Title 28. In that reorganization, Congress expressly stated that "[a]n inference of legislative construction is not to be drawn by reason of the location in the United States Code of a provision enacted by this Act or by reason or catchline thereof." Pub. L. No. 89-554, § 7(e), 80 Stat. 378, 631 (1966), https://www.govinfo.gov/content/pkg/STATUTE-80/pdf/STATUTE-80-Pg378.pdf Accordingly, § 533(1)'s title and location are of minimal probative value.

**E. This Prosecution Does Not Violate the Appropriations Clause.**

As noted, this Court has already rejected the defendant's previous attempts at challenging the appropriations underlying Special Counsel Weiss's prosecution of this

case. *See* Order Denying Motion to Dismiss at 26-32. The Court explained that "the DOJ's use of the appropriation to fund independent counsels appointed from within the DOJ is consistent with Congress's intent." *Id*. at 30; *see also* U.S. Gov't Accountability Off., B-302582, Special Counsel and Permanent Indefinite Appropriation 7 (2004), https://www.gao.gov/assets/b-302582.pdf [https://perma.cc/ 6VAD-UBJ8] ("[T]he same statutory authorities that authorize the Attorney General . . . to delegate authority to a U.S. Attorney to investigate and prosecute high ranking government officials are 'other law' for the purposes of authorizing the Department to finance the investigation and prosecution from the permanent indefinite appropriation."). The defendant's conclusory argument to the contrary offers no reason for the Court to vary from its prior ruling.

## III. CONCLUSION

Accordingly, for the foregoing reasons, this Court should strike or deny the defendant's motions.