Mark J. Geragos (SBN 108325)
Tina Glandian (SBN 251614)
Setara Qassim (SBN 283552)
GERAGOS & GERAGOS APC
644 South Figueroa Street
Los Angeles, CA 90017-3411
Telephone:   (213) 625-3900
Facsimile:    (213) 232-3255

Angela M. Machala (SBN: 224496)
AMachala@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Fl.
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Abbe David Lowell (*admitted pro hac vice*)
AbbeLowellPublicOutreach@winston.com
Christopher D. Man
CMan@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036-3508
Telephone:   (202) 282-5000
Facsimile:    (202) 282-5100

*Attorneys for Robert Hunter Biden*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>ROBERT HUNTER BIDEN,<br><br>　　　　　Defendant. | **Case No. 2:23-cr-00599-MCS**<br><br>*Hon. Mark C. Scarsi*<br><br>**MR. BIDEN'S REPLY IN FURTHER SUPPORT OF FOURTH MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO ALLEGED IMPROPER POLITICAL INFLUENCE AND/OR CORRUPTION**<br><br>Hearing Date:　August 21, 2024<br>Hearing Time:　10:00 a.m.<br>Courtroom:　　7C |

Defendant Robert Hunter Biden, by and through his counsel of record, hereby submits this reply in further support of his Fourth Motion *in Limine* to exclude reference to alleged improper political influence and/or corruption. This reply pertains to the first three categories in the Motion, namely reference to allegations that Mr. Biden (1) acted on behalf of a foreign principal to influence U.S. policy and public opinion, (2) violated FARA, and (3) improperly coordinated with the Obama Administration, as those are the three categories in dispute.

The fourth, fifth, and sixth categories are moot, as the Special Counsel confirmed in its response that "[t]he government . . . does not intend to introduce evidence in this tax case of direct compensation from a foreign state or evidence that the defendant received compensation for actions taken by his father that impacted national or international politics," D.E. 181 at 5, nor does it "intend to introduce evidence/argue that the defendant was trying to funnel money to Joe Biden," *id*. at 6.

As for the Special Counsel's assertion that Mr. Biden's counsel only accurately represented the government's position on one of the six topics raised in the Motion, the defense represented that the Special Counsel opposed the Motion (without specifying the categories within the Motion), which is accurate.

Dated: August 11, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　By:　/s/ *Mark J. Geragos*
　　　　　　　　　　　　　　　　　　　Mark J. Geragos
　　　　　　　　　　　　　　　　　　　Tina Glandian
　　　　　　　　　　　　　　　　　　　Setara Qassim

　　　　　　　　　　　　　　　　　　　Angela M. Machala
　　　　　　　　　　　　　　　　　　　Abbe David Lowell
　　　　　　　　　　　　　　　　　　　Christopher D. Man

　　　　　　　　　　　　　　　　　　　*Attorneys for Robert Hunter Biden*

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Special Counsel's response to Mr. Biden's Fourth Motion *in Limine* seeking to exclude reference to foreign business sources, so-called improper political influence and/or corruption makes clear that the Special Counsel is seeking to insinuate extraneous, politically-charged matters into the trial which have no relevance to the tax offenses Mr. Biden is accused of. While going through the motions of filing Business Associate 1's grand jury transcript under seal in support of its response to the Motion, the government included an inflammatory and incomplete, and therefore misleading, characterization of that testimony[1] in a public filing, surely knowing it would make news. While the Special Counsel later mentions in its response that Business Associate 1 has *not* said that Mr. Biden (or he) engaged in improper political influence (and therefore claims there is no risk of confusion of the issues or misleading the jury), D.E. 181 at 4, the whole of the Special Counsel's filing and its characterization of Business Associate 1's grand jury testimony gives the contrary impression, as was widely reported by the mainstream media. *See, e.g.,* Alanna Durkin Richer, *Hunter Biden was hired by Romanian businessman trying to 'influence' US agencies, prosecutors say*, ASSOCIATED PRESS (Aug. 7, 2024), https://apnews.com/article/hunter-biden-taxes-special-counsel-romanian-businessman-9c1b15a548df02935e2bfa856e485ada; Rebecca Beitsch and Emily Brooks, *DOJ says Hunter Biden work with Romanian businessmen designed to skirt US law*, THE HILL (Aug. 8, 2024), https://thehill.com/regulation/court-battles/4818240-hunter-biden-doj-romanian-businessman-fara/. If journalists closely following the case are confused as to the implication of Business Associate 1's testimony, jurors are sure to be as well. The Special Counsel's showcasing of these matters on the eve of Mr. Biden's trial—*when*

---

[1] It is telling that the Special Counsel does not provide any page citations for its "summary" of what "[t]he government anticipates Business Associate 1 will testify" to. D.E. 181 at 2.

