1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00599-MCS-1 |
|---|---|
| Plaintiff, | **ORDER RE: MOTIONS IN LIMINE (ECF NOS. 144–48, 151, 156–58, 160–63)** |
| v. | |
| ROBERT HUNTER BIDEN, | |
| Defendant. | |

1

At the pretrial conference, the Court heard arguments and issued oral rulings on motions in limine brought by the Government and Defendant Robert Hunter Biden. (Mins., ECF No. 206.) This Order expands on the Court's oral rulings and sets forth the reasoning of the Court.

## I.     GOVERNMENT'S MOTION IN LIMINE NO. 1

The Government moves for an order excluding from trial the testimony of Dr. Joshua Lee, one of Mr. Biden's proposed experts. (Gov't MIL No. 1, at 3, ECF No. 144; *see also* Suppl. to Gov't MIL No. 1, at 1–2, ECF No. 173.)[1] The Government argues Dr. Lee should be excluded because (1) Mr. Biden's expert disclosures fail to comply with Federal Rule of Criminal Procedure 16, and (2) Dr. Lee's opinions fail to meet the standard for expert testimony under Federal Rule of Evidence 702. (Gov't MIL No. 1, at 3–9; Suppl. to Gov't MIL No. 1, at 2–4.)

Mr. Biden opposes the motion, arguing that Dr. Lee's expert disclosures and proffered opinions do satisfy Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702. (Opp'n to Gov't MIL No. 1, at 2–6, ECF No. 198.)[2]

///

---

[1] The Court cites the parties' pagination even though several of their briefs contain duplicative page numbers.

[2] Mr. Biden also argues Dr. Lee's disclosures were timely and that his testimony would not violate Federal Rule of Evidence 704. (Opp'n to Gov't MIL No. 1, at 1–2, 6–10.) The Court only briefly addresses these arguments. As to timeliness, Federal Rule of Criminal Procedure 16(b)(1)(C)(ii) requires a defendant to provide the government with expert disclosures by a time set by the Court. Here, the deadline was August 20, 2024. (Order Re: Disclosures, ECF No. 202.) Mr. Biden timely provided disclosures before this deadline. (Lee Disclosure, ECF No. 144-1 (dated May 20, 2024); Suppl. Lee Disclosure, ECF No. 173-1 (dated July 31, 2024).) Moreover, the Court need not consider Mr. Biden's argument on Rule 704 because the Government does not seek exclusion of Dr. Lee's testimony pursuant to that rule. (*See generally* Gov't MIL No. 1; Suppl. to Gov't MIL No. 1.)

**A.    Rule 16**

The Government argues the Court should exclude Dr. Lee's testimony on the basis that Dr. Lee's expert disclosure fails to comply with Rule 16. (Gov't MIL No. 1, at 3–7; Suppl. to Gov't MIL No. 1, at 1–2.) Rule 16 requires disclosure of:

> a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authorized in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Fed. R. Crim. P. 16(b)(1)(C)(iii) (formatting altered). The Government argues Dr. Lee's disclosure and supplemental disclosure are deficient because they fail to provide a complete statement of all Dr. Lee's opinions or the bases and reasons for them. (Gov't MIL No. 1, at 3; Suppl. to Gov't MIL No. 1, at 2.)

Mr. Biden states that Dr. Lee is expected to offer testimony and opinions on the following eight topics at trial:

> 1. A description for the jury about the scope of substance use disorders.
>
> 2. A description for the jury about how individuals with substance use disorders, especially during periods of heavy alcohol and drug use, plan for and view future obligations and how they may function in life in some ways but not others.
>
> 3. An analysis of certain statements made by Mr. Biden in text message conversations and in his memoir, *Beautiful Things*, as to his following Dr. Lee's view of how persons with substance use disorders behave while in active addiction.

///

4. An analysis of rehabilitation, drug therapy, and other alcohol and substance use treatment programs that Mr. Biden enrolled in or attended between 2010 and 2019 as to his following Dr. Lee's view of the cycle of addiction.

5. An analysis of the impact of substance use disorders on mental health, including the relationships between substance use disorders and depression.

6. An analysis of how individuals, like Mr. Biden, who have experienced significant personal trauma, are at an increased risk of developing drug and alcohol use disorders.

7. An analysis of how family members of persons with substance use disorders typically continue to question a person's sobriety, even when they actually are not using drugs, creating an atmosphere of distrust, and further compromising the person's recovery.

8. An analysis of how the cycles of sobriety, recovery, and rehabilitation also impact a substance abuser's view that they are not "addicts" at any given time.

(Suppl. Lee Disclosure 1–2, ECF No. 173-1.)

The Court agrees with the Government that the disclosure does not comply with Rule 16. The supplemental disclosure does not provide any actual opinions Dr. Lee intends to proffer, let alone the bases for any of his purported opinions. For example, as to topic one, the disclosure provides no detail about what Dr. Lee's description of substance use disorders may be. On topic six, Dr. Lee purports to offer analysis that Mr. Biden is at increased risk for substance use disorders given personal trauma. However, there is no disclosure of what such "analysis" may entail, nor an affirmative opinion that Mr. Biden's disorders are causally related to personal trauma.

///

The remaining topics are equally deficient; each is a general assertion about a topic Dr. Lee may opine about without disclosing what Dr. Lee's opinion on that topic might be. Even assuming arguendo one of the topics disclosed a specific opinion, the disclosure provides no explanation of the reasons or the bases for any such opinion. As in his Delaware action, Mr. Biden does little more than list "several assertions accompanied by some handwaving that those should be accepted as expert opinion simply because the speaker is an expert." *United States v. Biden*, No. 23-61 (MN), 2024 WL 3892606, at \*3 (D. Del. June 2, 2024).