*there is no mention of political influence in the 56-page Indictment*[2]—is not presented for a proper purpose. The Special Counsel's unnecessary change of tactic merely echoes the baseless and false allegations of foreign wrongdoing which have been touted by House Republicans to use Mr. Biden's proper business activities in Romania and elsewhere to attack him and his father. *See, e.g.*, *The Bidens' Influence Peddling Timeline*, Committee on Oversight and Accountability (last accessed on Aug. 10, 2024), https://oversight.house.gov/the-bidens-influence-peddling-timeline/.

Putting aside why such irrelevant and politically-charged material would be included in the filings, it has no place in a trial where the only issue in the years in which Mr. Biden's business is at issue has nothing to do with any source of income and all as to whether his filings and payments willfully violated the law. The Court should not allow a side show in which issues far beyond the charges have to be explained and litigated in a tax case. Disallowing this unnecessary detour will ensure that Mr. Biden, like any other person accused, gets the fair trial that he deserves.

## ARGUMENT

### I. EVIDENCE OF MR. BIDEN'S "FOREIGN BUSINESS DEALINGS" IS NOT RELEVANT TO THE CHARGED TAX CRIMES.

The Special Counsel does not need to explain how Mr. Biden earned his income to prove its tax charges; it just needs to demonstrate that he earned income that he did not pay taxes on. Nevertheless, the Special Counsel claims Mr. Biden's "foreign business dealings" are relevant to the charges in this case because for one of the nine counts (Count 2), "the government must prove that the defendant owed taxes on his income for the calendar year ending December 31, 2017." D.E. 181 at 3-4. The Special Counsel further claims that "[t]he purpose and structure of the payments and the nature of the work described above are relevant because they establish that the defendant

---

[2] *See* D.E. 1 ¶ 7 ("In the fall of 2015, the Defendant entered into an oral agreement with Business Associate 1 purportedly to help a Romanian businessperson, G.P., contest bribery charges he was facing in his home country.").

received income when payments were made by Business Associate 1 and the year in which the defendant earned the income." *Id.* at 4. This can be done by way of IRS filings, bank statements, and the government agents' testimony. Alternatively, Mr. Biden can and is willing to stipulate to the amount and timing of the income he received. The source of such income[3] or the purpose for which it was paid are irrelevant.[4]

The Special Counsel's claim that Business Associate 1's testimony is relevant to proving Mr. Biden's state of mind and intent as to Count 2 is implausible because that testimony concerns the wrong timeframe. The relevant time-period for Mr. Biden's state of mind for Count 2 is shortly before April 17, 2018, when the taxes for the prior year were first due, or shortly before February 18, 2020, when he allegedly chose not to pay any of his outstanding 2017 tax liability. *See* D.E. 149 at 5; D.E. 1, ¶ 72. But a review of the transcript demonstrates that the events Business Associate 1 would testify to do not go beyond May of 2017, making his testimony irrelevant to Mr. Biden's intent during the relevant time period. D.E. 190 [Tr. 36:4-5]; *see also* D.E. 1, ¶ 7.

The Special Counsel makes the same claims of relevance for the second and third topics (to exclude any allegations[5] that Mr. Biden violated FARA or improperly coordinated with the Obama Administration"), but those claims fail for the same reason. *See* D.E. 181 at 5. Again, the amount and timing of Mr. Biden's income can be proven—even stipulated to—without a prejudicial exploration of whether there was