The deficiencies in Dr. Lee's expert disclosure and supplemental disclosure leave the Government with insufficient information regarding what Dr. Lee's opinions about the facts of this case are and the bases for those opinions. Thus, the Government cannot adequately prepare for Dr. Lee's cross-examination, nor can it secure an expert of its own to oppose whatever Dr. Lee's opinions may be. *See* Fed. R. Crim. P. 16 advisory committee's note to 2022 amendment (requiring a "complete statement of all opinions" is "intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing testimony if needed"). Given Mr. Biden's failure to abide by Rule 16, the Court has discretion to determine the appropriate remedy. *See* Fed. R. Crim. P. 16(d)(2). Exclusion of expert testimony based on a defendant's failure to provide the government with adequate disclosures is an appropriate remedy. *See* Fed. R. Crim. P. 16(d)(2)(C); *United States v. Ornelas*, 906 F.3d 1138, 1150 (9th Cir. 2018); *United States v. Barile*, 286 F.3d 749, 759 (4th Cir. 2002). Accordingly, the Court excludes Dr. Lee from testifying as to the eight topics listed in the supplemental expert disclosure. Because the deadline has passed for Mr. Biden to supplement Dr. Lee's disclosures, there are no remaining topics on which Dr. Lee may testify. Dr. Lee is precluded from offering expert opinion at trial pursuant to Rule 16.

///

**B.    Rule 702**

The Government also asks the Court to exclude Dr. Lee's testimony on the basis that it violates Rule 702. (Gov't MIL No. 1, at 7–9; Suppl. to Gov't MIL No. 1, at 2–4.) Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Federal courts have a gatekeeping responsibility to engage in objective screening to ensure that evidence "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the gatekeeping obligation "applies not only to testimony based on 'scientific knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge"). The proponent of the expert testimony bears the burden of proving its admissibility. *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

The Government challenges Dr. Lee's opinions under all four prongs of Rule 702. (Gov't MIL No. 1, at 7–9; Suppl. to Gov't MIL No. 1, at 2–4.) The Court grants the motion on the basis that Dr. Lee's proffered opinions are not the product of reliable

principles and methods he applied to the case at bar. Fed. R. Evid. 702(c)–(d).[3] As the Government asserts, Dr. Lee's disclosures do not "reflect a reliable application" of any such principles or methods. (Gov't MIL No. 1, at 9.) Dr. Lee's supplemental disclosure lists his experience as a professor teaching general courses in medicine, his research and clinical trials focused on addiction pharmacotherapies and substance use disorders, and his treatment of patients for addiction and substance abuse as the bases for his proffered opinions. (Suppl. Lee Disclosure 3–4.) The record leaves entirely uncertain which principles and methods derived from Dr. Lee's experiences inform his opinions. Neither Mr. Biden's expert disclosures nor his briefing elucidates how Dr. Lee's experience might appropriately inform opinions on the topics identified in the disclosures or more generally apply to this case. None of the information in the record indicates how Dr. Lee applied his knowledge and research of addiction pharmacotherapies and substance use, or treatment of other patients suffering from addiction and substance abuse, to Mr. Biden's individual struggle with addiction. Nor do the disclosures suggest Dr. Lee is qualified to testify on the connection between Mr. Biden's struggles with substance abuse and his inability to develop a specific intent to act, the purpose for which Mr. Biden intends to introduce his testimony. (*See* Opp'n to Gov't MIL No. 1, at 5.)

Mr. Biden apparently offers Dr. Lee as a witness with the hope that his credentials alone establish him as a reliable expert. As the Government points out, Dr. Lee's "experience alone cannot establish the reliability of his testimony." (Gov't MIL No. 1, at 9 (citing *United States v. Kelly*, No. 21-cr-00402-RS-1, 2023 WL 4032011, at *2 (N.D. Cal. June 14, 2023))); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court

---

[3] Given this disposition, the Court declines to address the remainder of the Government's arguments on admissibility under Rule 702.

to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Dr. Lee is excluded from providing testimony at trial pursuant to Rule 702.

### C.    Conclusion

Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702 provide independent bases for precluding Dr. Lee from testifying. Accordingly, Dr. Lee is precluded from offering expert opinion at trial.

## II.    GOVERNMENT'S MOTION IN LIMINE NO. 2

The Government moves for an order excluding the testimony of Thomas Bishop, one of Mr. Biden's proposed experts, from trial. (Gov't MIL No. 2, at 1; ECF No. 145; *see also* Suppl. to Gov't MIL No. 2, at 1–2, ECF No. 175.) The Government argues Mr. Bishop's testimony should be excluded because (1) Mr. Biden's expert disclosures fail to comply with Federal Rule of Criminal Procedure 16, and (2) Mr. Bishop's opinions fail to meet the standard for expert testimony under Federal Rule of Evidence 702. (Gov't MIL No. 2, at 3–9; Suppl. to Gov't MIL No. 2, at 1–6.)

Mr. Biden opposes the motion, arguing that Mr. Bishop's expert disclosures satisfy both Federal Rule of Criminal Procedure 16 and Federal Rule of Evidence 702. (Opp'n to Gov't MIL No. 2, at 2–6, ECF No. 199.)[4]

### A.    Rule 16

The Court applies the legal standard set forth *supra* in Section I.A. According to the supplemental expert disclosure, Mr. Bishop is expected to offer opinions and testimony on the following topics at trial:

(1) "the overall pattern of Mr. Biden's tax compliance prior to tax year 2016;"

_____

[4] For the reasons stated *supra* in footnote 2, the Court need not address Mr. Biden's arguments pertaining to timeliness. (Opp'n to Gov't MIL No. 2, at 1–2.)