---

[3] As for the source of the income, it is alleged that Business Associate 1's entity received the compensation from a foreign principal, a third of which was distributed to Mr. Biden. *See* D.E. 181 at 3 (citing D.E. 1 ¶ 7). It is therefore wholly irrelevant that a foreign principal was even involved, because *no* funds flowed directly to Mr. Biden from any such foreign principal.
[4] Whether Mr. Biden "received compensation from a foreign principal who was attempting to influence U.S. policy and public opinion," D.E. 181 at 3, even if true (which did not happen that way), has no tendency to make the fact of whether Mr. Biden timely filed or paid his returns more or less probable than it would be without the evidence. *See* Fed. R. of Evid. 401.
[5] The Special Counsel's argument about reference to "allegations" is pure semantics. By seeking to exclude the aforementioned allegations, Mr. Biden is seeking to exclude his *alleged* violation of FARA and his *alleged* improper coordination with the Obama Administration"; he is not seeking to exclude any allegations relevant to the charges.

anything improper in how that income was earned.  "[E]vidence that Business Associate 1 structured a business relationship in an effort to avoid having to register as a foreign agent, and that the defendant and his business partners did reach out to government officials, specifically the United States Department of State," *id.*, even if true (this does not accurately describe the events), has no tendency to make the fact of whether Mr. Biden timely filed or paid his returns more or less probable than it would be without such evidence and it is unnecessarily prejudicial.  *See* Fed. R. Evid. 401, 403.

Equally irrelevant and prejudicial is the evidence the Special Counsel intends to offer showing Mr. Biden's "business dealings with CEFC China Energy Co. Ltd ("CEFC"), a Chinese energy conglomerate, and his compensation for his position on the board of a Ukrainian energy industrial conglomerate." D.E. 181 at 3.  The Special Counsel does not make any claim as to how and why such evidence is relevant.  Rather, the Special Counsel merely argues "[t]his evidence will *not* include evidence that the defendant performed lobbying activity in exchange for this compensation.  Rather, the evidence will show the defendant performed almost no work in exchange for the millions of dollars he received from these entities." *Id.*  But whether Mr. Biden may have engaged in lobbying activities or how much work he did for what compensation he received are irrelevant to the tax offenses he is charged with, and the admission of such evidence risks suggesting to the jury that Mr. Biden did not perform enough work to substantiate the income he received—something he is not charged with.

## II. ANY PROBATIVE VALUE OF THESE UNSUBSTANTIATED CLAIMS IS SUBSTANTIALLY OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE, CONFUSING THE ISSUES, AND MISLEADING JURORS.

The extensive media coverage of the allegations contained in the Special Counsel's response demonstrates the confusion that would be caused by allowing the jury to hear evidence of Mr. Biden's foreign business dealings.  At the close of trial, the jury is not going to be instructed on what type of foreign influence is improper, on the

requirements of FARA, the propriety of coordination with the Obama administration, or the investment strategy and compensation method of a joint ventures with a Chinese business. Jurors will simply be left with the impression Mr. Biden did something wrong, even if that is irrelevant to the actual tax charges they must decide. Moreover, this would essentially create the to-be-avoided mini-trial within the trial and distract the jury from the core issues in this case. Courts have cautioned against these types of mini-trials on a collateral issue. *See, e.g.*, *United States v. Singh*, 995 F.3d 1069, 1080-81 (9th Cir. 2021).

The Special Counsel does not address the binding Ninth Circuit authority cited in the Motion holding that "[w]here the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992); *see also United States v. Figueroa-Juarez*, 2023 WL 8053742, at *1 (9th Cir. Nov. 21, 2023). Instead, the Special Counsel relies on a single *unreported*[6] decision, which is both factually and legally distinguishable. In *United States v. Hoegel*, 723 F. App'x 421, 424 (9th Cir. 2018), the court held that the challenged testimony was relevant to proving the defendant *falsified* her tax returns. Moreover, because the testimony was not objected to at trial, the evidentiary rulings were reviewed for plain error (a standard even more deferential than review for abuse of discretion). *Id.* at 423.

## CONCLUSION

For the foregoing reasons, the Special Counsel should be precluded from making any reference or eliciting any testimony that Mr. Biden (1) acted on behalf of a foreign principal to influence U.S. policy and public opinion, (2) violated FARA, and (3) improperly coordinated with the Obama Administration.

---

[6] As stated in a footnote of the opinion, "[t]his disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3." Ninth Circuit Rule 36-3 provides that "[u]npublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." Ninth Cir. R. 36-3.

Date: August 11, 2024              Respectfully submitted,

By:   /s/ *Mark J. Geragos*
Mark J. Geragos
Tina Glandian
Setara Qassim

Angela M. Machala)
Abbe David Lowell
Christopher D. Man

*Attorneys for Robert Hunter Biden*