(2) "the typical role of accountants, tax consultants, preparers and/or tax attorneys in the preparation of an individual's and a corporation's taxes;"

(3) "the competence of the accountants, tax consultants, preparers and/or tax attorneys who prepared Mr. Biden's and/or Owasco's taxes from tax year 2016 through 2019";

(4) "$1 million in income received by Mr. Biden in 2017, for the legal representation of Patrick Ho, was erroneously reported in his taxes as income for 2018 instead of 2017;"

(5) "in 2018, Edward White & Company ('EWC') mistakenly double counted $157,000 in income reported by Owasco PC on the individual tax return of Mr. Biden;"

(6) "the double counting of $157,000 in income to Owasco P.C. in 2018, as well as the reporting of $1 million for the legal representation of Patrick Ho in 2017 instead of 2018, resulted in the overreporting of income and tax due and paid by Mr. Biden for the 2018 tax year";

(7) "[Mr. Bishop's] review of Mr. Biden's 2018 tax and bank records did not reveal any classic badges of fraud such as double sets of books, false invoices, concealed records, concealment of assets, or destruction of records";

(8) Mr. Bishop "may compare examples of Mr. Biden's classification of 2018 personal and business expenses and demonstrate that the manner in which Mr. Biden classified these items was inconsistent and haphazard"; and

(9) Mr. Bishop's opinion that, "based on the high-profile nature of [Mr. Biden], the quality of the source documentation, and the manner in which the business records were maintained, EWC had an enhanced due diligence requirement to make further inquiries to verify the accuracy and completeness of the information being provided to them by Mr. Biden, specifically Mr. Biden's classification of 2018 personal expenses and business expenses."

(Suppl. Bishop Disclosure 2, ECF No. 175-1.)

Here, the Court finds the first, second, third, and ninth topics fail to satisfy the requirements of Rule 16. Topic one discusses a pattern of Mr. Biden's tax compliance prior to tax year 2016. (*Id.* at 1.) However, Mr. Bishop's disclosure and its supplement do not disclose an opinion he intends to render—for example, what pattern he identified, and what opinion he has about it. The second topic is equally deficient. Here, Mr. Bishop purports to opine on the "typical role" of several types of tax preparers. (*Id.* at 2.) However, the disclosures do not state what Mr. Bishop's opinion is on the "typical role" of these tax preparers. The disclosure as to the third topic similarly fails to provide Mr. Bishop's opinion on the competence of Mr. Biden's tax preparers; instead, it signals only that he intends to opine on their competence generally. (*Id.*) Finally, the ninth topic purports to give an opinion that Mr. Biden's tax preparers had to exercise "enhanced due diligence" based on Mr. Biden's "high-profile nature." (*Id.*) While this topic provides a discernible opinion, there is no basis for such an opinion in the disclosures. To be sure, Mr. Biden proffers several bases for Mr. Bishop's purported opinions, (*see id.* at 2–3), but none of them suggests Mr. Bishop has knowledge to testify on enhanced duties of diligence tax preparers owe "high-profile" clients, nor any authority suggesting such a duty even exists. The deficiencies as to the first, second, third, and ninth topics leave the Government with inadequate information on how to prepare for Mr. Bishop's cross-examination or how to prepare their own witness to rebut Mr. Bishop's opinions. The Court precludes Mr. Bishop from offering testimony on the first three topics and the ninth topic listed in his supplemented disclosure. *See* Fed. R. Crim. P. 16(d)(2).

The Court finds the seventh and eighth topics satisfy the requirements of Rule 16. The disclosure states that Mr. Bishop will offer opinions that Mr. Biden's 2018 tax and bank records did not reveal any classic badges of fraud, and that the manner in which Mr. Biden classified his 2018 personal and business expenses was inconsistent and haphazard. (Suppl. Bishop Disclosure 2.) Mr. Bishop will base these opinions on his review of Mr. Biden's tax and bank records for 2018 and prior years and his

1 significant experience investigating tax-related crimes at the Internal Revenue Service's
2 Criminal Investigation Division. (*Id.*) The supplemental disclosure provides all that
3 Rule 16 requires—a complete statement of an opinion Mr. Biden will elicit from Mr.
4 Bishop, the bases and reasons for the opinion, Mr. Bishop's qualifications, and a list of
5 all cases Mr. Bishop has testified in as an expert at trial or by deposition in the last four
6 years. (*Id.* at 2–4); *see* Fed. R. Crim. P. 16(b)(1)(C)(iii).

7 The Court reserves ruling on the adequacy of disclosure of topics four, five, and
8 six until trial.

9

10 **B.    Rule 702**

11 The Government separately asks the Court to exclude all of Mr. Bishop's
12 testimony at trial pursuant to Rule 702. The Court applies the legal standard set forth
13 *supra* in Section I.B. Here, the Government challenges the sufficiency of some of Mr.
14 Bishop's disclosures on a topic-by-topic basis under Rule 702. (Gov't MIL No. 2, at 7–
15 9, Suppl. to Gov't MIL No. 2, at 2–6.) The Government also challenges the entirety of
16 Mr. Bishop's disclosures under the second, third, and fourth prongs of Rule 702. (Gov't
17 MIL No. 2, at 9); *see* Fed. R. Evid. 702(b)–(d).

18 The Court grants the motion as to the first, second, third, seventh, eighth, and
19 ninth topics listed in Mr. Bishop's supplemental disclosure on the basis that none of Mr.
20 Bishop's opinions rest on the application of reliable principles and methods to the facts
21 of the case. Fed. R. Evid. 702(c)–(d).[5] These six opinions are based on Mr. Bishop's
22 experience working at the IRS, his knowledge of myriad statutes and publications
23 pertaining to filing taxes and accounting, and his review of Mr. Biden's financial
24 records. (Suppl. Bishop Disclosure 2–3.) However, Mr. Bishop's "knowledge and
25 experience" do not qualify him to testify, for instance, on the specific nature of the

26 _____

27 [5] The Court does not rest its decision on the Government's other arguments for
28 exclusion of Mr. Bishop's testimony.

11

crimes charged, the circumstances that gave rise to the allegations forming of the basis of these crimes, the role of several types of tax preparers, or any enhanced level of duty these preparers may owe Mr. Biden over the average tax preparer. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). Mr. Bishop represents that he reviewed Mr. Biden's financial records in arriving at some of his opinions. (Suppl. Bishop Disclosure 2–3.) However, Mr. Bishop does not tether his review of this evidence to any experience that qualifies him to provide expert opinions on these six topics. Thus, there is no way to know whether Mr. Bishop formed these opinions based on "mere subjective beliefs or unsupported speculation," which makes his anticipated testimony unreliable. *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994).

Again, the Court is left to assume Mr. Biden offers Mr. Bishop as a witness on topics one, two, three, seven, eight, and nine with the hope that his credentials alone establish him as a reliable expert on these topics. Mr. Bishop's experience cannot, by itself, establish the reliability of his testimony. *See Joiner*, 522 U.S. at 146; *Kelly*, 2023 WL 4032011, at *2. Mr. Bishop is precluded from testifying on these six topics under Rule 702.

The Court reserves ruling on the admissibility of topics four, five, and six under Rule 702 until trial.

### C.    Conclusion

Under Rule 16, Rule 702, or both, the Court precludes Mr. Bishop from providing expert testimony at trial on topics one, two, three, seven, eight, and nine stated in the supplemental expert disclosure. Because Mr. Biden represented at the pretrial conference that he only intends to call Mr. Bishop as a rebuttal witness based on the evidence introduced by the Government in its case-in-chief, the Court will evaluate whether Mr. Bishop may testify as to topics four, five, and six after the Government closes its case.

## III.    GOVERNMENT'S MOTION IN LIMINE NO. 3

The Government moves for an order excluding from trial questioning and argument:

(1) "related to issues raised in the defendant's motion for vindictive and selective prosecution";

(2) "related to alleged outrageous government conduct with respect to the actions of certain IRS agents";

(3) "alleging the prosecution of the defendant is somehow due to or part of a Russian malign election influence campaign";

(4) "alleging that the defendant was singled out for prosecution or that other taxpayers were not/are not prosecuted for conduct similar to the defendant's";

(5) "suggest[ing] the defendant's conduct should have been subject to an audit or civil proceeding rather than criminal investigation and prosecution"; and

(6) "related to selective prosecution claims on Count 9 related to irrelevant and inapplicable COVID-era programs."

(Gov't MIL No. 3, at 1–2, ECF No. 146.) The Government asserts that these matters pertaining to alleged defects in the institution of the prosecution are not relevant to the elements of the charges or probative of Mr. Biden's guilt or innocence, or that the risk of confusing the jury, unfairly prejudicing the Government, or encouraging nullification outweighs their probative value. (*Id.* at 6–8.)

Mr. Biden opposes the motion in part. He agrees not to offer questioning and argument toward the third category. (Opp'n to Gov't MIL No. 3, ECF No. 185.) As to the first, second, and sixth categories, Mr. Biden agrees not to pursue argument or questioning related to the issues presented in his pretrial motions but notes that questions probative of those issues also "may go to a witness's competence, credibility, or bias." (*Id.*) As to the fourth and fifth categories, Mr. Biden represents he will not present arguments to these ends, but he submits that any exclusion order should not

preclude him from asking witnesses about the work and investigation they performed in relation to this case. (*Id.* at 3–4.)

The Court grants the motion subject to Mr. Biden's reservations. As Mr. Biden appears to concede, the arguments the Government seeks to preclude him from making at trial are not appropriate for consideration by the jury. *See, e.g.*, *United States v. Re*, 401 F.3d 828, 833 (7th Cir. 2005) (affirming exclusion under Fed. R. Evid. 403 of "any inquiry into why [another person] was not prosecuted"); *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (affirming refusal of instruction "that the government could avail itself of the civil remedy of assessing Buras' taxes without filing criminal charges" "[b]ecause the availability of a civil remedy is irrelevant to the issue of criminal liability"); *United States v. Wylie*, 625 F.2d 1371, 1378 (9th Cir. 1980) (affirming trial court decision to refuse outrageous conduct jury instruction, reasoning that "the outrageous involvement of government agents is a question of law for the court"); *United States v. Avery*, No. CR 11-00405 MMM, 2011 U.S. Dist. LEXIS 161210, at *4–5 (C.D. Cal. Dec. 15, 2011) (granting motion to exclude argument toward selective prosecution, which "must be made to the court in pretrial proceedings rather than to the jury"); *United States v. Yagman*, No. CR 06-227(A)-SVW, 2007 U.S. Dist. LEXIS 105177, at *16 (C.D. Cal. May 16, 2007) (precluding defendant from "introduc[ing] impermissible evidence of prosecutorial motive" (internal quotation marks omitted)).

Notwithstanding, consistent with Mr. Biden's concerns, the Court envisions that broadly excluding questioning on these six topics could restrict Mr. Biden from asking questions of witnesses that might go both to these topics and to the witnesses' competence, credibility, and bias. *Cf., e.g.*, *Yagman*, 2007 U.S. Dist. LEXIS 105177, at *3, 16 (acknowledging that "some evidence that conceivably relates to vindictiveness might also support relevant arguments unrelated to vindictive prosecution," and allowing defendant "to question the government's witnesses concerning their credibility, bias, and reliability"). Mr. Biden should be allowed to ask witnesses about

their relation to the case and the investigation and work they conducted. Beyond general questions going to those permissible topics, the Court expects the parties to preview any anticipated questioning that goes to the impermissible topics before it is elicited, or otherwise to raise issues concerning this preclusion order outside the presence of the jury.

## IV.    GOVERNMENT'S MOTION IN LIMINE NO. 4

The Government moves for an order precluding Mr. Biden from asserting a defense of reliance on advice of counsel. (Gov't MIL No. 4, at 1, ECF No. 147.) Mr. Biden does not oppose the motion "but notes that fact witnesses may testify to their role in the preparation and filing of Mr. Biden's taxes." (Resp. to Gov't MIL No. 4, at 2, ECF No 186.) The Government cites virtually no authority to support the preclusion order it seeks, but since the motion is unopposed, the Court grants the motion in limine subject to Mr. Biden's representation about potential witness testimony.

## V.    GOVERNMENT'S MOTION IN LIMINE NO. 5

The Government moves for an order precluding argument and questioning related to Mr. Biden's "potential punishment, plea negotiations, the diversion agreement, or the July 26, 2023 hearing" in the District of Delaware concerning a potential resolution of charges against Mr. Biden. (Gov't MIL No. 5, at 3, ECF No. 148.) Mr. Biden does not oppose the motion but reserves the right to elicit testimony on these topics if the Government opens the door or if Mr. Biden testifies. (Resp. to Gov't MIL No. 5, at 3, ECF No. 187.)

The Court grants the motion subject to Mr. Biden's reservations. Mr. Biden does not raise, and the Court cannot conceive of, any reason why evidence or argument concerning potential punishment should be permitted. *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task."); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir.

1992) ("[I]t is inappropriate for a jury to consider or be informed of the consequences of their verdict."). The parties have agreed to a jury instruction to this end. (Joint Proposed Jury Instructions 51, ECF No. 159 (proposing Ninth Circuit Model Criminal Jury Instruction No. 6.22).)

Evidence of a potential resolution of charges in the District of Delaware would generally be inadmissible under Federal Rule of Criminal Procedure 11 and Federal Rule of Evidence 410. *United States v. Guerrero*, 847 F.2d 1363, 1367 (9th Cir. 1988). In response to Mr. Biden's congruent motion in limine, the Government submits that such evidence could be admitted under exceptions set forth in Federal Rule of Evidence 410(b), which allows plea-related statements "(1) in any proceeding in which another statement made during the same plea or plea discussions has been introduced, if in fairness the statements ought to be considered together; or (2) in a criminal proceeding for perjury or false statement, if the defendant made the statement under oath, on the record, and with counsel present." Fed. R. Evid. 410(b); (*see* Opp'n to Def. MIL No. 1, ECF No. 177).[6] Like Mr. Biden, the Court can conceive of only one situation in which a Rule 410(b) exception may apply: if the defense opens the door. (Reply Re: Def. MIL No. 1, at 1 & n.1, ECF No. 192.) The parties and the Court can cross that bridge, if it materializes, at sidebar or otherwise outside the presence of the jury.

## VI. GOVERNMENT'S MOTION IN LIMINE NO. 6

The Government moves for an order excluding evidence that a third party made belated payments toward Mr. Biden's outstanding tax obligations for the tax years at issue in the charges. (Gov't MIL No. 6, at 1, ECF No. 151.) The Government maintains that any such evidence is not relevant to Mr. Biden's state of mind when he allegedly

---

[6] The Government contends Mr. Biden's motion to exclude "'any' statements" he made at the plea hearing is overbroad, (Opp'n to Def. MIL No. 1), but its own motion in limine seeks similar or broader relief, (*see* Gov't MIL No. 5, at 4 (arguing "any statements" related to the potential plea should be excluded)).

committed the tax crimes and, even if relevant, would risk misleading and confusing the jury or invite nullification. (*Id.* at 5–7.) Mr. Biden opposes the motion. (Opp'n to MIL No. 6, ECF No. 188.) He proffers that in October 2021, a third party paid a total of $2,600,158 toward Mr. Biden's "outstanding individual income taxes, penalties, and interest for tax years 2016 through 2019." (*Id.* at 2.) Mr. Biden argues this evidence is relevant to his state of mind at the time of the charged acts. (*Id.* at 3–4.)

The Court grants the motion. In tax cases, courts routinely exclude evidence that a defendant untimely filed tax returns or untimely paid outstanding tax debts. *E.g.*, *United States v. Pang*, 362 F.3d 1187, 1194 (9th Cir. 2004) ("[E]vidence of belated tax payments, made while awaiting prosecution, is irrelevant."); *United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) ("The conduct of defendant in the years subsequent to 1972, 1973, and 1974 was not relevant to the charge that defendant had wilfully failed to file tax returns in those three years."); *see also Sansone v. United States*, 380 U.S. 343, 354 (1965) ("The fact that petitioner stated to a revenue agent that he intended to report his 1957 income in some later year, even if taken at face value, would not detract from the criminality of his willful act defeating the 1957 assessment. That crime was complete as soon as the false and fraudulent understatement of taxes (assuming, of course, that there was in fact a deficiency) was filed."). "Were the rule otherwise, tax evaders could avoid criminal prosecution simply by paying up after being caught." *Pang*, 362 F.3d at 1194.

Here, evidence of late payment here is irrelevant to Mr. Biden's state of mind at the time he allegedly committed the charged crimes. At the latest, Mr. Biden allegedly completed the charged crimes by October 15, 2020, the date of nonpayment of tax year 2019 individual income taxes. (Indictment ¶ 4, ECF No. 1; *but see id.* ¶ 160 (alleging willful nonpayment on July 15, 2020).) Some alleged crimes were complete years earlier. (*See id.* ¶¶ 4, 91, 107.) Mr. Biden does not persuasively explain how a third party's payments toward his tax obligations a year or longer after the conduct at issue in this case are probative of his state of mind at the time charged. He proffers that he

1  intends to introduce the late payment evidence in connection with a theory that he

2  "genuinely became aware of the seriousness of his tax delinquencies during his sobriety

3  and took action to pay the debt." (Opp'n to Gov't MIL No. 6, at 3–4.) The Court

4  understands this to fit into a possible defense theory that Mr. Biden's intoxication

5  undermines criminal intent. (*See* Joint Proposed Jury Instructions Ex. 1, at 6–7, ECF

6  No. 159-1 (proposing diminished capacity instructions).) Late payment of taxes in 2021

7  is not probative of Mr. Biden's purportedly diminished capacity over a year earlier. (*See*

8  Disputed Joint Statement of the Case 4, ECF No. 152 (asserting in his proposed

9  statement of the case that "Mr. Biden was severely addicted to alcohol and drugs" "from

10 approximately 2016 through May 2019" and "regain[ed] his sobriety in 2020")); *cf.*

11 *United States v. Baras*, 624 F. App'x 560, 561 (9th Cir. 2015) ("Evidence of late tax

12 payments is not particularly probative that Baras's prior failure was the result of

13 medication.").

14      Even if the late payment evidence were minimally relevant to establish a contrast

15 between Mr. Biden's pre- and post-sobriety conduct, its introduction would severely

16 risk jury confusion and raise the specter of nullification. *See Baras*, 624 F. App'x at 560

17 ("Excluding evidence under Fed. R. Evid. 403, in this instance evidence regarding

18 belated payment of taxes, is permitted to avoid a risk of confusing the issues and

19 confusing the jury."). Jurors viewing such evidence could improperly construe late

20 payment as a defense to the charged crimes or refuse to convict given evidence that

21 might lead a jury to believe the Government has been made whole.

22

23 **VII.  GOVERNMENT'S MOTION IN LIMINE NO. 7**

24      The Government moves for an order precluding defense counsel from making an

25 improper opening statement and arguing facts not in evidence. (Gov't MIL No. 7, at 3–

26 4, ECF No. 156.) Included in this motion is a request that the Court exclude evidence

27 of the causes of Mr. Biden's prior addiction as irrelevant. (*Id.* at 4–5.) Mr. Biden

28 opposes the Government's position, (Opp'n to Gov't MIL No. 7, at 3–8, ECF No. 189),

and additionally argues that the rule of completeness as embodied in Federal Rule of Evidence 106 allows for admission of Mr. Biden's personal history and the causes of his addiction as included in his memoir, (*id.* at 8–9). The Government filed a reply. (Reply Re: Gov't MIL No. 7, ECF No. 196.)

The Court grants the motion in substantial part. As Chief Justice Burger explained,

> An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct.

*United States v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). "An opening statement should be limited to a statement of facts which [a party] intends or in good faith expects to prove." *Leonard v. United States*, 277 F.2d 834, 841 (9th Cir. 1960). Accordingly, defense counsel's opening statement may refer to facts counsel intends or in good faith expects to prove. That said, because this Order excludes certain subjects, both the Government and Mr. Biden may not refer to those subjects in their opening statements.

The Government also argues that "any evidence regarding the defendant's personal history is not relevant and should be excluded." (Gov't MIL No. 7, at 4; *see id.* at 4–5.) Mr. Biden opposes, noting that each of the crimes charged in this case contain a specific intent element, and "[i]n a prosecution for a specific intent crime, voluntary intoxication that precludes the formation of the requisite intent may be established as a defense. Thus, voluntary intoxication of a high degree may constitute a defense to the element of 'willfulness.'" (Opp'n to Gov't MIL No. 7, at 5 (quoting *United States v. Kurka*, 818 F.2d 1427, 1432 (9th Cir. 1987) (citation omitted)).) The

fact that Mr. Biden was intoxicated or had an addiction during the timeframe charged in the Indictment is relevant to his defense. But Mr. Biden has not advanced an argument as to why the underlying *causes* of the addiction are relevant. (*See generally* Opp'n to Gov't MIL No. 7.) Mr. Biden does not identify any reason why the underlying causes of Mr. Biden's addiction have "any tendency to make a fact more or less probable" or are "of consequence in determining the action." Fed. R. Evid. 401. As such, evidence of the causes of Mr. Biden's addiction is irrelevant, and neither party may elicit such evidence or refer to any alleged causes of Mr. Biden's addiction in the opening statements.

As two specifically alleged causes for Mr. Biden's professed addiction arose during the argument, the Court briefly addresses them. Counsel for Mr. Biden apparently intends to argue that a tragic car accident in 1972 was the cause for Mr. Biden's addiction from 2015 through 2019. For the reasons expressed elsewhere in this Order, the Court excludes this argument and any reference to the 1972 accident. Counsel for Mr. Biden also intends to argue that the death of Mr. Biden's brother caused Mr. Biden's addiction. Again, the Court precludes this argument.

Even if the causes of addiction were relevant, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The Court does not perceive how any witness apart from Mr. Biden himself or an expert who has treated Mr. Biden or examined his medical records could have personal knowledge of the causes of Mr. Biden's addiction. And even if a competent witness could testify as to the causes of addiction, that evidence's probative value may be "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *cf. United States v. Copple*, 24 F.3d 535, 545–46 (3d Cir. 1994) (finding victim impact testimony about tragedies caused by business losses "had either no, or very little, probative value and was unfairly

prejudicial").[7] That said, nothing in this Order prevents witnesses from testifying as to the changes in Mr. Biden's frequency of drug use during the relevant time period or any other relevant events that took place.

As for the rule of completeness and the portions of Mr. Biden's memoir that the parties wish to use at trial, the Court lacks sufficient information to make specific determinations at this time. The Court notes that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Although the Government asserts that Mr. Biden may not "sidestep the prohibition against hearsay" through the rule of completeness, (Reply Re: Gov't MIL No. 7, at 5), the rule suggests otherwise, *see* Fed. R. Evid. 106 ("The adverse party may [invoke the rule] *over a hearsay objection.*" (emphasis added)). The Court orders the parties to meet and confer and to file with the Court by September 4, 2024, a table of designations and counter-designations of the portions of Mr. Biden's memoir that the parties seek to admit at trial, including any legal argument for the counter-designations and replies thereto.

///

---

[7] Mr. Biden also argues that the Government should be prevented from taking a position on Mr. Biden's addiction in tension with its position in the Delaware criminal proceeding against him under the doctrine of judicial estoppel. (Opp'n to Gov't MIL No. 7, at 6 & n.2.) Again, neither party clearly engages with the judicial estoppel factors. *See United States v. Biden*, __ F. Supp. 3d __, No. 2:23-cr-00599-MCS-1, 2024 WL 1432468, at *38–39 (C.D. Cal. Apr. 1, 2024) (Scarsi, J.). That said, the Court does not perceive the Government's position now to be "clearly inconsistent" with its prior position. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). The Government's position is not that Mr. Biden was not an addict, (*see* Reply Re: Gov't MIL No. 7, at 3–4), but rather that the causes of any addiction are irrelevant to this case. As such, the Court declines to estop the Government.

## VIII.  DEFENDANT'S MOTION IN LIMINE NO. 1

Like in the Government's fifth motion in limine, Mr. Biden moves for an order excluding evidence of any statements he made at a July 26, 2023, hearing in the District of Delaware that concerned a potential resolution of charges against him. (Def. MIL No. 1, at 2, ECF No. 160.) The Government opposes the motion in part; it proffers that it does not intend to introduce such statements unless they fall within the ambit of Federal Rule of Evidence 410(b). (Opp'n to Def. MIL No. 1, at 3.)

The same analysis of the Government's fifth motion in limine applies to this motion, which the Court grants. Any argument toward admission of plea-related statements under Rule 410(b) must be made at sidebar or outside the presence of the jury.

## IX.  DEFENDANT'S MOTION IN LIMINE NO. 2

"Mr. Biden moves to exclude any reference to his administrative discharge from the Navy in 2014." (Def. MIL No. 2, at 2, ECF No. 161.) Mr. Biden asserts that the discharge is inadmissible under Federal Rule of Evidence 404(b) or that the unduly prejudicial effect of such evidence exceeds its probative value under Federal Rule of Evidence 403. (*Id.*) The Government consents to the motion in part and represents that it will not introduce such evidence in its case-in-chief. (Opp'n to Def. MIL No. 2, at 3, ECF No. 178.) But it reserves the right to refer to the administrative discharge as impeachment evidence if Mr. Biden "takes the stand and falsely denies his cocaine use while in the Navy." (*Id.*)

The Court grants the motion on the basis that the risk of confusing the jury and unfairly prejudicing Mr. Biden outweighs the minimal relevance of Mr. Biden's discharge from the Navy. Fed. R. Evid. 403. [8] This decision is subject to the

---

[8] Mr. Biden has not presented enough information about his discharge from the Navy for the Court to understand why it might qualify as an "other crime, wrong, or act"

Government's note that the administrative discharge could be used for impeachment, and the Court's comment at the pretrial conference that the discharge's probative value may become more significant should Mr. Biden seek leave to place the causes of his addiction into issue. If the Government intends to admit such evidence, it must raise the issue outside the presence of the jury—and, if required, provide advance notice to Mr. Biden under Rule 404(b)(3).

## X.    DEFENDANT'S MOTION IN LIMINE NO. 3

"Mr. Biden moves to exclude any evidence, testimony, or reference to his alleged 'extravagant' lifestyle during the time period in question and any salacious details about money purportedly spent on certain personal expenses, including, but not limited to, reference to sex workers, adult entertainment, a sex club membership, pornography, and strip clubs." (Def. MIL No. 3, at 2, ECF No. 162.) Mr. Biden asserts that details of these payments are inadmissible under Federal Rule of Evidence 403. (*Id.*) The Government opposes the motion, arguing that "[t]he precise nature of the expenditures—and their excessively personal nature—is particularly probative as to Counts Six through Eight because [Mr. Biden] falsely characterized his personal spending as legitimate business expenditures." (Opp'n to Def. MIL No. 3, at 3–4, ECF No. 179.)

The Court reserves decision on the motion. The parties and the Court discussed this motion at length at the pretrial conference. The Court generally agrees with the Government that evidence of the precise nature of Mr. Biden's expenditures is necessary for the jury's assessment of Mr. Biden's state of mind at least as to Counts 6 through 8. That said, the Court intends to maintain strict control under Rule 403 over the presentation of evidence that might be characterized as salacious. At trial, the parties

_____

subject to Rule 404(b), though the parties in their briefs and at oral argument suggested that the discharge was related to Mr. Biden's use of controlled substances.

1   should preview any evidence subject to Mr. Biden's concerns expressed in this motion

2   on an issue-by-issue basis.

3

4   **XI.   DEFENDANT'S MOTION IN LIMINE NO. 4**

5       Mr. Biden moves for an order excluding from trial reference to any allegation

6   that he:

7          (1) acted on behalf of a foreign principal to influence U.S.

8          policy and public opinion, (2) violated FARA, (3) improperly

9          coordinated with the Obama Administration, (4) received

10         direct compensation from any foreign state, (5) received

11         compensation for actions taken by his father that impacted

12         national or international politics, or (6) funneled money to his

13         father or any related alleged corruption.

14   (Def. MIL No. 4, at 1, ECF No. 163.)

15   ///

16       The Government opposes the motion in part. (Opp'n to Def. MIL No. 4, ECF No.

17   181.) The Government agrees not to offer questioning and argument toward the fourth

18   through sixth categories. (*Id.* at 5–6.) As to the first, second, and third categories, the

19   Government represents that, while it will not refer to "allegations" that Mr. Biden

20   violated FARA or refer to "improper[]" coordination, it plans to introduce evidence that

21   a Romanian national hired Mr. Biden and two business associates to influence an

22   investigation of the national, that one of the business associates structured the business

23   relationship to avoid having to register as a foreign agent, and that Mr. Biden and his

24   business association contacted some federal government officials. (*Id.* at 5.) At the

25   hearing, the Government agreed that it did not have to discuss the Obama administration

26   or elicit testimony that the facts of the business arrangement violated FARA, but the

27   parties disagreed as to the admissibility of the testimony the Government intends to

28   elicit. (Mins.)

As such, the Court grants the motion as it relates to topics two through six. The balance of the motion is deferred to trial.

## XII.  CONCLUSION AND ADMONITION

Based on the Court's resolution of the motions in limine, the Court orders as follows:

- Dr. Lee shall not provide expert testimony at trial.
- Mr. Bishop shall not provide expert testimony at trial as to: (1) the overall pattern of Mr. Biden's tax compliance prior to tax year 2016; (2) the typical role of accountants, tax consultants, preparers and/or tax attorneys in the preparation of an individual's and a corporation's taxes; (3) the competence of the accountants, tax consultants, preparers and/or tax attorneys who prepared Mr. Biden's and/or Owasco's taxes from tax year 2016 through 2019; (7) Mr. Bishop's lack of discovery of any classic badges of fraud from his review of Mr. Biden's 2018 tax and bank records; (8) Mr. Bishop's opinion that Mr. Biden's classification of 2018 personal and business expenses was inconsistent and haphazard; and (9) Mr. Bishop's opinion that Edward White & Company had an enhanced due diligence requirement to make further inquiries to verify the accuracy and completeness of Mr. Biden's classification of 2018 personal and business expenses. The Court reserves decision on whether Mr. Bishop may testify on the other three topics identified in the supplemental disclosure until after the Government closes its case-in-chief.
- The parties shall not offer questioning and argument: (1) related to issues raised in Mr. Biden's motion for vindictive and selective prosecution; (2) related to alleged outrageous government conduct with respect to the actions of certain IRS agents; (3) alleging the prosecution of Mr. Biden is due to or part of a Russian malign election influence campaign; (4) alleging that Mr. Biden was singled out for prosecution or that other taxpayers were or are not prosecuted for conduct

similar to his; (5) suggesting Mr. Biden's conduct should have been subject to an audit or civil proceeding rather than criminal investigation and prosecution; and (6) related to selective prosecution claims on Count 9 related to COVID-era programs. This preclusion order does not prevent the parties from questioning witnesses on their relation to the case and work or investigation thereon.

- Mr. Biden shall not assert a defense of reliance on advice of counsel.

- The parties shall not offer questioning and argument related to Mr. Biden's potential punishment, plea negotiations, the diversion agreement, or the July 26, 2023 hearing in the District of Delaware concerning a potential resolution of charges against Mr. Biden. This preclusion order is subject to exceptions under Rule 410(b) the parties may assert outside the presence of the jury.

- The parties shall not offer questioning and argument relating to the delinquent payment of Mr. Biden's individual income taxes.

- The parties shall not offer questioning and argument relating to the causes of Mr. Biden's addiction. To avoid and confusion, this exclusion order includes any reference to the tragic 1972 accident involving Mr. Biden and any argument that this accident or the death of his brother caused Mr. Biden's addiction issues. The parties shall tailor their opening statements to facts they intend or in good faith expect to prove. The parties shall not argue facts not in evidence or facts not expected to come into evidence based on this Order. The parties shall file a table of designations and counter-designations of the portions of Mr. Biden's memoir that the parties seek to admit at trial by September 4, 2024.

- The parties shall not offer questioning and argument referring to Mr. Biden's administrative discharge from the Navy in 2014.

- The Court reserves decision on Mr. Biden's motion to exclude reference to his purportedly "extravagant" lifestyle and any salacious details about his personal expenses. The Court will decide the admissibility of evidence pertaining to Mr. Biden's lifestyle and personal expenses on an issue-by-issue basis at trial.

- The parties shall not offer questioning and argument (2) referring to any violations of FARA, (3) that Mr. Biden improperly coordinated with the Obama administration, that (4) Mr. Biden received direct compensation from any foreign state, (5) that Mr. Biden received compensation for actions taken by his father that impacted national or international politics, and (6) that Mr. Biden funneled money to his father, or any related alleged corruption. The Court reserves decision on Mr. Biden's motion to exclude evidence that he acted on behalf of a foreign principal to influence U.S. policy and public opinion.

Counsel shall caution, warn, and instruct their witnesses not to make any reference to any evidence or topics excluded by this Order. All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103, advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."). Any request for reevaluation of an in limine ruling must be made at sidebar or outside the presence of the jury. Because the Court anticipates issuing oral rulings at trial on the motions in limine on which it reserves decision in this Order, the Court directs the Clerk to terminate all the motions in limine for case administration purposes only.

This case has required or will require a significant expenditure of time and resources by the parties, counsel, the Court, and—most importantly—the forthcoming jury panel and petit jury. Given the nature of the case, the Court will summon 120 of Mr. Biden's peers to submit to the jury selection process and will ask 16 of those peers to upend their lives and devote a up to a month to this matter. Compliance with trial orders will ensure the efficient resolution of trial proceedings, whereas noncompliance could risk a mistrial or otherwise result in a dramatic waste of time and resources. For these reasons, the Court will strictly enforce this and other orders governing the parties'

1  trial conduct. Violation of these orders will result in sanctions, including but not limited

2  to significant monetary sanctions and administration of an adverse instruction that

3  negative inferences may be taken as to any arguments or evidence presented to the jury

4  in violation of a court order.

5

6  **IT IS SO ORDERED.**

7

8  Dated: August 27, 2024

9  _____
   MARK C. SCARSI

10  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28